```
 1                                    PAGES 1 - 11
 2                 UNITED STATES DISTRICT COURT
 3                NORTHERN DISTRICT OF CALIFORNIA
 4              BEFORE THE HONORABLE RICHARD SEEBORG
 5  UNITED STATES OF AMERICA,        )
                                     )
 6            PLAINTIFF,             )
                                     )
 7    VS.                            ) CASE NO. 20-CR-00249 RS
                                     )
 8  ROWLAND MARCUS ANDRADE,          )
                                     ) SAN FRANCISCO, CALIFORNIA
 9            DEFENDANT.             ) VIA ZOOM VIDEOCONFERENCE
                                     ) TUESDAY, MAY 31, 2022
10  _____)
11
12                  TRANSCRIPT OF PROCEEDINGS
13  APPEARANCES:
14  FOR PLAINTIFF        UNITED STATES ATTORNEY'S OFFICE
                         450 GOLDEN GATE AVENUE, 11TH FLOOR
15                       SAN FRANCISCO, CALIFORNIA  94102
                    BY:  ANDREW DAWSON, AUSA
16
17
    FOR DEFENDANT        KING & SPAULDING, LLP
18                       50 CALIFORNIA STREET, SUITE 3300
                         SAN FRANCISCO, CALIFORNIA  94111
19                  BY:  MICHAEL J. SHEPARD, ESQUIRE
20                       KING & SPAULDING, LLP
                         500 WEST 2ND STREET, SUITE 1800
21                       AUSTIN, TEXAS  78701
                    BY:  LUKE RONIGER, ESQUIRE
22
23
24  REPORTED BY:  JOAN MARIE COLUMBINI, CSR #5435, RPR
                  PRO TEM OFFICIAL COURT REPORTER, USDC
25
```

```
 1   TUESDAY, MAY 31, 2022                                    2:32 P.M.
 2                              PROCEEDINGS
 3         THE CLERK:  CALLING CASE 20-CR-249, UNITED STATES
 4   VERSUS ROWLAND MARCUS ANDRADE.
 5         COUNSEL, PLEASE STATE YOUR APPEARANCES.
 6         MR. DAWSON:  GOOD AFTERNOON, YOUR HONOR.  ANDREW
 7   DAWSON FOR THE UNITED STATES.
 8         THE COURT:  GOOD AFTERNOON.
 9         MR. SHEPARD:  GOOD AFTERNOON, YOUR HONOR.  MICHAEL
10   SHEPARD AND LUKE RONIGER FOR THE DEFENDANT MARCUS ANDRADE.  HE
11   IS PRESENT BY ZOOM AND CONSENTS TO PROCEED IN THAT FASHION.
12         THE COURT:  GOOD AFTERNOON TO ALL.
13         SO THE LAST GET-TOGETHER WAS MARCH 8TH, THE RECORDS
14   TELL ME.  WHAT WE DID THEN WAS JUST SET IT FOR A FURTHER STATUS
15   HEARING.  I THINK YOU WERE RELATIVELY NEW TO THE CASE,
16   MR. SHEPARD, AT THAT POINT, WEREN'T YOU?
17         MR. SHEPARD:  RELATIVELY, YES, YOUR HONOR.
18         THE COURT:  RELATIVELY.
19         WHY DON'T I START WITH MR. DAWSON.  WHAT'S THE
20   SITUATION?
21         MR. DAWSON:  WELL, YOUR HONOR, SINCE WE WERE LAST
22   BEFORE YOU, WE HAVE OBVIOUSLY CONTINUED WITH DISCOVERY.  WE'VE
23   RECEIVED A SERIES OF DISCOVERY REQUESTS FROM THE DEFENSE, SOME
24   FOR REPRODUCTION, SOME FOR, YOU KNOW, ERRORS IN THE PRODUCTION,
25   SOME FOR ADDITIONAL MATERIALS.  SO WE'VE BEEN SORTING THROUGH
```

