ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ROSS WEINGARTEN (NYBN 5236401)
CHRISTIAAN HIGHSMITH (CABN 296282)
ANDREW F. DAWSON (CABN 264421)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7019
    FAX: (415) 436-7234
    andrew.dawson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 20-249 RS |
| Plaintiff, | UNITED STATES'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO COMPEL |
| v. | |
| MARCUS ANDRADE, | |
| Defendant. | |

The government submits the following memorandum in response to Defendant's Supplemental Memorandum in Support of Motion to Compel Discovery.

**I.    Legal Standard**

To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *see also United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984) (same). A general description of the information sought will not suffice, nor will conclusory allegations of materiality. Rather, defendants must present facts showing that the government is in possession of information helpful to the defense. *See Little*, 753 F.2d at 1445; *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013).

"Materiality is a necessary prerequisite to discovery." *United States v. USDC, Cent. Dist. Of Cal., Los Angeles, CA*, 717 F.2d 478, 480 (9th Cir. 1983). Evidence is material under Rule 16 if it is "relevant to the development of a possible defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (internal quotation omitted). Materiality means "more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Barreras-Felix*, No. 19-CR-02199, 2020 WL 1074753, at *3 (D. Ariz. Mar. 6, 2020) (internal quotation omitted). Rather, disclosure of the evidence must "enable the accused to substantially alter the quantum of proof in his favor." *United States v. Marshall*, 532 F.2d 1279, 1285 (9th Cir. 1976) (denying discovery motion where "[a]ny information discovered would have had a great potential for confusing the issues at trial").

Defendant has challenged the United States' reliance on *Marshall*, arguing that the materiality standard has been expanded. But Defendant fails to identify any case explicitly limiting or overruling *Marshall*. Indeed, *Marshall* continues to be applied by district courts across the circuit for the precise proposition cited by the government. *See, e.g.*, *United States v. Dejarnette*, Case No. 09-268, 2011 WL 838898, *1 (N.D. Cal. March 4, 2011) (Illston, J.); *United States v. Alas*, Case No. CR 08-874 TUC, *6 (D. Ariz. Feb. 27, 2009); *United States v. Stone*, Case. No. 12-cr-0072 JCC, 2013 WL 4541513, *2 (E.D. Cal. Aug. 27, 2013). Defendant's preferred citation is to *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013), which neither overrules *Marshall* nor directly addresses the standard applicable to requests for discovery under Rule 16. Instead, *Hernandez-Meza* considered whether a particular piece of evidence in a particular case was, in fact, material. While the standards are, of course, closely related, the problem with Defendant's motion is that mere declarations that desired material is "material" is insufficient, and courts must apply some scrutiny in order to avoid immaterial discovery becoming a distraction at trial. "[G]eneral description[s] of the information sought [or] conclusory allegations of materiality" are insufficient. *Mandel*, 914 F.2d 1215.[1]

## II. Argument

In the course of meet-and-confer negotiations, the government has agreed to produce hundreds of

---

[1] The Court also raised in its minute order the question of the appropriate standard to be applied to Defendant's invocation of the *Brady* rule. In the United States's view, Rule 16 is a broader entitlement to discovery that would include within it any *Brady* material. *See United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) ("Rule 16 is thus broader than *Brady*.").

gigabytes of additional information. The government maintains its view that such materials are beyond the scope of Rule 16, but in the hope of proceeding expeditiously to trial, the government has exercised its discretion to make such productions. Defendant remains unsatisfied and paints a misleading picture both of the case against Defendant Andrade and of the status of discovery.

To the extent Defendant believes Jack Abramoff was somehow scheming behind Defendant's back, the government has produced huge quantities of Abramoff's email and cell-phone communications. For example, in the course of meet-and-confer negotiations, the Government obtained Abramoff's consent to produce a complete extraction of his mobile device, with only potentially privileged materials removed. Defendant therefore does not need devices associated with Paul Erickson, Maria Butina, or Alexander Levin in order to gain insight into Abramoff's communications. Defendant will have the same information directly from Abramoff's devices. Even so, the government has agreed to produce, and is in the process of producing, approximately 350 gigabytes of data extracted from devices associated with her. The government has also produced nearly 2500 pages of materials from the FBI's casefile associated with Maria Butina.

Discovery in this case has already strayed far beyond what Rule 16 or any other authority would require. Defendant's arguments are wholly speculative, and to the extent that speculation with regard to Abramoff's ambitions were to be born out, the materials already produced or in the pipeline for production will contain such evidence. Defendant's further demands should be rejected.

