**Pages 1 - 16**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. CR 20-00249-1-RS** |
| ) | |
| ROWLAND MARCUS ANDRADE, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

San Francisco, California
Tuesday, June 6, 2023

**TRANSCRIPT OF REMOTE VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:** (Via Zoom videoconference.)

For Plaintiff:       ISMAIL J. RAMSEY
                     United States Attorney
                     450 Golden Gate Avenue
                     San Francisco, California  94102
                **BY: CHRISTIAAN HIGHSMITH**
                     **ROSS WEINGARTEN**
                     **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant:
                     KING & SPALDING LLP
                     50 California Street - Suite 3300
                     San Francisco, California 94111
                **BY: MICHAEL J. SHEPARD, ATTORNEY AT LAW**

                     KING & SPALDING LLP
                     1700 Pennsylvania Avenue, NW
                     Washington, D.C. 20006
                **BY: KERRIE D. DENT, ATTORNEY AT LAW**


**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

Reported By:  Ruth Levine Ekhaus, RMR, RDR, FCRR
              Official Reporter, CSR No. 12219

1  **APPEARANCES: (CONTINUED)**

2  For Defendant:
                         CINDY A. DIAMOND
3                        Attorney at Law
                         58 West Portal Avenue - #350
4                        San Francisco, California 94127
                    BY:  **CINDY A. DIAMOND, ATTORNEY AT LAW**

|   |   |
|---|---|
| 1 | **Tuesday - June 6, 2023**                                              **2:30 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |

4   **THE CLERK:** Calling Case 20-249, United States
5  v. Rowland Marcus Andrade.
6      Counsel, please state your appearances, starting with the
7  Government.
8      **MR. HIGHSMITH:** Good afternoon, Your Honor. Chris
9  Highsmith and Ross Weingarten appearing for the United States.
10     **THE COURT:** Good afternoon.
11     **MR. SHEPARD:** And good afternoon, Your Honor. Mike
12 Shepard, Kerrie Dent, and Cindy Diamond on behalf of the
13 defendant, Mr. Andrade, who is present and consents to proceed
14 by Zoom.
15     **THE COURT:** Good afternoon.
16     Okay. So let me start with the Government.
17     Mr. Highsmith or Mr. Weingarten, where are we?
18     **MR. HIGHSMITH:** Thank you, Your Honor.
19     I think we need to start talking about trial dates. This
20 case is getting long in the tooth.
21     **THE COURT:** True.
22     **MR. HIGHSMITH:** And the Government would like a --
23 would like a trial.
24     **THE COURT:** What are you looking at in terms of --
25 what's your sense of when that means? What does that mean in

terms of what you would like?

**MR. HIGHSMITH:** I mean, I think there's utility, Your Honor, in putting a trial date on the calendar. I anticipate that the Defense would not want to set a trial; but I think there is utility in getting one on the calendar.

You know, what I'd like and what's reasonable are two different things, probably. You know, I'd like something sooner, I'll be honest. I think -- well, of course, I'll be honest, but just looking at the case, early 2024, may be a reasonable trial date.

**THE COURT:** Okay.

**MR. HIGHSMITH:** I think there's utility putting it on the calendar now and --

**THE COURT:** Fair enough.

**MR. HIGHSMITH:** -- getting that set in there.

**THE COURT:** Fair enough.

Mr. Shepard?

**MR. SHEPARD:** Thank you, Your Honor.

So we understand why the Court would want to set a trial date; and it doesn't surprise us that the Government is pushing for one. But, I would say that, despite a lot of work that both parties have done and Judge Beeler has done, there are many discovery disputes that still remain. There are many items that remain unproduced, even though they've been ordered produced or agreed to be produced. And there's a large

1  quantity of material that was produced only recently, several
2  years after indictment, and well after a year -- after specific
3  requests for those materials were made.
4      So from our perspective, we're both not ready for a trial
5  date.  And also, no date should really be set until the
6  Government has complied with the sort of Rule 16 productions
7  that ordinarily get made promptly, and are made before a trial
8  date ever gets discussed or set.
9      And especially, given the size of the production so far,
10 we need to have a reasonable chance to review the discovery
11 before we can start talking about when we think a trial is
12 appropriate.
13     So I can -- I can put some meat on the bones of those
14 points --
15     **THE COURT:**  Well -- but before you do that.  I mean, I
16 don't think it's inconsistent with some of what you've said to
17 say we do need a trial date; it tends to crystallize and move
18 things along.  And when we're talking about early 2024, that's
19 plenty of time to work out these problems.
20     But I am concerned that this case is kind of in limbo.  I
21 know how hard the counsel are working; and I'm very grateful to
22 you, Mr. Shepard, and your colleagues for all the work you're
23 putting into this.  But I -- you know, discovery disputes --
24 sounds like you've got Judge Beeler's attention and you work
25 those things out with her; but I think, at this point, a trial

