MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221F
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No.: 3:20-CR-00249-RS-01 (LB)<br><br>**DECLARATION OF KERRIE C. DENT IN SUPPORT OF DEFENDANT ANDRADE'S MOTION TO COMPEL PRODUCTION OF ABRAMOFF'S PHONE**<br><br>Date:   July 13, 2023<br>Time:   10:30 a.m.<br>Judge:  Hon. Laurel S. Beeler |

1

## DECLARATION OF KERRIE C. DENT

Kerrie C. Dent, counsel for Defendant Marcus Andrade, states as follows:

1. I am one of the lawyers representing Defendant Marcus Andrade in the above-captioned matter. I file this declaration in support of Mr. Andrade's Motion to Compel Production of Abramoff's Phone.

2. I have personal knowledge of the discovery disputes and related correspondence between the government and defense counsel and, if called as a witness in this matter, could competently testify to the matters stated in this Declaration.

3. King & Spalding sent a discovery letter to the government on March 3, 2022, requesting the personal devices collected from Mr. Andrade's alleged co-schemer Jack Abramoff, including his iPhone ("Abramoff phone"). The government made no objections to the request for Abramoff's phone. In fact, the government produced an image of the Abramoff phone in May 2022 and, because of a technical issue, produced the phone again in June 2022.

4. In early December 2022, my colleagues and I determined that the version of the Abramoff phone produced to us did not include all of the relevant communications from Abramoff's phone that the government had in its possession. The government had produced an FBI 302 report in which the case agents set forth a "partial summary" of communications on Abramoff's phone. FBI-302-005158 ("FBI report"). Some of the communications from the phone that were summarized by the case agents in the FBI report were not included on the version of Abramoff's phone that was produced to Mr. Andrade. For example, the case agents referred to 114 communications between Abramoff and Alexander Levin on Levin's Ukrainian phone number, none of which were included in the version of the phone produced to Mr. Andrade. The Levin messages described in the FBI report included, but were not limited to: (1) a $750,000 invoice for cryptocurrency consulting that Abramoff sent to Levin from Landfair Capital Consulting and (2) a message from Abramoff to Levin sending him a link to a promotional reel for a to-be-produced reality TV show featuring AML Bitcoin employees and starring Mr. Andrade and Abramoff. These communications were not included in the version of the Abramoff phone produced to Mr. Andrade.

5. A considerable amount of the evidence that was missing from the version of the phone produced to Mr. Andrade consists of communications between Abramoff and Alexander Levin. Yet, the court found in its April 7 discovery order that Mr. Andrade had sufficiently demonstrated that Levin materials are material to his defense (Dkt. #165 at 11). The court summarized the relevance of Levin as follows:

> [Levin] "is connected to this scheming by Abramoff, Butina and Erickson" because he participated "in the development and funding of a television show [referenced in the documents found in Ms. Butina's house] controlled by Abramoff, starring Abramoff and Mr. Andrade, and produced by Blockchain Entertainment and Ignition Creatives." Evidence on Mr. Abramoff's cell phone from June 2018 shows that he discussed consulting on a cryptocurrency project with Mr. Levin and sent him a proposal, a contract, and a $750,000 invoice from Landfair Consulting. In July, Mr. Abramoff "re-wrote" some of the consulting contracts and sent a term sheet that referenced a TV show based on a Ukrainian show that would be produced by Blockchain Entertainment. When the FBI asked him about it in February 2020, Mr. Abramoff said that there was no cryptocurrency-consulting project and the invoice may have been related to the TV project or was a combined invoice for the show and the "US PR" effort. He "could not explain why the invoice was labeled as 'cryptocurrency consulting.'" Mr. Abramoff "did have conversations with Levin about cryptocurrency." Mr. Andrade cites discovery suggesting that (1) Mr. Abramoff sent information to Mr. Levin about the television show about AML Bitcoin, (2) Mr. Levin is the link to raising money for the show, and (3) he received the promo reel.

April 7 Order, Dkt. #165 at 7-8 (internal citations omitted). Some of the evidence the court found to constitute a sufficient showing that Levin is material to Mr. Andrade's defense was not included on the version of the phone produced to Mr. Andrade.

6. On December 9, 2022, I emailed AUSAs Weingarten and Dawson to inform them that the group chat communications between Abramoff and Levin were missing from the version of the Abramoff phone the government produced.

