MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 3:20-cr-00249-RS-LBx<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S STATUS REPORT ON THE BREADTH OF CONTESTED ISSUES, AND THE VOLUME AND TIMING OF DISCOVERY AND DOCUMENT PRODUCTION**<br><br>Judge: Hon. Richard Seeborg<br>Status Conference:  November 14, 2023 |

## TABLE OF CONTENTS

I.    THE BREADTH OF THE ISSUES TO BE TRIED ................................................... 1

II.   THE STATUS OF DISCOVERY RELATING TO THESE ISSUES ........................ 4

    1.   The slow process of obtaining evidence ........................................................... 4

        A.   Abramoff phone ................................................................................... 5

        B.   Abramoff emails ................................................................................... 6

        C.   Other instances ..................................................................................... 6

            (1)   Erickson Phone ......................................................................... 7

            (2)   Affidavit in Support of the Butina Search Warrant ................. 7

        D.   The ongoing saga of Levin's phone ..................................................... 8

    2.   As in any complex case, production of discovery has resulted in follow-up requests, and the need for additional fact gathering, and continue to do so. ............................................................................................ 9

    3.   Many discovery disputes remain, including several from the November 2022 motion to compel. ............................................................... 11

DEFENDANT MARCUS ANDRADE'S
STATUS REPORT ON DISCOVERY                                            3:20-CR-00249-RS

In anticipation of the status conference on Tuesday, November 14, 2023, defendant Marcus Andrade submits this Status Report to update the Court on the the breadth of the issues in this case, and on the status of his review of discovery relating to those issues. This Report does not argue any discovery issue (some of which are pending before Judge Beeler); instead it provides the Court with a description of the breadth of the issues to be tried, with data on the volume of discovery produced relating to those issues and the timing of that production, and with the extent to which Mr. Andrade has been able to review that data.

I.   **THE BREADTH OF THE ISSUES TO BE TRIED**

The two counts in the indictment contain an unexpectedly broad and diverse set of issues for trial. While Count One charges a single wire fraud, the allegations, combined with inputs such as the discovery produced to date (including search warrant affidavits describing probable cause) and a reverse proffer reveal that the government is pursuing at least six different related fraud allegations:

- Did Mr. Andrade knowingly participate in a scheme to overstate the development of the technology of his business -- a question that includes several different elements of technology, on which work was performed in locations around the world?
- Did Mr. Andrade knowingly participate in a scheme to engage in market manipulation to support the price of tokens or coins?
- Did Mr. Andrade knowingly participate in a scheme to deceive anyone about the chances of reaching a business agreement with the Panama Canal?
- Did Mr. Andrade knowingly participate in a scheme to deceive anyone about the chances of reaching a business agreement with the Port of San Francisco?
- Did Mr. Andrade knowingly participate in a scheme to engage in a "false rejection" campaign relating to a Super Bowl advertisement for AML Bitcoin?
- Did Mr. Andrade knowingly participate in a scheme to engage in other fraudulent statements, such as in presentations made in Poland and at the Chicago-Kent Law School?

In addition, the government has referenced but not yet given notice of several other uncharged

frauds by Mr. Andrade. *See* Declaration of Kerrie C. Dent in Support of Defendant Marcus Andrade's Status Report ("Dent Decl.") at ¶3.

Count Two charges money laundering, adding into the case issues relating to a set of business and personal bank accounts and Mr. Andrade's intent in transferring funds.

Before filing these charges, the government conducted a lengthy and elaborate investigation into Mr. Andrade and multiple others who engaged with Mr. Andrade or with his alleged co-schemers on matters impacting the business of Mr. Andrade's companies. This investigation included the execution of nearly 100 grand jury subpoenas, dozens of search warrants (including three on properties of Mr. Andrade), over 140 witness interviews, and at least 50 efforts to gain information through contacts with Mr. Andrade and others by persons working undercover for the government, some of which were recorded and some not. As detailed below, the investigation also has included the collection of nearly 4 terabytes of data (which translates to an estimated 330 million pages), and more than 250 recordings, with requests for production and Motions to Compel still in progress. Dent Decl. at ¶4.

