1                UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF CALIFORNIA

3        Before The Honorable Laurel Beeler, Magistrate Judge

4

5   UNITED STATE OF AMERICA,        )
                                    )
6            Plaintiff,             )
                                    )
7   vs.                             )      No. CR 20-00249-RS-1
                                    )
8   ANDRADE,                        )
                                    )
9            Defendant.             )
    _____)
10

11                                  San Francisco, California
                                    Thursday, December 14, 2023
12

13           TRANSCRIPT OF THE OFFICIAL ELECTRONIC
         SOUND RECORDING  10:14 - 10:38 = 24 MINUTES
14

15  APPEARANCES:

16  For Plaintiff:
                                United States Attorney's
17                                Office
                                450 Golden Gate Avenue
18                              Eleventh Floor
                                San Francisco, California
19                                94102
                         BY:  CHRISTIAAN H. HIGHSMITH, ESQ.
20

21

22

23

24

25           (APPEARANCES CONTINUED ON NEXT PAGE)

2

```
 1  APPEARANCES:   (Cont'd.)

 2  For Plaintiff:
                              United States Department of
 3                               Justice
                              Antitrust Division
 4                            San Francisco Field Office
                              450 Golden Gate Avenue
 5                            Room 10-0101
                              Box 36046
 6                            San Francisco, California
                                94102
 7                    BY:  DAVID J. WARD, ESQ.

 8  For Defendant:
                              King and Spalding LLP
 9                            50 California Street
                              Suite 3300
10                            San Francisco, California
                                94111
11                    BY:  MICHAEL J. SHEPARD, ESQ.

12                            King and Spalding
                              1700 Pennsylvania Avenue,
13                               Northwest
                              Washington, DC 20006
14                    BY:  KERRIE C. DENT, ESQ.

15                            Cindy A. Diamond, Attorney at
                                Law
16                            58 West Portal Avenue
                              Suite 350
17                            San Francisco, California
                                94127
18                    BY:  CINDY ANN DIAMOND, ESQ.

19  Transcribed by:          Echo Reporting, Inc.
                              Contracted Court Reporter/
20                            Transcriber
                              echoreporting@yahoo.com
21

22

23

24

25
```

3

1  <u>Thursday, December 14, 2023</u>                    <u>10:14 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                        --oOo--

4         THE CLERK:  Calling criminal action 20-249, U.S.A.

5  versus Rowland Marcus Andrade.

6      Counsel, if you could please state your appearances for

7  the record.

8         MR. HIGHSMITH:  Good morning, your Honor.  Chris

9  Highsmith and Dave Ward for the United States.

10         MR. SHEPARD:  And good morning, your Honor.

11  Michael Shepard, Kerrie Dent and Cindy Diamond remotely, on

12  behalf of Mr. Andrade.  Mr. Andrade is also appearing

13  remotely.  He consents to proceed in that fashion, and

14  appreciates the Court's willingness not to make him travel

15  for this appearance.

16         THE COURT:  Okay.  It's a little -- you wonder --

17  there's a kind of new guidance.  It's a little -- I'm

18  comfortable, given the nature of the proceeding, given that

19  you couldn't make this appearance, I feel like they could

20  slide in under the rules that way.

21         MR. SHEPARD:  Thank you.

22         THE COURT:  Okay.  So thanks for the updated

23  briefing, and I'm moving back to my original order and

24  briefing.  So should we just go through the issues one by

25  one?  And why don't you -- why don't we start with what

4

1  you'd like to talk about, and we can just talk it out with

2  the Government.

3       MR. SHEPARD:  Sure, your Honor.  Thank you.  I

4  guess I would start with, here we are again.  I've lost

5  track of how many arguments and briefs we've had, seeking

6  what the Court ordered in April, and we need to -- we first

7  requested (Zoom interference).

8       THE COURT:  (Indiscernible.)  Somebody might just

9  be muting themselves on Zoom (indiscernible) that noise.

10      The one issue that we didn't deal with when we first

11  addressed the issue of case law and granted the Government

12  didn't raise it, and I don't think that means that they

13  can't raise it -- is this issue of what's rightfully in

14  their possession.

15      When you search -- when you seize information, you

16  know, in the -- in the device context, you're entitled to

17  seize the information that's authorized, and no more than

18  that, and so asking them to produce something that they're

19  not really authorized to retain is seemingly problematic,

20  and then, just to put us back on the same page, I did not --

21  and, as you know from the supplemental order I issued a

22  couple weeks ago, I did not anticipate that the Government

23  would be returning the device, but, in any event, assumed

24  that it would be retaining an image, just to avoid

25  contentious spoliation, as I called in the order.

5

1      So, while I appreciate -- they said they would do

2  something.  They didn't, and now they have a different

3  argument.  I'm just not that persuaded that that's enough of

4  a ground to say, "Give it over," and then the question that

5  I really wanted us to focus on, given that, which I already

6  said, what are we going to do now?

7      And I did think that at least, at minimum, if they

8  return an image, you can issue a third-party subpoena, and

9  we could go at it that way, and have whatever objections

10 raised, and so that's --

11          MR. SHEPARD:  Well, I --

12          THE COURT:  -- that's where I was on that piece,

13 and then, of course, there's the sufficiency piece, but --

14 all right.  So you tell me what you wanted to --

15          MR. SHEPARD:  Look.  I appreciate the Court's

16 thoughts about that, and that's why we did engage initially

17 on the argument.  I do think, though, this is a little

18 different than just the Government can't give over what it

19 doesn't lawfully have, because the Balwani (phonetic) case

20 says you can't retain it, and the Balwani case also said you

21 couldn't look at it, and they've done both.  They -- they --

22 remember, they first denied but then ultimately had to

23 concede that they did use for their own purposes the portion

24 of the device that went beyond what they were lawfully

25 entitled to have.

6

1       So the notion that they can have access to it -- and
2   that's fine, but -- but when it comes for us, the Court
3   having ordered, determined, that it's material to the
4   preparation of our defense -- when it comes time for us to
5   get it, all of a sudden, <u>Balwani</u> says we can't have it?
6   Well, they've been ignoring <u>Balwani</u> for over a year.
7       So I appreciate the Court's concern about that issue,
8   and that's why we engaged on the issue -- in addition to
9   making the point that they shouldn't be allowed to make the
10  argument, we engaged on the issue, and we said, "Here are
11  some possibilities," one of which is, I think, where the
12  Court ultimately came out, which is retain the device,
13  retain an image of the device --
14          THE COURT:  Or at least retain an image of the
15  device --
16          MR. SHEPARD:  Yes.
17          THE COURT:  -- at least retain an image of the
18  device..
19          MR. SHEPARD:  Return -- return the device to Mr.
20  Levin --
21          THE COURT:  Throughout the time of the case.
22          MR. SHEPARD:  -- in a way that we can subpoena it,
23  and then, if Mr. Levin has an objection --
24          THE COURT:  We deal with it.
25          MR. SHEPARD:  -- the Court can address -- yes.  So

7

1  I think we've -- we've tracked that, and we appreciate the

2  Court's order that at least they should retain an image of

3  the device.  They should return it to Mr. Levin.  That's

4  where it has gotten --

5          THE COURT:  Well, yes.  At least return an image

6  to Mr. Levin.

7          MR. SHEPARD:  Yes.

8          THE COURT:  If they decided they did want to

9  return the device to Mr. Levin, that's fine, too.  I think,

10  just for safety, that's only -- retain an image of it

11  through the pendency of this case.

12          MR. SHEPARD:  That's where it gets a little more

13  complicated, your Honor.

14          THE COURT:  Okay.

15          MR. SHEPARD:  The first complication is -- and, as

16  we noted in the briefing, it took multiple attempts to get

17  this information out of the Government, but, in response to

18  the Court's order, we find this.  The person they identify

19  as being Levin's lawyer, when we contacted that person, said

20  he was not Levin's lawyer, did not know the device, was not

21  Levin's lawyer.

22      Now, that doesn't mean the Government didn't think he

23  was Levin's lawyer, but, whatever.  At this point, that

24  isn't advancing the ball, because the man who they say is

25  Levin's lawyer says to us he's not Levin's lawyer.  So we're

8

1  not getting anywhere.

2         THE COURT:  Well, I mean, presumably, you could

3  issue a third-party subpoena.  You could serve Levin.

4  Regardless of whether the device is returned or remains in

5  that -- the Bureau's custody, he has an interest in it.  He

6  can respond or not as he chooses.  If it's unopposed, it's

7  unopposed.  Boom.  I mean, so it's not as if you're without

8  remedy.

9         MR. SHEPARD:  So we have obtained a subpoena for

10 Mr. Levin --

11        THE COURT:  Okay.

12        MR. SHEPARD:  -- but so far we've been not -- we

13 have not been able to locate Mr. Levin to serve him with a

14 subpoena.  We don't know whether he's in the United States

15 or not, and ultimately, therefore, I expect what's going to

16 happen is the Court is going to be left with the issue of

17 what the Court can do in terms of getting us this device

18 that the Court has already acknowledged is material to the

19 preparation of --

20        THE COURT:  I assume -- assume, if the device,

21 slash, image is returned to Mr. Levin, the -- I could ask

22 the Government to provide documentation of that, if it's

23 able to accomplish that.  Either it can or it can't.  And

24 then -- and that way, presumably, you'd have access to Mr.

25 Levin, and would be able to serve the subpoena, and we could

9

1  go from there.

2          MR. SHEPARD:  Unless he is not in the United

3  States.

4          THE COURT:  In which case, I -- I haven't thought

5  it out that far with the discovery.  If it would -- I --

6  I -- I don't know exactly how it should go.  If they

7  exercise the diligence to obtain him, to obtain, you know,

8  the equivalent of service under, you know, kind of a Rule --

9  Civil Rule 4-type analysis, service by alternate means, you

10  know, I haven't thought it out in this particular case, but

11  it's equivalent, because it's a third-party subpoena.

12      There might be a remedy that we could fashion that

13  would be -- in the form of a lack of objection and getting

14  you the information under a protective order, maybe

15  attorneys' eyes.  I don't know what -- I'm just suggesting

16  that there are remedies that could be pursued, short of

17  asking the Government to do what I'm not going to do, which

18  is ask it to exceed -- to give you something that -- that

19  they don't have the ability to give you absent involving Mr.

20  Levin in the process.

21          MR. SHEPARD:  Understood.  And I think the one

22  thing that we need to work out about that -- and I say that

23  in light of the history of the number of efforts we had to

24  go through to try to find out information about "Are you --

25  are you keeping an image in the phone?  Are you" --

10

1          THE COURT:  Well, we'll make sure all that is in
2    an order.  I -- you know, I'm not --
3          MR. SHEPARD:  Right.  We just need to be --
4          THE COURT:  You need to preserve the status quo.
5          MR. SHEPARD:  We need to have the Government's
6    assistance in making sure that if we are going to down the
7    road of we're entitled to issue Levin a subpoena, so that he
8    has some obligation in the event they are able to find him.
9    I don't know that they will be any more successful --
10         THE COURT:  Well, we'll -- we'll -- we'll deal
11   with all of that when we deal with it in context.
12         MR. SHEPARD:  Yes.
13         THE COURT:  I mean, I'm sure -- and I just like --
14   I still am seeing Mr. Weingarten here with the pained look
15   on his face.  I'm starting to feel that all of this exceeds
16   the bounds of what's fairly producible under any iteration
17   of any set of the criminal discovery rules, and once we get
18   to the phone issue, as long as the Government is complying
19   with its constitutional obligations, as you know I've said
20   before, why do you care?  And we'll just go through the
21   process with Mr. Levin, however --
22         MR. SHEPARD:  As long as there's a process --
23         THE COURT:  We'll figure it out.  There's a
24   process.
25         MR. SHEPARD:  -- we're not going to lose it in --

11

1  we're not going to lose our chance to get the phone.

2          THE COURT:  No, no, no.  The Government might say

3  it's inappropriate, and I think I'll probably say retain at

4  least an image, if you're able to return it, give

5  documentation of the return in aid of this process.  You can

6  file whatever objections, obviously, you want along the way,

7  to whatever is going on.  If we could just survive

8  discovery, I think we'll all be happy here.

9      Okay.  All right.  So is that what you want to say on

10  the Levin image, slash, phone issue?

11          MR. SHEPARD:  Yes.  On the question of the return

12  of the phone and that sort of stuff, that's what I have to

13  say.  Yes.

14          THE COURT:  Okay.  Let's let the Government -- we

15  might as well just comment back and forth on the issues.

16  Why don't you let me know (indiscernible).

17          MR. HIGHSMITH:  Thank you.  Very briefly, on the

18  characterization that we're at fault for not raising the

19  issue, I don't think so.  I don't think so, your Honor.  We

20  have -- we handed over to them, the responsive material.

21  That was what was responsive.  They may not like what the

22  FBI pulled out of the phone, but that's what was given to

23  them.

24          THE COURT:  I also think that just -- you're not

25  charged with (indiscernible) things all the time along the

12

1  way, and you can't give over things that you're not

2  constitutionally entitled to do.

3          MR. HIGHSMITH:  Thank you.

4          THE COURT:  So I think it's just fine.

5          MR. HIGHSMITH:  Okay.  Thank you.  The law is very

6  clear.

7          THE COURT:  No, I -- I agree with you.  I agree

8  with you.  And so that's that issue.  Was there anything

9  else you wanted to about the Levin phone/image, and then

10 we'll let Mr. --

11         MR. HIGHSMITH:  I would just ask that you -- in

12 terms of the image, I would just ask that you order it SDNY

13 for FBI's New York field office, and not my office --

14         THE COURT:  Yes.  Okay.  Got it.

15         MR. HIGHSMITH:  -- because I cannot command SDNY

16 or the New York field office.

17         THE COURT:  Okay.  That's fine.

18         MR. HIGHSMITH:  I would appreciate that.

19         THE COURT:  I'll figure out something.

20         MR. HIGHSMITH:  And then, you know, he can issue

21 whatever subpoena he wants, but that's not -- that's not

22 our -- I need to stay away from that, because I'm not

23 allowed to hand over material that I can't retain.  So --

24         THE COURT:  Right, although we could do it -- we

25 could come up with a process to manage it through Mr. Levin,

13

1  however that happens.  It's not you.  I just am -- the

2  retaining of the image is just in case there's some kind of

3  spoliation issue, and I -- it -- so that -- don't -- it will

4  all go to Mr. Levin, not --

5          MR. HIGHSMITH:  I think we're on the same page,

6  your Honor.

7          THE COURT:  Okay.

8          MR. HIGHSMITH:  I just can't be a part of --

9          THE COURT:  I understand.

10         MR. HIGHSMITH:  -- handing over evidence to

11 somebody that I'm not allowed to obtain.

12         THE COURT:  No, I appreciate that.  We'll sort it

13 out.

14         MR. HIGHSMITH:  Thank you.

15         THE COURT:  Okay.  The next issue, Mr. Shepard.

16         MR. SHEPARD:  So the next issue -- and Mr.

17 Highsmith just sort of segued into it -- is this question of

18 whether we have the responsive material from the phone, and,

19 as we pointed out in our papers, what we were given was not

20 an image of anything.

21     It's some spreadsheets, and the spreadsheets are, A,

22 redacted, for unexplained reasons, B, missing a lot of

23 responsive basic information like names of those

24 communicating the contents of the messages, and something

25 that allows us to review the attachments to the messages.

14

1    The Government says, "Well, we've given you these
2 spreadsheets.  That's the end of the matter," but that can't
3 be right, because we know they actually accessed the entire
4 phone.  We know that because CRT (phonetic) --
5         THE COURT:  It's unremarkable.  It's an
6 unremarkable part of examining any seized image.
7         MR. SHEPARD:  No, no.  They examined the entire
8 phone in order to contest our discovery request.  It was not
9 just, at the beginning, they had to do it in order to get to
10 the parts they were entitled to get to.  They looked at the
11 entire phone in February of this year in order to come up
12 with an argument to rebut our discovery request, and
13 that's --
14         THE COURT:  I don't know -- I -- look.  When
15 you're looking for information that's responsive for a
16 discovery request, even if you dispute whether you have to
17 produce it, I don't see how you could -- I mean, that's --
18 when you look at the search warrants and how it works, where
19 you have the items to be, you know, seized, the -- the items
20 to be -- the area to be searched, the items to be seized
21 pursuant to a judgment, CNR (phonetic) district, the
22 computer search warrant protocol, this is how it works, and
23 there's no other way, technically, to do it.
24    And so, then, I think the issue that becomes only --
25 and, again, the Government can't produce a partial image of

1  a phone.  That doesn't really work, either.  So what it does

2  is it produces what it produced.  Whether that's enough -- I

3  mean, I don't understand it, but that doesn't -- that's

4  unremarkable, too, to me.  The issue is, I can't really tell

5  if there's more to it.

6       I mean, in a civil litigation context, we do a PMK

7  (phonetic).  You'd do a -- you'd -- you'd ask the producing

8  party about it.  They'd explain it to you, and you'd figure

9  out whether there was something more.  We don't have that in

10  the criminal side of it.  I just don't know how to help you

11  on this, but let's just -- Mr. Highsmith's comment on just

12  the redaction issue and that it -- so I'm fine with the

13  whole "You had to look at it."  I'm fine with "You extract

14  what's responsive," essentially, and you produced it.  What

15  I don't understand, and it's just because it's hard to

16  understand it, what --

17            MR. HIGHSMITH:  It's not my -- it's also not my

18  case.  This is a totally separate case, right?

19            THE COURT:  Yes.

20            MR. HIGHSMITH:  So this is -- it's an SDNY case

21  and New York, in a very high-profile case.

22            THE COURT:  Yes.

23            MR. HIGHSMITH:  It's not -- I mean, this is --

24  there's not a defendant in that case, in our case.  This is

25  a tangential case.  So that's just a preamble.

16

1          THE COURT:  Although -- although I hear you on
2  that point, and, you know, the Government's obligations -- I
3  mean, granted, it's more than <u>Brady</u> context.  You know, you
4  have to read the SEC's notes.  You can't delegate to people.
5          MR. HIGHSMITH:  Understood.
6          THE COURT:  Just the fact that a different
7  agency -- and if SFPD were working in concert with you,
8  you'd have to do the same thing there.  So I agree it's
9  attenuated, and I don't know that SDNY's evidence makes any
10  real difference to --
11          MR. HIGHSMITH:  Well, the point --
12          THE COURT:  -- the obligation here, and I just
13  don't understand what --
14          MR. HIGHSMITH:  The point is -- the point is this,
15  your Honor.  The point is, law enforcement uses search
16  warrants for a variety of reasons.  They will -- in this age
17  of huge amounts of electronic discovery, my understanding is
18  that they get the search warrant, they pull -- they pull a
19  limited amount of evidence.  They create these spreadsheets,
20  and that's what they have.  That's what they -- that's the
21  retained information.
22          THE COURT:  Okay.  Well, so there are two issues
23  here that I see, that are perhaps making it easier.  If the
24  columns are missing descriptions, well, it is what it is.
25  That's one reaction.  But, if these are redacted or

17

1  attachments aren't accessible, that's a different issue.

2          MR. HIGHSMITH:  They're not going to pull -- so

3  they're not going to pull -- you get a -- your Honor knows

4  you get a warrant, and you have a certain amount of time to

5  review it.  You have a certain amount of time to pull the

6  material out, and you have a certain amount of material that

7  you use, and then stuff that you leave, that you don't use.

8      So they -- my understanding -- it's very conceivable

9  that they basically extract -- and they don't extract the

10  attachments.  They don't extract the stuff that's under the

11  redactions.  They just pull that stuff out so they can use

12  it for the purposes of their investigation, and then that's

13  the material they've extracted.

14          THE COURT:  Okay.  I -- that's helpful.

15          MR. HIGHSMITH:  They've not allowed to --

16          THE COURT:  That's helpful --

17          MR. HIGHSMITH:  -- go back.

18          THE COURT:  -- but what I can do is say, if they

19  have it, they have to produce it.  So I -- I think the best

20  they can do here is if they searched it, they extracted

21  things, and it's either redacted or there are attachments

22  that they actually extracted and that you can access, so

23  they did it, and they have it.  That I can order.  I'll

24  figure out a way to say it.  I don't think I can do more

25  with this piece of it.

18

1          MR. HIGHSMITH:  But the bottom line is we can't --

2    they can't go back into the evidence.

3          THE COURT:  No, I'm not asking -- I appreciate

4    that.  I agree.

5          MR. HIGHSMITH:  Thank you.

6          THE COURT:  Okay.  Okay.

7          MR. SHEPARD:  And we do understand.  We do

8    request -- they should be -- they should, just like they did

9    for their own purposes, and I do want to -- because I -- I'm

10   just --

11         THE COURT:  It would be -- it's just not going to

12   happen.  I mean, I see it as well, but it's just not going

13   to happen, that I'm going to order the Bureau to go back

14   and, you know, redo a search warrant that's -- that was in a

15   different case, because they searched the evidence in a

16   certain way.  Whatever they extracted that's responsive,

17   that's fairly within their control, is fairly produced to

18   you without redactions, AEO (phonetic), if necessary, and if

19   they have extracted attachments that aren't accessible, they

20   can provide them in an accessible format, if possible.  I

21   can write an order that says that, but I'm not requiring

22   them to go back and do anything else.  Okay.

23         MR. SHEPARD:  I understand.  I just did want to

24   make sure the Court understood.  I get the point about --

25         THE COURT:  It's a Rule --

19

1          MR. SHEPARD:  -- how they -- how they start with
2 those search -- how they start with a search warrant, and
3 they've got to look at -- they've got to look at it all, and
4 then they get down to what they actually --
5          THE COURT:  Whatever they took, they took, and
6 that's what I can deal with.
7          MR. SHEPARD:  But -- but -- but my point is,
8 they've done more than that for their own purposes in this
9 case.  So, in --
10          THE COURT:  I think we're good.  We're good.
11 Okay.
12          MR. SHEPARD:  I just, for our own purposes --
13          THE COURT:  Okay.  I think you've had time,
14 because you -- it's criminal and, you know --
15          MR. SHEPARD:  Okay.  And --
16          THE COURT:  And so I wanted to let you make your
17 argument, and I'm solid on this.
18          MR. HIGHSMITH:  I disagree with that
19 characterization, for the record.
20          THE COURT:  But it's okay.  But --
21          MR. SHEPARD:  And I don't understand.  We want to
22 be a -- we believe we're entitled to it, but you're saying
23 we're --
24          THE COURT:  Well, it's -- this is not civil, and
25 the Government has given you a lot, and I appreciate the

20

1 inclination to leave no stone -- stone unturned, and this is

2 it. That's -- that's -- that's how it's going to go. I

3 will write it -- I'll nail it to an order, but that's how

4 it's going to go.

5         MR. SHEPARD: Okay.

6         THE COURT: Okay. Next.

7         MR. SHEPARD: Okay. Next issue is the iPad.

8         THE COURT: They said that there was no iPad

9 seized.

10         MR. SHEPARD: No, they didn't say there was no

11 iPad. They said they never gained access to the iPad.

12         THE COURT: Okay.

13         MR. SHEPARD: I'm not quite sure what that means,

14 whether there was like a password issue or what, but it

15 seems like we should be able to know what that means. Was

16 the device imaged? Was it destroyed? You know, can we --

17 if it -- if it's still in existence, can we inspect it? I

18 mean, it's within the Court's order.

19         THE COURT: Well, I think -- I -- I -- I think we

20 can get clarification on what they were unable to access it,

21 and I think the same analysis applies, that if the

22 Government didn't access stuff, it can produce only things

23 that it's lawfully accessed by virtue of the search warrant

24 that authorized seizure of evidence, and if they didn't

25 seize anything, there's nothing to produce. And so, then, I

21

1  think we can give the clarification of what that means, and

2  you can take up your problems with Mr. Levin.

3          MR. HIGHSMITH:  I think this is an easy one.  The

4  Government couldn't get in.  The Government hasn't reviewed

5  any of the material on there.  The Government -- therefore,

6  there's nothing in its possession.

7          THE COURT:  Okay.  Okay.

8          MR. SHEPARD:  "Couldn't get in" meaning there is

9  no image, and then -- but it still exists somewhere?

10          THE COURT:  Yes.  I'll get it to an order.  It

11  will be fine.  It's actually what Mr. Highsmith was saying.

12  They couldn't -- they couldn't access it, so they didn't do

13  any search, so they have nothing to produce, and I'll put

14  that in there.  If I get it wrong, the Government has an

15  obligation to correct me, and it will be fine.

16          MR. SHEPARD:  Okay.

17          THE COURT:  Okay.

18          MR. SHEPARD:  If it still exists, can we inspect

19  it?

20          THE COURT:  No.  I don't think so, no.  It's Mr.

21  Levin's device, and there's -- I don't see any ground in any

22  evidence rule that any -- any discovery rule that permits

23  it.  It's not -- they can't get in, and so they can't do a

24  search.  I can't require them to do more.  They have nothing

25  lawfully in their control to turn over to you as they did

22

1  with the (indiscernible) itself.  So we're done.  I think

2  that's the answer to that.

3      Okay.  Next issue.

4          MR. SHEPARD:  Then we have the issues of

5  attachment B for the iPhone and the iPad searches, and

6  whether that should be produced, those should be produced,

7  with an attorney's eyes --

8          MR. HIGHSMITH:  We'd like a protective order.

9  It's a -- it's a very sensitive case.

10         THE COURT:  Okay.

11         MR. HIGHSMITH:  It's not even -- again, it's an

12  SDNY case, high-profile case, lots of individuals named in

13  the warrant who were never publicly charged.  It should be

14  in these protections.

15         THE COURT:  Okay.  So they're asking for a

16  protective order.

17         MR. SHEPARD:  We -- we -- there is -- we went

18  through this.

19         THE COURT:  So this is an issue that's not --

20  protective order, an EO --

21         MR. SHEPARD:  They're -- they're --

22         THE COURT:  That's fine, pursuant to -- pursuant

23  to a protective order.

24         MR. SHEPARD:  Your Honor, there -- there is a

25  protective order.  We went through this exact same issue

23

1   when you ordered the production of the Levin devices.  The

2   Government said, "Attorneys' eyes only," and we convinced

3   you that was inappropriate in this case.

4           THE COURT:  Well, you said, "Attorneys' eyes

5   only," so I went with it, because you proposed it.

6           MR. SHEPARD:  No, I wasn't -- I wasn't proposing

7   it.

8           THE COURT:  Okay.

9           MR. SHEPARD:  I was describing the questions --

10           THE COURT:  Let's start -- let's start there, and

11   I'll go look back at my previous orders, but I -- then,

12   depending -- you guys can talk about possible redactions

13   that may or may not be appropriate in the context of

14   (indiscernible), but let's get you the attachment B to start

15   with, and we'll work it out.

16           MR. SHEPARD:  And then we can come back as it's

17   produced.

18           THE COURT:  Well, it's -- it's -- it's -- you

19   know, so much of this stuff is never going to be of any use,

20   and so that's why you just kick -- you just kick it down the

21   road, and it's like -- it's like the Rule 17(c) subpoenas,

22   which is, you just don't worry about it, because none of it

23   is going to come in in trial anyway, but you want to lay

24   eyes on it to make sure that's the case.  So why worry about

25   it now?

24

1          MR. SHEPARD:  I worry about it now because my

2   client is very helpful and very active.

3          THE COURT:  No, I appreciate that.

4          MR. SHEPARD:  He's complied with all the

5   protective orders, through all the things --

6          THE COURT:  And when in implicates in the

7   investigation in another district, it doesn't mean that you

8   necessarily get access to everything to share with your

9   client because of it, because of the issues that attach to

10  that.  Redactions might be appropriate, the Government can

11  consider whether it can give two copies, an unredacted

12  version for you, a redacted version able -- that you're able

13  to share with the client, with any issues, with what that

14  looks like, you can bring it back to me.  You know I'm

15  always happy to see you.

16         MR. SHEPARD:  Okay.  And I'm always happy to be

17  here, even if I don't get everything I want, but I --

18         THE COURT:  You're given a lot, given the kind of

19  discovery --

20         MR. SHEPARD:  I -- I -- I assume that covers both

21  the attachment B for the iPhone and the iPad.

22         MR. HIGHSMITH:  I'll hand over both as long as

23  you -- you -- or as long as the Court orders it attorneys'

24  eyes only --

25         THE COURT:  Yes.

25

1        MR. HIGHSMITH:  -- I'm very happy to produce

2  those.

3        THE COURT:  iPad, iPhone.  Okay.  Was that the

4  last issue?

5        MR. SHEPARD:  I think so.

6        THE COURT:  I have a big calendar, so -- okay.

7  Perfect.  I'll take the matter under submission, and I'll

8  issue an order as soon as I can.  Thank you.  Nice to see

9  you.  And we'll call SEC versus Musk now, which is the next

10  Government case.

11        UNIDENTIFIED SPEAKER:  Your Honor, sorry to

12  interrupt, but is it possible for you to turn on your

13  microphone and to --

14        THE COURT:  No, the microphone is on.  So this is

15  the -- they -- this is, unfortunately, the -- what attaches

16  to -- you're welcome to sit in the jury box if you'd like.

17     (Proceedings concluded at 10:38 a.m.)

18

19

20

21

22

23

24

25

26

CERTIFICATE OF TRANSCRIBER

     I certify that the foregoing is a true and correct
transcript, to the best of my ability, of the above pages of
the official electronic sound recording provided to me by
the U.S. District Court, Northern District of California, of
the proceedings taken on the date and time previously stated
in the above matter.

     I further certify that I am neither counsel for,
related to, nor employed by any of the parties to the action
in which this hearing was taken; and, further, that I am not
financially nor otherwise interested in the outcome of the
action.

                    Echo Reporting, Inc., Transcriber

                       Wednesday, December 20, 2023