1   MICHAEL J. SHEPARD (SBN 91281)
     *mshepard@kslaw.com*
2   KING & SPALDING LLPo
3   50 California Street, Suite 3300
     San Francisco, CA  94111
4   Telephone:     +1 415 318 1200

5   KERRIE C. DENT (Admitted *pro hac vice*)
     *kdent@kslaw.com*
6   1700 Pennsylvania Avenue, NW, Suite 900
     Washington, DC 20006-4707
7   Telephone:     +1 202 626 2394

8   CINDY A. DIAMOND (SBN 124995)
     *cindy@cadiamond.com*
9   58 West Portal Ave #350
     San Francisco, CA 94127
10  408.981.6307

11
12  Attorneys for Defendant
    ROWLAND MARCUS ANDRADE
13

14              IN THE UNITED STATES DISTRICT COURT

15        IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

16                    SAN FRANCISCO DIVISION

17

18  THE UNITED STATES OF AMERICA,        )   Case No. 3:20-cr-00249-RS
                   Plaintiff,            )
                                         )   **DEFENDANT ANRADE'S MOTION FOR**
19          vs.                          )   **CONTINUANCE AND MEMORANDUM**
                                         )   **OF POINTS AND AUTHORITIES IN**
20  ROWLAND MARCUS ANDRADE,              )   **SUPPORT**
                   Defendant.            )
21                                       )   Judge: Hon. Richard Seeborg, Chief Judge
                                         )
22

23

24

25

26

27

28

---

DEFENDANT ANRADE'S MOTION FOR CONTINUANCE                    3:20-CR-00249-RS

**<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................. 1

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

      A.................................................................................................Answering the Court's Questions................................................................................................................... 1

      1.    Running Search Terms Has Helped In the ....................................................... 1

      2.    Even for Data That Can Be Searched, Search Terms Are Not a Complete Solution .................................................................................... 5

      <u>3.</u>    The Data Mr. Andrade Has Been and Is Continuing to Review is Core Rule 16 Material.................................................................................. 6

      B.The Court Should Grant a Continuance ................................................................. 7

      1.    Defense Counsel Are Preparing Diligently....................................................... 8

      2.    Obtaining and Reviewing Discovery Has Been Inordinately Slow and Difficult Due to Resistance By the Government....................................... 8

      3. Continuance Will be Useful (and the Defense Will be Prejudiced if no continuance is granted)............................................................................................. 11

      4.    Any inconvenience to the government and the court is limited, especially when compared with the need for a continuance.......................... 16

CONCLUSION................................................................................................................... 17

**Cases**

*United States v. Flynt*, 756 F.2d at 1359 .......................................................................... 8

*United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010)...................................... 18

*United States v. Sellers,* 645 F.3d 830, 838 (7th Cir. 2011) ........................................ 18

1    Defendant Rowland Marcus Andrade will bring for hearing before the Honorable Richard

2    Seeborg, Chief District Court Judge, his Motion for a Continuance of the Trial .

3    In support of his Motion, Mr. Andrade submits herewith a memorandum of law, the

4    declaration of Kerrie C. Dent (Attachment-1), the declaration of Cindy A. Diamond

5    (Attachment-2), and the declaration of Jeanne Somma (Attachment-3).

6

7    DATED: May 11, 2024                              KING & SPALDING LLP

8

9                                                 By:  /s/ Michael J. Shepard

10                                                     MICHAEL J. SHEPARD
                                                      KERRIE C. DENT
11                                                     CINDY A DIAMOND

12                                                     Attorneys for Defendant
                                                      ROWLAND MARCUS ANDRADE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

**INTRODUCTION**

Instead of a flowery introduction, this memorandum begins by answering the two main questions the Court asked during the status conference on April 30, 2024; namely, (1) why we cannot use "search protocols … to separate the wheat from the chaff;" and (2) why the "squarely relevant" material that is core Rule 16 "cannot be digested between now and when this trial is scheduled to happen."  The short answers are that we have extensively used discovery experts to employ search terms, but doing so has not limited what needs to be reviewed in amounts sufficient to allow us to come close to finishing before the current trial date, and that the vast bulk of the material we have been and are reviewing is at the core of Rule 16, and nearly all of the remainder has been correctly adjudicated by Judge Beeler as falling within Rule 16.  After providing those answers, the motion places them in the larger context of discovery issues over the course of this case that further underscore the justification for a continuance.  Mr. Andrade's counsel has been working diligently – and then some – but a continuance is necessary to render Mr. Andrade the effective defense to which he is entitled.

**ARGUMENT**

    **A.**    **Answering the Court's Questions**

        **1.**    **Running Search Terms Has Helped In the Review of the Voluminous Discovery, But It Falls Well Short of a Complete  Solution**

King & Spalding has an eDiscovery department in its Atlanta office that works regularly and directly with the eDiscovery vendor Lineal on this case.  One of the most important roles that Lineal and the K&S discovery experts play is that of shortening the review time, and the subsequent work time of analyzing the produced materials, by applying search terms whenever

DEFENDANT MARCUS ANDRADE'S MOTION TO COMPEL        3:20-CR-00249-RS

possible. Declaration of Kerrie C. Dent ("Dent Decl.) at ¶ 2.  But search terms have not come close to getting us through the voluminous discovery in this case for several reasons.

*First*, the productions Mr. Andrade has received from the government include a substantial amount of video and audio files, which cannot be searched.  Lineal and the King & Spalding's eDiscovery team determined that approximately 300 GB of the data produced constitutes audio and video files (50.52 GB of Audio and 238.93 GB of Video). Declaration of Jeanne Somma, General Counsel and Chief Client officer at Lineal Services ("Lineal Decl.") at ¶¶ 1, 3.  In addition, audio and video files and images can be found within other non-audio/video sources, such as in mobile files, social media, and personal laptops and other devices.  Lineal Decl. at ¶ 4.  To put this in perspective, the audio alone (and not even counting audio in other sources) constitutes approximately 1500 hours (187 8-hour days) of listening time  -- some of which has only recently been produced.

Many of the audio and video files contain important information, such as FBI's recordings of interviews, which the defense has found to contain exculpatory information not reflected in the FBI-302 reports of the interview. *See* Diamond Decl., ¶ 2. In addition to FBI interviews, the database includes videos such as AML Bitcoin Tutorials, demonstrations of Mr. Andrade's AML technology, discord group chats about AML Bitcoin (a source of potential alleged misrepresentations), the super bowl ad in various stages of creation, and more. Dent Decl. at ¶4.

*Second*, audio and video files are not the only types of data in the government's productions that cannot be searched:  There are also images, screenshots, photographs, handwritten notes, jpeg files, and Telegram and Discord productions.  The image files alone are 166 GB, constituting 454,116 documents.  Lineal Decl. at ¶5. Mr. Andrade's counsel has found

2

important Rule 16 material among all of these types of files. Dent Decl. at 5.  Handwritten notes, which are particularly time-consuming to analyze and understand, have been instrumental to the preparation of Mr. Andrade's defense. Diamond Decl. at ¶ ¶ 3-4.  Similarly, the productions include large volumes of unsearchable screenshots and images of material that include photographs of Mr. Andrade's business records.  Some of the Telegram and Discord chats, which include statements by Mr. Andrade, UCEs, and various purchasers of AML Tokens, were produced as videos taken by case agents as they watch a live-chat scroll by on a computer screen. The task of watching such videos and then determining whether these statements can be connected contemporaneously with directions from others, is time-consuming and cannot be done with search terms. Dent Decl. at ¶ 6.

Third, some materials – such as financial data – can be searched, but only after the documents are reviewed and analyzed for content so that the transactions can be traced and one can understand how those transactions relate to one other.  To understand the flow of money for the relevant accounts, Mr. Andrade's counsel had to review and organize information from statements, enter it into a database, and analyze each statement received.  Only then is it possible to run targeted searches based on specific amounts, names of recipients, account numbers, and dates of transactions, and only then is it possible to run targeted reports.  Dent Decl. at 8.

Fourth, there are still additional ways in which the government's productions have been time-consuming and evaded search terms.  By way of example:

- **Lack of Bates-numbering**:  Mr. Andrade's counsel worked with eDiscovery experts at Lineal and determined that roughly 3 million of the documents produced by the government in the Andrade case have either no Bates numbers or have a single Bates number assigned to large numbers of documents (often

3

hundreds).  Lineal Decl. at ¶6. Without Bates numbers, the review process takes

exponentially longer because the documents cannot be organized by issue,

flagged as significant, or easily shared with others.

- **Other Formatting Issues**: Search terms relating to the fraud allegations in the

  indictment (*e.g.,* the Super Bowl ad, the Port of San Francisco, and the Panama

  Canal) often hit on dozens of documents that consist of hundreds of pages of

  scanned hard copy documents (unrelated to one another).  These documents are so

  big that they are unsearchable on Relativity, the eDiscovery platform on which

  the data in this case is stored, searched, and reviewed.  The documents cannot be

  ignored because they are hitting on important, relevant search terms, so they must

  be downloaded and the text of the files can then be searched. Even then, many of

  the documents within these ~500-page documents include some pages that are *not*

  text searchable and must be reviewed. Ultimately, it is not uncommon to have to

  spend *three or four hours* to review *one search hit* if it is one of these lengthy

  documents consisting of hundreds of pages of scanned hard copy documents.

  Dent Decl. at 11.

*Finally*, adding to the challenges of reviewing the audio, video and other unsearchable

data, some of the sources of that data were produced only recently – February 22, 2024 – despite

having been seized by the government in March 2020, repeatedly requested by the defense, and

sometimes promised to be produced by the government.  The government reported that one of

the devices not produced until February of this year could not be imaged, but a vendor hired by

the defense had no difficulty doing so, and the device contains, among other things, an additional

14.9 GB of unsearchable video and audio files.

4

### 2.    Even for Data That Can Be Searched, Search Terms Are Not a Complete Solution

Even for data that can be searched, the defense experience in this case has been that relying only on search terms would result in failing to identify exculpatory material. Diamond Decl. at ¶¶ 2 and 4. A number of exculpatory documents have been found in searchable data, but not through search terms, and, looking back at those documents in light of this Court's comments about search terms at the April 30 status, it is hard to come up with reasonable search terms that could have been used to capture some of those exculpatory documents. Diamond Decl. at ¶¶ 4, 6, and 7. Often these documents were found by drilling into substantial quantities of data from a certain date range, or communications between specific individuals, or similar techniques. Diamond Decl. ¶¶ 6-10. There appear to be several reasons why search terms are not sufficient to gather all the exculpatory material in the data.

*First*, much of the data are texts or other message threads between people who know each other well, rather than emails. Such texts tend to be more cryptic, and with more shorthands, which decrease the utility of word searches. Diamond Decl. ¶ 9.

*Second*, as could be expected in a case alleging fraud and money laundering, some important messages contain few explanatory words; one helpful text with a numerical percentage had no words that counsel would have included in a search. Diamond Decl.¶ 7.

*Third*, an important aspect of the defense is the relationship between the people involved with AML Token sales or any level of Abramoff's schemes. – Communications reveal people who purported to want Mr. Andrade's business to succeed privately had negative emotional reactions to him, and to each other they disparaged or disrespected him. Aspects of these relationships that are useful to the defense appear in texts but largely defy search terms. Diamond Decl. at ¶ 8-9.

5

*Fourth,* there are a substantial number of communications to and from Mr. Abramoff, some of which is exculpatory. Diamond Declaration ¶ 5. His communications are a challenge for search terms, because he not only deletes messages regularly to avoid detection intentionally, but he also appears to use code words, nicknames, and misspellings. Diamond Decl. at ¶¶ 6, 8 and 9. It is especially time-consuming to review Abramoff's communications with people he knows well and with whom he communicates frequently. Diamond Decl. at ¶ 9-10. Calling out these communication techniques does not mean that search terms are useless, but they diminish the time savings that search terms might ordinarily provide.

Mr. Andrade's lawyers have diligently worked at getting through the non-searchable material in this case, as well as the material where search terms have less than their expected utility. The result of all this unsearchable and search-challenged data, the need to do a significant amount of old-fashioned searching on the remaining data, and the government's belated productions, is that a substantial amount of material remains to be reviewed and analyzed. Using search terms has reduced the volume of material to be reviewed, but it does not make the problem of reviewing a massive amount of data go away. And while the defense is still diligently working through that backlog, there still are massive amounts of core Rule 16 materials – some searchable and some not – that were either not produced until a few weeks ago or that were ordered to be produced but that the defense still have not received. Dent Decl. at 7.

### 3. The Data Mr. Andrade Has Been and Is Continuing to Review is Core Rule 16 Material

The data Mr. Andrade and his counsel continue to review is primarily core Rule 16 material. Contrary to the government's contention at the April 30 status conference that "[Mr. Shepard] and his team of many lawyers have been asking for material that's on the very outer

edges of Rule 16" (Tr. at 3), the vast bulk of material currently being reviewed by Mr. Andrade's team is smack in the center of Rule 16. Decl. at ¶ 12.

Core Rule 16 materials produced only in the past few weeks include some of Mr. Andrade's own devices, which were requested on March 3, 2022, and promised to Mr. Andrade in August 2022, but were not provided to him until February 22, 2024, after Mr. Andrade filed his third motion to compel. Dent Decl. at 13. What the government describes as the defense "asking for" material "on the outer edges of Rule 16" turns out to be information that the government refused to produce and that Judge Beeler ordered the government to produce, *finding that it fell within Rule 16 despite government claims to the contrary*. March 17, 2024 Order (Dkt. #292).

The government's claim therefore devolves into an argument that, after the government delayed (sometimes for years) the production of information that the court has determined to be material to the preparation of the defense, the government should be rewarded for its intransigence by forcing Mr. Andrade to go to trial without a realistic opportunity to review that material and to follow up on leads generated by that material. Among the material of which the government would preclude effective review and analysis are not just Mr. Andrade's own devices, but some of Abramoff's devices – requested on March 3, 2022, with some produced on April 12, 2024 – and information from the SEC's parallel investigation of Mr. Andrade, which was requested on March 7, 2022, and not produced until May 3, 2024.

### B.    The Court Should Grant a Continuance

The Court is well aware of the volume of materials Mr. Andrade is reviewing – about 4.5 TB. Lineal Decl. at ¶2. Given the core quality of most of the materials, and the fact that search terms have not reduced the work sufficiently to allow its completion despite considerable efforts

7

by counsel, the Court should grant a continuance. Doing so is appropriate where the defendant has been "diligent in preparing his defense," rather than seeking a continuance as a delaying tactic; where the continuance would be useful and whether its denial would be prejudicial to the defense; with consideration to the inconvenience to the prosecution and the court. *United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985).

### 1.        Defense Counsel Are Preparing Diligently

We are not superheroes. We are court appointed counsel with responsibilities to cases in addition to this one. Nor does our firm have unlimited resources to devote to Mr. Andrade's defense. To the contrary, demand for our firm's services is very strong, and associates who have been able to devote time to this case are juggling many other projects, which has impacted their ability to assist, especially on time-consuming discovery reviews. The firm appreciates being told that it is "incredibly capable" – even if such compliments seem to come only when we seek more time – but that does not mean that the firm is able to or should have to expend extraordinary resources to respond to belated disclosures by the government. Even if the government's unjustified delays had not impacted the need for resources, the firm has already devoted extraordinary resources – many millions of dollars' worth of time, without asking for any compensation – but that has not been sufficient to put us in a position to be ready to try the case in August, for the reasons described in this motion. We do not say so lightly: as defense counsel working for free, we have no incentive to delay the trial, other than to provide the defense that anyone facing serious criminal charges deserves.

### 2.        Obtaining and Reviewing Discovery Has Been Inordinately Slow and Difficult Due to Resistance By the Government

Nearly a year ago, at the June 6, 2023 status conference, the Court cautioned the government that "if you want a trial date . . . you have got to produce the material the magistrate judge says you have to produce. . . . And, you know, the Government knows that if the

---

DEFENDANT'S MOTION FOR CONTINUANCE                                    3:20-CR-00249-RS-LB

Government wants to keep a trial date, the last thing they need is to have all sorts of issues that can be brought up to say we can't go to trial because the discovery hasn't been produced." June 6, 2023 Status, Dkt. #188 at 9-10.  The government did not heed the Court's warning.

Seven months after the Court's admonition, Mr. Andrade had to file a third motion to compel on January 25, 2024.  That motion asked for eleven categories of documents, the vast majority of which were requested two years ago, and some of which were still pending from Mr. Andrade's second motion to compel (Nov. 28, 2022).  The vast bulk of the volume of material requested in these eleven categories was at the core of Rule 16, such as  Mr. Andrade's mobile phones, Mr. Andrade's Trezor wallets, recordings of Mr. Andrade and others, as well as other key (and equally unobjectionable) information like Rule 16 and *Brady*  materials from the SEC's parallel investigation of Mr. Andrade, and devices of Mr. Andrade's alleged co-conspirator. Like most of the many discovery motions Mr. Andrade has filed, his third motion to compel was granted on March 17, 2024.  Of the eleven categories of documents, only the request for early disclosure of 404(b) evidence was denied.

The request for material from the SEC's parallel investigation illustrates the hurdles that Mr. Andrade's counsel has had to clear while doing their best to get through the discovery produced to date.  On March 7, 2022, Mr. Andrade requested that the government produce Rule 16 and *Brady* materials not only in the possession of DOJ and the prosecutorial team, but also in the possession of the Securities and Exchange Commission ("SEC").  The government responded on May 23, 2022 that it does "not have access to SEC documents."  When Mr. Andrade followed up on July 15, 2022 with more specific requests for materials from the SEC's investigation of Mr. Andrade, the government responded on August 9 that "the SEC is a separate

DEFENDANT'S MOTION FOR CONTINUANCE                                      3:20-CR-00249-RS-LB

government agency and is not part of the trial team."[1]  After being reminded of the fact that the SEC in fact worked closely with the DOJ on the investigation, conducting many joint interviews the government offered no more than to "reach out to Alice Jensen" of the SEC Enforcement Division. Dent Decl. at ¶15.  Thereafter, *all the government produced was the 279 pages that Mr. Andrade voluntarily produced to the SEC himself on April 25, 2018.*  Dent Decl. at ¶15.

Despite this Court's admonition on June 6, 2023, and despite continued follow-up requests by Mr. Andrade on May 10, 2023 and in several meet-and-confers, no  further response came until September 14, 2023, when the government asserted that it *"will not be producing any additional SEC documents,"* and that "*there is no need to further discuss the [May 10] letter or to meet-and-confer about it.*" (emphases added).  Only after Mr. Andrade included the issue in his Third Motion to Compel[2] did the government propose in its Opposition to make an additional production, but even then it continued to refuse to review work product for Brady and Rule 16 material.  On March 17, 2024, the court ordered the additional production requested by Mr. Andrade, and on May 3, 2024 – *two years and two months* after Mr. Andrade made the request, and only after Mr. Andrade filed *two motions to compel* the production of the SEC materials – did the government make an additional production.

---

[1] The opposite is true.  In fact, the government worked closely with the SEC in this investigation: the DOJ and the SEC conducted numerous joint interviews – including interviews of some of the most important witnesses in the case. *See* Dent Decl. at ¶20,  And, in its press release announcing the indictment of Mr. Andrade, the government references the SEC's assistance in the government's investigation.  DOJ Press Release, *Lobbyist Jack Abramoff And CEO Rowland Marcus Andrade Charged With Fraud In Connection With $5 Million Initial Coin Offering Of Cryptocurrency AML Bitcoin* (June 25, 2020), available at https://www.justice.gov/usao-ndca/pr/lobbyist-jack-abramoff-and-ceo-rowland-marcus-andrade-charged-fraud-connection-5.

[2] Mr. Andrade had first included the SEC materials in his Second Motion to compel on November 28, 2022, but Judge Beeler deferred ruling on that request. April 7, 2023 Order (Dkt. #165).

When the government finally made that production, it turned over 18,000 SEC documents, which now have to be reviewed and analyzed. Including the SEC production, since Judge Beeler granted Mr. Andrade's third motion to compel, the government has produced more than the rough equivalent 12.6 million pages of data.[3]  All this data should have been produced when it was requested years ago, and the government should have promptly complied with this Court's admonition in June, 2023.

### 3.    A Continuance Will be Useful (and the Defense Will be Prejudiced if no continuance is granted)

Despite an unfathomable effort for a CJA case, all three of the lawyers engaged in Mr. Andrade's defense are convinced that the defense cannot be ready to try this case in August. This is because, in addition to completing the basic blocking and tackling of reviewing Mr. Andrade's own communications and those of his co-conspirator – who was directing much of the key activity on which the indictment focuses – defense counsel have numerous other unfinished tasks.  Many of these tasks remain unfinished due to delays attributable to the government -- not to mention all the additional time required to file motions to compel the government ot produce what it should have produced without a request, and certainly after getting requests.  Some of the unfinished tasks are part of the usual pre-trial process, to which defense counsel will not be able to devote sufficient time given the overhang of unreviewed material resulting from delayed productions.

---

[3] This total omits 1 TB drive that the government produced on February 11, 2024.  That production, which included Mr. Andrade's Motorola G7, images of a few of Abramoff's devices, and images of a few of Mr. Andrade's devices, was mostly a re-production of a production the government made on December 8, 2022. Some of the other materials that are part of the 12 million pages may be duplicative, but the government has not identified which those are, so all of them have to be reviewed.

---

DEFENDANT'S MOTION FOR CONTINUANCE                              3:20-CR-00249-RS-LB

1

2

**a.     Considerable Additional Time Needs To Be Devoted to Review of Documents Ordered to be Produced But Not Yet Produced.**

3

4

Beyond reviewing the 12.6 million pages that the government finally produced in March 2024, there is other important discovery that still has not been provided to the defense. despite court orders, and will require review.

5

6     i.    *Unminimized Cellebrite of Andrade's Motorola G7.*  Mr. Andrade requested the

7

8

9

10

11

12

13

14

15

16

unminimized Cellebrite report of his own Motorola G7 phone on March 3, 2022, a phone that he used during part of the relevant time period and that the government seized from him in 2020.  The Court ordered the government to produce the unminimized Cellebrite of Mr. Andrade's phone on March 7, 2024. The government claims that it made that production, but the defense has demonstrated that the government has not done so, and the government has not responded to that demonstration or produced the unminimized Cellebrite.  Dent Decl. at ¶19.

17     ii.   *Abramoff's Devices.*  Mr. Andrade requested on March 3, 2022, images of seized

18

19

20

21

22

23

24

25

26

27

28

from Jack Abramoff.  Although the government finally produced a small amount of data from Abramoff's devices in April, 2024 --part of the 12.6 million pages referenced above – the government seized pursuant to search warrants, and has custody of, other Abramoff devices.  Despite maintaining custody, the government has contended that it does not have lawful possession of those devices and therefore cannot produce them to the defense; in response, Judge Beeler ordered on March 17 that the government return the devices to Abramoff's counsel so that Mr. Andrade could subpoena the devices (Dkt. # 292).  In the nearly two months since that order, the government has not done so.  As a result,

12

1   the process of getting the devices from Abramoff to allow them to be reviewed

2   has not even begun.

3       iii.   *Abramoff's Prior Wrongdoing.* The March 17 Order also requires the government

4   to produce information about the prior wrongdoing of Mr. Abramoff.  Although

5   the government has produced some documents relating to Abramoff's

6   wrongdoing in response to that order, the production is far from complete.   The

7   government told Judge Beeler that it will complete the production of these

8   materials by June 7, 2024 (less than two months before trial).

9

10      iv.   *Mr. Andrade's Trezor wallets.*  Among the items the government seized from Mr.

11  Andrade were Trezor wallets, which defense counsel believe contain transactional

12  records relevant to the fraud and money laundering charges.  Over the

13  government's objection, Judge Beeler ordered their production on March 17.  The

14  government defied that order, and a second argument was held on May 9; on May

15  10, Judge Beeler rejected the government's argument (again) and ordered the

16  government to provide access to the Trezors within one week.  Dkt. #309.

17

18      **b.  Following Review of Discovery, Mr. Andrade Needs**
        **Time to Pursue Leads from Discovery, and Assess and Build**
19      **His Lines of Defense.**

20

21          Typically, the government makes a complete discovery of Rule 16 material shortly after

22  indictment, and the defense can review that material, follow up on leads that the material

23  suggests, and decide what defenses to pursue.  In this case, by contrast, the defense has been

24  required to make a huge investment of time just to obtain the core Rule 16 discovery to which it

25  is entitled: it has filed motions seeking 11 categories of data, 10 of which were either agreed to

26  by the government – but only after the motion was filed, following refusals to make the

27

28                                        13

---

production during meet-and-confers – or ordered by Judge Beeler.  This has not only delayed review of required discovery, but needlessly consumed a lot of time of defense counsel.  It also means that the defense still does not have a complete set of the discovery to which it is entitled, let alone an opportunity to review it with care.  While counsel have of course been planning defenses and following leads based on the discovery they have reviewed to date, that process is necessarily incomplete until review of discovery is complete, and counsel should have time to complete that process following the completion of discovery.

A number of these tasks remain to be completed.  For example:

- Once all the seized devices have been received and reviewed, the defense will need to decide whether to file motions to suppress.

- Through recent review of discovery, the defense has identified UCEs who have information helpful to the defense.  In order to contact them to determine if they would be good trial witnesses, the defense requested disclosure of their identities by the government.  The government refused, and the defense may file a motion to disclose their identities.

- The defense has recently come into possession of significant allegations of government misconduct, and are evaluating whether to file a misconduct motion.

- Through a recent review of the government's productions, the defense learned that that the government possesses a number of documents that on their face are attorney-client privileged materials relating to advice on issues implicated by the charges against Mr. Andrade; the defense has raised this issue with the government and is evaluating its next steps.

14

DEFENDANT'S MOTION FOR CONTINUANCE                                     3:20-CR-00249-RS-LB

- One aspect of Mr. Andrade's defense is that he was proceeding in good faith and that the wrongdoing charged in the indictment was orchestrated by Abramoff, often behind Mr. Andrade's back and designed to advance purposes that were not in Mr. Andrade's interests but rather advanced separate interests of Abramoff's. This theory – one that has attracted much complaining from the government but that was determined by Judge Beeler to be material to the preparation of the defense – requires ongoing work, above and beyond the review of material described in Part I above.  Other potential defense theories also require ongoing development.

- The same issue identified above with Abramoff's devices that the government has in its custody but contends it does not lawfully possess and therefore cannot produce to Mr. Andrade also applies to one of Abramoff's associates, Alexander Levin.  Unlike Abramoff, the government reports that it no longer knows who Levin's counsel is and therefore has no one to whom it can return Levin's devices.  Mr. Andrade is evaluating whether to seek to have the devices returned to the Court so that he can seek access to them from the Court; Judge Beeler has already ruled that these devices are material to the preparation of his defense.

- Once the defense has reviewed all the material that has been produced, it can make a final assessment of whether the government has fulfilled all of its discovery obligations or whether further discovery motions or Rule 17(c) subpoenas are needed.

15

### c. Other requirements of preparing for trial are more than enough to fill counsel's time between now and the scheduled trial date, even without the need to review belated discovery production.

The last two to three months before trial necessarily have a variety of fully consuming requirements – with even more than the usual amount predicted for this case. Review of discovery should be complete in order to allow focus on these tasks, but it is not close to being complete for the reasons set forth above.

- The defense expects production of Rule 404(b) material, which may be extensive and likely will require defense investigation, if not also subpoenas and motion practice. The defense has asked that this information be produced earlier than usual, but government and Judge Beeler have denied those requests.

- Counsel needs to reserve time to do basic trial preparation: preparing arguments and witness examinations; identifying any exhibits; drafting motions in limine and defending against government motions in limine; and preparing jury instructions, voir dire, and other pretrial filings.

- The defense has been working with potential experts, and judging from the discovery the government appears to be doing so as well. This will require preparation of materials required by Rule 16, as well as potentially new work to be responsive to any government experts.

### 4. Any inconvenience to the government and the court is limited, especially when compared with the need for a continuance

Mr. Andrade appreciates that changing a trial date may bring some inconvenience to the government and the court, but notes that he made his request well in advance of the August 5 trial date, allowing plenty of time for schedules to be adjusted. *See United States v. Sellers,* 645

16

---

DEFENDANT'S MOTION FOR CONTINUANCE                    3:20-CR-00249-RS-LB

F.3d 830, 838 (7th Cir. 2011) (referring to "eleventh hour" request and appropriate consideration of "last minute continuances," but finding abuse of discretion in not granting continuance). *See also id.* ("trial dates frequently open when cases settle and defendants plead").   In any event, any such inconvenience needs to be balanced against the need for a continuance and the diligence of counsel seeking it, *id.* at 839; *United States v. Kloehn*, 620 F.3d 1122, 1127 (9th Cir. 2010), which strongly favoring granting the request.

**CONCLUSION**

For all of the foregoing reasons, this Court should grant Mr. Andrade's Motion for a Continuance and schedule his trial no sooner than five months after the current date of August 5, 2024.[4]

Respectfully submitted,

DATED: May 11, 2024                    KING & SPALDING LLP


By:  */s/ Michael J. Shepard*
     MICHAEL J. SHEPARD
     KERRIE C. DENT
     CINDY A. DIAMOND

     Attorneys for Defendant
     ROWLAND MARCUS ANDRADE

---

[4] At the April 30 status, the Court asked for dates defense counsel could be available to try this case in 2025. Defense counsel will make themselves available to try this case at any time in 2025.

17