Pages 1 - 19

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Richard Seeborg, Judge

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
  VS.                          )        NO. CR 20-00249 RS
                               )
ROWLAND MARCUS ANDRADE,        )
                               )
            Defendant.         )
_____)
                               San Francisco, California
                               Wednesday, August 7, 2024

**TRANSCRIPT OF VIDEOCONFERENCE PROCEEDINGS**

**APPEARANCES:**  (via videoconference)

For Plaintiff:
                        ISMAIL J. RAMSEY
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                BY:     **DAVID J. WARD and MATTHEW CHOU and**
                        **CHRISTIAAN HIGHSMITH**
                        **ASSISTANT UNITED STATES ATTORNEYS**

                        UNITED STATES DEPARTMENT OF JUSTICE
                        National Security Division
                        950 Pennsylvania Avenue, NW
                        Washington, D.C.  20530
                BY:     **CHANTELLE DIAL, ATTORNEY AT LAW**
For Defendant:
                        KING & SPALDING LLP
                        50 California Street - Suite 3300
                        San Francisco, California  94111
                BY:     **MICHAEL SHEPARD, ATTORNEY AT LAW**


            **(APPEARANCES CONTINUED ON THE FOLLOWING PAGE)**

Remotely Reported:  Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
                    U.S. District Court - Official Reporter

1   **APPEARANCES:**   (continued via videoconference)

2   For Defendant:

3                          KING & SPALDING LLP
                          1700 Pennsylvania Avenue, NW
                          Washington, D.C.  20006
4                  BY:  **KERRIE C. DENT, ATTORNEY AT LAW**

5                          CINDY A. DIAMOND, ATTORNEY AT LAW
                          58 West Portal Avenue - Suite 350
6                          San Francisco, California  94127
                  BY:  **CINDY ANN DIAMOND, ATTORNEY AT LAW**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   Wednesday - August 7, 2024                      2:29 p.m.

 2                      P R O C E E D I N G S

 3                          ---oOo---

 4        THE CLERK:  Calling case 20-CR-249, United States

 5   versus Rowland Marcus Andrade.

 6        Counsel, please state your appearances starting with the

 7   Government.

 8        MR. WARD:  Good afternoon, Your Honor, it's David Ward

 9   for the United States.  I'm joined by my colleagues Chris

10   Highsmith and Matthew Chou from the U.S. Attorney's office here

11   in San Francisco.

12        Also joining us is Chantelle Dial.  Ms. Dial is a DOJ

13   attorney with the National Security Division, and she is here

14   to help advise the Court on the CIPA notice and the upcoming

15   CIPA procedures.

16        THE COURT:  Good afternoon.

17        MR. SHEPARD:  Good afternoon, Your Honor, Michael

18   Shepard for the Defendant, Rowland Marcus Andrade.  He is

19   present by Zoom and consents to proceed in that fashion and

20   appreciates the Court's accommodation to let him do so.

21        With me are my colleagues, Kerrie Dent and Cindy Diamond.

22        THE COURT:  Good afternoon.

23        So, this is on calendar to deal with the classified

24   information issues.  I dealt with similar issues once before,

25   but I don't have a great deal of experience with CIPA.
```

1    So, why don't I start with you, Mr. Ward.  Tell me, you

2    know, what this is all about, what I need to know.

3         **MR. WARD:**  Your Honor, I would respectfully turn this

4    over to Ms. Dial.  We have filed a notice that we have

5    identified certain classified information and that we would ask

6    the Court to review.  But beyond that, I think Ms. Dial is best

7    positioned to advise the Court.

8         **THE COURT:**  Okay.  Go ahead.

9         **MS. DIAL:**  Good afternoon, Your Honor.

10   So, as the Court has seen the Government's Section 2, the

11   purposes of the Section 2 pretrial conference are to set a

12   schedule, to seek a CISO or Court Information Security Officer

13   to address any clearances.

14   The Government provided a proposed schedule.  I understand

15   Defense Counsel has objected to that.

16   We are proposing that the Government's Section 4 motion --

17   CIPA Section 4 motion to the Court be submitted on

18   October 25th.

19   I can say in speaking to the AUSAs, I'm aware of the trial

20   date in this matter.  I'm aware that the trial date needs to

21   stick.  My supervisors are.  The entity holder of the

22   classified information is, and we intend to stay within the

23   confines of the Court's current schedule.

24        **THE COURT:**  From the Government's perspective, does

25   this all lead to -- if I agree or am comfortable with doing it

1    the way you proposed, this leads to -- culminates in my review

2    of material?  Is that what happens in this instance?

3         **MS. DIAL:**  Yes.  And I have in front of me the things

4    that I am allowed to say and the things that I am not allowed

5    to say.  There's a lot I can't say right now.

6         But what happens is in the Section 4, the Government will

7    provide a thorough background on what classified information

8    there is.

9         I can say that there is a limited universe of information.

10   We don't expect that there will be any litigation necessary

11   after the Section 4 and that will all be thoroughly explained

12   in the Section 4 filing.

13        **THE COURT:**  Which is under seal to me?

14        **MS. DIAL:**  Yes, it is, Your Honor.

15        **THE COURT:**  Okay.

16                   (Pause in proceedings.)

17        **THE COURT:**  Okay.  All right.  Mr. Shepard, what's --

18   what is your view on this?

19        **MR. SHEPARD:**  So, we had no objection to the

20   Government's original proposed order which said let's start a

21   CIPA procedure and let's appoint a security officer.

22        The Government sent us a proposed scheduling order on

23   July 31st.  Asked if we would stipulate to the order.  We

24   responded to it.  Offered to meet and confer.  Provided them

25   with a short letter setting forth several reasons why we

1  couldn't agree starting with the Government giving itself until

2  October 25 for the initial Section 4 filing.

3      And the Government then did not meet and confer with us

4  but posed -- sent their proposed order with the October 25 date

5  to the Court last night.

6      I would submit that the Court should not accept the

7  Government's proposal to allow it until October 25th to make

8  its Section 4 filing.

9      It's not entirely clear to anyone at this point how this

10  will all play out, but my concern is that this is going to

11  squeeze the time the Court needs and the time that we would

12  need to prepare for a February trial.  If information is

13  provided to us, we need to get it, review it, follow up on it.

14      If, as sometimes I understand is the case, we would need

15  to get security clearance to seize certain items.  That takes a

16  substantial amount of time.

17      And so from my perspective, there is no reason to give the

18  Government until October 25th.  Ms. Dial says it's a limited

19  universe of information.  We're talking about a hundred days --

20  October 25th would be a hundred days since the Government filed

21  its CIPA motion.

22      It will be two years since we were asking if CIPA

23  procedures needed -- would be needed in response to some of our

24  discovery requests.

25      So, giving the Government until October 25th seems like a

1    mistake to me.  I would ask the Court to set a much shorter

2    deadline and that any CIPA schedule should also include

3    reasonable time for Defense Counsel to -- to make an ex parte

4    submission on our theory of the case to help you make the

5    decisions that you need to make in response to the Government's

6    filing.

7         You know, they -- Ms. Dial has said there isn't a lot of

8    classified material, and I think Mr. Ward said that the

9    Government filed a notice with certain classified information.

10        We don't know what this is about, and the Government has

11   given us no information about why CIPA is now needed, what the

12   volume of material is going to be other than what Ms. Dial just

13   said, and the types of data involved including, like, what

14   agency -- what is the issue.  We know nothing about it.

15        Makes it hard to say anything other than that we

16   appreciate that we need to go through the CIPA process but not

17   on a schedule which would only serve to reward the Government

18   for delaying the process.

19            **THE COURT:**  You know, can't you all pursue further the

20   meet-and-confer process?  I mean, you know, it does seem like

21   it's a long period of time particularly in light of the fact

22   that we have gotten some inkling that it is not a great deal of

23   material.

24        But, you know, to ask me to mandate a schedule when I know

25   nothing about what this is all about is -- really makes no

 1    sense.  You -- the parties need to meet and confer and come up

 2    with a schedule.

 3        I mean, I don't know the answer to this.  It is not

 4    written in the stars.

 5        So, you know, I totally understand why the Government has

 6    to be careful about what it says, but at the same time you

 7    can't expect me to just say "we can't tell you anything but

 8    trust us, this is the right schedule."

 9        The parties have to work together and come up with

10    something that makes sense to both sides and let me -- you

11    know, is there further -- from -- to the Government, because

12    apparently the Government didn't take up the invitation to do

13    further meeting and conferring, I guess my question is why not?

14        **MS. DIAL:**  And I think I will -- I know that

15    Mr. Ward -- AUSA Ward can best address that.  I would like at

16    some point, Your Honor, to be able to explain a little bit more

17    why we have set October 25th but I can defer --

18        **THE COURT:**  Go ahead.

19        **MS. DIAL:**  -- to Mr. Ward.

20        **THE COURT:**  Who is stopping you?  Go ahead.  Tell us.

21        **MS. DIAL:**  All right.  Thank you, Your Honor.  So the

22    October 25th -- and to clarify, the Government has not said

23    that it's not a lot of classified information, just that it's a

24    limited universe.  I understand we are parsing words, but we --

25    the things that cannot be said --

1          **THE COURT:**  I have to tell you, Ms. Dial -- I'm sure

2     you hear this from other people when you have these cases --

3     the difference between a limited universe and not a lot of -- a

4     limited universe but I'm not saying it's not a lot of material

5     leaves me completely in the dark.

6          And I understand why it may be that way, but you can't

7     expect me then to draw any conclusions from what you have just

8     told me because you have essentially said, "I can't tell you

9     anything."

10         Okay.  But then I'm not going to draw some conclusion, oh,

11    well, therefore, you are right.  October 25th makes sense.  I

12    mean, I don't know.

13         **MS. DIAL:**  I understand which is why I think I could

14    have done better at the beginning explaining some of the next

15    steps that happen in the process.

16         And I understand and appreciate the Court's frustration.

17    So I am limited in saying the origins of the classified

18    information, who owns the information, the classified level,

19    and how much there is.

20         What I can say is that the U.S. Attorney's Office

21    conferred with CES.  We determined that CIPA proceedings were

22    going to be necessary.

23         The reason for the October 25th is not because of the

24    universe of information that we are talking about.  It's

25    because of the procedures that have to happen particularly in

 1   the Ninth Circuit.

 2       So, there is -- and in our -- in our filing we referenced

 3   this, but there is a number of steps that the Government now

 4   has to take in order to submit its Section 4.

 5       So what happens internally here is I draft up the

 6   Section 4.  I'm currently working with the entity holder of the

 7   information; already working with those attorneys.  Those

 8   attorneys have to draft a summary saying why the information

 9   that is at issue here is privileged.

10       That summary has to be signed by the head of the

11   department.

12       **THE COURT:**  Okay.  Let me stop you.  I know there are

13   going to be 85 different steps you have to go through.  I

14   understand.

15       Why is this cropping up now?  I mean, this case has been

16   going on forever.  I want this case out of here, and it's gone

17   on forever.

18       So, now, when we have a trial date, February, you know,

19   that's when it's going to happen.  Why now is this all cropping

20   up?  Why didn't this happen before?

21       **MS. DIAL:**  I --

22       **THE COURT:**  Did something new happen that I was

23   unaware of that suddenly creates this whole world of

24   confidential or classified information that we were otherwise

25   unaware of?

1      **MS. DIAL:**  I am limited in what I can say.  We will

2 explain the timeline entirely in the Section 4 and why it came

3 to light now.

4      **THE COURT:**  Okay.  Well, let me go to Mr. Ward.  Is

5 there -- is there -- is there an opportunity to pursue some

6 further meeting and conferring to come up with a schedule that

7 is going to work for everybody?

8      I mean, Mr. Shepard has specific concerns about the

9 crunching of the schedule in certain ways.  And, you know, at

10 the very least, can't you all hash that out?

11      And perhaps your explanation to him will alleviate his --

12 he will then understand why the schedule is the way that it is

13 being proposed.

14      But, otherwise, it effectively is a Government mandate to

15 sign this because this is what we tell you we need.  And maybe

16 it's right -- maybe that's true -- but I understand why

17 Mr. Shepard wants some meeting and conferring on this issue.

18      **MR. WARD:**  Your Honor, I understand.  And we have not

19 had great success with meeting and conferring overall with

20 Mr. Shepard and his colleagues.

21      In this case we will attempt to have further discussion

22 with them.

23      We are severely limited in that many of the questions that

24 he wants answers to -- like, why now, how much is involved,

25 what is the classified information, is just information we

 1    can't provide.  It's because it's classified.

 2        I understand that Mr. Shepard may want the answers to

 3    them, but it's not something that we can provide.

 4        We are trying to work within the confines of classified

 5    information.  And as Ms. Dial said, we can present that to the

 6    Court.

 7        I'm happy to have a discussion in an attempt with

 8    Mr. Shepard to compress the schedule.  I understand his

 9    concern, and I certainly understand the Court's concern and the

10    Government -- it is shared by the Government.

11        We want this off your calendar too.  We want this case to

12    go to trial, and we expect this case is going to go to trial on

13    February 10th.

14        We don't expect that this issue will derail it even with

15    the Government's proposed schedule.  I'm happy to have a

16    further discussion with Mr. Shepard.

17        As Ms. Dial said, there are approval timelines and

18    presenting the Court with classified information that takes

19    time to work its way up.

20        The Ninth Circuit is particularly strict about the

21    approvals for that.  We are working diligently.  This is not

22    something that came up --

23            **THE COURT:**  When you --

24            **MR. WARD:**  -- and we sat on.

25            **THE COURT:**  When you say the Ninth Circuit is

```
 1  demanding of this, I'm not sure what you are talking about.  Is
 2  this case law or what?
 3          MR. WARD:  Yes -- and Ms. Dial can correct me -- but
 4  it is a case that Alahmedalabdaloklah, roughly, which sets up a
 5  procedure for which level of department head must approve CIPA
 6  filings.  And in this case it requires a declaration from the
 7  political head of the department, which we understand to be --
 8  well --
 9          MS. DIAL:  Factually can't --
10          MR. WARD:  We can't say what department but the --
11          THE COURT:  Whatever.  I don't --
12          MR. WARD:  We will work through it, Your Honor.
13          THE COURT:  Yeah.
14          MR. WARD:  If we can tighten the schedule, we will --
15  I will speak with Ms. Dial.  I'm happy to try to accommodate to
16  a point Mr. Shepard.  His request was that we file this next
17  week.  It's not -- it's not workable.
18          THE COURT:  It's not workable.  I understand.  That's
19  fine.
20          MR. WARD:  But we will --
21          THE COURT:  Okay.  Do make another effort.  And I will
22  say to, Mr. Shepard, at the end of the day because of the
23  nature of this and because -- for understandable reasons -- I'm
24  not going to have the full explanation that we would all want,
25  I'm going to have to err on the side of what the Government is
```

1  proposing.

2      So it is in -- you should be incentivized to try to come

3  up with something that is workable.  It may not be perfect from

4  your scheduling perspective; but if it comes down to -- because

5  of the nature of this the -- you know, don't agree to do what

6  the Government wants you to do, I'm going to be in a pretty

7  difficult position because I -- you know, the nature of this

8  stuff.

9      So, it's not your standard just, you know, back-and-forth.

10  They are in a unique position with respect to classified

11  materials, and we just have to recognize that.

12      So, I do want them to try another meet and confer; but I

13  want you to be incentivized to try to come up with some

14  understanding, which may not be a perfect world from your

15  perspective.

16      **MR. SHEPARD:**  I understand.  I appreciate that,

17  Your Honor.

18      **THE COURT:**  Okay.

19      **MR. SHEPARD:**  I just -- I'm having trouble getting my

20  arms around the notion that given that we have a February trial

21  date that we all want to keep, that it takes over a hundred

22  days to get these approvals.

23      I mean, if somebody actually knew that the trial date was

24  important and we are all working for it, I just -- I find it

25  hard to imagine why a hundred days is needed for the approvals.

 1  I understand the approvals are needed.

 2      **THE COURT:**  Well, right.  We think the trial is

 3  important and it's high on our priority list; but for some of

 4  these approving authorities, they may not find it quite as

 5  compelling as we do.

 6      So, the further up the chain you go, the harder it is

 7  for -- I understand that there are complications when you have

 8  to get sign-offs from high-level officials.  But see what you

 9  can do.

10      Tell me and report back if you have got some stipulated

11  proposal for me in the next week.

12      If you don't, then each side can just tell me one final

13  submission -- no more than four pages -- just tell me what your

14  position is, and then I will decide if I'm going to sign this

15  or not.  Okay.

16      **MR. WARD:**  Thank you, Your Honor.

17      **MR. SHEPARD:**  Understood, Your Honor.  Thank you.

18      **MR. WARD:**  We will do that.

19      **THE COURT:**  Anything else?  Was this set as a general

20  status conference or just on this issue?

21      **MR. SHEPARD:**  I think you had originally --

22      **MR. WARD:**  Just --

23      **MR. SHEPARD:**  I'm sorry.  Go ahead.

24      **MR. WARD:**  I believe, Your Honor, it was set for a

25  general status agreement.  I think beyond the CIPA filings, we

1    are anticipating and moving towards a February 10th trial.

2        I am sure Mr. Shepard may have issues he wants to raise;

3    but from our perspective, we are working diligently.

4        We have produced an enormous amount of discovery in our

5    view, far beyond what is required, and we continue to try where

6    we can to accommodate the Defendants or -- it hasn't always

7    been successful but we are working on it.  And it's the

8    Government's expectation that this case will go to trial on

9    February 10th.

10        **THE COURT:**  Okay.  Good.  All right.  Anything else?

11        **MR. SHEPARD:**  Should I respond to a couple of those

12    shots that were taken at me?

13        **THE COURT:**  Go ahead.

14        **MR. SHEPARD:**  First of all, I don't think the

15    Government has really given us far beyond what is required.

16        I would say that we have had to take them kicking and

17    screaming to Judge Beeler on a number of occasions, and Judge

18    Beeler has ruled in our favor on a number of occasions; and

19    that has slowed the discovery process down.

20        Even when the Government says they will produce things, it

21    doesn't really happen.  To give you just one example of that,

22    the Government told us on June 7 that it had Abramoff material

23    in boxes that it would make available for us to review.  It is

24    a large quantity of material.  The index is a hundred pages

25    long.  We reached out to them in early July in the hopes of

1    reviewing that material.  It's hard copy material.  It needs to

2    be reviewed in person.  We were hoping to do that when Ms. Dent

3    was out here in July.

4        The Government did not respond for a week until after she

5    had already arrived in San Francisco and said that the

6    documents would not be available until next week at the

7    earliest.  That was over three weeks ago.  We still have not

8    heard back from the Government on when we are going to be able

9    to review those.

10        And I could go on and on with other examples of this.  We

11   asked to meet and confer.  Usually the Government just declines

12   to meet and confer with us.

13        And so it's just taking much more time than I would have

14   wanted.  We are still working very diligently to be ready on

15   February 10th, but we need some help from the Government to do

16   that.

17            **THE COURT:**  Go ahead, Mr. Ward.

18            **MR. WARD:**  Well, in terms of the boxes, these are

19   boxes of hard copy materials from a 2005 case involving Jake

20   Abramoff.  We have had to have them shipped out here.  We will

21   make them available for their review.  We will provide them

22   with a schedule.  I haven't been able to do it, but we will do

23   that today or tomorrow.

24        We don't believe that any of this is Rule 16 or *Giglio*,

25   but it is -- out of an abundance of caution we are making

1    documents from a 20-year-old case available for them.

2        We have also, as I have said, you know, making significant

3    efforts to meet the Defendants' discovery requests.  They often

4    request things that have been produced.  We have reproduced

5    them for them when they can't find them or have been produced

6    to former counsel.

7        It seems in the Government's view a somewhat relentless

8    set of discovery demands.  To cite one example for the Court,

9    just in 2024, we have received 13 discovery letters from the

10   Defense.  They would total together 36 pages and add up to

11   approximately 101 requests.

12       Now, some are repeated.  Some are dropped.  Some are

13   raised again, but it is a somewhat relentless barrage of

14   discovery requests, many of which we believe are beyond Rule

15   16, *Brady* and *Giglio*.

16       But, nonetheless, we are working to do what we can, and we

17   will continue to do what we can within reason.  We will

18   litigate it -- and we have in front of Judge Beeler -- if we

19   feel the requests are beyond our obligations, but we are

20   trying.

21           **THE COURT:**  All right.  One week from today tell me

22   where things stand on this CIPA issue, and either I -- well,

23   what I would hope to get is some stipulation; but if I don't

24   have a stipulation, then each side no more than four pages as

25   to what you think I ought to do and I will do something.  Okay.

1    Very good.

2            **MR. WARD:**  Thank you, Your Honor.

3            **THE COURT:**  See you later.

4            **MR. SHEPARD:**  Thank you, Your Honor.

5            **THE COURT:**  Thank you.

6                (Proceedings adjourned at 2:54 p.m.)

7                        ---oOo---

1
2
3                        __CERTIFICATE OF REPORTER__

4          I certify that the foregoing is a correct transcript

5     from the record of proceedings in the above-entitled matter.

6

7     DATE:   August 12, 2024

8

9

10

11     _____

12          Marla F. Knox, CSR No. 14421, RPR, CRR, RMR
             United States District Court - Official Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25