**KING & SPALDING LLP**
MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: +1 415 318 1200
Facsimile: +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone: +1 202 626 2394
Facsimile: +1 202 626 3737

CINDY A. DIAMOND (CA SBN 124995)
ATTORNEY AT LAW
58 West Portal Ave, # 350
San Francisco, CA 94127
408.981.6307
cindy@cadiamond.com

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No.: 3:20-CR-00249-RS-LB<br><br>**MOTION FOR INFORMANT DISCLOSURES**<br><br>Judge Beeler<br>November 21, 2024<br>10:30 a.m. |

# TABLE OF CONTENTS

| Item | | Page |
|---|---|---|
| I. | INTRODUCTION | 4 |
| II. | THE REQUESTED INFORMANT DISCLOSURES SHOULD BE ORDERED | 5 |
| | A. The Defense Determines What is Helpful To The Defense Case | 6 |
| | B. The Government's Burden | 9 |
| | C. The Requested Informants | 10 |
| |    1. UCE-8026 aka Mason Wong | 10 |
| |    2. UCE-7410 aka Bryant Lee | 11 |
| |    3. OCE-8149 aka James P. Woods | 11 |
| |    4. UCE-4473 aka Ravi Gupta | 12 |
| |    5. UCE-7780 | 12 |
| |    6. UCE-7180 aka Leena Ahmed | 13 |
| |    7. CHS-21879 aka CHS Spindle aka Brad Morgan | 13 |
| III. | CONCLUSION | 14 |

# TABLE OF AUTHORITIES

**United States Supreme Court cases**

*Brady v. Maryland*, 373 U.S. 83, (1963) ............................................................................. 4, fn. 2

*Franks v. Delaware*, 483 U.S. 154 (1978) ..................................................................................5, 7

*Giglio v. United States*, 405 U.S. 150 (1972) ..................................................................... 4, fn. 2

*Roviaro v. United States*, 353 U.S. 53 (1957) ............................................................ 4, 5-6, 7, 8, 9

**Ninth Circuit Court of Appeals**

*United States v. Amador-Galvan*, 9 F.3d 1414 (9th Cir. 1993) .................................................... 6

*United States v. Buffington*, 815 F.2d 1292 (9th Cir. 1987) ................................................ 4, fn. 2

*United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) ....................................................... 9

*United States v. Sanchez*, 908 F.2d 1443 (9th Cir. 1990) ............................................................ 6

*United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993) ......................................................... 9

*United States v. Stanert*, 762 F.2d 765, 780 (9th Cir. 1985) ....................................................... 8

*United States v. Thompson*, 827 F.2d 1254 (9th. Cir. 1987) ....................................................... 6

**Northern District of California Court cases**

*Summerlin v. Schriro*, 427 F.3d 623, 629-630 (N.D. Cal. 2005) .................................................. 7

*United States v. Conner*, 2015 U.S. Dist. LEXIS 166564, at *11 (N.D. Cal. 2015) ..................... 6

*United States v. Martinez*, 2016 U.S. Dist. LEXIS 59481 (N.D. Cal. 2016) ........................ 4, fn. 2

*United States v. Williams*, 2010 U.S. Dist. LEXIS 95781
(N.D. Cal. August 30, 2010) ................................................................................... 4, fn. 2, 6, 7,9

## I. INTRODUCTION

This Motion seeks disclosure of the identity of seven informants.

The government's use of undercover employees, confidential human sources, online undercover employees, and other types of privileged sources available to law enforcement, included not only this fraud prosecution of Mr. Andrade, but also the fraud investigations of Mr. Andrade's alleged co-schemer Jack Abramoff, accused fraudster Japheth Dillman, and admitted fraudster David Mata.[1] Over several years, dozens of informants were used in the investigation. This request seeks disclosures from only seven of these informants. Disclosures of each informant is sought because each will be helpful to Mr. Andrade's defense.[2] Mr. Andrade pursues these disclosures under *Roviaro v. United States*, 353 U.S. 53 (1957) and its progeny, and on his Fourth, Fifth, and Sixth Amendment rights.

A theme of the defense is that using his own plans and personnel Abramoff, and not Mr. Andrade, had the intent to defraud.

---

[1] Operation "Clutch Council" appears to be the name of the expanded and related investigation that resulted in these four prosecutions in the Northern District. Abramoff and Mata have each pleaded guilty in their separate cases; both are anticipated to be government witnesses against Mr. Andrade. Dillman is currently pending trial in his own case.

[2] For each informant described, disclosures requested include: true identities, true locations, most recent contact information; documents about prior activity as an informant, documents regarding undercover work in this case, or in Jack Abramoff's, Japheth Dillman's, or David Mata's cases in relation to AML Bitcoin or AML Tokens; and documents regarding any compensation or other incentive provided to the informants. These disclosures are permitted in this District when an informant's identity is found to be relevant. *United States v. Martinez*, 2016 U.S. Dist. LEXIS 59481, at *5-7 (N.D. Cal. 2016), citing *Brady v. Maryland,* 373 U.S. 83, (1963), and *Giglio v. United States*, 405 U.S. 150, 154 (1972) (criminal history, *Brady*, *Giglio*, the informant's whereabouts, prior activities as an informant, and compensation details ordered disclosed for percipient witness used as informant); s*ee also United States v. Buffington*, 815 F.2d 1292, 1299-1300 (9th Cir. 1987) (denial of disclosure of an informant's communications was grounds for reversal on appeal). In another Northern District case, *United States v. Williams*, 2010 U.S. Dist. LEXIS 95781 (N.D. Cal. August 30, 2010) at *10, "the disclosure of information regarding the CI's credibility, including the consideration received by the CI for cooperation, the investigations or prosecutions where the CI cooperated with the government, and the CI's criminal history," were all ordered disclosed as relevant to the informant's credibility.

According to law described more fully below, it is Mr. Andrade's burden to show the helpfulness of each informant requested, which the Court must view from Mr. Andrade's perspective. To do so, Mr. Andrade chooses to maintain the privacy of his defense while trial preparation is ongoing. Therefore, in this public-facing filing, Mr. Andrade has identified the seven informants, their involvement in the case, and the broad outlines of how they help the defense, but details about how each are helpful are shared with the Court in an under-seal filing, *ex parte*, to prevent prematurely disclosing defense theories to the government.

All of the informants possess some personal knowledge about this case, either from conversations with Mr. Andrade, or with Abramoff, Dillman, or other associates of theirs involved in the AML Bitcoin project. As argued below, disclosure of each will help Mr. Andrade prepare for trial. Furthermore, some of the informants will also lead to discovery of evidence that may be a part of a motion to suppress brought under *Franks v. Delaware* ("*Franks*") 483 U.S. 154 (1978). While the substance of a motion to quash several search warrants under *Franks* is *not* currently before the Court, as argued below, the law supports the right of a defendant to seek informant disclosure when relevant to the question of recklessness or intentionality of a warrant's affiant, in cases where a search warrant application materially omitted or materially misstated something the informant said.

Based on the law set forth below and the benefit that each informant may bring to the defense as set forth below and in the *ex parte* declaration filed under seal, Mr. Andrade seeks a Court order requiring the government to make the disclosures requested.

## II. THE REQUESTED INFORMANT DISCLOSURES SHOULD BE ORDERED.

The seven requested informants are all subjects of the government's claim of informant privilege. However, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53 ("*Roviaro*") at 55, 60-61 (disclosure of undercover employee required when informant materially participated in a events resulting in the accused's possession of drugs, had been present with the accused, and had been a material witness as to the accused person's state of knowledge). There

is no fixed test regarding informant disclosure, *id.* at 59; rather, a Court must balance the defense right to prepare his defense against the public interest in encouraging citizens to inform the government about criminal activity. *Id* at 62; *United States v. Sanchez,* 908 F.2d 1443, 1451 (9th Cir. 1990) (District Court held *in camera* hearing and thereafter properly found that informant who tipped the police about defendant's drug smuggling activities one-year before the charged-offense was not subject to disclosure). "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro* at 62.

### A. The Defense Determines What is Helpful To The Defense Case

It is the defendant, not the government, who determines what would be helpful to his defense. Whether a witness should be interviewed is "a matter for the accused rather than the government to decide." *Roviaro*, at 64. A defendant need only prove "more than a mere suspicion" that the informant's information will be valuable. *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993); *accord*, *United States v. Williams*, 2010 U.S. Dist. LEXIS 95781 at *4, 2010 WL 2447704 (N.D. Cal. 2010). Informants need not be percipient witnesses to be helpful when they "might still be able to provide information which might lead to a firsthand source or circumstantial evidence." *Amador-Galvan*, 9 F.3d 1414, 1416-1417 (trial court erred in failing to hold *in camera* hearing regarding informant who might impeach witness placing defendant as the driver in a smuggling case). Mr. Andrade is not obligated to demonstrate the informants he seeks would be witnesses, or would be willing to be interviewed, or that they have information that will be used at trial.

Below, in Section II C of this motion, are brief descriptions about the involvement of the requested-informants in the investigation of Mr. Andrade; expanded explanations of why there is "more than a mere suspicion" that each informant may assist his defense are in his confidential *ex parte* filing . Such an *ex parte* procedure is permitted "where it is necessary to 'keep sensitive information from the opposing party.'" *United States v. Thompson*, 827 F.2d 1254, 1258-59 (9th. Cir. 1987); *see also Williams*, 2010 U.S. Dist. LEXIS 95781 at *8 (informant disclosure ordered

based on facts alleged in a declaration of counsel in Northern District case); and *United States v. Conner*, 2015 U.S. Dist. LEXIS 166564, at *11 (N.D. Cal. 2015) (defense declaration supporting motion for informant disclosure ordered sealed).

Several informants are sought because they are likely the only source of evidence regarding relevant conversations; those are needed to describe their conversations or to authenticate a relevant recorded conversation. The defense need not resort to having Mr. Andrade waive his Fifth Amendment privilege to introduce any relevant conversation he personally had with an informant. *Roviaro* at 64 (since defendant who was alone with informant maintained his constitutional right not to take the stand in his own defense, informant was only available witness to testify to defendant's activities). Some of the requested informants had relevant and helpful conversations that were not recorded, or the recordings are unintelligible. With no intelligible recording available, informant disclosure should be ordered since the informants are the only sources who can testify - or discuss with an investigator - the contents of their relevant conversations. *Williams*, 2010 U.S. Dist. LEXIS 95781 at *8 (Northern District's Judge Illston found "especially significant" the fact that "conversations between the CI and the defendant, as well as those between the CI, defendant and ATF agent were not recorded").

While some of the informants may be called as defense witnesses, there is no requirement that informants be potential trial witnesses to be "helpful" to the defense for purposes of an informant-disclosure motion. Informants may help the defense even if they are not sought to be witnesses, and even if they are likely sought to confirm facts that help the government. *Roviaro*, 353 U.S. at 61, 64. "The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide." *Id*. In accordance with the duty of defense counsel to investigate in preparation for trial, *see Summerlin v. Schriro*, 427 F.3d 623, 629-630 (N.D. Cal. 2005) (reasonable investigation by criminal defense counsel includes efforts to secure information in the possession of law enforcement), some of these informants' disclosures are sought for consensual interviews or to compel the production of documents, which in turn may lead Mr. Andrade to additional evidence that will help his defense.

Finally, five informants have relevant information about the accuracy of facts asserted by three FBI affiants who applied for four search warrants used to search Mr. Andrade's offices (in 2018 and 2020), email (in 2019), and home (in 2020) ("the search warrants" hereinafter). Mr. Andrade seeks these informants' disclosures as part of his preparation of a motion to suppress and to quash the search warrants based on *Franks* and its progeny, which prohibits use of evidence obtained from a warrant when probable cause is based on an affidavit containing intentional or reckless misstatement of material facts or material omissions. *Cf. Franks v. Delaware*, 483 U.S. 154. Such reasons for informant disclosure are endorsed by *Roviaro* at 61, for "where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause . . . the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication." Regarding Mr. Andrade's warrants, facts known to the informants were included in the search warrant affidavits. However, the affidavits omitted material facts known to each of these informants and misstated some other relevant facts; together - with other evidence not at-issue in this informant motion - these facts may tend to show the search warrant for Mr. Andrade should not have been granted.

The informant disclosures related to evaluating the accuracy of the search warrant affidavits are necessary for Mr. Andrade to prepare to meet the threshold of intentionality or recklessness necessary for an evidentiary *Franks* hearing. Although Mr. Andrade believes there are additional grounds for a *Franks* hearing (not relevant to this motion to disclose confidential informants), before he may have an evidentiary hearing on the suppression issues Mr. Andrade must also be able to argue that "the affidavit purged of its falsities would not be sufficient to support a finding of probable cause." *United States v. Stanert*, 762 F.2d 765, 780 (9th Cir. 1985). Since probable cause is "considered cumulatively," *id.* at 782, Mr. Andrade cannot fully weigh the effect of any known false or misleading statements within any affidavits summarizing probable cause in a warrant application without *first* determining whether the material omissions or misstatements related to informants were made by the affiant in an intentional or reckless manner.

Disclosure of these unknown informants may help Mr. Andrade meet what Ninth Circuit referred to as "a difficult evidentiary problem" in preparing a *Franks* motion. "To make a substantial preliminary showing, he must establish a negative -- that the informant does not exist -- or uncover the informant's probable identity and the text of his information, despite considerable Government efforts to protect both." *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983). Because "the offer of proof must challenge the veracity of the affiant, not that of his informant," the false or misleading statement or omission relevant to a *Franks* motion must contain an element of recklessness or intentionality and be "necessary" to a finding of probable cause. *Id*. Accordingly, a defendant has the right to disclosure of the identity of an informant, or to an *in camera* hearing to evaluate his request, when the informant is relevant to the preparation for an application for an evidentiary *Franks* hearing. *Id.* at 1273 (error to refuse *in camera* hearing when defendant sought informant to establish the factual basis for a *Franks* motion). Without disclosure of the informants, Mr. Andrade may be unable to establish how the information they knew was relayed to the affiant, and he may be unable to establish the recklessness or intentionality of the misleading statements of the affiant.

Thus, independent of the need to use any of the requested informants to develop evidence for trial, Mr. Andrade is also entitled to the true identities and other relevant disclosures for five informants who have personal knowledge of information relevant to assess the search warrants' affiants' credibility. Such disclosures are a necessary component of Mr. Andrade's right to assert defenses on Fourth Amendment grounds.

**B.     The Government's Burden**

Once Mr. Andrade has established the helpfulness of the requested informants, both through information revealed here and in his under-seal *ex parte* declaration filed with exhibits, the government may be permitted to present evidence through an *in camera* hearing. *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993), citing *Roviaro* at 62.

When a defendant shows a strong need for an informant, such as one who was a participant in events leading up to an allegedly criminal event, an in camera hearing may be the preferred procedure, *Spires*, 3 F.3d 1234 at 1238; *see also Kiser*, 716 F.2d 1268, but a Court is

1. within its rights to forego an in camera hearing altogether and grant the request for disclosure. *Williams*, 2010 U.S. Dist. LEXIS 95781, at *10. Indeed, as to the first three informants requested here, all of whom had conversations with Mr. Andrade himself during the period of the alleged scheme to defraud, the Court is urged to grant disclosures outright as the need for an *in camera* hearing will not dispel the notion that each of these has firsthand knowledge that Mr. Andrade's word and actions may be helpful to his defense.

If the Court is inclined to grant the government's anticipated request for an *in camera* hearing, Mr. Andrade seeks an opportunity to submit questions *ex parte* for the Court's consideration at such a hearing.

### C. The Requested Informants.

Below, each informant is identified by known monikers and FBI-designated number, and each is discussed sufficiently enough for the government to identify them and for the Court to appreciate, with the context of the discussion above, the broad outlines of how they help the defense. Further and more specific details, explaining the relationship of each informant to Mr. Andrade's defense theories and how disclosures will be helpful to the defense, are set forth for the Court's own consideration in the *ex parte* declaration filed under seal with supporting exhibits.

#### 1. UCE-8026 aka Mason Wong

Posing as Mason Wong, UCE-8026 had a telephone conversation with Mr. Andrade during his public AML Token sales.

Wong can testify that Mr. Andrade personally and immediately clarified misconceptions regarding the nature of his AML Token sale to a customer of his public-ICO sale of AML Tokens, as a follow-up to a complaint. Wong's testimony would be the only way to present this exculpatory conversation to the jury since there is no recording of his conversation with Mr. Andrade.

Wong was quoted in each of the four search warrants relevant to a potential *Franks* motion, as well, but large portions of his conversation with Mr. Andrade were omitted. Wong's testimony may be relevant to the issue of whether the affiant requesting the search warrants acted

with reckless disregard of the true nature of the conversations Wong had with Mr. Andrade.

### 2.     UCE-7410 aka Bryant Lee

Posing as Bryant Lee, UCE-7410 bought AML Tokens through Mr. Andrade's public-ICO, online. Months later, Lee was introduced to Mr. Andrade through an associate of Abramoff's (requested informant # 4, below). Lee and Mr. Andrade discussed about a potential AML Token purchase that did not come to fruition.

Two relevant conversations Lee had with Mr. Andrade were recorded, at least one of them included a man posing as James P. Wood, (another informant, request # 3 below).

Mr. Andrade made statements during his conversation with Lee that the jury may find to be exculpatory. For instance, Mr. Andrade explained his terms of sales to Lee and when Lee told him he was comparing some notes he had taken at a presentation given by Dillman, Mr. Andrade replied, "And that's what concerns me. All due respect . . . I have a call into [Dillman] already . . . . I need to be able to see what all presentations he sending out."[3] Lee is needed to authenticate the recording of or testify about his conversation with Mr. Andrade.

Lee can also lead to evidence helpful to a *Franks* motion, for the fact that Lee purchased AML Tokens through the public ICO was included in the affidavits for search warrants, but nothing more. Exonerating portions of Lee's conversations with Mr. Andrade were omitted from the search warrant affidavits. Lee's testimony may be relevant to the issue of whether the affiant requesting the search warrants acted with reckless disregard of the true nature of the conversations Lee had with Mr. Andrade, depending upon how much of Lee's undercover work was relayed to the search warrants' affiants.

### 3.     OCE-8149 aka James P. Woods

When Lee (UCE-7410) spoke to Mr. Andrade the second time, their conversation started on the telephone and then it moved to a video-conference. Woods was on the the video-conference call. Thus, if Lee is not available, or if he is unwilling to speak to the defense, Woods can testify about Lee and Mr. Andrade's conversation. Woods can authenticate the

---

[3] This quotation is from FBI-0006094.mov from 12:35-13:29.

recording and can testify about the relevant facts discussed between Lee (and Woods), and Mr. Andrade.

Woods is also a potential witness to the *Franks* motion, for, having been part of the conversations Lee had with Mr. Andrade, he may have some knowledge about how and how much of the substance of Lee's conversation had been relayed to the search warrant's affiants.

### 4.   UCE-4473 aka Ravi Gupta

An informant posing as Ravi Gupta (UCE-4473) was brought into Abramoff's trusted circle of associates during April, May, and June, 2017, when Abramoff was planning his own schemes, immediately prior to Abramoff's initiation of work with Mr. Andrade on AML Token sales. Gupta was still working closely with Abramoff in the summer of 2018, when Gupta was the conduit between Abramoff's and Mr. Andrade's communications with Lee (UCE-7410, request # 2 above).

Abramoff made admissions and statements about his own plans regarding raising money surreptitiously to Gupta, in several conversations that were recorded. However, two recordings, occurring the week that Abramoff began to work with Mr. Andrade on the AML Token project - amounting to about an hour of conversation - are fully intelligible due to background noise in an automobile where they were recorded. These recordings occurred on dates in-between other communications between Gupta and Abramoff, where Abramoff's financial plans were under discussion.

Gupta's knowledge gained from personally working with Abramoff for over a year may lead to admissible evidence tending to impeach Abramoff, or any of Abramoff's other trusted associates, regarding their purposes and claims about the AML Token project. Gupta can not only authenticate documents and recordings involving himself and Abramoff, but he can also provide the content of conversations that pertained to AML Tokens or AML Bitcoin, to which Mr. Andrade was not privy.

### 5.   UCE-7780

The informant identified only as UCE-7780 recorded the two unintelligible recordings of Gupta (requested informant # 4) and Abramoff. Thus if Gupta is not available and/or is

unwilling to speak to the defense, this informant can provide first-hand knowledge about Abramoff's and Gupta's conversations.

### 6.     UCE-7180 aka Leena Ahmed

Posing as Leena Ahmed, UCE-7180 claimed to be the principal of a pharmaceutical company seeking to use Mr. Andrade's patented technology for identification purposes related to HIPAA compliance.  Over the period of several months in the summer of 2018, Ahmed had multiple conversations with personnel from a British company, linked to Mr. Andrade, which was both trying to merge Mr. Andrade's patented design with AML Bitcoin, and to make the identification verification useful as a standalone tool.  Ahmed, along with her "technical" person (rather: another informant posing as such) discussed the development of the identification technology in detail, over several hours' time.  Ahmed's conversations with a witness to whom the government has given a trial subpoena, as well as  his co-workers from the British company, were recorded between mid-July and the end of September, 2018.

It is anticipated that one of the people in the British company may be called by the government at trial to testify about the state of the development of Mr. Andrade's technology. Ahmed's identity and relevant disclosures will be helpful, because she can testify about relevant conversations or authenticate the recordings regarding the state of the identity verification software in the summer of 2018.

Finally, Ahmed was quoted in the four search warrants relevant in this case, but the quote was out of context, misleading, and failed to contain relevant portions of her conversations that would have affected the probable cause assessment.  How the search warrants' affiants got Ahmed's information is unknown to the defense.  Ahmed's disclosures may help Mr. Andrade determine whether the misrepresentations or omissions *by the affiants* were recklessly or intentionally made, a necessary precursor to preparation of Mr. Andrade's potential *Franks* motion.

### 7.     CHS-21879 aka CHS Spindle aka Brad Morgan

An informant, who introduced himself as "Brad Morgan," who was called CHS Spindle or CHS-21879 by FBI agents, posed as technology consultant for Ahmed (requested informant

#6) in her conversations with personnel from the British company working on developing Mr. Andrade's patented design for biometric identification software into useable technology. Brad personally asked all the questions regarding technical specifications and architectural details of the software. His testimony could be used to authenticate the recordings and to testify about relevant technical details mentioned in his conversations.

Furthermore, as with Ahmed, "Brad" may have some knowledge relevant to what information known to him was told to the search warrants' affiants, which in turn is relevant to whether they recklessly or intentionally misrepresented the nature of their conversations in the search warrant applications.

## III. CONCLUSION.

For the foregoing reasons, including the reasons and reference to discovery mentioned in the supporting declaration, and based on any additional argument, evidence and authority presented to this Court prior to determination of this motion, Mr. Andrade requests disclosures of the identities, locations, and other relevant documentation, regarding the informants listed above.

DATED: November 1, 2024                Respectfully Submitted

/s/
_____
MICHAEL J. SHEPARD, Esq.
KERRIE C. DENT, Esq.
CINDY A. DIAMOND, Esq.
ATTORNEYS FOR DEFENDANT
ROWLAND MARCUS ANDRADE