ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    christiaan.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | CASE NO. CR. 20-00249 RS (LB) <br><br> **UNITED STATES' OPPOSITION TO DEFENDANT ANDRADE'S MOTION FOR INFORMANT DISCLOSURES [DKT. 381]** <br><br> Hearing Date; November 21, 2024 <br> Hearing Time: 10:30 a.m. <br> Court: Hon. Laurel Beeler, Courtroom B, 15th Fl. |

I. Introduction ........................................................................................................................... 1

II. Relevant Law ........................................................................................................................ 1

III. Argument .............................................................................................................................. 3

    A. Andrade Fails to Show that the Identities of the UCEs, OCE, and CHS Would be Helpful to His Defense ................................................................................... 3

        1. Andrade does not need the true identities to obtain testimony or authenticate records for trial ............................................................................. 3

        2. Andrade does not need the true identities to conduct interviews or compel the production of documents ..................................................... 4

        3. Andrade does not need, and is not entitled to, the true identities to prepare for a potential *Franks* motion ................................................. 5

    B. Andrade Is Not Entitled to Disclosure of Any Individual UCE, OCE, or CHS ................. 6

        1. UCE-8026 aka Mason Wong ............................................................................ 6

        2. UCE-7410 aka Bryant Lee ................................................................................ 7

        3. OCE-8149 aka James P. Woods ....................................................................... 7

        4. UCE-4473 aka Ravi Gupta ............................................................................... 8

        5. UCE-7780 ......................................................................................................... 8

        6. UCE-7180 aka Leena Ahmed .......................................................................... 8

        7. CHS-21879 aka Brad Morgan ......................................................................... 9

    C. Andrade Fails to Show That he is Entitled to Production of the Voluminous Documents he Requests Concerning the UCEs and CHS ............................................. 10

    D. Balancing the Public Interest Requires Denying Andrade's Motion to Disclose the UCEs and CHS ....................................................................................................... 11

IV. Conclusion .......................................................................................................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States v. Williams*, Case No. 10-cr-00230 SI, 2010 WL 3447704 (N.D. Cal. 2010) ...... 2, 3, 11, 12

*United States v. Conner*, Case No. 15-cr-00296 HSG, 2015 WL 8482205 (N.D. Cal. 2015) ........... passim

*United States v. Martinez*, Case No. 15-cr-00314 YGR (KAW), 2016 WL 1756216 (N.D. Cal. 2016).. 10

*Ayala v. Speckard*, 131 F.3d 62 (2d Cir. 1997) ...................................................................................... 12

*Rodriguez v. Miller*, 537 F.3d 102 (2d Cir. 2008) ................................................................................. 13

*Siegfriedt v. Fair*, 982 F.2d 14 (1st Cir.1992) ..................................................................................... 2, 9

*United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951) .................................................................... 4

*United States v. Amador-Galvan*, 9 F.3d 1414 (9th Cir. 1993) ........................................................... 2, 3

*United States v. Buffington*, 815 F.2d 1292 (9th Cir. 1987) ................................................................. 11

*United States v. Ellis*, 468 F.2d 638 (9th Cir. 1972) ............................................................................... 3

*United States v. Fixen*, 780 F.2d 1434 (9th Cir. 1993) ........................................................................... 2

*United States v. Gil*, 58 F.3d 1414 (9th Cir. 1995) ............................................................................... 12

*United States v. Gutierrez de Lopez*, 761 F.3d 1123 (10th Cir.) ............................................................ 3

*United States v. Guzman*, Case No. 08-cr-00521, 2009 WL 734084 (N.D. Cal. Mar. 2009) ............ 5, 10

*United States v. Kiser*, 716 F.2d 1268 (9th Cir. 1983) ................................................................... passim

*United States v. Kwok Cheung Chow*, 772 F. App'x 429 (9th Cir. 2019) ..................................... 2, 3, 12

*United States v. Mohamud*, 666 F. App'x 591 (9th Cir. 2016) ............................................................. 12

*United States v. Napier*, 436 F.3d 1133 (9th Cir. 2006) ............................................................. 6, 7, 8, 9

*United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969) ........................................................................ 3

*United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) .................................................................. 2

*United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) ..................................................................... 2, 10

*United States v. Roviaro*, 353 U.S. 53 (1957) ................................................................................ passim

*United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1989) ...................................................................... 2

*United States v. Si Keung Wong*, 886 F.2d 252 (9th Cir. 1989) .............................................................. 2

*United States v. Spires*, 3 F.3d 1234 (9th Cir. 1993) ......................................................................... 2, 11

*United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) ................................................................. passim

1  **I.   Introduction**

2  Defendant Andrade moves the Court to order the government to disclose the true identities of
3  five FBI undercover employees ("UCEs"), one FBI online undercover employee ("OCE"), and one
4  private citizen serving as an FBI confidential human source ("CHS").  *See generally* Def. Andrade's
5  Motion for Informant Disclosures, Dkt. 381 ("Mot. to Disclose UCEs").  The UCEs, OCE, and CHS
6  were used in the investigation that led to the indictment against him, and Andrade asserts that he is
7  entitled to their true identities because they would be helpful to his defense.  *Id.* at 4.  Andrade is wrong.
8  The Court should deny his motion in its entirety.  *First*, Andrade fails to demonstrate beyond mere
9  suspicion that the true identities of the UCEs, OCE, and CHS are helpful to his defense.  Further,
10 Andrade is not entitled to the requested identities in order to analyze the viability of a *Franks* motion
11 because he makes no detailed offer of proof—in affidavits or otherwise—alleging that specific portions
12 of the search warrant affidavits he is thinking of challenging contain deliberate falsehood or reckless
13 disregard for the truth.  *Second*, even if Andrade could somehow meet his burden of demonstrating that
14 the requested true identities are helpful to his defense, and he cannot, the balancing test set forth in
15 *United States v. Roviaro*, 353 U.S. 53, 62 (1957), weighs in favor of protecting the requested identities
16 from disclosure.  In any event, even if Andrade could adequately demonstrate that the requested
17 identities are helpful to his defense and outweigh the public's interest in ensuring the flow of
18 information from—and the safety of—UCEs, OCE, and CHS, this showing would only entitle him to an
19 *ex parte*, *in camera* hearing where the Court would examine the UCEs and CHS outside the presence of
20 the defense in order to determine whether to disclose the requested identities.

21 **II.   Relevant Law**

22 To gain access to the identities of the UCEs, OCE, or CHS, "the defendant must articulate facts
23 showing that 'in an actual trial of a federal criminal case,' the informant [or UCE] can provide
24 information 'relevant and helpful to the defense of an accused' or 'essential to a fair determination of [a]
25 cause'—especially where the informant [or UCE] is an active participant or witness to the charged
26 offense.  *United States v. Conner*, Case No. 15-cr-00296 HSG, 2015 WL 8482205, at *3 (N.D. Cal. Dec.
27 10, 2015) (quoting *Roviaro v. United States*, 353 U.S. 53, 55 (1957) (holding the government must
28 disclose the identity of a UCE who had taken a material part in bringing about the defendant's


possession of certain drugs, been present with the defendant at the occurrence of the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged); *see also United States v. Williams*, Case No. 10-cr-00230 SI, 2010 WL 3447704 (N.D. Cal. Aug. 30, 2010).

"Disclosure of an informant's identity is proper when there is more than a mere suspicion of the value of the informant's information." *Connor*, 2015 WL 8482205, at *3 (quoting *United States v. Amador-Galvan*, 9 F.3d 1414, 1417 (9th Cir. 1993)) (internal quotations and additional citation omitted) "Defendant carries the burden of demonstrating the need for disclosure." *Connor*, 2015 WL 8482205, at *3 (citing *United States v. Fixen*, 780 F.2d 1434, 1439 (9th Cir. 1993)). "If the defendant makes a minimum threshold showing that disclosure would bear on at least one defense, an *in camera* hearing with the informant is justified. *Id.* (citing *United States v. Spires*, 3 F.3d 1234, 1238 (9th Cir. 1993)).

"Should the Court conclude that disclosure of the informant's [or UCE's] identity might be necessary, the Court must balance several factors, including, but not limited to: (1) the degree of the informant's involvement in the criminal activity; (2) the relationship between the defendant's asserted defense and the likely testimony of the informant; and (3) the government's interest in nondisclosure." *Connor*, 2015 WL 8482205, at *3 (citing *Roviaro*, 353 U.S. at 62; *United States v. Si Keung Wong*, 886 F.2d 252, 255-56 (9th Cir. 1989)). "This assessment requires 'balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.'" *Id.* (quoting *Roviaro*, 353 U.S. at 62). "Other 'relevant factors' include consideration of the informant's safety following disclosure." *Connor*, 2015 WL 8482205, at *3 (quoting *Wong*, 886 F.2d at 256).

Further, deciding to withhold the identity of testifying agents at trial is within this Court's discretion. *United States v. Kwok Cheung Chow*, 772 F. App'x 429, 431 (9th Cir. 2019) (quoting *United States v. Sherlock*, 962 F.2d 1349, 1357 (9th Cir. 1989) (internal quotation omitted)). Several circuits, including the Ninth Circuit, have concluded that it is appropriate for witnesses to use a pseudonym, where the government's interests in protecting the witness from harm or protecting the integrity of investigations outweighs the defendants' interests in learning the true name of the witness. *See United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) (allowing informant testimony without disclosing true name); *Siegfriedt v. Fair*, 982 F.2d 14, 18 (1st Cir.1992); *United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) (allowing two witnesses to testify anonymously about general information about

operation of gang); *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) (finding "where there is a threat to the life of the witness the right of the defendant to have the witness' true name, address and place of employment is not absolute"); *United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1138-49 (10th Cir.), *cert. denied*, 135 S. Ct. 768 (2014) (approving of witnesses who testified anonymously where defendant was able to effectively cross-examine them).

### III. Argument

#### A. Andrade Fails to Show that the Identities of the UCEs, OCE, and CHS Would be Helpful to His Defense

Andrade makes three arguments to support his motion for the true identities of UCEs, OCE, and CHS, but each argument fails to demonstrate "that he has more than a mere suspicion that the [UCEs, OCE, and CHS] ha[ve] information which will prove relevant and helpful or will be essential to a fair trial." *United States v. Amador-Galvan et al.*, 9 F.3d 1414, 1417 (9th Cir. 1993).

##### 1. Andrade does not need the true identities to obtain testimony or authenticate records for trial

First, Andrade argues that he needs the true identities in order to have the UCEs, OCE, and/or CHS recount conversations with Andrade or authenticate relevant recorded conversations. Mot. to Disclose UCEs, at 7. But Andrade already has the ability to ensure that the UCEs recount their conversations and authenticate relevant recordings. He can issue subpoenas to the FBI using the UCEs' undercover identities and they can recount their conversations and authenticate recordings at trial while testifying using those undercover identities. *See, e.g.*, *Chow*, 772 F. App'x at 431; *Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997); *United States v. Ellis*, 468 F.2d 638, 639 (9th Cir. 1972). Andrade will not need to waive his Fifth Amendment rights. Revealing the UCEs' and CHS's true identities does nothing to help Andrade's defense.

Andrade cites no on-point caselaw to support his argument. Instead, he relies on *Williams*, a felon-in-possession of a firearm case that involved a confidential informant—rather than an UCE—whose testimony was valuable to the defendant's entrapment defense, particularly where the interactions between the informant and the defendant were not recorded. 2010 WL 3447704, at *2. Unlike *Williams*, which involved a private citizen informant the defendant could not locate absent a true identity, Andrade's case involves UCEs whom he can serve with a subpoena. Further, Andrade's case

does not involve an entrapment defense or any defense remotely similar to *Williams* because this case is not a hand-to-hand felon-in-possession or drug distribute case, as are almost all the cases cited by Andrade in his motion. The UCEs here were not "alone and unobserved [with Andrade] during the crucial occurrence for which he was indicted." *Roviaro*, 353 U.S. at 63. And Andrade makes no claim that the UCEs' testimony "might … disclose[] an entrapment" or throw "doubt upon [Andrade's] identity." *Id.* Indeed, Andrade's motion merely speculates that the UCEs' true identities will help his defense. He does not explain with any specificity how any of the true identities will actually help his defense.

> **2.  Andrade does not need the true identities to conduct interviews or compel the production of documents**

Second, Andrade argues that he needs the UCE and CHS identities to interview them and to compel the production of documents that could lead to additional evidence. Mot. to Disclose UCEs, at 7. This is precisely the "mere suspicion" that the law prohibits. *Connor*, 2015 WL 8482205, at *3. Revealing their true identities does not impact Andrade's ability to interview witnesses or compel the government's production of documents about them. Andrade can issue subpoenas to the FBI using undercover identities. Further, FBI employees and former employees will not speak with defense counsel absent a subpoena issued in compliance with what are known as *Touhy* regulations. *See United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *Touhy* regulations govern how FBI employees and former employees respond to requests for information from private parties such as Defendant Andrade and his counsel. Therefore, Andrade's argument that he needs the UCEs' true identities to conduct pretrial interviews is doubly misplaced because he can subpoena the UCEs and because they will not speak with him anyway absent a subpoena and compliance with *Touhy* regulations.

Similarly, knowing the UCEs' true identities in no way impacts Andrade's ability to compel the production of documents that could lead to additional evidence. The government is well-aware of its *Brady*, *Giglio*, and Rule 16 obligations. There is no evidence in the record—and Andrade cites no evidence—indicating that the government has possession of evidence favorable and material that has not been disclosed. In fact, the cases Andrade relies on actually support the government. *See Connor*, 2015 WL 8482205, at *6 (citing *United States v. Guzman*, Case No. 08-cr-00521, 2009 WL 734084, at *9

(N.D. Cal. Mar. 2009), which denied defendant's *Brady*/*Giglio* motion filed in connection with a motion to disclose confidential informant in the absence of specific argument about specific documents). Indeed, Andrade is engaging in "mere suspicion" that defeats his motion. Andrade states that he needs the UCEs' true identities "to compel the production of documents, which in turn *may* lead Mr. Andrade to additional evidence that will help his defense." Def. Mot. to Disclose UCEs, at 7. But Andrade cites no evidence and makes no argument about why or how these additional documents might lead him to additional helpful evidence. And given the government's ongoing discovery obligations, Andrade cannot demonstrate how knowing the UCEs' true identities will help him identify additional helpful evidence beyond what the government is already obligated to produce.

### 3. Andrade does not need, and is not entitled to, the true identities to prepare for a potential *Franks* motion

Third, Andrade argues that he needs the true identities of the UCEs because they have relevant information about the accuracy of facts asserted by three FBI affiants who applied for search warrants to search Andrade's offices, email, and home. *Id.* at 8. Andrade's argument is flawed. The true identities of the UCEs do not help Andrade because he can use their undercover identities to investigate the truthfulness and validity of the search warrants—their true identities do nothing to further Andrade's defense. Andrade's argument also ignores the relevant law. Where a defendant seeks a *Franks* hearing based on a claim that "the affidavit misrepresents or invents information supplied by a confidential informant[,] the public interest protected in *Roviaro* and *McCray* imposes unique procedural requirements and evidentiary burdens on the defendant…." *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983) (internal citations omitted). Because "there is a presumption that the officer who relies on an informant reports valid information and relies on his source in good faith[,] to show entitlement to a *Franks* hearing, the defendant must make specific allegations that indicate the portions of the warrant claimed to be false." *Id.* (internal citations and quotations omitted). "There must be a contention of deliberate falsehood or reckless disregard for the truth," and "[t]he allegations must be accompanied by a detailed offer of proof, preferably in the form of affidavits." *Id.* (internal citations and quotations omitted).

Here, Andrade makes no detailed offer of proof—in affidavits or otherwise—alleging that

specific portions of the warrant affidavits contain deliberate falsehood or reckless disregard for the truth. Therefore, under the legal standard set forth in *Kiser*, F.2d at 1271, his motion fails. *See also United States v. Napier*, 436 F.3d 1133, 1138 (9th Cir. 2006) (upholding denial of release of informant's true identity at the *Franks* stage because defendant failed to make "a substantial preliminary showing of false statements in an affidavit involving a confidential informant"); *United States v. Stanert*, 762 F.2d 775, 782-83 (9th Cir. 1985) (upholding denial of *in camera* hearing with confidential informant because defendant failed to make a sufficient offer of proof). Even if Andrade could somehow satisfy the substantial preliminary showing requirement, that would not result in the release of the UCEs' true identities. Instead, the Court would hold "an *ex parte*, *in camera* hearing to evaluate the defendant's claims and to determine whether the defendant 'is entitled to an open evidentiary hearing on his *Franks* claim.'" *Napier*, 436 F.3d at 1138 (quoting *Kiser*, 716 F.2d at 1273).

**B.     Andrade Is Not Entitled to Disclosure of Any Individual UCE, OCE, or CHS**

In addition to Andrade's arguments for disclosure failing generally, as discussed above, a closer examination of his arguments for disclosing the true identity of each specific UCE, OCE, and CHS further demonstrates that his motion for disclosure must be denied because Andrade cannot meet his burden of demonstrating that their true identities are helpful to his defense.

**1.     UCE-8026 aka Mason Wong**

Andrade argues that knowing the identity of UCE-8026 (aka Mason Wong) would be helpful to his defense because Wong "can testify that Mr. Andrade personally and immediately clarified misconceptions regarding the nature of his AML Token sale to a customer of his public-ICO ["initial coin offering"] sale of AML Tokens, as a follow-up to a complaint." Def. Mot. to Disclose UCEs, at 10. Andrade emphasizes that "Wong's testimony would be the only way to present this exculpatory conversation to the jury [because] there is no recording of this conversation…."[1] *Id.* Andrade also argues that knowing Wong's true identity would be helpful to his defense because Wong may be able to shed light on whether the four affidavits supporting the Andrade search warrants contain omissions or misstatements. *Id.* at 10-11. Andrade is wrong because he can obtain the information he purportedly

---

[1] While there is no recording of this telephone conversation, Mason Wong wrote an FBI 302 memorializing the conversation. *See* FBI-MAIN-0000219.

needs by calling Mason Wong under his undercover name as a witness at trial or by cross examining Wong if the government calls him as a witness. Revealing Wong's identity does nothing to help Andrade.

Similarly, revealing Wong's true identity does not help Andrade investigate whether to file a *Franks* challenge to the four Andrade search warrants. As discussed above, Andrade has failed to satisfy his burden of demonstrating a "deliberate falsehood or reckless disregard for the truth," that is "accompanied by a detailed offer of proof." *Kiser*, 716 F.2d at 1271; *see also Napier*, 436 F.3d at 1138; *Stanert*, 762 F.2d at 782-83.

### 2. UCE-7410 aka Bryant Lee

Andrade's motion to disclose the true identity of UCE-7410 (Bryant Lee) fails for the same reason that it fails for Mason Wong—it is not helpful to his defense. Andrade contends that he needs to know Bryant Lee's true identity to authenticate recordings of conversations involving Lee and Andrade. Def. Mot. to Disclose UCEs, at 11. As discussed in detail above, however, Andrade does not need Wong' true identity to authenticate recorded conversations. Andrade can subpoena Wong under his FBI identifier. In addition, Andrade claims he needs Lee's true identity because it could lead to "evidence helpful in a *Franks* motion." *Id.* But again, Andrade has failed to satisfy his burden of demonstrating a "deliberate falsehood or reckless disregard for the truth," that is "accompanied by a detailed offer of proof." *Kiser*, 716 F.2d at 1271; *see also Napier*, 436 F.3d at 1138; *Stanert*, 762 F.2d at 782-83.

### 3. OCE-8149 aka James P. Woods

Andrade moves for disclosure of the true identity of FBI online undercover employee ("OCE") OCE-8149 (James Woods) because Woods can testify about a conversation he participated in with Andrade, authenticate a recording of him and Andrade (UCE Bryant Lee was also present), and potentially be a witness at a *Franks* hearing. Def. Mot. to Disclose UCEs, at 11-12. Again, Andrade's motion should be denied because knowing James Woods' true identity does not help his defense. Andrade can subpoena Woods for trial using Woods' OCE name or number. And Andrade's motion to disclose Woods' identity in order to evaluate whether to file a *Franks* motion fails for the reasons discussed above. Andrade completely fails to satisfy his burden of demonstrating a "deliberate falsehood or reckless disregard for the truth," that is "accompanied by a detailed offer of proof." *Kiser*,

716 F.2d at 1271; *see also Napier*, 436 F.3d at 1138; *Stanert*, 762 F.2d at 782-83. Andrade does not even identify the sections of the search warrant affidavits that could be undermined by Woods' testimony, let alone identifying with any specificity how Woods would undermine the affiants' statements.

### 4. UCE-4473 aka Ravi Gupta

Andrade moves for disclosure of the true identity of UCE-4473 (Ravi Gupta) so that he can call Gupta as a trial witness to impeach Jack Abramoff's trial testimony. Mot. to Disclose UCEs, at 12. Andrade also claims that he needs to know Gupta's true identity in order to authenticate documents and recordings for introduction as trial exhibits and to introduce Gupta's testimony about his conversations pertaining to AML Bitcoin and/or AML Tokens. *Id.* Again, Andrade's motion should be denied because Andrade's motion engages in "mere suspicion" and because knowing Ravi Gupta's true identity does not help his defense. Andrade can subpoena Gupta for trial using his UCE identity.

### 5. UCE-7780

Andrade moves for disclosure of UCE-7780's true identity because UCE-7780 "recorded the two unintelligible recordings of [Ravi] Gupta … and [Jack] Abramoff." Mot. to Disclose UCEs, at 12-13. Andrade claims that UCE-7780's true identity would be helpful to his defense because "if Gupta is not available and/or is unwilling to speak to the defense [UCE-7780] can provide first-hand knowledge about Abramoff's and Gupta's conversations." *Id.* at 12-13. Again, Andrade's motion should be denied because knowing UCE-7780's true identity does not help his defense. Andrade can subpoena UCE-7780 for trial.

### 6. UCE-7180 aka Leena Ahmed

Andrade moves to disclose the true identity of UCE-7180 (Leena Ahmed) because Ahmed "can testify about relevant conversations or authenticate the recordings regarding the state of the identity verification software in the summer of 2018." *Id.* at 13. Further, Andrade states that "Ahmed's disclosures may help … preparation of Mr. Andrade's potential *Franks* motion." *Id.*

Andrade again fails to demonstrate that disclosure of Ahmed's true identity will help his defense. Andrade can issue a trial subpoena to the FBI for UCE-7180 to obtain her trial testimony. And Andrade's motion to disclose Ahmed's identity in order to evaluate whether to file a *Franks* motion

1  completely fails to satisfy Andrade's burden of demonstrating a "deliberate falsehood or reckless
2  disregard for the truth," that is "accompanied by a detailed offer of proof." *Kiser*, 716 F.2d at 1271; *see*
3  *also Napier*, 436 F.3d at 1138; *Stanert*, 762 F.2d at 782-83.  Andrade does not identify with any
4  specificity how Woods would undermine the affiants' statements.  In fact, Andrade does not even
5  identify the sections of the search warrant affidavits that could be undermined by Ahmed's testimony.
6  Andrade simply concludes: "Ahmed's disclosures may help Mr. Andrade determine whether the
7  misrepresentations or omissions by the affiants were recklessly or intentionally made." Mot. to Disclose
8  UCEs, at 13.  Andrade's motion completely lacks an offer of proof and therefore the Court should deny
9  his motion to disclose Ahmed's identity.

### 7.    CHS-21879 aka Brad Morgan

Andrade also moves for disclosure of the true identity of an FBI Confidential Human Source referred to as Brad Morgan. *Id.* at 13-14.  Andrade claims that Morgan's identity is helpful to his defense because at trial he could authenticate recordings of a conversation involving "personnel from the British company working on developing Mr. Andrade's patented design for biometric identification software into usable technology." *Id.* at 14.  Andrade also claims that Morgan "could be used to … testify about relevant technical details mentioned in his conversations."  Finally, Andrade states that Morgan "may have some knowledge relevant" to Andrade's preparation of a potential *Franks* motion. *Id.*

Morgan's true identity is not helpful to the defense.  First, he is not needed to authenticate the recordings of conversations with personnel from the above-referenced British company because other witnesses can authenticate the recording and because the parties can stipulate to the recording's authenticity, if necessary.  Second, Andrade completely fails to demonstrate why the recording is helpful to his defense.  Andrade fails to demonstrate how Morgan's potential testimony concerning the technical details of the biometric identification software referenced in the recorded conversation would be helpful to the defense.  Andrade cannot meet his burden of proof; therefore, the Court must deny his motion.

Finally, Andrade's claim that Morgan "may have some knowledge relevant" to Andrade's preparation of a potential Franks motion fails to satisfy Andrade's burden of demonstrating how Morgan's true identity would be helpful to the defense.  Andrade engages in "mere suspicion" and

speculation; he fails to demonstrate with any concreteness whatsoever that Morgan's identity would be helpful to his defense.

### C. Andrade Fails to Show That he is Entitled to Production of the Voluminous Documents he Requests Concerning the UCEs and CHS

The Court should deny Andrade's request for the production of documents related to the UCEs and CHS. In addition to seeking their true identities, Andrade's motion contains a footnote asking the Court to order the government to produce the following information regarding the UCEs, OCE, and CHS: (1) True locations; (2) Most recent contact information; (3) Documents about prior activity as an informant; (4) Documents regarding their undercover work in this case, or in Operation Clutch Council more broadly, related to AML Bitcoin or AML Tokens; and (5) Documents regarding any compensation or other incentives. Mot. to Disclose UCEs, at 4 n.2. Andrade claims that "[t]hese disclosures are permitted in this District when an informant's identity is found to be relevant." *Id.* (citing *United States v. Martinez*, Case No. 15-cr-00314 YGR (KAW), 2016 WL 1756216 (N.D. Cal. May 3, 2016). Andrade is wrong. He is not entitled to additional documentation beyond what the government has already produced. And he cites no on-point caselaw to support his claim.

First, the government is well-aware of its "continuing duty to produce any *Brady*/*Giglio* materials, with or without a court order." *Connor*, 2015 WL 8482205, at *6. Second, Andrade has offered no evidence nor made any viable claim whatsoever in the instant motion "showing that the government has possession of evidence favorable and material within the meaning of *Brady*/*Giglio* that has not been disclosed." *Id.* (citing *United States v. Guzman*, Case No. 08-cr-00521, 2009 WL 734084, at *9 (N.D. Cal. Mar. 17, 2009) (denying defendant's *Brady*/*Giglio* motion for documents in connection with a motion to disclose confidential informant in the absence of specific argument about specific documents). He cites *United States v. Martinez* to support his claim for documents, but *Martinez* is completely distinguishable because it involved a private citizen informant rather than UCEs and the parties did not dispute that the government would turn over "the informant's criminal history and other relevant impeachment materials." 2016 WL 1756216. In *Martinez*, the issue was about the timing of the disclosures, not whether the government would make the disclosures. Likewise, *United States v. Williams* and *United States v. Buffington* are distinguishable because they involved confidential

UNITED STATES OPPO. TO MOT. FOR DISCLOSURES
20-CR-00249 RS (LB)                                        10

informants rather than FBI UCEs and because, unlike here, the confidential informant was helpful to the defense. *Williams*, 2010 WL 3447704; *United States v. Buffington*, 815 F.2d 1292, 1299-1300 (9th Cir. 1987) (reversing conviction because trial court did not release informant's identity and communications and therefore informant could not be called as a trial witness).

### D. Balancing the Public Interest Requires Denying Andrade's Motion to Disclose the UCEs and CHS

Even if Andrade could somehow meet his burden of demonstrating that the UCEs' and CHS's true identities would be helpful to his defense, and he cannot, the Court should still deny Andrade's motion because it fails the *Roviaro* balancing test. *Williams*, 2010 WL 3447704, at *2 (citing *Roviaro*, 353 U.S. at 62). Where the Court concludes that the informant's identity might be necessary, the Court must conduct an *in camera*, *ex parte* hearing to evaluate whether to release the true identities of the undercover agents and/or confidential informants. *Connor*, 2015 WL 8482205, at *3 (citing *Spires*, 3 F.3d at 1238. If the Court concludes that disclosing the true identities might be necessary, "the Court must balance several factors, including, but not limited to: (1) the crime charged; (2) possible defenses; and (3) the possible significance of the informant's testimony." *Id.* (citing *Roviaro*, 353 U.S. at 62). This assessment requires 'balancing the public's interest in protecting the flow of information against the individual's right to prepare his defense.'" *Id.* (quoting *Roviaro*, 353 U.S. at 62). "Other relevant factors include consideration of the informant's personal safety following disclosure." *Id.* (internal citation and quotation omitted).

Andrade is charged with wire fraud and money laundering. The Indictment against him lays out the alleged scheme to defraud and the material misstatements and omissions made in furtherance of the fraud. Dkt. 1, at 3-7. Unlike the hand-to-hand firearm and drug cases cited in Andrade's motion, this case involves numerous witnesses who will testify to the scheme, misstatements, and omissions. The informants at issue were not central to the alleged criminal activity or the charges in the case. Further, Jack Abramoff is charged as a co-conspirator in a separate case, which further distinguishes this case from hand-to-hand cases involving only the defendant and an informant. *See United States v. Jack Abramoff*, 20-cr-00260 RS (N.D. Cal. 2020). The charges in this case are not closely related to the UCEs and CHS "as to make [their] identity and testimony highly material at trial." *Roviaro*, 353 U.S. at

63. The nature of the crime, therefore, weighs against disclosure.

Second, the identities of the UCEs and CHS are neither relevant nor necessary to the defense. *Williams*, 2010 WL 3447704, at *3. The informants are not "the only witness[es] for many of the alleged conversations prior to the transaction." *Id.* In fact, Andrade has not articulated with any clarity or specificity beyond mere suspicion how the true identities of the UCEs and CHS will help his defense that Jack Abramoff, and not Andrade, intended to defraud AML Bitcoin investors. Andrade can cross-examine Abramoff at trial, or, if necessary, subpoena Abramoff to testify as a defense witness. This is not even close to a case where "John Doe was his one material witness." *Roviaro*, 353 U.S. at 64.

Third, as Andrade's motion makes clear, the UCEs' and CHS's potential testimony is not "especially significant." *Williams*, 2010 WL 3447704, at *3. The case involves numerous recorded conversations, thousands of emails, thousands of documents, testimony from numerous victims, and testimony from those involved in the operation of AML Bitcoin and related entities. The UCE and CHS testimony is not essential.

On the other hand, the public and the government have a substantial interest in protecting the UCEs' and CHS's true identities. Disclosing their identities endangers the government's ability and the public's "interest in protecting the flow of information" necessary to investigate and stop crime. *Roviaro*, 353 U.S. at 62. Further, disclosure of the UCEs' and CHS's identity could jeopardize their safety and the integrity of other unrelated investigations. *See Chow*, 772 F. App'x at 431; *United States v. Mohamud*, 666 F. App'x 591, 594 (9th Cir. 2016) ("district court acted within its discretion in excluding information about the true identities of FBI undercover agents … and [an] FBI undercover contractor") (citing *United States v. Gil*, 58 F.3d 1414, 1421 (9th Cir. 1995) (the court "must weigh the defendants' right to confront the government's witnesses against the government's interest in not compromising investigations and in protecting the informant's identity")); *Speckard*, 131 F.3d at 72 ("The state interest in maintaining the continued effectiveness of an undercover officer is an extremely substantial interest, and … this interest would be seriously prejudiced by requiring the officer to testify in an open courtroom."); *Rodriguez v. Miller*, 537 F.3d 102, 110 (2d Cir. 2008) ("It is clear that the State has an 'overriding interest' in protecting the identity of its undercover officers.").

Under the circumstances of this case, the FBI has serious concerns about the disclosure of the

UCEs', OCE's, and CHS's true identities and the consequences to both the FBI and the public that could result from such disclosure. Given that the defendant's countervailing interest in releasing the true identities is minimal, weighing the factors set forth in the *Roviaro* balancing test should result in the Court denying Andrade's motion for disclosure.

## IV.  Conclusion

For all the reasons set forth above, the United States respectfully requests that the Court deny Defendant Andrade's Motion for Informant Disclosures, Dkt. 381, in its entirety.

DATED: November 8, 2024

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

/s/
CHRISTIAAN HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney