**KING & SPALDING LLP**
MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone:    +1 415 318 1200
Facsimile:    +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
 kdent@kslaw.com
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394
Facsimile:    +1 202 626 3737

CINDY A. DIAMOND (CA SBN 124995)
ATTORNEY AT LAW
58 West Portal Ave, # 350
San Francisco, CA 94127

408.981.6307
cindy@cadiamond.com

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>ROWLAND MARCUS ANDRADE,<br><br>　　　　Defendant. | Case No.: 3:20-CR-00249-RS-LB<br><br>**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**<br><br>Judge Beeler<br>November 21, 2024<br>10:30 a.m. |

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
*UNITED STATES v. ROWLAND MARCUS ANDRADE*, Case # 3:20-CR-00249-RS-LB - Page 1

**TABLE OF CONTENTS**

| Item | Page |
|---|---|
| I. INTRODUCTION | 5 |
| ARGUMENT | 7 |
| II. UNDER THE BALANCING TEST IN *ROVIARO*, MR. ANDRADE IS ENTITLED TO DISCLOSURE | 7 |
|     A. The Opposition is Based on Cases Involving Violence, Which Do Not Apply to This Case | 7 |
|     B. There is No Justification to Allow Informants to Testify Using Pseudonyms | 8 |
|     C. The *Touhy* Regulations Do Not Protect the Government from Disclosure of Informants in Criminal Cases | 10 |
|     D. Disclosure of Each of the Requested Informants Should be Ordered | 11 |
|         1. The Informant Requests for a Future *Franks* Motion | 11 |
|         2. Particular Informants and How They are Helpful | 13 |
|     E. Mr. Andrade is Entitled to All the Supporting Information He Requested | 14 |
| III. CONCLUSION | 15 |

# TABLE OF AUTHORITIES

**Cases**                                                    **Page #**

*Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, (9th Cir. 1994) ...... 10 & fn. 2

*Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092 (9th Cir., 2001) ....................................................... 11

*Roviaro v. United States*, 353 U.S. 53 (1957) ................................................................ *passim*

*Siegfriedt v. Fair*, 982 F.2d 14, (1st Cir. 1992) ................................................................... 9

*Smith v. Illinois*, 390 U.S. 129 (1968) ............................................................................... 9

*United States v. Bahamonde*, 445. F.3d 1225 (9th Cir. 2005) ........................................................ 10

*United States v. Buffington*, 815 F.2d (9th Cir. 1987) .............................................................. 14

*United States v. Chow*, 772 Fed. Appx. 429 (9th Cir. 2019) .......................................................... 9

*United States v. Conner*, 2015 U.S. Dist. LEXIS 166564 (N.D. Cal. 2015) ........................................... 5

*United States v. Gutierrez de Lopez*, 761 F.3d 1123 (10th Cir.) .................................................... 9

*United States v. Kiser*, 716 F.2d 1268 (9th Cir. 1983) .......................................................... 11, 12

*United States v. Martinez*, 2016 U.S. Dist. LEXIS 59481 (N.D. Cal. 2016) ......................................... 14

*United States v. Napier*, 436 F.3d 1133 (9th Cir., 2006) ...................................................... 11-12

*United States v. Palermo*, 410 F.2d 468 (7th Cir. 1969) ............................................................. 9

*United States v. Ramos-Cruz*, 667 F.3d 487 (4th Cir. 2012) ......................................................... 9

*United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) ............................................................. 8

*United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1992) ..................................................... 9, fn. 1

*United States v. Stanert*, 762 F.2d 775 (9th Cir. 1985) ........................................................... 11

*United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ..................................................... 5, 10

*United States v. Williams*, 2010 U.S. Dist. LEXIS 95781 (N.D. Cal. 2010) ......................................... 14

**Regulations**

28 C.F.R. § 1621(d) ..........................................................................................................10

## I. INTRODUCTION

The government's opposition misses its mark. It acknowledges that disclosure "is proper when there is more than a mere suspicion of the value of the informant's information," Gov. Opp., ECF-385 at 2:4-5, *citing United States v. Conner*, 2015 U.S. Dist. LEXIS 166564 (N.D. Cal. 2015) and that the Court must the protection of the flow of information against the defendant's "right to prepare his defense" as applied to the facts of each case, see Gov. Opp., ECF-385 at 2:11-19, *citing Roviaro v. United States*, 353 U.S. 53 (1957) (*Roviaro*). Although the Opposition repeatedly claims that Mr. Andrade failed to show even "mere suspicion" of the informants' value, *see* Gov Opp, ECF-385 at 3:9, 4:13, 5:3, 8:11, 9:28, and 12:5, but it never goes beyond the rhetorical repetition to address the essence of the showing in Mr. Andrade's motion, *see* Def. Mtn, ECF-381 at 10-14, nor in the Declaration of Counsel and *ex parte* filing, and its Opposition fails to acknowledge that helpfulness is viewed from the eye of the defendant, *see*, *Roviaro* at 64 and Def. Mot., ECF-381, at 6. Nor in addressing the other side of the balance does the Opposition even try to argue that any of the requested informants would face danger if Mr. Andrade were given their true identities – it offers no facts to be weighed against the defendant's demonstrated need for these informants.

Instead of disputing or presenting facts to shift the balance against disclosure, the bulk of the Opposition rests on four broad asserted propositions of law: (a) that none of the informants are important enough to justify disclosure because they are not "central to the alleged criminal activity," as in "hand-to-hand" cases, Gov. Opp., ECF-385 at 4:4; 23-26; (b) that at best Mr. Andrade is entitled only to testimony of the informants under false persona, in order to avoid jeopardizing their safety, *see, e.g., id.* at 3:12-5:9; 12:17-18; (c) that regulations based on *United States ex. rel. Touhy v. Ragen*, 340 U.S. 462 (1951) ("*Touhy*"), forbid Mr. Andrade from subpoenaing or even talking to the informants absent compliance with requirements such as that the defendant must state in writing, and with as much specificity as possible, the nature and relevance of the information sought, and that the defendant obtain the approval of a Department of Justice official, Gov. Opp., ECF-385 at 4:16-21; and (d) that in order to obtain disclosure for

1  purposes of a *Franks* motion, there must be an offer of proof identifying falsities in the search
2  warrant affidavits and a contention of deliberate disregard for the truth. Opp. at 5:28-5:2.

3   None of these arguments have any merit whatsoever.  The first two propositions – that the
4  informant must be central to the crime, and that they can only testify under false persona -- treat
5  this case as if it were a crime of violence or a drug transaction in which there a single "critical
6  occurrence" in which the informant must have been involved in order to require disclosure, and
7  for which the informant needs protection.  But this case is an alleged white collar fraud, in which
8  there is no single "critical occurrence" but rather many months of wide-ranging activities and
9  statements; under these circumstances, intent will be determined from a collection of smaller
10 events and statements of which the informants are aware (any of which could have potentially
11 critical exculpatory evidence). Testimony under a false name is permissible only when necessary
12 for safety purposes after a showing of danger has been made; the Opposition makes no such
13 effort, because there is no danger to witnesses in this white collar fraud case.

14  No better are the last two claimed propositions.  *Touhy* and regulations based on its
15 holding are inapplicable to federal criminal cases and would be unconstitutional if so applied.
16 And, finally, the defendant's showing of need and relevance was properly made *in camera*, and is
17 not missing as the government asserts. None of the few remaining arguments in the Opposition
18 fare any better.

19  Having failed to weigh in meaningfully on the *Roviaro* balancing, and having failed to be
20 rescued by any propositions of law, all the government can do is assert that the disclosures Mr.
21 Andrade is requesting are unnecessary because "there is no evidence in the record . . . indicating
22 that the government has possession of evidence favorable and material that has not been
23 disclosed." Opp at 4:25-27.  Absent a search of the government's files, it is hard to imagine how
24 any defendant could offer such proof.  But Mr. Andrade has already – and repeatedly – generated
25 something that may be even better: on repeated occasions, he has obtained exculpatory
26 information only after the government claimed it had produced all exculpatory information and
27 resisted requests for productions, only to see that after Mr. Andrade months of requests, or after
28 filing motions to compel, the government produced exculpatory material such as records from

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
UNITED STATES v. ROWLAND MARCUS ANDRADE, Case # 3:20-CR-00249-RS-LB - Page 6

his co-schemer's phone, documents obtained from a search of Maria Butina's apartment, or even copies of Mr. Andrade's own emails.

## ARGUMENT

**II.    UNDER THE BALANCING TEST IN *ROVIARO*, MR. ANDRADE IS ENTITLED TO DISCLOSURE.**

    **A.    The Opposition is Based on Cases Involving Violence, Which Do Not Apply to This Case.**

For the most part, the law on informant disclosure is well-established and Mr. Andrade and the government do not disagree about the parameters, that the Court must employ a balancing test. (Def. Mot. ECF-381 at 5:22-6:9; Gov. Opp. ECF-385 at 1:22-2:19.) Mr. Andrade asserts a need for the informant. The government's contrary argument relies on cases involving very different types of crimes – crimes that have one "critical occurrence" – and very different risks to the informants.

*Roviaro*, 353 U.S. 53, involved a drug transaction, in which a series of meeting preceded a drug sales observed by an informant. The government asserts that *Roviaro* "weighs in favor of protecting the requested identities from disclosure" (Gov. Opp, ECF-385, at 1:15-16) without any citation for that conclusion. In fact, *Roviaro* compels only that this Court engage in the balancing test both the government and Mr. Andrade agree must be employed. The facts of *Roviaro* do not "weigh in favor of protecting" the informants in this case, because the drug-deal at-issue there is not comparable to the scheme to defraud charged in Mr. Andrade's case, and the claimed dangers to the informants also differ dramatically.

*Roviaro* is a good example of how a drug case, or a case with violence, is unlike Mr. Andrade's case, and entails a very different balancing. The indictment in his case does not contain a list of alleged material misstatements allegedly made, nor does it attribute any specific misstatement to Mr. Andrade. Mr. Andrade is accused of working with others "known or unknown," ECF-1 at 6, including Jack Abramoff, the alleged co-schemer, in a complex financial fraud with a huge volume of documents and communications. The evidence is replete with

documents and communications between Abramoff, his associates, his associates with other associates, and many with Mr. Andrade as well. The result is that the case will have many sources of information, over a substantial period of time and from a substantial number of witnesses and documents, which will provide evidence bearing on Mr. Andrade's intent – any piece of which could provide important exculpatory evidence.

Despite the breadth and complexity of this case and the many informants used, Mr. Andrade has not gone on a broad fishing expedition here. Most of the informants used by the government are **not** the subject of this motion. As demonstrated through the *ex parte* submission, each requested informant was involved with one or more specific portions of events that, when strung together, relay facts from which the intent to defraud may - or may not - be deduced. In this context, when the Court views each informant request individually, and in light of the material revealed to the Court under seal, Mr. Andrade has established the need for each of the requested informants, with little or nothing on the other side of the balance.

**B.    There is No Justification to Allow Informants to Testify Using Pseudonyms.**

Without applicable authority, the government argues that the Court should permit the informants to testify using pseudonyms. Gov. Opp., ECF-385 at 2:20-21. Cases cited for this proposition involve dissimilar facts. In the lone published Ninth Circuit case cited, *United States v. Rangel*, 534 F.2d 147 (9th Cir. 1976) where an informant was permitted to testify under an assumed name, the facts established that there was a need to protect the physical safety of the informant: "[T]he government made an adequate representation that the informant's life had been threatened, causing him to relocate his family . . . [and] evidence adduced in the lower court's *in camera* hearing on this issue further satisfied the trial judge that the government's representations were not groundless." *Id*. at 148. Mr. Andrade's white collar fraud case has no such evidence, and the government has not even made any allegations having anything to do with violence, threats, or danger to the safety of informants.. As a result, the cases on which the government relies are insufficient to justify denial of the informants' names in this case.

The Opposition nonetheless cites a number of other cases with threats and violence, none of which are comparable or support anonymous testimony on the facts of this case. S*ee* Gov.

1  Opp., ECF-381 at 2:20-3:5.  *See, e.g., United States v. Chow*, 772 Fed. Appx. 429, 431 (9th Cir.
2  2019) (unpublished murder, racketeering, and conspiracy case; evidence indicated "disclosure of
3  the agents' identities would threaten their safety.")[1]; *United States v. Ramos-Cruz*, 667 F.3d 487,
4  501 (4th Cir. 2012) (pseudonym allowed in gang case involving murder and threats to
5  witnesses); *United States v. Palermo*, 410 F.2d 468, 473 (7th Cir. 1969) (conviction reversed as
6  to one anonymous witness for lack of evidence of threat); *United States v. Gutierrez de Lopez*,
7  761 F.3d 1123, 1138-49 (10th Cir.), *cert. denied*, 135 S. Ct. 768 (2014) (general non-specific
8  allegations of danger from drug cartels insufficient to justify anonymous testimony; *Siegfriedt v.*
9  *Fair*, 982 F.2d 14, 15, 17-18 (1st Cir. 1992) (witness who assumed in and out of court his
10 pseudonym allowed to testify using that name when defendant knew the true name of the
11 informant and could investigate him thoroughly).

   Absent material risks of violence, the weight of authority rejects the government's position. *See, e.g., Smith* v. *Illinois*, 390 U.S. 129, 131, 132 (1968) (drug sales conviction not involving violence reversed), where the Court determined the failure to permit the informant to be cross-examined about his true name or where he lived violated the defendant's rights under the Confrontation Clause.  The Court elucidated that withholding of a witness's name or location may interfere with a defendant's right to confrontation by foreclosing "the opportunity to place the witness in his proper setting and put . . . his credibility to the test," that the very starting point in "exposing falsehood and bringing out the truth" is to ask the witness who he is and where he lives, and that such information opens "countless avenues of in-court examination and out-of-court investigation." *Id*.  As the Supreme Court declared in *Smith:* "To forbid this most rudimentary inquiry at the threshold is effectively to emasculate the right of cross-examination itself." *Id.* at 131*; see also Palermo*, 410 F.2d at 473 (remanded for trial court to determine

---

[1] The Opposition argues that *Chow* is good authority, despite its unpublished status, because it was based on *United States v. Sherlock*, 962 F.2d 1349 (9th Cir. 1992), but Sherlock was based facts far different from an alleged fraud:  it permitted a partial closure of a public trial in a sex case when the ruling was designed for the "protection of young victims of sex crimes from the trauma and embarrassment of public scrutiny." *Id*. at 1357.

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
*UNITED STATES v. ROWLAND MARCUS ANDRADE*, Case # 3:20-CR-00249-RS-LB - Page 9

whether there was evidence of threat to justify informant's hidden identity at retrial).

### C. The Touhy Regulations Do Not Protect the Government from Disclosure of Informants in Criminal Cases.

Building on its incorrect argument that the Mr. Andrade does not need to have the witnesses' true names to either subpoena them or otherwise have them assist his defense, the government also argues that it not need to comply with informant disclosure requests here, since *Touhy v. Ragen*, 340 U.S. 462, prevents federal employees from giving a consensual interview or responding to a defense subpoena unless the *Touhy* procedures, now included in the Code of Federal Regulations, are complied with.  Gov. Opp, ECF-385, 4:16-20.  The government misreads *Touhy*.  *Touhy* is a case that prevents civil judgments for damages to be collected against government employees who refuse to comply with subpoenas in civil cases, in accordance with the rules for disclosure of confidential information promulgated after *Touhy*.

As its facts suggest, *Touhy* does not set forth rules for criminal Courts.  *See United States v. Bahamonde*, 445. F.3d 1225, 1229, 1231 (9th Cir. 2005) (balancing test and not *Touhy* procedures followed in criminal case, to avoid violation of the due process and confrontation clauses of the Constitution).  In addition to the constitutional principles implicated in criminal cases, the regulations codifying *Touhy* establish that they do not bind this Court, and courts have so held: "This subpart is intended only to provide guidance for the internal operations of the Department of Justice…"  28 C.F.R. § 1621(d):

> [The Touhy] regulations do not "create an independent privilege" authorizing the Department of Justice to withhold information. *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 780 (9th Cir. 1994). Nor could they, because the statutory authority for them, 5 U.S.C. § 301, makes clear that it "does not authorize withholding information from the public or limiting the availability of records to the public." *Id*. Rather, the regulations simply set forth administrative procedures to be followed when demands for information are received.

//
//
//

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
*UNITED STATES v. ROWLAND MARCUS ANDRADE*, Case # 3:20-CR-00249-RS-LB - Page 10

*Kwan Fai Mak v. FBI*, 252 F.3d 1089, 1092  (9th Cir., 2001).[2]  In short, neither the *Touhy* rule nor the regulations were crafted to give guidance to this Court, which is tasked with providing due process in a criminal case, and which must protect the defendant's cross-examination rights.

        **D.**        **Disclosure of Each of the Requested Informants Should be Ordered.**

                **1.**        **The *Franks* motion and Informant Requests**

The government incorrectly conflates the defendant's burden in a *Franks* motion with his burden in this motion to disclose an informant for use at a later *Franks* motion. *See* Gov. Opp, ECF-385, at 5-6.  Mr. Andrade has already explained how the *Franks* requirement that the affiant's reckless or intentional misconduct be challenged permits him to seek disclosure of informants in order to perfect his *Franks* challenge.  *See* Def. Mtn, ECF-381 at 9.  One of the government's cited cases, *United States v. Kiser*, 716 F.2d 1268 (9th Cir. 1983) and supports Mr. Andrade's position.  *Id*.  The right to seek the informant was designed to address the curious evidentiary problem posed by motions to traverse a search warrant.  "To make a substantial preliminary showing, [the defendant] must establish a negative . . . despite considerable Government efforts to protect both." *Id*. at 1271.

Two other cases cited by the government do not aid its position either.  *United States v. Stanert*, 762 F.2d 775, 782-783 (9th Cir. 1985) addressed an actual *Franks* motion, along with an accompanying request for disclosure of an confidential informant whose identity the defendant believed was known. As to that request, *Stanert* explained that "[u]nlike Kiser, however, Stanert does not offer any proof to support his claim."  *Stanert* is distinguishable from Mr. Andrade's case, where the contradictory and omitted statements of informants are set forth *ex parte* in great detail. Likewise, in *United States v. Napier*, 436 F.3d 1133 (9th Cir., 2006) the defendant's offer

---

[2] *Exxon*, cited by *Mak*, was a case that litigated a subpoena, not a contempt action seeking punishment for non-compliance.  The *Exxon* Court explained that neither *Touhy* nor the regulations implementing it created "an independent privilege to withhold government information or shield federal employees from valid subpoenas. Rather, district courts should apply the federal rules of discovery when deciding on discovery requests made against government agencies, whether or not the United States is a party to the underlying action. Under the balancing test authorized by the rules, courts can ensure that the unique interests of the government are adequately considered." *Exxon*, 34 F.3d at 780.

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
*UNITED STATES v. ROWLAND MARCUS ANDRADE*, Case # 3:20-CR-00249-RS-LB - Page 11

of proof for an informant was insufficient in light of corroborating evidence by surveillance officers of the informant's key contention that he did not ever sell drugs, *id*. at 1137, and the defendant's declination of the court's offer to examine the informant about the defendant's claim. *Id.* at 1139.

The Opposition does not question that Mr. Andrade, who is considering but has not filed a motion to quash the search warrants based on material misstatements or omission unrelated to any of the requested informants. Each of the statements in the warrants related to one or more requested informants either omitted material facts or misstated material facts; disclosure is sought to obtain evidence that the inaccuracies were intentionally or reckless made on the part of the affiants, in which case, allegations from those informants will be added to other misrepresentations and included in Mr. Andrade's future *Franks* motion. Given that Mr. Andrade will bear the burden to establish the fault lay with the affiant, and not the person who provided information to the affiant, *see Kiser*, 716 F.2d at 1271, the informants requested for the *Franks* motion will be helpful for Mr. Andrade to meet his burden in a suppression motion.[3]

It is impossible to allege that any of the omissions or misstatements were the fault of the affiants of the warrant applications rather than the informants, without having access the witnesses whose words were misstated or omitted available for testimony. Nevertheless, in the

---

[3] The statements included in the affidavits attributed to informants numbered 1 (Wong), 2 (Lee), 3 (Woods), 5 (Ahmed) and 6 (Brad) were all misleading with regard to the knowledge of each of these informants on the issue of whether or not Mr. Andrade intended to deceive any AML Bitcoin customers. Mr. Andrade will bear the burden to establish the fault lay with the affiant, and not the person who provided information to the affiant. See *Kiser*, 716 F.2d 1268 at 1271. The informants requested for the *Franks* motion are necessary in order for Mr. Andrade to meet his burden in a suppression motion.
The Court can find details of each of the informant's statement in the warrant affidavits, and the true nature of each informant's involvement, in Declaration of Counsel filed *ex parte* and under seal ("Dec of Counsel"), see paragraphs 8 and 9. Information about Wong is found in paragraph 12 and Exhibits 1b, 1c, 1d, and 1e. Information about Lee is found in paragraph 19, and Exhibits 2i, 2k, 2j, and 2l. Information about Woods is found in paragraph 20 and Exhibits 2i, 2k, 2j, and 2l, Information about Ahmed is found in paragraphs 32-33, and in Exhibits 6b, 6c, 6d, and 6e. Information about Brad is found in paragraphs 32, 33 and 34 and in Exhibits 6b, 6c, 6d, and 6e.

**REPLY TO GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR INFORMANT DISCLOSURES**
*UNITED STATES v. ROWLAND MARCUS ANDRADE*, Case # 3:20-CR-00249-RS-LB - Page 12

event the Court permits the *Franks* testimony to be made without disclosure of names and locations, Mr. Andrade appreciates that he can call on the government to produce their undercover personnel as needed.

### 2. Particular Informants and How They are Helpful

The government suggests throughout the Opposition, *see e.g.* Gov. Opp., ECF-385 at 12:5, that Mr. Andrade has not met his burden of establishing more than "mere suspicion" that the informants will be helpful. To the contrary, Mr. Andrade set forth details for each informant publicly, and supplemented them with additional information with a declaration and exhibits filed *ex parte* and under seal, and the Opposition fails to dispute even what is in the public filing. An example is the informant who called himself Mason Wong. Wong was involved in a conversation about AML Token sales with Mr. Andrade, alone, and the conversation was not recorded. This conversation is therefore likely to reflect that Mr. Andrade's representations were accurate rather than fraudulent, and will provide insight into his mindset with respect to his token sales, the very matter that is at the heart of the alleged conspiracy here. This showing remains unrebutted; the Opposition instead relies on the legal propositions that are refuted above.[4] Likewise, more than a mere suspicion has been shown for all the other requested informants.[5]

Should additional argument be helpful for the Court - on the issue of the *helpfulness* of each informant in light of the defense theories of the case, which are confidential - Mr. Andrade

---

[4] *See* Gov. Opp, ECF-385 at 6:26-7:2 (Wong), 7:14-15 (Lee), 7:24-25 (Woods), 8:12 (Gupta), 8:19-20 (UCE-7780), and 8:27 (Ahmed).

[5] Lee, requested informant # 2, is discussed in the declaration at paragraphs 13-19. Woods, requested informant # 3, is discussed in the declaration at paragraphs 20-21. Lee and Woods were both together with important conversations about AML Token sales with Mr. Andrade; the true conversations will aid Mr. Andrade on the specific intent issue. Gupta, requested informant # 4, is discussed in paragraphs 22-27. UCE- 7780, requested informant # 5, is discussed in paragraphs 28-30. Gupta and UCE-7780 were both involved with two conversations with Mr. Andrade's alleged co-Schemer, where methods and purposes of Abramoff's plans were discussed. Ahmed, requested informant # 6, is discussed in paragraphs 31-33, and Brad, requested informant # 34, is discussed in paragraphs 32 and 34. Ahmed and Brad appear to have discussed technical issues in detail and the nature of their conversations will help refute the allegations that Mr. Andrade's technology was fraudulent.

requests permission to address the Court's concerns or questions with reference to the material filed under seal in an *ex parte* proceeding at the motion hearing.

### E.  Mr. Andrade is Entitled to All the Supporting Information He Requested.

To justify its request for a set of particular information about each informant, Mr. Andrade made a comparison to *United States v. Williams*, 2010 U.S. Dist. LEXIS 95781 (N.D. Cal. 2010), which the government claims is factually dissimilar because "[t]he informants are not 'the only witness[es] for many of the alleged conversations prior to the transaction..'". Gov. Opp., ECF-385 at 15:3-4. To the contrary, as noted in the public filing and in the *ex parte* Declaration of Counsel, many of the informants are sought precisely because there is no one else who could testify about what the informant knows. *See*, *e.g.* Def. Mtn., ECF-381 at 23-25, and *ex parte* Exhibit 1a (re: informant request 1) and at 12:14-17 and Dec of Counsel, ¶ 26 (re: informant request 4). Other comparisons with drug cases, Gov. Opp., ECF-385 at 10:23-11:4, miss the point of Mr. Andrade's citations. *United States v. Martinez*, 2016 U.S. Dist. LEXIS 59481 (N.D. Cal. 2016), was cited to justify disclosure of an informant's whereabouts, history as an informant, and payment *in addition* to the name of the informant, *see* Def. Mtn., ECF-1 at 4, fn. 2; *Williams*, 2010 U.S. Dist. LEXIS 95781, was also cited for a similar purpose, *see* Def. Mtn., ECF-1 at 4, fn. 2, and at 6:28-7:1, as was *United States v. Buffington*, 815 F.2d  (9th Cir. 1987), which permits disclosure orders for informants to include relevant communications. (Def. Mtn., ECF-1 at 4, fn. 2.)  None of the informant cases cited by the defense - with the one exception of *Williams* as to those informants who conversed with Mr. Andrade without other witnesses, *see* Def. Mtn., ECF-381 at 7:12-16 -were cited for the proposition that disclosure was mandatory.

Regardless, all Mr. Andrade seeks from the informants are the normal material that will enable him to vet the informant, assess or test his or her credibility, and refresh the recollection of (or impeach) the informant. Relevant documents reflecting both the informant's work for the FBI and the payment received are not out of the ordinary, and are routinely ordered discoverable in this jurisdiction. *See* Def. Mtn, ECF-381, at 4 fn. 2. Mr. Andradre is entitled to have the Court order production of such relevant documents from each informant.

## III. CONCLUSION.

For the foregoing reasons in Mr. Andrade's filings, he requests disclosures of the identities, locations, and other relevant documentation, for the informants listed above. Failing that, Mr. Andrade requests the Court to hold an *in camera* hearing where the Court may weigh any prosecution evidence against the factual disclosures and need for witnesses set forth in the Declaration of Counsel filed *ex parte* and under seal.

DATED:  November 12, 2024                    Respectfully Submitted

/s/
_____
MICHAEL J. SHEPARD, Esq.
KERRIE C. DENT, Esq.
CINDY A. DIAMOND, Esq.
ATTORNEYS FOR DEFENDANT
ROWLAND MARCUS ANDRADE