1  THOSE.
2          YOU KNOW, IT'S AN ONGOING PROCESS.  I DON'T KNOW.
3  THERE COULD BE SOME AREAS WITHIN THERE WHICH MAY MATURE INTO
4  MOTION PRACTICE BEFORE YOUR HONOR.
5          THERE WAS A PRODUCTION THAT WENT OUT AT THE END OF
6  LAST WEEK THAT WAS RELATIVELY SUBSTANTIAL, AND SO WE CONTINUE
7  TO WORK OUT WHERE THERE ARE AREAS OF AGREEMENTS AND PRODUCTIONS
8  ARE ONGOING, AND THEN AREAS OF DISAGREEMENT MAY BE, HOPEFULLY,
9  DISTILLED OVER TIME.
10         FROM THE GOVERNMENT'S PERSPECTIVE, I THINK AT THIS
11 POINT THE CASE IS NOT GOING TO RESOLVE BY NEGOTIATED AGREEMENT.
12 SO WE HAVE SORT OF EYES SET TOWARDS TRIAL.  OUR VIEW REMAINS AS
13 IT WAS LAST TIME, THAT SETTING A TRIAL DATE AT THIS POINT WOULD
14 BE APPROPRIATE AND MOTIONS DATE PRIOR TO THAT, OBVIOUSLY,
15 SPREADING OUT OVER MONTHS.
16         I THINK GIVEN TRIAL SCHEDULES AND CALENDARS IN THIS
17 DISTRICT, AS YOUR HONOR IS AWARE OF -- I KNOW I HAVE A TRIAL
18 BEFORE YOUR HONOR NEXT MARCH.  I HAVE A SERIES OF OTHER TRIALS
19 BEFORE THAT.
20         WE'RE NOT SEEKING A QUICK TRIAL.  WE ARE NOT SEEKING
21 TO JAM UP MR. SHEPARD OR TO SHORTEN THE TIMELINES.  I'M
22 ENVISIONING, BASED ON THAT CALENDAR, SUMMER OF 2023.  I JUST
23 GET CONCERNED IF WE WAIT TOO MUCH LONGER TO SET A DATE, IT WILL
24 JUST GET PUSHED EVEN FURTHER OUT.
25         AND I WOULD ANTICIPATE THAT ANY DISCOVERY MATTERS,

1   OTHER MOTION PRACTICE COULD ALL BE ADDRESSED IF TRIAL WERE TO
2   BE SET IN SUMMER OF 2023.
3            **THE COURT:**  HOW LONG DO YOU THINK THIS TRIAL COULD
4   BE?
5            **MR. DAWSON:**  IT COULD BE RELATIVELY LENGTHY.  I THINK
6   THREE TO FOUR WEEKS FOR THE GOVERNMENT, WOULD BE MY GUESS.  WE
7   HAVEN'T BEEN DIALING IN ON WITNESSES YET, BUT THAT WOULD BE MY
8   EDUCATED GUESS BASED ON WHERE WE STAND TODAY.
9            **THE COURT:**  OKAY.  MR. SHEPARD?
10           **MR. SHEPARD:**  SO, I GUESS I WOULD SAY I AGREE WITH
11  THE VAST MAJORITY OF WHAT MR. DAWSON SAID, RIGHT UP TO THE
12  POINT WHEN HE STARTED TALKING ABOUT SETTING A TRIAL DATE.
13  THAT'S WHERE I DON'T AGREE, AND THE REASON I DON'T AGREE IS
14  THAT WE'RE MAKING A LOT OF GOOD PROGRESS WITH HIS HELP, BUT WE
15  NEED MORE TIME TO SAY WHAT A REASONABLE DATE WOULD BE FOR HOW
16  LONG A TRIAL WOULD BE.
17           I SAY THAT BECAUSE, FIRST OF ALL, WHILE WE'RE WORKING
18  THIS VERY HARD, WE'RE NOT YET DONE REVIEWING WHAT WE HAVE FROM
19  THE GOVERNMENT, AND I'LL EXPLAIN WHY.  BUT, SECOND, THROUGH
20  THAT WORK WE NOW KNOW WE DO NOT HAVE SUBSTANTIAL QUANTITIES OF
21  WHAT WE EXPECT IS MATERIAL INFORMATION FROM THE GOVERNMENT.
22           AND, FINALLY, EVEN WHEN WE GET EVERYTHING FROM THE
23  GOVERNMENT, THAT, IN MANY WAYS, IS JUST THE START OF WHAT WE
24  NEED TO BE DOING TO ASSESS OUR DEFENSE.
25           SO, FROM MY PERSPECTIVE, AT THE LAST APPEARANCE WE

1  ASKED FOR, I THINK, 90 TO 120 DAYS TO PUT IT OVER.  THE COURT
2  PUT IT OVER FOR 60 DAYS TO SET A DATE AND SEE IF WE WOULD BE IN
3  A POSITION TODAY TO SET A TRIAL DATE.  I DON'T THINK WE ARE.  I
4  PROPOSE WE DO THE SAME THING AGAIN, WHICH IS SET IT OVER FOR 60
5  DAYS AND COME BACK, AND, PERHAPS, HOPEFULLY, WE'LL BE IN A
6  POSITION TO SET A TRIAL DATE THEN.
7           TO PUT A LITTLE MEAT ON THE BONES OF WHAT I JUST
8  SAID, YOUR HONOR, IF I MAY, WHEN WE WERE LAST BEFORE YOU, WE
9  HAD SEVEN PEOPLE WORKING ON THIS CASE.  WE NOW HAVE TEN.  WHAT
10 WE CURRENTLY HAVE -- AND THIS IS WHAT WE HAVE, AS OPPOSED TO
11 WHAT WE DON'T HAVE, IS ABOUT 52,000 DOCUMENTS CONSISTING OF
12 JUST UNDER 350,000 PAGES, AND WE'RE MORE THAN HALFWAY THROUGH
13 IT, BUT STILL WORKING THROUGH IT.  AND IT'S SLOW GOING, IN PART
14 JUST BECAUSE OF THE VOLUME, BUT IN PART BECAUSE A MATERIAL
15 PERCENTAGE OF THE DOCUMENTS -- I THINK I'D ESTIMATE ABOUT 20
16 PERCENT -- ARE NOT TEXT SEARCHABLE.  THEY'RE JUST JPEGS.
17 THEY'RE PHOTOGRAPHS.  SO WE CAN'T USE E-DISCOVERY TOOLS.  I
18 HAVE TO HAVE SOMEONE READ EACH ONE.
19          AND WE HAVE A NUMBER OF DOCUMENTS THAT WERE PRODUCED
20 IN RANDOM ORDER.  FOR EXAMPLE, THERE'S A BINDER TAKEN FROM
21 MR. ANDRADE IN ONE OF THE SEARCHES.  YOU KNOW, IT WAS A BINDER,
22 ALL PUT TOGETHER NICELY.  THE PAGES PRODUCED TO US ARE IN
23 RANDOM ORDER, SO IT'S VERY HARD TO READ AND MAKE SENSE OF THEM.
24 AND THERE ARE OTHER -- THAT'S NOT THE ONLY -- THE BINDER IS NOT
25 THE ONLY EXAMPLE OF THAT.

1           EVEN MY TOTAL OF 350,000 PAGES DOESN'T INCLUDE NATIVE
2  FILES PRODUCED SEPARATELY LIKE AUDIO RECORDINGS.  OUR ESTIMATE
3  IS THERE ARE 383 AUDIO AND VIDEO RECORDINGS, AND WE WOULD
4  ESTIMATE ABOUT A HUNDRED HOURS OF REVIEW THERE.
5           SO, BOTTOM LINE, WE'RE PLOWING THROUGH A LOT OF THIS
6  MATERIAL.  THERE'S STILL A LOT MORE TO DO WITH THE MATERIAL WE
7  HAVE.
8           BUT IT'S CLEAR TO US NOW, AS WE'VE PLOWED THROUGH
9  WHAT WE HAVE GONE THROUGH -- AND WE'VE TRIED TO KEEP THE
10 GOVERNMENT ABREAST OF THE THINGS THAT WE ARE SEEING THAT WE
11 NEED, AND I THINK MR. DAWSON REFERRED TO THAT EARLIER.  AND HE
12 DID SEND US -- HE SENT US A LETTER TODAY SAYING WE HAVE MORE
13 MATERIAL COMING.  WE HAVEN'T SEEN IT YET, BUT I'M SURE WE'LL
14 GET IT SHORTLY.
15          AMONG THE THINGS WE DON'T HAVE, AND, JUDGING FROM HIS
16 LETTER, WE STILL WON'T HAVE EVEN AFTER THE PRODUCTION THAT
17 WE'RE ABOUT TO GET, ARE DEVICES OF MR. ABRAMOFF AND
18 MR. ANDRADE.  WE ASKED FOR THOSE SHORTLY BEFORE THE LAST
19 STATUS, I THINK IN EARLY MARCH.
20          THERE ARE 17 DEVICES THAT WE KNOW OF, LIKE COMPUTERS,
21 EXTERNAL HARD DRIVES, OTHER SMALLER DEVICES.  THE GOVERNMENT
22 TOLD US THOSE HAD BEEN PRODUCED, BUT OUR PRODUCTION CONTAINED
23 ONLY A ONE-PAGE .PDF SLIP SHEET, AND SO WE DON'T, AND STILL DO
24 NOT HAVE THE FILES TO BE REVIEWED.  THESE ARE CONTEMPORANEOUS
25 COMMUNICATIONS OF THE ALLEGED CO-CONSPIRATORS, SO THEY'RE,

1  OBVIOUSLY, REALLY IMPORTANT DOCUMENTS.
2           AND IT MAY BE -- I DON'T KNOW.  IT MAY BE THAT SOME
3  OF THESE WERE PRODUCED TO OUR PREDECESSOR COUNSEL, BUT IT'S OUR
4  UNDERSTANDING THAT NOT ALL OF THEM WERE, AND, IN ANY EVENT, AS
5  I THINK WE SAID AT THE LAST STATUS, WE CAN'T ACCESS THOSE
6  BECAUSE OF THE FINANCIAL ISSUES THAT MR. ANDRADE HAD WITH HIS
7  PRIOR DISCOVERY VENDOR.  HE JUST RAN OUT OF MONEY.  SO THEY
8  HAVE -- THEY MAY HAVE INFORMATION, BUT WE'RE NOT GETTING IT
9  FROM THEM.
10          THERE ARE OTHER ITEMS IN THE GOVERNMENT'S PHYSICAL
11 FILE THAT WE DON'T HAVE.  FOR EXAMPLE, A THUMB DRIVE FROM THE
12 COMPUTER OF THE JODOINS, ACCORDING TO THE GOVERNMENT'S
13 AFFIDAVIT IN THEIR SEARCH WARRANT.  THE JODOINS -- IT'S A
14 COUPLE -- ARE PURPORTED VICTIMS, AS WELL AS FORMER EMPLOYEES OF
15 MR. ANDRADE'S.  THE AFFIDAVIT SUGGESTS THESE -- WHAT'S ON THAT
16 THUMB DRIVE ARE GOING TO BE RELEVANT TO THE -- AMONG OTHER
17 DEVELOPMENTS, THE STATE AND THE DEVELOPMENT OF MR. ANDRADE'S
18 TECHNOLOGY, WHICH IS ONE OF THE ESSENTIAL ISSUES IN THE CASE.
19 WE ASKED FOR THAT ON MARCH 3RD.  WE STILL DON'T HAVE IT.  I
20 COULD LIST FIVE OR SIX MORE ITEMS LIKE THAT.
21          **THE COURT:**  I GET THE PICTURE, I THINK, THAT THERE'S
22 A GREAT DEAL LEFT, AND I KNOW IT'S A COMPLICATED -- COMPLICATED
23 BACKGROUND IN THIS CASE.  THE PROBLEM -- THE CONCERN I HAVE
24 ABOUT JUST NOT SETTING ANYTHING IS THE NATURE OF THE BACKLOG
25 AND THE CALENDAR IS THAT, YOU KNOW, IF WE DON'T EVEN GET A

```
 1   PLACEHOLDER, WE'RE REALLY WAY BACK, BECAUSE I HAVE -- I AGREE
 2   WITH YOU I HAVE A CASE WITH YOU, MR. DAWSON, IN MARCH, BUT THEN
 3   TOWARD THE END OF MARCH I HAVE AN MS-13 FOUR OR FIVE DEFENDANT
 4   CASE, AND THAT WILL GO ON FOR MONTHS.  SO IF I DON'T GET, YOU
 5   KNOW, YOU IN THE QUEUE, I MEAN, WE'RE REALLY BACKING UP.
 6           AND WHAT I'M INCLINED TO DO IS, WITH ALL THE CAVEATS
 7   THAT YOU HAVE INDICATED, MR. SHEPARD, IS TO -- IS TO GO AHEAD
 8   WITH A TRIAL DATE, BUT WITH THE UNDERSTANDING IT MAY WELL HAVE
 9   TO BE ADJUSTED BACK.  BUT I'M CONCERNED IF I DON'T EVEN GET YOU
10   ON THE BEGINNING OF THE LIST, IT'S REALLY GOING TO BE --
11   BECAUSE WE'RE ALREADY TALKING ABOUT MORE THAN A YEAR FROM NOW.
12   AND THEN, YOU KNOW, I'M NOT REALLY OPTIMISTIC IT WILL BE ABLE
13   TO GO THEN.
14           SO I JUST WANT TO GET -- YOU KNOW, THERE'S THE LIST
15   OF MATTERS THAT HAVE AT LEAST THEORETICAL TRIAL DATES AND THE
16   ONES THAT DON'T.  WHEN WE START MOVING AROUND THE THEORETICAL
17   TRIAL DATE, PEOPLE MAYBE HAVE A LITTLE BIT OF A STEP UP FROM
18   THE PEOPLE THAT DON'T EVEN HAVE THAT.  SO I'M INCLINED TO GET
19   YOU ON THE LIST, BUT WITH THE UNDERSTANDING THAT IT'S NOT ONE
20   OF THOSE:  THIS IS YOUR TRIAL DATE, AND COME HELL OR HIGH WATER
21   THIS IS WHEN IT'S GOING TO GO.  I COULD SEE IT HAS TO BE
22   ADJUSTED.
23           I AM INCLINED TO THINK, IF WE ARE TALKING ABOUT
24   SUMMER OF 2023, I OUGHT TO JUST HAVE A DATE WE COULD AT LEAST
25   START TO SHOOT FOR, AND MAYBE WE CAN START, YOU KNOW, BUILDING
```

1  BACK A LITTLE BIT.

2         SO I'M NOT SURE IT'S REALLY INCONSISTENT WITH YOUR
3  VIEW, MR. SHEPARD, BECAUSE -- IT'S MORE OF AN ADMINISTRATIVE
4  MARKER SO THAT THE CASE, YOU KNOW, HAS GOT SOME CURRENT HOME,
5  IF YOU WILL.

6         **MR. SHEPARD:**  I UNDERSTAND THAT, YOUR HONOR.  I
7  APPRECIATE THAT.  OBVIOUSLY, THE COURT KNOWS THIS MUCH BETTER
8  THAN I DO.  BUT I FEAR THAT THE SUMMER MAY BE A LITTLE EARLY,
9  AND THEN THE QUESTION IS, IF THAT'S THE TRIAL DATE THAT WE HAVE
10 BECAUSE WE'VE SET IT NOW, WOULD THAT PREJUDICE US, SAY, FROM
11 GETTING SOME TRIAL DATE IN --

12        **THE COURT:**  EARLIER?

13        **MR. SHEPARD:**  -- THE LATE FALL.  NO, NO, NOT EARLIER,
14 BUT THE LATE FALL OF NEXT YEAR, BECAUSE, YOU KNOW, IN 60 DAYS,
15 WE MIGHT BE IN A BETTER POSITION TO PIN THAT DOWN.

16        **THE COURT:**  I ACTUALLY THINK -- LET'S ASSUME FOR THE
17 HYPOTHETICAL THAT THIS ENDS UP IN LATE FALL DATE, I THINK YOU
18 WOULD BE BETTER OFF, FRANKLY -- IF YOU HAVE AN EARLIER TRIAL
19 DATE AND I'VE SET THINGS FOR, SAY, IN THE FALL AND SOMEBODY IN
20 THE EARLY -- OR IN THE SUMMER NEEDS TO MOVE, THAT ONE GETS
21 PREFERENCE OVER THE ONE THAT WAS SET FOR THE FALL.  THAT ONE
22 WILL HAVE TO MOVE.

23        SO I THINK YOU ARE BETTER OFF, FRANKLY -- I WAS
24 THINKING -- THE OTHER PROBLEM WITH SUMMER, QUITE CANDIDLY,
25 JULY, FOR EXAMPLE, IS ALWAYS A CONFERENCE MONTH, AND WE'VE GOT

```
 1   THE NINTH CIRCUIT CONFERENCE IS ALWAYS IN JULY, AND I'VE GOT A
 2   CHIEF JUDGES THING THAT'S ALWAYS AROUND THE SAME TIME.  THEN
 3   YOU HAVE TO CHOP IT UP, WHICH I DON'T PARTICULARLY WANT TO DO.
 4           WHY DON'T WE SET IT FOR AUGUST OF 2023 SO WE HAVE
 5   SOMETHING SITTING THERE, AND I WILL -- YOU CAN REMIND ME OF OUR
 6   CONVERSATION IF I SAY TO YOU -- AND I THINK WE'LL DO BOTH.  I
 7   THINK I'LL SET A FURTHER STATUS IN 90 DAYS FROM NOW, AND I'LL
 8   SET A TRIAL DATE IN AUGUST OF 2023.
 9           SO, MS. LEW, CAN YOU GIVE US AN AUGUST DATE IN 2023?
10           **THE CLERK:** AUGUST 7TH.
11           **THE COURT:** AUGUST 7TH, THAT'S THE CURRENT DATE.  AND
12   HOW ABOUT IN ROUGHLY 90 DAYS, IT DOESN'T HAVE TO BE EXACT,
13   FURTHER STATUS BY VIDEO?
14           **THE CLERK:** OKAY.  AUGUST 30TH.
15           **THE COURT:** OKAY.  YEAH.  WELL, YEAH, OKAY.  THAT'S
16   WHEN THE MARCUS TRIAL WILL BE GOING, AND I LEAVE THE DAY -- I
17   LEAVE THAT WEEK, BUT THAT'S ALL RIGHT.  THAT'S ALL RIGHT.
18   WE'LL HAVE THIS AS A STATUS.
19           OKAY.  WHAT'S THE TRIAL, MR. DAWSON, I HAVE WITH YOU
20   IN MARCH?
21           **MR. DAWSON:** IT'S A DRUG DIVERSION TRIAL.  STEPHEN
22   SILVERMAN IS THE DEFENDANT.
23           **THE COURT:** OH, YEAH, YEAH.
24           **MR. DAWSON:** AND MR. OVASAPYAN, AND A VARIETY OF
25   DEFENDANTS, ONE LEFT FOR TRIAL.
```

1          **THE COURT:** CAN'T YOU GET THAT THING RESOLVED?
2          ALL RIGHT. VERY GOOD. THAT'S NOT MR. SHEPARD'S
3   PROBLEM, SO WE WON'T BURDEN HIM WITH THAT.
4          OKAY. ANYTHING ELSE?
5          **MR. DAWSON:** WELL, I THINK, YOUR HONOR, WITH THE KIND
6   OF TENTATIVE PLACEHOLDER TRIAL DATE, IT MAY MAKE SENSE TO
7   EXCLUDE TIME THROUGH THAT DATE, WHICH WOULD COVER US FOR
8   INTERIM CASE MANAGEMENT CONFERENCES, OR WE CAN PROCEED ON KIND
9   OF A CASE MANAGEMENT TO CASE MANAGEMENT BASIS.
10         **THE COURT:** I THINK THE RECORD IS BETTER WHEN WE DO
11  CASE MANAGEMENT TO CASE MANAGEMENT. LET'S DO THE EXCLUSION --
12  ASSUMING MR. SHEPARD AGREES, WE'LL DO THE EXCLUSION THROUGH TO
13  AUGUST 30TH. THEN IF I HAVE TO MOVE THAT CMC, YOU CAN REMIND
14  ME AND WE CAN JUST ADJUST THE TIME.
15         MR. SHEPARD, ANY PROBLEM EXCLUDING TIME THROUGH
16  AUGUST 30TH?
17         **MR. SHEPARD:** NO OBJECTION, YOUR HONOR.
18         **THE COURT:** ALL RIGHT. OKAY. WELL, WE'LL SEE YOU IN
19  AUGUST.
20         **MR. SHEPARD:** THANK YOU, YOUR HONOR.
21         **MR. DAWSON:** THANK YOU, YOUR HONOR.
22         **THE COURT:** THANKS.
23         (PROCEEDINGS ADJOURNED AT 2:51 P.M.)
24
25

```
1   STATE OF CALIFORNIA    )
2                          )    SS
3   COUNTY OF CONTRA COSTA )
4
5           I HEREBY CERTIFY THAT THE FOREGOING IN THE
6   WITHIN-ENTITLED CAUSE WAS TAKEN AT THE TIME AND PLACE HEREIN
7   NAMED; THAT THE TRANSCRIPT IS A TRUE RECORD OF THE PROCEEDINGS
8   AS REPORTED BY ME, A DULY CERTIFIED SHORTHAND REPORTER AND A
9   DISINTERESTED PERSON, AND WAS THEREAFTER TRANSCRIBED INTO
10  TYPEWRITING BY COMPUTER.
11          I FURTHER CERTIFY THAT I AM NOT INTERESTED IN THE
12  OUTCOME OF THE SAID ACTION, NOR CONNECTED WITH, NOR RELATED TO
13  ANY OF THE PARTIES IN SAID ACTION, NOR TO THEIR RESPECTIVE
14  COUNSEL.
15          IN WITNESS WHEREOF, I HAVE HEREUNTO SET MY HAND THIS
16  1ST DAY OF JULY, 2022.
17
18
19          _____
20          JOAN MARIE COLUMBINI, CSR NO. 5435
21          STATE OF CALIFORNIA
```