### A. Cast of Characters

Because Defendant maintains such an acute interest in investigative documents associated with Maria Butina, Paul Erickson, and Alexander Levin, some context is necessary.

Maria Butina was charged in 2018 with offenses related to acting as an agent of a foreign government. *See* Case No. 1:18-cr-00218 (D.D.C.), Dkt. Nos. 1 & 7. The charged offenses were filed in the District of Columbia. *See id.* The charges have nothing to do with cryptocurrency, Marcus Andrade, or AML Bitcoin. Butina ultimately pleaded guilty in December 2018. *See id.*, Dkt No. 67. Defendant Andrade's interest in Butina apparently stems from 20 pages of material found during a search of Butina's home, which include a scant 14 lines of handwritten notes. *See* Defendant's Supplemental Memorandum ("Supp. Memo"), at 5. Defendant claims these pages "include a multi-

USA's Supp. Opp. to Def.'s Mot. to Compel
CR 20-249 RS

3

platform campaign to promote the deregulation of the cryptocurrency industry – the opposite of Andrade's approach . . . ." Defendant fails to explain how Abramoff's independent goal to deregulate the cryptocurrency industry—if such a goal is even evident in those pages—bears any relevance to the case against him, let alone reflects some malicious attempt to steal his company. While defendant contends that the notes seized from Butina's apartment have some special significance, he fails to articulate what that is. The notes reflect a sales pitch and included with them generic marketing materials. Nothing more, nothing less, and certainly nothing material to the defense.[2] The government remains mystified at Defendant's focus on these materials.

Paul Erickson was prosecuted for fraud and money laundering in the District of South Dakota. *See* Dkt. No. 1, Case No. 4:19-cr-40015 (D. S. Dakota). The indictment has nothing to do with cryptocurrency, Marcus Andrade, or AML Bitcoin. Erickson pleaded guilty on November 26, 2019 to one count each of wire fraud and money laundering. Dkt. No. 29. Erickson was pardoned by former President Trump on January 13, 2021. Dkt. No. 84. In Defendant's view, Erickson is connected via the same thin reed of a few pages seized from Butina's apartment, combined with his preexisting relationship with Jack Abramoff. (The government believes the handwritten notes were created by Erickson, even though they were seized at Butina's home. As Defendant is aware, Butina told investigators that she had no substantive interactions with Abramoff and met him only once at a social meeting.)

Alexander Levin is an associate of Abramoff's. Materials produced by the government reflect communications between Abramoff and Levin. So far as the government is aware, Levin never purchased any AML Bitcoin.

**B.    Review of Privileged Materials on Abramoff's Mobile Device**

Defendant asks this Court to order the government to, in effect, re-do its privilege filter because Defendant would prefer that it be done differently. Defendant cites to no authority authorizing him to dragoon government resources into conducting supplementary privilege reviews, and the government is

---

[2] Despite the failure to articulate a sufficient basis to justify compelling discovery, the government has agreed to produce voluminous material from Butina's devices and the FBI casefile in the hope of moving expeditiously towards trial.

not aware of any such authority.

But more to the point, Defendant's speculation that communications involving attorneys might be material is insufficient to compel their production, let alone to compel the expenditure of government resources in a privilege review. Defendant focuses his attention on Abramoff's brother, but he has no specific reason to believe that any such documents are material. Once again, Defendant merely speculates that because somebody's name appears in a document and because he had some tangential relationship to corporate entities related to this case, the documents in question are therefore material. But the fact that the brother was "involved" in various corporate entities—Defendant fails to specify what he means by "involved"—does not make such documents material. Defendant is simply guessing. Given the volume of material that will be otherwise produced to Defendant, which includes the entire content of Abramoff's phone other than potentially privileged materials, there is no reason to believe uniquely relevant material would be found in such records.

### C.     Levin's Devices Are Cumulative to Already Produced Documents

In the days since Defendant filed his motion, the United States has received and reviewed a copy of the relevant seizures from Levin's devices, which were generated by another district pursuant to an out-of-district search warrant in a separate investigation. More specifically, the government has reviewed materials seized by that district pursuant to their search warrant. With regard to communications between Abramoff and Levin, every message between the two men on Levin's device is also contained on Abramoff's mobile device, which has been produced. Thus, because the Abramoff/Levin communications on Levin's devices are duplicative of already-produced (or soon-to-be produced) material, there is no need to produce them again, and there is no reason to reach the question of whether an attorneys-eyes-only limitation is appropriate.

With regard to other materials seized from Levin's devices *not* reflecting communications between the two men, Defendant has never articulated how Levin's records *not* involving Abramoff are material. Instead, Defendant's initial motion to compel simply noted that "Levin communicated with Abramoff frequently during the timeframe relevant to this case regarding Ukrainian politics and through those discussions, Abramoff introduced Levin to AML Bitcoin and discussed cryptocurrency." Motion at 8. Defendant already has the communications in question.

### D. Extraction from Erickson's Phone

As noted above, Erickson was prosecuted for fraud and money laundering. The indictment accused Erickson of fraud in connection with the development of lands in the Bakken oil fields in North Dakota. Dkt. 1, Case No. 4:19-cr-40015 KES, at 1. Erickson was accused of defrauding investors in two companies purportedly involved in senior residential care facilities and in the development of a specific wheelchair. *Id.* The factual basis in support of the plea, which was filed on the docket, relates to Erickson's false representations to investors that he would "use the money to purchase real estate and [in] the construction of single-family homes in North Dakota." Dkt. 30, Case No. 4:19-cf-40016 KES, at 1. The case had nothing to do with cryptocurrency, with AML Bitcoin, or with Marcus Andrade.

On January 13, 2021, Erickson was pardoned by former President Trump. The FBI's case (which was distinct from the case investigating Defendant Andrade) was closed in March 2022. The government has requested that the agents assigned to that case review their files for copies of any extractions from Erickson's devices, but the team has been unable to find any. The government previously informed the defense that the extractions themselves were destroyed in March 2022, but further investigation has revealed simply that March 2022 is when the casefile was formally closed. The team has not located any records regarding when those extractions were destroyed.

As with the Butina documents discussed above, the Erickson casefile and evidence is a red herring. The FBI's investigation of Erickson had nothing to do with cryptocurrency or with the Defendant himself, and any communications between Erickson and Abramoff would have been separately recorded on Abramoff's devices, which have been produced. Any further interest in Erickson is speculative and based on a fantastical misreading of a few stray lines of notes. There is no basis for any further productions with regard to Erickson, particularly when the production of the Butina devices is so substantial.

### E. Seizure Documents

Next, Defendant requests "search warrants and their affidavits, and other documents relating to the searches and seizures of the Butina documents, as well as the devices seized from Levin, Erickson, and Butina." Supp. Memo at 11. Defendant claims that such materials are necessary "to admit the exculpatory fruits of the searches, and to be able to fully understand and utilize the significance of what

was found in the searches and other items the government has agreed to produce." *Id.* This is ludicrous. If there are relevant communications between the relevant players—which is pure speculation at this point—their relevance will be up to Defendant to assess. Investigative paperwork in a fraud case out of South Dakota and a foreign-agent case from the District of Columbia will not help. Any suggestion to the contrary is guesswork. Andrade's claim that the storage conditions of the documents found in Butina's home are "critical information" is transparently absurd, not to mention speculative.

Regardless of the absurd overbreadth of Defendant's request, and notwithstanding the challenges posed by classification of certain materials, the government has prepared and produced approximately 2500 pages of materials derived from the Butina casefile.

### F. Statements Made by Butina, Erickson, and Levin

The government has already produced to the Defense the only statement made by Butina to the government that makes any reference to AML Bitcoin. In the statement, Butina indicated that she had only met Abramoff on one social occasion, and that Erickson told her that she did not need to meet with Abramoff regarding AML Bitcoin. She made no statements about Andrade, and the government is not aware of any evidence that the two ever met.[3]

The government has reviewed Erickson's statements to the government, and he made no references to AML Bitcoin or to Defendant Andrade. Defendant's claim that the statements are nonetheless material is unsupported.

The government is not aware of Levin making any statements to the government.

### III. Conclusion

For the reasons articulated above, Defendant's additional requests for an order compelling

//
//
//
//
//

---

[3] Defendant's memorandum also makes reference to "records of . . . money connections" under the category of "Statements Made" section, but is unclear what he is talking about.

1  production of documents should be denied.

3  DATED:  March 22, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


_____/s/_____
ANDREW F. DAWSON
ROSS WEINGARTEN
CHRISTIAAN HIGHSMITH
Assistant United States Attorneys