1  date will have a beneficial effect in getting things to move
2  along.
3      So particularly, if we're talking about early 2024, which
4  is, I mean, six months from now -- so that's a long time in a
5  case this old.  So I'm -- I do want to set a trial date.  And I
6  want to set a trial date in January or February.
7      I'll let the parties discuss a couple of date alternatives
8  to propose to me for that January/February period, but -- and I
9  want you to get back to us, say, in a week with proposed
10 January/February dates, but we've got to set this.  This thing
11 can't just stay in this posture, because I think, barring some
12 trial date and some movement, it's going to stay this way for
13 the foreseeable future.
14     I know it's a big case and I know it's complicated, but,
15 you know, we're not going to expend the federal treasury on
16 this case, and your client needs to know that.  You know,
17 you're doing extraordinary work on his behalf at a -- at the
18 CJA rate, and he's very lucky to have you.  He can't have
19 everything, with no limit, on the budget.
20     The case is going to trial and it's going to go to trial
21 in 2024; and if I have my way, it's going to go to trial early
22 in 2024.  So that's the way it is.
23     I do want you to have, maybe, some further discussion on
24 that with Judge Spero, because some of the requests we're
25 getting are not realistic through the CJA process, but I'm not

going to spend time on this, in this call, to talk about.

But suffice it to say, you're going to trial; you're going to trial in 2024, and early in 2024.

**MR. SHEPARD:** May I be heard on the early 2024 piece, Your Honor?

**THE COURT:** Sure.

**MR. SHEPARD:** Because I think ultimately that would reward the Government and disadvantage the Defense for the very slow -- very slow pace of discovery.

**THE COURT:** But let me stop you, Mr. Shepard.

Your remedy is to go to Judge Beeler. If Judge Beeler -- you know, if you think there's delay, she'll give you orders. If the Government doesn't comply, you go back and ask her to compel, or what have you. But the answer cannot be, "Well, we're not getting what we want, so we're just never going to set a trial date." That's not the way it works, as you know.

You have a remedy -- and maybe it then gets appealed up to me at some point or whatever; but doing nothing scheduling-wise because you think the Government isn't doing enough is not the answer.

**MR. SHEPARD:** I appreciate that, Your Honor.

But to give you an illustration, we filed a discovery motion in November of last year. Judge Beeler addressed a portion of it, because she asked us to look at just the -- our highest priority items. It took until April for us -- for her

1  to enter an order in response to our discovery motion.  She
2  ruled in our favor on all the things that we asked for.  It
3  took another couple of months for the Government to respond and
4  make some productions in response to Judge Beeler's discovery
5  order.
6      We have since the -- since we filed our motion in
7  November, we -- the Government has produced over a million
8  documents to us that we need to review.  Some of it is
9  unreviewable in the form that we got it.
10     And so that's sort of the first --
11         **THE COURT:**  Well, let me ask you this:  Did you go
12 back to Judge Beeler on this?
13         **MR. SHEPARD:**  We have had three meet-and-confers or --
14 in -- we have attempted to have three meet-and-confers in May
15 so that we could go back to Judge Beeler.
16     We did go back to Judge Beeler in part, but there are --
17 but, you know, there's a process to get in front of
18 Judge Beeler, and we have pursued that process.  We are still
19 pursuing it as to some of the aspects of discovery.  The
20 Government has not been quick to respond to our efforts to meet
21 and confer.  And so, yes, we are working with Judge Beeler and
22 getting this discovery, but it's moving very slowly, not on our
23 account --
24         **THE COURT:**  All right.  Let me go to the Government.
25     I don't want to -- I'm not the discovery judge in this

1    case.  I don't want to get into the discovery.  But if you want
2    a trial date and you have -- and there are orders from the
3    magistrate judge, you have got to produce the material the
4    magistrate judge says you have to produce.
5         Is there some problem with this?
6              **MR. HIGHSMITH:**  No, Your Honor.
7         I -- I hesitate to get into this because I disagree with
8    what Mr. Shepard is saying.
9         I don't want to use this Court's time; we have
10   Judge Beeler.  She most recently ruled in our favor in the most
11   recent dispute.  There was a prominent misrepresentation by
12   Mr. Shepard at the last hearing regarding the state of
13   discovery.
14        I'm not going to bother the Court with ticky-tack
15   discovery disputes.  We're doing everything we can to respond
16   as promptly as possible.  We're, of course, adhering to the
17   judge's orders.
18             **THE COURT:**  All right.  I'm going to leave it the way
19   it is.
20        You know, Judge Beeler is your discovery judge.  If you
21   think that you've reached a point where something has to be
22   appealed to me, you know the way that works; but I am not going
23   to become the discovery judge in this case.  She's the
24   discovery judge.
25        And, you know, the Government knows that if the Government

1  wants to keep a trial date, the last thing they need is to have
2  all sorts of issues that can be brought up to say we can't go
3  to trial because the discovery hasn't been produced.
4      At the same time, I -- there is a flavor in this case that
5  everything and the kitchen sink is being asked for.  And that
6  is not going to fly either, because this isn't the most
7  complicated case in the western world; it's complicated, but we
8  do lots of complicated cases.  And the case was filed in 2020.
9  There is no reason it can't move forward.  And it's going to
10 one way or the other.
11     So go back to Judge Beeler.  If you have an issue that
12 needs my adjudication, it gets teed up in a way that I can
13 handle it.
14     What is not helpful to me is two sides telling me that the
15 other side is being too slow in their discovery or whatever.
16 I'm not the hands-on person on these issues.  I need it teed
17 up.  If there's a motion where, you know, you think
18 Judge Beeler should have ordered discovery, and you think you
19 have a good argument for why she was wrong, you appeal it to
20 me, and then I can deal with it; but generalized, "The other
21 side isn't doing what it should be doing," is not what I'm
22 going to be spending my time on today.
23     So what I want you to do is to meet and confer, and in two
24 weeks -- that's my deadline, two weeks from today, I want the
25 parties to give me three different alternative dates in the

1  January/February period.  We'll include March -- January
2  through March, the first quarter of 2024, for three alternative
3  trial dates that the parties could try the case.  And then I
4  can look at my schedule and pick one of them.
5      So that's what we're going to do.
6      Now, we should probably have -- because this case seems to
7  always have issues, I'll go ahead and have a further status
8  conference in the case and let's set something, perhaps, in
9  August or around that period to see where things stand.
10     Or maybe we'll do it in October, actually.
11         **MR. HIGHSMITH:**  Thank you, Your Honor.
12     The Government is ready to meet at any time.
13         **MR. SHEPARD:**  Will Your Honor hear any more from me on
14  the subject of a trial date in the first quarter of 2024?
15         **THE COURT:**  I'm happy to hear from you if it's not
16  that "The Government isn't giving us enough discovery."  I
17  don't want to hear that song again.  If it's something
18  different, go ahead.
19         **MR. SHEPARD:**  Well, let's -- two points then,
20  Your Honor.
21     First of all, can we have a date by which the Government
22  will finish making all the productions?
23         **THE COURT:**  Go to Judge Beeler.
24         **MR. SHEPARD:**  Okay.
25         **THE COURT:**  I don't know how I can say it any clearer

to you.

**MR. SHEPARD:** Okay.

**THE COURT:** I'm not jumping in the fray and becoming the de facto discovery judge for you.

**MR. SHEPARD:** Okay.

**THE COURT:** So go to -- you know, Judge Beeler is an incredibly experienced, criminal law judge. You may not like what she's doing and that's why we have an appeal option; but I am not going to start putting deadlines that may or may not conflict with deadlines she's putting in. She's in charge. Go to her.

**MR. SHEPARD:** I understand that, Your, Honor. And we're very happy to proceed in front of her. She -- without getting into it, you know, she has ordered a whole bunch of production, so I don't have any problem continuing to proceed before her. I don't currently have anything to appeal to you about. The issue is just the pace at which that proceeds.

**THE COURT:** And that pace issue is also an issue for Judge Beeler.

**MR. SHEPARD:** I hear you loud and clear about that. But let's assume we got through all the discovery issues --

**THE COURT:** Okay.

**MR. SHEPARD:** -- there's still a ton of things to do between whenever that is finished -- and I predict that's not

1  all that close -- but whenever that is finished, to when we're
2  going to have a trial, there are a ton of things to do.
3       There are Rule 16 requests.  There are experts.  There are
4  motions.  There is reviewing this million documents that we've
5  received as a result of our discovery requests.  Not to count
6  the near million documents that we already had before our
7  discovery requests.  It is just a -- an incredible volume of
8  material to try to work through.
9       There will be motions.  And, you know, one of it -- one of
10 the motions will rate -- will relate to misconduct and
11 spoliation, about the destruction of things that has occurred
12 since we requested it, and before we got any of it.
13      So there are -- there's a -- even leaving all the
14 discovery aside, there's a ton of stuff.
15         **THE COURT:**  Mr. Shepard, you and I have been at this
16 for a long time, and that argument is one that you could make
17 to say:  We should never go to trial.  We should never have a
18 trial date.
19      We're always going to have these issues.  Having a trial
20 date tends to focus attention.  I'm not so naive to say that
21 there's no scenario in which that trial date wouldn't have to
22 move; I'm not going to say that because I know it might have to
23 move.  But it's got to -- it has a powerful quality to it
24 because, frankly, at a certainly point, it can't be a
25 generalized "We've got so much left to do we can't" -- you have

1   to -- in order to move it, you've got to be pretty specific
2   about what exactly needs to be done, and that has a beneficial
3   effect.
4       And I -- we have reached -- I have kicked it along on the
5   same arguments I'm hearing today, when -- this case is now
6   three years old.  We could -- it could be another three years
7   if I simply accept this proposition that there's plenty to do;
8   I know there is, but we've got to now -- and it puts -- it puts
9   the heat on the Government as well.  So I hear you.
10      Give me a trial date in between January and March of 2024.
11  That is six -- more than six months away.  You know?  That's a
12  huge amount of time.  So that's what's going to happen.
13          **MR. SHEPARD:**  Understood, Your Honor.
14          **THE COURT:**  Good.
15          **MR. SHEPARD:**  Let me assure you, the case has our
16  complete attention, and has had our complete attention for
17  quite some time.
18          **THE COURT:**  In no way do I suggest -- and I started
19  out with this, because I have great respect for you and your
20  team, Mr. Shepard.  You are a first-class counsel, and I can
21  testify to that because you've been in my court many times.  I
22  have no doubt that you are devoting, you know, extra attention
23  to this, beyond what you could get out in the marketplace,
24  because I know what fine lawyers you all are.
25          And I in no way mean to suggest that I think you're

1   dragging your feet; I know you're not.  And I know you mean it
2   when you think there's a mountain to climb.  But I still think
3   there is a value in our trying to crystallize this with a trial
4   date, because it's going to have to happen at some point here.
5   And, you know, this is now one of my oldest criminal cases.  So
6   it's got to go sometime.
7        Okay.  So we'll set an October further case management
8   status date and, in two weeks, you're going to give me some
9   dates in the -- in the first quarter of 2024, when counsel
10  could try the case, and we'll go from there.
11          **MR. WEINGARTEN:**  Your Honor?
12          **THE COURT:**  Yes.
13          **MR. WEINGARTEN:**  Are there any periods in the first
14  quarter of 2004 when the Court is not available?
15          **THE COURT:**  Well, that's why I want you to give me
16  three alternatives.  I need to take a look.  I don't know.
17  Between now and two weeks from now -- it's a dynamic process;
18  the schedule keeps changing.  So if I answered your question
19  now, it probably would be out of the date by the time you gave
20  me the dates.
21       So, Ms. Lew, October?
22          **THE CLERK:**  17th.
23          **THE COURT:**  October 17th?
24          **THE CLERK:**  2:30, by Zoom?
25          **THE COURT:**  Yes.

1    **MR. HIGHSMITH:** Thank you, Your Honor.

2    And we'll prepare a stipulation and proposed order to

3    exclude time until that date.

4    **THE COURT:** Okay. All right. Very good. See you

5    later.

6    **MR. SHEPARD:** Thank you, Your Honor.

7    **MR. HIGHSMITH:** Thank you, Your Honor.

8    (Proceedings adjourned at 2:50 p.m.)

9    ---o0o---

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Monday, June 12, 2023

_____
Ruth Levine Ekhaus, RMR, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court