7. On December 13, 2022, I emailed further with AUSA Dawson, identifying specific messages that were described by the case agents in the FBI report, but were not included in the version of the Abramoff phone the government produced to Mr. Andrade. AUSA Dawson agreed to look into the issue.

8. On January 13, 2023, the government produced approximately 114 messages between Abramoff and Levin's Ukrainian phone number that were referenced in the FBI report but that had not been included in the version of the Abramoff phone produced to Mr. Andrade. However, we have seen evidence that Abramoff sometimes used code names, making it difficult to determine whether all of his messages with Levin have been produced.

9. Furthermore, based on the FBI report, we know that the Levin materials were not the only material communications missing from the version of the phone produced to Mr. Andrade. For example, the phone image produced to Mr. Andrade did not include certain messages between Abramoff and two other miscreants, [GB] and [MK], even though those messages are referenced in the FBI report. [GB] and [MK], like Levin, were involved in purported cryptocurrency consulting to be paid for through Landfair Capital. As with Levin, it is unclear whether Abramoff was providing real cryptocurrency consulting to them or using the ruse of cryptocurrency consulting to hide his participation in other wrongful conduct.[1] In one of the missing [GB] emails related to digital currency consulting work to be paid for through Landfair Capital, Abramoff wrote the following to his fellow miscreant [MK], about [GB]: "I spoke yesterday with GB. Our LA company will do a consultancy regarding digital currencies, providing investment guidance and opportunities. The consulting fee will be $1.5 million. . . . You will receive a W9 from the LA company – Landfair Capital Consulting, Inc. – and have a business expense for the consulting effort. Landfair will provide periodic written reports as well." This email, included in the FBI report summarizing Abramoff's emails, is missing from the version of the phone produced to us.

10. Based on our review of other evidence produced by the government -- not just the FBI report -- we believe there are additional communications between Abramoff and fellow miscreants on Abramoff's complete phone that were not included on the version of the phone

---

[1] *See* Declaration of Kerrie C. Dent in Support of Andrade's Motion to Compel Discovery, Dkt. #120-1 (Nov. 28, 2022), ¶¶ 37-39, filed under seal and *ex parte* to avoid disclosing our trial strategy to the government. *See, e.g.*, *United States v. Sleugh*, 318 F.R.D. 370, 374-375 (N.D. Cal. 2016) (holding that defendant's constitutional right to court process without revealing trial strategy overrides public's right of access to *ex parte* applications); *United States v. Solano*, No. 3:21-CR-00263-VC (N.D. Cal. 2021) (permitting criminal defendant to file declaration in support of contested discovery motion under seal to prevent disclosure of defendant's trial strategy).

produced to Mr. Andrade. The additional individuals were engaged in precisely the sort of activities that the court has ruled are material to Mr. Andrade's defense. Specifically, -- like Levin -- they were engaged in communications with Abramoff about "the larger context of the business model for cryptocurrency," and they were "working against Mr. Andrade" with Abramoff in ways that "affect[] Mr. Andrade's responsibility and scienter." April 7 Order, Dkt. #165 at 12. Such individuals and their nefarious work with Abramoff relating to Mr. Andrade, his company NAC Foundation, and AML Bitcoin, are described in the Declaration of Kerrie C. Dent in Support of Andrade's Motion to Compel Discovery, Dkt. #120-1 (Nov. 28, 2022), and include: a lobbyist [NV] -- ¶12 fn 8, ¶18 fn 22, ¶20, and ¶24; a businessman [RN] -- ¶16 fn 18, ¶22 fn 28; and politician [DR] -- ¶16 fn 20 and ¶20 fn 27. Mr. Andrade knows of others who are similar to Butina, Erickson, Levin, [NV], [RN], and [DR], and whose communications with Abramoff are on Abramoff's phone --- not to mention the likelihood of still others not yet known to Mr. Andrade.

11. During a meet-and-confer call on February 28, 2023, my co-counsel Cindy Diamond and I asked the government about additional messages missing from the version of the Abramoff phone that the government produced. Several days later, on March 6, AUSA Dawson provided an excellent solution to the missing messages problem when he emailed me that the government was "preparing to produce a complete version of Jack Abramoff's phone, with only potentially privileged materials filtered out." He added: "As I mentioned on the phone last week, while our search warrant authority expired long ago, we have obtained consent to access the rest of the phone, and we will produce it to you." It is not clear why the government did not obtain consent to access the full Abramoff phone and produce it as Rule 16 material years ago.[2]

12. On March 8, 2023, Ms. Diamond and I had a meet-and-confer call with AUSAs Dawson and Highsmith. During that call, AUSA Dawson confirmed that he would be producing

---

[2] The government imaged the phone in September 2018. The recording of the government's search of Abramoff's home at that time reveals that the government took an image of his phone during the search and gave his phone back to him before they left his home. Recording ID-39.

the full version of Abramoff's phone.  When I asked him whether he could tell me the likely timing of the government's complete production of Abramoff's phone, he responded that the Cellebrite files were "sitting on his desk" and the production likely would be made in the next day or so. While agreeing to produce the Abramoff phone, the prosecutors said they would not produce Levin's phone in part because any communications with Levin and Abramoff would be on the complete Abramoff phone they had now agreed to produce.  Although the court ultimately ordered the government to produce the Levin phone, we have received only four spreadsheets listing messages from the phone.

13. After the March 8 meet-and-confer, the government informed us in an email later that day that the material of one law firm and two lawyers -- Arent Fox, Peter Zeidenberg, and Robert Abramoff -- had been removed from the Abramoff phone as "potentially privileged."  It was in that context that the court was asked to rule on whether the communications with Robert Abramoff should be produced – a narrow issue based on the understanding that the rest of the image (except for the two other attorney-client privilege claims) would soon be produced.  The court ruled on that issue in its April 7 Order, mandating that the government produce five categories of documents, including Robert Abramoff's communications on his brother's phone. Dkt. #165 at 10.  The complete Abramoff phone was not part of the discovery dispute because the government had agreed, orally and in writing, to produce it.

14. The government also made representations to the court that it would be producing the complete Abramoff phone to Mr. Andrade.  In a March 22, 2023, supplemental opposition to Mr. Andrade's motion to compel, the government again used its promise of producing a complete extraction of Abramoff's phone as a reason that it should not be required to produce the phones of other individuals (all of whom have since been ruled material to Mr. Andrade's defense). Dkt #165 at 11, 13.  The government wrote in its supplemental opposition that "in the course of meet-and-confer negotiations, *the Government obtained Abramoff's consent to produce a complete extraction of his mobile device*, with only potentially privileged materials removed.  Defendant *therefore does not need devices associated with Paul Erickson, Maria Butina, or Alexander Levin*

in order to gain insight into Abramoff's communications. Defendant will have the same information directly from Abramoff's devices." Dkt. #158 at 3 (emphasis added).

15. More than two months after the government told us – and the court – that it would produce the complete Abramoff phone, we still had not received it. In the meantime, on April 7, the court had ruled in Mr. Andrade's favor on the materiality of Levin, Butina, and Erickson. In a letter dated May 10, 2023, we asked the government to either "produce the complete Cellebrite files of Abramoff's phone immediately, or explain why [it was] not able to do so." We also wrote that we were "available to meet and confer" about the issue if they thought such a meeting would be helpful. The government did not respond to my letter.

16. During a court-ordered meet-and-confer on May 24, 2023, AUSA Highsmith informed us for the first time that the government was not going to produce the Abramoff phone. We reminded him that the government had agreed to produce the complete Abramoff phone on March 6, and that the government had confirmed its intent to produce the phone in a meet-and-confer on March 8. AUSA Highsmith was copied on the March 6 email, was present at the March 8 meet-and-confer, and is on the signature line of the March 22 brief. Even though the government had more than once used the promise of producing Abramoff's complete phone as a reason not to produce the phones of Levin, Butina, and Erickson, AUSA Highsmith insisted that the government will not produce Abramoff's phone.

17. On May 31, 2023, I emailed the prosecutors and asked that they "please let us know as soon as possible whether it would be productive to meet and confer any further on the issue [of the government reversing course and refusing to produce the Abramoff phone]." The government did not respond to my email.

18. The challenge of preparing Mr. Andrade's defense without a complete version of his alleged co-schemer's phone is exacerbated by the fact that the government has not produced the phones of Erickson and Levin, both of which the court mandated the government produce in its April 7 discovery order. Dkt. #165 at 13.

a. Erickson's phone: The court ruled on April 7, 2023, that "[Erickson's phone] is material: Mr. Andrade has established a connection between Mr. Abramoff and Mr. Erickson that relates to this case. . . . [I[f the government has the Erickson extractions or information about them . . . it must produce them." Dkt. #165 at 12.

Mr. Andrade requested Erickson's statements and documents relating to him on March 7, 2022, and the Erickson phone on July 15, 2022; the government informed us on January 25, 2023 that the phone had been deleted when the case was closed in March 2022 as part of standard FBI procedure;" the government informed us on April 24, 2023 that it was now not sure whether the image of Erickson's phone had been destroyed or not;[3] and then the government reported in a May 26, 2023, status report that it had produced the Erickson phone back on April 12 when it produced an iPhone7 from a hard drive of Butina devices.[4] Dkt. #178 at 7.

The iPhone7 produced by the government may have been owned by Erickson, but communications on the phone confirm that it was used by Butina, which likely is why it was seized from her and produced on a hard drive with other materials seized from her. In fact, the government specifically described the hard drive as containing the seized materials *from Butina's devices*.[5] Clearly, the phone on the hard drive of Butina's devices is not the phone that Erickson used, and that the government thought might have been destroyed. The phone does not include Erickson's communications with Abramoff (or other individuals) in the summer of 2018, a crucial time period for Mr. Andrade's defense.

b. Levin's phone: The court ruled on April 7 that "Mr. Andrade has articulated a sufficient explanation . . . about why the [Levin phone] is material. The court orders its production. There is no reason for an AEO designation." Dkt. #165 at 11. More than six weeks after the court ordered the government to produce the Levin phone, on May 24, 2023, the government produced four spreadsheets of messages. The government most recently has taken the position, in a June 13 meet-and-confer, that the four spreadsheets represent

---

[3] On April 24, 2023, during a meet-and-confer, I asked the government about the status of the Erickson device because the government had recently reversed course and said that maybe the phone had *not* been destroyed. I explained that we are "in the dark" about whether the phone was destroyed and would like to see documents relating to the destruction. The government declined to tell us whether the phone image exists. We still have not been given a clear answer as to whether an image of the Erickson phone (the one he used and that the government thought may have been destroyed) actually exists.

[4] See Joint Status Report, Dkt. #178 (May 26, 2023) at 7.

[5] In its January 23, 2023 email from the government to defense counsel, the government explains that Butina's devices were destroyed after she left the United States upon completion of her sentence and that "the *seized materials from her devices* (meaning materials that were *seized pursuant to the terms of the search warrant in that case*) still exist on a hard drive."

8

DECL. OF KERRIE C. DENT ISO MOTION TO COMPEL          CASE NO. 3:20-CR-00249-RS-LB
PRODUCTION OF ABRAMOFF'S PHONE

>the only material they have ever had access to from Levin's phone and that they have no access to Levin's devices. That position is difficult to reconcile with the government's prior assertion in a February 9, 2023 email that it "just received word that agents ran search terms . . . ***through the seized devices from Levin****…*"

In the end, Mr. Andrade has not received the complete phone of Abramoff, or an image of Erickson's phone, or an image of Levin's phone.

19. After three months of silence and failure to follow through on its agreement to produce the complete phone of Mr. Andrade's co-schemer, the government sent me an email on June 9, 2023 raising several explanations for why they will not produce a full image of Abramoff's phone. The government's four reasons for not producing the phone are set forth below:

> a) "[A]fter Mr. Dawson acceded to your request to produce the unminimized cell phone image, it came to our attention that the cell phone contained purely personal material irrelevant to the case."
>
> b) Producing Abramoff's phone "would require that we produce withheld privileged material involving Arent Fox LLP and attorney Peter Zeidenberg."
>
> c) "[T]he government does not understand why you continue to request irrelevant material from the Jack Abramoff cell phone."
>
> d) "[W]e produced [the Levin-Abramoff WhatsApp communications] . . . in January of this year."

We explain in our motion to compel that each of the government's four excuses is meritless.

20. The incomplete version of the Abramoff phone produced in May 2022 has been a crucial piece of evidence for us as we have been preparing Mr. Andrade's defense, especially because it includes exculpatory evidence and provides a roadmap of the wrongdoing in which Abramoff and his fellow miscreants engaged with Mr. Andrade's company, his cryptocurrency, and his patents. Obtaining the complete Abramoff phone would afford Mr. Andrade the opportunity to identify additional potentially exculpatory evidence and would help Mr. Andrade prepare his defense strategy.

///

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 23, 2023, in Washington, D.C.

*/s/ Kerrie C. Dent*
Kerrie C. Dent