Of course, mastering the information supporting the government's allegations is only a part of preparing the defense. While Mr. Andrade will not detail in this public filing all of the threads of his potential defense and the data it is gathering in support of those threads, previous public filings (in Motions to Compel granted by Judge Beeler) have revealed one such thread, which focuses on the conduct of Mr. Andrade's alleged co-conspirator, Jack Abramoff. The Court is familiar with Mr. Abramoff, a notorious fraudster who, in addition to his guilty plea in this Court and other wrongdoing, was convicted and sentenced for conspiracy, fraud (to the tune of tens of millions of dollars), and tax evasion stemming primarily from convincing Native American tribes to pay for him to lobby in favor of permission to develop casino gambling on their reservations, and to pay for him to lobby against opposition to that request – opposition that Abramoff was performing covertly himself. Mr. Abramoff also was convicted of defrauding lenders in the purchase of a fleet of gambling ships – including submitting bogus documents suggesting that he and his co-conspirator had put down $23 million of their own money when

2

they had not in fact done so, and thereby taking over someone else's business.  Dent Decl. at ¶5.

In this Court, Mr. Andrade expects to show that Mr. Abramoff continued this trickery by orchestrating the wrongdoing charged in the indictment and using Mr. Andrade's business for Mr. Abramoff's own purposes and behind Mr. Andrade's back, including by engaging in money laundering, some with people in foreign countries.[1]  Some defense efforts have been devoted to uncovering, and putting Mr. Andrade in a position to demonstrate, how and why Mr. Abramoff engaged in these activities.  These efforts by the defense, which are ongoing, led to the production of a vast amount of data (some of which are still being reviewed), including AML Bitcoin documents found in the home of Russian spy Maria Butina that revealed one of the ways that Abramoff was working adversely to Mr. Andrade's business.  Mr. Andrade only learned of the existence of those documents by listening to a recording of the agents discussing them as they searched Abramoff's home – the 302s did not mention finding documents relating to AML Bitcoin.  Dent Decl. at ¶6.  Even after the defense pointed the government to the recording and the agents' discussion of the documents, the government fought against producing the material.  The time from Mr. Andrade's request until the government's production was ten months.[2]  Dent Decl. at ¶7.

Needless to say, this defense thread is one of many, some of which require considerable fact gathering, including in foreign countries.  Other defense themes not described here may use experts. Still others involve potential witnesses whose whereabouts are unknown, whose communications are made using aliases, or who communicate in code.  This is not a run-of-the-mill fraud case; it is even farther from a run-of-the-mill CJA fraud case, and it requires an extraordinary amount of preparation above and beyond the massive amounts of discovery.

///

---

[1] David Mata, who is under indictment on related charges, appears to be another cooperating witness who was working behind Mr. Andrade's back – which also requires investigation.

[2] These were not the only Butina-related documents that were produced belatedly by the government.  Mr. Andrade also sought Ms. Butina's devices, to which the government objected.  Judge Beeler ordered their production on April 7, 2023.  The government produced over 350 GB, nine months after Mr. Andrade requested it.  It is still being reviewed.

...
...
...

## II. THE STATUS OF DISCOVERY RELATING TO THESE ISSUES

### 1. The slow process of obtaining evidence

The Court may appreciate the breadth of the issues to be tried, and the volume of discovery that needs to be ingested, but wonder: wasn't this case indicted over three years ago, and isn't that enough time to review even this large volume of data, and even with only CJA funding? Three years would have been more than enough, but the answer to this question begins with the fact that the vast majority of the discovery was not produced three years ago, but rather has been produced in the last year in response to discovery requests, often only after defense Motions to Compel. Most of the nearly 4 TB of data – which translates to roughly 330 million pages – was produced by the government after November 28, 2022, when Mr. Andrade's current counsel filed their second discovery motion.[3]

Merely reciting the massive volume of discovery does not begin to reflect the challenges of analyzing and assessing it. Most of the discovery has been produced without individual Bates-numbers and in a non-reviewable format. According to Lineal, the company that services the King & Spalding database, the majority of documents currently on the database are not individually Bates-numbered. This manner of production makes even locating material very challenging and time consuming. Dent Decl. at ¶8.

Adding to the challenges created by the manner in which the productions have been made, defense review of this mountain of discovery has been set back by delays between Mr. Andrade's requests and the government's production, including several instances in which the government produced requested materials only after a motion to compel was filed (always after meet-and-confers), or after Judge Beeler ordered the production over the government's objection. In addition to the mass of Butina materials described in Part I above, other examples of such delay include:[4]

---

[3] Since the last status conference before this Court, additional productions have been made by the government on July 17, September 6, and September 20, with more requests pending adjudication.

[4] These delays in production that were not remedied until after Mr. Andrade's second motion to compel in November of last year were a repeat of earlier delays. The first motion to compel brought by Mr. Andrade's current counsel, filed July 15, 2022, addressed 31,000 pages worth of material seized from Mr. Andrade (including material

4

A. **Abramoff phone**. The government seized Abramoff's phone in a search during its investigation, but did not produce it in its initial discovery. In response to a request for the phone from Mr. Andrade on March 3, 2022, the government made a production in May 2022, but the full phone was not produced until July 27, 2023, after Judge Beeler granted a Motion to Compel. Although purportedly a complete production, the government's May 2022 production of the phone turned out to be missing many exculpatory and material communications, which Mr. Andrade's counsel learned by reviewing a summary of the communications of Abramoff's phone prepared by the FBI case agents. Dent Decl. at ¶9. The missing messages included more than 100 between Abramoff and Alexander Levin, a political activist who retained Abramoff to engage in lobbying and whose communications Judge Beeler has ruled are material to Mr. Andrade's defense. (April 7, 2023 Discovery Order, Dkt. #165). Mr. Andrade's lawyers discovered and explained the issue of the missing communications to the government in December 2022. After some back and forth by email and in meet-and-confers, in January 2023, the government produced some of the messages Mr. Andrade established were missing. Dent Decl. at ¶10. When Mr. Andrade's lawyers informed the government that there were additional messages summarized in the FBI 302s that were not on the image of Abramoff's phone produced to the defense, the government promised the defense twice to produce the rest of the phone – including a written statement on March 6, 2023 and an oral statement on March 8, 2023 that the production would likely be made in the next day or so -- and two weeks later it assured Judge Beeler it would produce the entire phone. But more than two months after the government made those

---

from at least one device) that the government held for taint team review for years – even though there was no basis to withhold those materials from Mr. Andrade, who owned the privilege that was supposedly being protected. And an extraction report for one device shows that the taint team review for that material was completed by August 25, 2020 – close to two years before production was made.

5

DEFENDANT MARCUS ANDRADE'S                                        3:20-CR-00249-RS
STATUS REPORT ON DISCOVERY

promises, it still had not produced the phone and instead announced during a meet-and-confer on May 24, 2023, that it was *not* going to produce the Abramoff phone, saying that it was not "relevant," and making a new argument about Mr. Abramoff's privacy. Dent Decl. at ¶11.  The government requested that the Court order an addendum "to protect purely personal, private, sensitive, and irrelevant information" on Abramoff's phone.  Mr. Andrade filed a Motion to Compel and Judge Beeler ordered production of the phone this summer without any addendum to the existing protective order.  After that, King & Spalding's discovery center worked for weeks on de-duplication, threading, and other methods of reducing the number of files to be reviewed.  Over a year and a half after the phone was first requested, Mr. Andrade is still reviewing the 25GB of data.  Dent Decl. at ¶12.

B. **Abramoff emails.**  Following a series of discovery requests relating to Jack Abramoff, the government reported in August 2022 that it had discovered what it described as 55GB of Jack Abramoff emails.  Despite promising in August to produce those 55GB promptly, it did not produce the data until December 8, 2022.  When it did so, it included the data under three Bates number as part of a much larger production.  Not having found the emails, the defense said it did not have them; even after the government explained that the defense was mistaken in saying that it did not have the emails, it took the assistance of one of the firm's outside discovery vendors to locate the data. Dent Decl. at ¶13.

C. **Other instances**.  In other instances, the government has consumed a lot of the Court and defense time by objecting (unsuccessfully) to the materiality of items requested by the defense, only to state after its objection was overruled that it had no such documents, or only for Mr. Andrade to learn that the government was fighting the production of the material that was already public in another form.  Dent Decl. at ¶14.

**(1)** **Erickson Phone.** As an example of the former, Judge Beeler ordered the government to produce the phone of Paul Erickson, another Abramoff associate who had a relationship with Maria Butina and who made the handwritten notes that reflect how Abramoff and others were seeking to undermine Mr. Andrade's business plan. While Mr. Andrade's motion was pending, the government gave contradictory statements about the phone – one that it was destroyed in 2022 and the other that they did not know if it existed or had been destroyed. In any event, although Judge Beeler ordered production of Erickson's phone, the phone Erickson apparently used was never produced. Instead, the government produced a phone that Butina often used and that was owned by Erickson. Dent Decl. at ¶15.

**(2)** **Affidavit in Support of the Butina Search Warrant**. As an example of the latter, Judge Beeler ordered the government to produce the Butina search warrant and affidavit on April 7, 2023. (Dkt. #165). More than two months later, on June 13, the government informed Mr. Andrade's counsel that the affidavit is under seal and that the AUSA in D.C. requested an addendum to the existing protective order before he would disclose the search warrant. In the course of negotiating the terms of the addendum, the government acknowledged that it wanted the addendum to also apply to Abramoff's phone (that it still had not produced even though four months had passed since it promised to produce it). Judge Beeler granted Mr. Andrade's motion to compel Abramoff's phone without an addendum to the protective order, and the parties filed a stipulation for an addendum to the protective order that applied only to the Butina search warrant. When the warrant was finally produced on September 1, 2023, five months after the government had been ordered to produce it, it turned out

7

that the warrant was virtually identical to the arrest warrant, which has been public all along. Dent Decl. at ¶16.

D. **<u>The ongoing saga of Levin's phone</u>**. The government seized Mr. Levin's phone (among other things) in a search. Mr. Andrade requested production of Mr. Levin's phone (among other things) on July 15, 2022. After the government refused, Mr. Andrade moved to compel production of the phone and other devices. In two rounds of briefings over four plus months, followed by a lengthy argument, the government responded that Mr. Levin's phone was not material to the preparation of the defense. Judge Beeler disagreed with the government and expressly ordered production of the phone on April 7, 2023. Despite the Court's order, the government did not respond for six weeks, until May 25, when it produced not the images of the devices as ordered but four spreadsheets reflecting data from the phone; it was not until May 25, 2023, six months after Mr. Andrade's motion was filed and more than six weeks after Judge Beeler ordered the phone produced, that the government contended that under *United States v. Balwani*, 18-cr-258 EJD, Order, at 9 (N.D. Cal. Apr. 8, 2022) (Dkt. #1393), it could not produce some of the phone. Dent Decl. at ¶17. As Judge Beeler has since noted, "the government did not raise these objections previously." ECF #235 at 1:22. The government's belated objection to Judge Beeler's Order was presented by Mr. Andrade to Judge Beeler, who asked the government to make an inquiry about the phone to the Southern District of New York, which seized it from Mr. Levin. It is not yet known whether this inquiry (or any subsequent orders by Judge Beeler) will allow Mr. Andrade access to the phone or other devices as ordered by Judge Beeler. If it does, it will mean that Mr. Andrade's access to the image of the iphone alone – and its likely large volume of GBs -- will have been delayed by approximately one year. If it does not, Mr. Andrade will bring the issue to this Court. At a minimum, the

government will have wasted substantial time that could have been devoted to the other tasks outlined here by failing to make an objection until after two rounds of briefing, an oral argument, and by waiting to do so until more than six weeks after it was ordered to make the production. Dent Decl. at ¶18.

Although hundreds of thousands of pages have been reviewed, for remaining parts of the production, experts in King & Spalding's discovery center are still working on reducing the number of documents for attorney review through threading, deduplicating, and other methods. Mr. Andrade's counsel have one of the firm's discovery lawyers working full-time on this case, two of the more senior discovery center lawyers working regularly on the case, and document reviewers assisting with review of the volumes of material as their schedules permit. Counsel anticipates that with this level of staffing, review will not be complete before the scheduled trial date, and could be delayed further depending on the volume of additional discovery. Dent Decl. at ¶19.

> 2. *As in any complex case, production of discovery has resulted in follow-up requests, and the need for additional fact gathering, and continue to do so.*

Needless to say, discovery often leads to additional follow up. As the defense works through the estimated 330 million pages of documents, it has identified omissions from what the government says it has produced, as well as additional topics on which it believes the government should have provided discovery. To conserve CJA resources, it had been Mr. Andrade's original intention to complete his review of discovery before going full bore into witness interviews – in order to minimize having to do multiple interviews of the same witness based on later-produced information – but with the slow pace of discovery and the trial date set by the Court at the last status, Mr. Andrade has deviated from that plan. Dent Decl. at ¶20.

Examples of this sort of follow-up in which Mr. Andrade has recently been engaged include:

- Because the prosecutors and the SEC worked together on the investigation the led to the charges in this case, Mr. Andrade asked for the SEC's file. The government said it

complied with that request, but it turned out that the government's production included only documents Mr. Andrade himself had produced to the SEC. The government has asserted that it has produced all the documents in its possession, and the issue of its unwillingness to obtain additional materials from the SEC when the two agencies have been working together in the investigation is being presented to Judge Beeler. Dent Decl. at ¶21.

- It appears from the production that Turnberry Solutions, LLC[5] produced documents to the grand jury through its attorneys at Jones Day, and the pages were Bates-numbered TSLLC_0000001-TSLLC_0001867. The government did not produce those pages in sequential fashion; rather, they were scattered in no identifiably logical way.[6] Mr. Andrade engaged in the task of sorting through the 1867 pages, determined that the production was incomplete, and identified for the government the Turnberry Bates number for each of the approximately 1000 documents not included in the government's production. The government re-produced the Turnberry Solutions grand jury documents on September 20, 2023, but its production suffered from the same problem: more than 700 pages remain un-produced (TSLLC_0001143 to TSLLC_0001866). Mr. Andrade's counsel informed the government of the 700 missing pages by email dated September 26, but the government has not responded and the production remains incomplete. Dent Decl. at ¶22.

---

[5] Turnberry Solutions, LLC is a lobbying/consulting firm that specializes in government affairs, political strategy consulting, and international political campaigns and that worked closely with Abramoff on various projects, including ones planned to involve Mr. Andrade and AML Bitcoin.

[6] Mr. Andrade's counsel wrote to the government on July 31, 2023, and explained that Turnberry's counsel, Jones Day had produced 509 files, and the files were Bates-stamped TSLLC_0000001-TSLLC_0001867. *See* FBI-GJ-0000001 and FBI-GJ-0000002. The government produced to Mr. Andrade only approximately 316 files, Bates numbered with various numbers between the TSLLC _1-1867 range. The following TSLLC Bates numbers were not produced: 30-56; 87-434; 448-458; 491; 512-564; 585; 618-633; 713-734; 736; 852-869; 915; 917-927; 1016; 1040-1043; 1049; 1091; and 1143-1866.

> 3. Many discovery disputes remain, including several from the November 2022 motion to compel.

To put the breadth of discovery in perspective, the Abramoff, Levin, and Butina materials referenced above were part of the first of several priority items the Court asked Mr. Andrade to identify from his November 28, 2023 motion to compel, which included a total of seven issues. *See* December 23, 2022 Discovery Order (Dkt. #132) (setting forth procedure for handling the volume of discovery and related filings). The parties are nearly done litigating the government's compliance with Judge Beeler's order of April 7, which resolved the three issues of Erickson, Levin, and Butina in Mr. Andrade's favor, with the other requests still pending. Dent Decl. at ¶23.

As the Court would expect, even after these disputes are resolved, Mr. Andrade has plenty more to do. Once the production of documents is finally completed, Mr. Andrade will be able to finish his document review, assess his best defenses, and complete follow up from the documents. As he reviews the late-produced documents, he will also be identifying and preparing for witnesses and for documents at trial, determining whether he has a basis to learn the identity of any informants, working with experts based on the full record, reaching agreement on or preparing a Bill of Particulars, and preparing letters rogatory for international witnesses, motions in limine, motions to suppress, and other trial-related tasks such as jury instructions. Dent Decl. at ¶24.

Respectfully submitted,

DATED: November 7, 2023

KING & SPALDING LLP

By: /s/ Michael J. Shepard
MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE