MICHAEL J. SHEPARD (SBN 91281)
  *mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  *kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  *cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:2-cr-00249-RS |
| Plaintiff, | |
| v. | **DEFENDANT ANDRADE'S MOTION IN LIMINE TO EXCLUDE ALLEGATIONS AND EVIDENCE OF UNCHARGED BAD ACTS** |
| ROWLAND MARCUS ANDRADE, | |
| Defendant. | Judge: Hon. Richard Seeborg, Chief Judge |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................................. 5

II.    FACTUAL BACKGROUND ............................................................................ 6

III.   ARGUMENT ................................................................................................... 13

    1.    Neither the Biogreen nor AtenCoin Evidence is Inextricably Intertwined with the Crimes Charged ............................................................................................................. 13

    2.    The Biogreen and AtenCoin Evidence Is Improper Propensity Evidence........................ 17

    3.    The Biogreen and AtenCoin Evidence Does Not Satisfy the Ninth Circuit's Four-Part Test for Admission Under Fed. R. Evid. 404(b)..................................................... 21

    4.    The Probative Value of the Biogreen and AtenCoin Evidence Is Outweighed by the Danger of Unfair Prejudice and Wasting Time. .................................................... 22

IV.    CONCLUSION .............................................................................................. 24

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Am. Home Assur. Co. v. Am. President Lines, Ltd.*,
    44 F.3d 774 (9th Cir.) ............................................................................21

5

*Parker v. United States*,
    400 F.2d 248 (9th Cir. 1968) ..............................................................20

6

7

*U.S. v. Anderson*,
    741 F.3d 938 (9th Cir. 2013) ..............................................................14

8

9

*U.S. v. Vizcarra-Martinez*,
    66 F.3d 1006 (9th Cir. 1995) ............................................... 13, 14, 15

10

*United States v. Bailey*,
    696 F.3d 794 (9th Cir. 2012) .........................................................21, 21

11

12

*United States v. Barket*,
    530 F.2d 189 (8th Cir. 1976)................................................................23

13

14

*United States v. Bettencourt*,
    614 F.2d 214 (9th Cir. 1980) ..............................................................19

15

*United States v. Charley*,
    1 F.4th 637 (9th Cir. 2021) ........................................................ *passim*

16

17

*United States v. Giacomini*,
    2022 WL 393194 (N.D. Cal. 2022) ....................................................14

18

19

*United States v. Gomez*,
    763 F.3d 845 (7th Cir. 2014) .........................................................17, 21

20

*United States v. Gorman*,
    613 F.3d 711 (7th Cir.2010) ..............................................................16

21

22

*United States v. Grace*,
    526 F.3d 499 (9th Cir. 2008) (en banc) ...............................................9

23

24

*United States v. Green*,
    617 F.3d 233 (3d Cir.2010)................................................................16

25

*United States v. Hall*,
    858 F.3d 254 (4th Cir. 2017) ..............................................................18

26

27

28

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 3

*United States v. Hinton,*
    31 F.3d 817 (9th Cir. 1994) ...................................................................................18, 19, 20

*United States v. Irving,*
    665 F.3d 1184 (10th Cir. 2011) ...............................................................................16

*United States v. Nikulin*
    2020 WL 2525096 (N.D. Cal. 2020) .......................................................................16

*United States v. Phillips,*
    599 F.2d 134 (6th Cir. 1979) ...................................................................................20

*United States v. Smith,*
    725 F.3d 340,345 (3d Cir. 2013)..............................................................................18

*United States v. Solano,*
    No. 3:21-CR-00263-VC (N.D. Cal. 2021)..................................................................9

*United States v. Vaccaro,*
    816 F.2d 443 (9th Cir. 1987).............................................................................19, 20

*United States v. Wells,*
    No. 3:13-cr-008-RRB-JDR, 2014 U.S. Dist. LEXIS 200819 (D. Alaska Mar.
    13, 2014) ...................................................................................................................9

**Other Authorities**

Fed. R. Crim. P. 12(b).............................................................................................................5

Fed. R. Evid. 403 ....................................................................................................5, 22, 24

Fed. R. Evid. 404(b).................................................................................................. *passim*

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 4
Exclude Allegations and Evidence of Uncharged Bad
Acts

## **MOTION**

Defendant Marcus Andrade files this Motion to Exclude Allegations and Evidence of Uncharged Bad Acts in response to the September 13, 2024 Notice sent to Mr. Andrade by the U.S. Attorney's Office for the Northern District of California regarding "other acts evidence it may introduce at trial" and pursuant to Fed. R. Crim. P. 12(b).  For the reasons set forth in the accompanying Memorandum, Mr. Andrade hereby moves that the Court enter an Order under Fed. R. Evid. 403 and 404(b) excluding testimony or evidence of any uncharged alleged bad acts in relation to Mr. Andrade's prior business ventures from before the genesis of AML Bitcoin, including but not limited to Biogreen and AtenCoin.

## I.    INTRODUCTION

This Court should exclude the government's proposed Rule 404(b) evidence relating to two prior business ventures of Mr. Andrade's, Biogreen International and AtenCoin.  *See* Letter from U.S. Department of Justice, United States Attorney for the Northern District of California (Sept. 13, 2024) (hereinafter, "Rule 404(b) Notice," attached at Appendix A).  The indictment charges Mr. Andrade with fraud and money laundering arising out his AML Bitcoin business, with the fraud having occurred over a period of a year and a half, and possibly more.[1]  If the government's Rule 404(b) evidence is admitted, the trial will triple in scope: the allegations in the government's notice charge frauds in the conduct of two separate businesses of roughly comparable size to AML Bitcoin, one over a *three-year* period and the other over a period of *fourteen months*.

Addressing the government's Rule 404(b) allegations will not only balloon the trial but also will require a journey 15 years back in time.  The dated quality of the proffered evidence undermines its probative value and also means that data and witnesses helpful to answering the allegations are no longer available, including potentially critical bank records, exculpatory communications, and the testimony of at least one central participant in the activity.  The key

---

[1] Stefan Decl. at ¶2.

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 5

claimed similarities – including the assertion that Biogreen and AtenCoin are "inextricably intertwined" with the activity charged in the indictment – will be vigorously contested and are based on demonstrably incorrect factual assertions. Other claimed similarities, such as that Mr. Andrade brought "frivolous and malicious" litigation, will also be vigorously contested, and would require re-litigation of lengthy, contested cases, as well as potential expert testimony to assess the quality of the litigation. In contrast with many Rule 404(b) cases in which the proffered conduct has already been admitted or established by a judgment, the government's allegations here were investigated at the time, but not charged – not even civilly -- casting doubt on the sufficiency of the government's proof on the merits, and underscoring the need for considerable additional, disputed evidence not just to establish similarity but also to establish the claimed fraud.

All this for proffered evidence that fails to satisfy anything in the government's formulaic list of excuses for offering the evidence, let alone satisfy the requirement of establishing that any such excuse be based on a "propensity-free chain of reasoning between the prior incidents and the charged offense." *United States v. Charley*, 1 F.4th 637, 650 (9th Cir. 2021). Even if the proffered evidence could meet those strict standards – and qualify under the Ninth Circuit's admonition that "[c]ourts, as gatekeepers of evidence, are tasked with ensuring that a jury convicts a defendant based only on his alleged conduct and mental state underlying the charged crime, not based on his generalized disposition or tendency to act in a particular way," *id.* at 640 – any probative value of the evidence would be substantially outweighed by its prejudicial value and by its consumption of time. Rather than advance the trial, the government's proposed massive, schedule-disrupting diversions will merely pollute the trial with moldy, dubious and impermissible propensity evidence.

## II.    FACTUAL BACKGROUND

Mr. Andrade is a blockchain patent inventor who created a cryptocurrency called "AML Bitcoin." AML Bitcoin was intended to implement a patented technology owned by Mr.

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number: 3:20-cr-00249-RS - Page 6

Andrade, that would use biometrics to optimally achieve anti-money laundering ("AML") and know your customer ("KYC") compliance.[2]  According to the indictment, Mr. Andrade, his co-schemer, and others, ran AML Bitcoin fraudulently, raising money through an initial coin offering while misstating the status of the development of the technology, orchestrating a "false rejection" campaign over a Super Bowl advertisement, and overstating the company's progress in obtaining agreements with various government agencies for the use of its products.[3]

In its Rule 404(b) notice, the government asserts that its evidence about Biogreen International and AtenCoin is inextricably intertwined with the facts of the charged offenses or, alternatively, otherwise admissible under Fed. R. Evid. 404(b).  *See* Appendix A. These two ventures, and the information currently available about them, are described below.

**Biogreen International**

On February 17, 2009, Mr. Andrade formed Global Algae Royalties, Inc. (which later became Biogreen International) with attorney Benito Garza Jr., his partner in the business venture.[4]  As its names suggest, this venture had nothing to do with cryptocurrency or any kind of technology; rather, it was an agricultural business with the objective of extracting astaxanthin from algae and sell it.[5]  Astaxanthin is a carotenoid and an antioxidant.  It is utilized as a nutritional supplement for multiple potential uses.[6]  It exists in algae, not on blockchains.

The totality of the evidence the government has provided the defense about this venture consists of summaries of alleged victim interviews, some internal investigator memos, investigator chronologies, and investigator summarizations of bank records.[7]  While closing the Biogreen case, the Texas State Securities Board (TSSB) attorney responsible for its oversight advised that she would "retain many of the records gathered in [the] captioned investigation with

---

[2] Stefan Decl. at ¶2; Dkt. #1, p. 3-4.
[3] Stefan Decl. at ¶2.
[4] Stefan Decl. at ¶4, Exh. ZZ.
[5] Stefan Decl. at ¶4.
[6] Stefan Decl. at ¶4, Exh. A.
[7] Stefan Decl. at ¶6.

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 7
Exclude Allegations and Evidence of Uncharged Bad
Acts

1  the knowledge and authorization of [the AUSA]."[8] Despite this assurance, very little of the

2  evidence reviewed by the government during its investigation of Biogreen appears to have

3  survived.[9] Although the chronologies cite dozens of emails, corporate documents, invoices, and

4  contracts, nearly all of them are absent from the government's discovery and likely are no longer

5  in existence.[10] And the government has not, despite defense requests, produced the bank records

6  underlying the investigator's summary.[11] By the FBI's own account, Mr. Andrade was not a

7  signor on five of the nine bank accounts associated with Biogreen.[12] Banks are required to

8  maintain records of the type in question for a period of only five years, so it is unsurprising that

9  the bank responsible has confirmed the loss of all records for each of these five accounts.[13]

10  Outstanding subpoenas for the remaining four bank accounts are anticipated to generate the same

11  result – confirmed total loss.[14] As best the defense can determine, the bank records critical to

12  determining whether the spending of Biogreen's funds support the government's claims of fraud

13  no longer exist.[15]

14      Documents are not the only important evidence that is missing due to the many years that

15  have passed since the Biogreen venture. As the government's Notice acknowledges, Mr.

16  Andrade had a partner in Biogreen, Benito Garza, Jr. Mr. Garza is unavailable as a witness,

17  having died on September 14, 2021.[16] The government's Notice observes that Mr. Andrade sued

18  Mr. Garza in 2012, but fails to mention that Mr. Andrade's claim was based on Mr. Garza's

19  absconding with over $150,000 in investor funds (about a quarter of the total), which crippled

20  the company's ability to deliver on its objectives.[17] None of this is altered by the government's

21

22  [8] Stefan Decl. at ¶6, Exh. LL.

    [9] Stefan Decl. at ¶6.

23  [10] Stefan Decl. at ¶6.

24  [11] Stefan Decl. at ¶6, Exh. B.

    [12] Stefan Decl. at ¶6, Exh. C.

25  [13] Stefan Decl. at ¶6, n. 5.

    [14] Stefan Decl. at ¶6.

26  [15] Stefan Decl. at ¶6.

    [16] Stefan Decl. at ¶6, Exh. L.

27  [17] Stefan Decl. at ¶10, Exh. K.

28

Defendant Marcus Andrade's Motion in Limine to            Case Number:  3:20-cr-00249-RS - Page 8
Exclude Allegations and Evidence of Uncharged Bad
Acts

1  quotation from the Texas State Securities Board,[18] which does not address the merits of the case

2  against Mr. Garza, and is speculative and inadmissible hearsay regardless.[19]  The only way in

3  which the investigation of the Texas Securities Board assists this Court in deciding whether to

4  admit the government's 404(b) evidence is the observation that after investigating for 25 months,

5  the Texas Securities Board brought no action of any kind against Mr. Andrade.[20]  This outcome

6  when the evidence was fresh casts serious doubt on the government's ability to offer sufficient

7  proof of wrongdoing involving Biogreen, raising the possibility that the government's proffered

8  Biogreen evidence will bog down the trial with attempts to prove a 15-year-old alleged fraud that

9  the jury will conclude was not a fraud at all.[21]

10         In the Rule 404(b) Notice, the government points to several alleged similarities between

11  Biogreen and AML Bitcoin that are not supported by the facts. Like other circuits, the Ninth

12  Circuit has carefully avoided approval of courts requiring the defense to disclose witnesses pre-

13  trial. *United States v. Grace*, 526 F.3d 499, 513 (9th Cir. 2008) (en banc) (overruling *United*

14  *States v. Hicks*, 103 F.3d 837 (9th Cir. 1996), thereby permitting courts to order the government

15  to produce a witness list, but not extending the authority to include ordering production of

16  defense witness lists). Because a defendant cannot be required to "tip its hand as to its defense

17  prior to trial," *United States v. Wells*, No. 3:13-cr-008-RRB-JDR, 2014 U.S. Dist. LEXIS

18  200819, at *5 (D. Alaska Mar. 13, 2014) (denying a government motion for early witness

19  statements from the defendant); *see United States v. Solano*, No. 3:21-CR-00263-VC (N.D. Cal.

20  2021) (permitting criminal defendant to file declaration in support of contested pretrial discovery

21  motion under seal to prevent disclosure of defendant's trial strategy), and because these factual

22  disputes go to the essence of Mr. Andrade's defense to the government's accusations about both

23  Biogreen and AtenCoin in addition to the charged offenses, the facts Mr. Andrade would identify

24

25  [18] Appendix A at 5 ("It appears that Andrade is using the lawsuit as an excuse to buy time and discourage investors from complaining to authorities").

26  [19] Stefan Decl. at ¶10

    [20] Stefan decl. at ¶5, Exh. LL.

27  [21] Stefan Decl. at ¶5

28

Defendant Marcus Andrade's Motion in Limine to    Case Number:  3:20-cr-00249-RS - Page 9
Exclude Allegations and Evidence of Uncharged Bad
Acts

1   at trial that contest the government's claimed similarities are set forth in the Declaration of

2   Dainec P. Stefan, filed contemporaneously ex parte and under seal.  Among other things, these

3   facts dispute the government's claims that Biogreen and AML  Bitcoin are similar in that (1)

4   "Andrade and his sales agents (falsely) assured investors that they could easily and at any time

5   received their investments back;"[22] (2) they both "used a network of boiler-room type sales

6   agents working on sales commission to raise funds from investors;"[23] (3) Mr. Andrade falsely

7   claimed to have patents for Biogreen and AML Bitcoin;[24] and (4) Mr. Andrade used frivolous

8   and malicious legal tactics to deflect blame for the frauds.[25]

9                                          **AtenCoin**

10          Mr. Andrade developed, marketed, and sold AtenCoin from February 2014 to June

11  2016.[26]  AtenCoin was a completed cryptocurrency, with certain anti-money laundering and

12  know your customer qualities.[27] To support a market for the coin, Mr. Andrade, through his

13  entity Black Gold Coin International, invested in an oil speculation project, which committed to

14  pay return on investment in AtenCoin (Exh. N). AtenCoin was last sold over a year prior to the

15  launch of the AML Bitcoin Initial Coin Offering (ICO) in October 2017.[28] The ICO ran until

16  February 2018 and purchasers received tokens entitling them to ultimate receipt of the completed

17  AML Bitcoin product.[29]  AML Bitcoin was released to users for beta testing in October 2019

18  being launched in April 2020, allowing token purchasers to exchange their tokens one-for-one

19  for AML Bitcoins.[30]

20

21

---

22  [22] Appendix A at p. 4; Stefan Decl. at ¶7

23  [23] Appendix A at p. 4; Stefan Decl. at ¶8

    [24] Appendix A at p. 4; Stefan Decl. at ¶9

24  [25] Appendix A at p. 5; Stefan Decl. at ¶10

25  [26] Stefan Decl. at ¶11, Exh. M.
    [27] Stefan Decl. at ¶¶12 & 19.

26  [28] Stefan Decl. at ¶11, Exh. M.
    [29] Stefan Decl. at ¶11, Exh. W; Dkt. 1, p. 3.

27  [30] Stefan Decl. at ¶11, Exhs. O & P.

28

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 10
Exclude Allegations and Evidence of Uncharged Bad
Acts

1    As with Biogreen, information critical to the defense appears to be missing due to the

2    passage of time and gaps in production from the government and its central cooperating witness,

3    Jack Abramoff.[31]  Even though Abramoff claims to have put "intense work" into Mr. Andrade's

4    businesses for the three years prior to January, 2019 (which would include part of the period

5    when AtenCoin was sold), and despite discovery requests to the government and a subpoena to

6    Abramoff, the defense has been provided with only a handful of Abramoff's written

7    communications with Mr. Andrade from the period when AtenCoin was in existence.[32] For the

8    entire period between 2015-2017, the government has produced 46 emails from a three-month

9    timeframe.[33] This is a stark contrast with the thousands of messages and emails produced for the

10   AML Bitcoin period from 2017-2020, many of which are exculpatory – a contrast that suggests

11   that a considerable amount of exculpatory information is missing.[34]

12       Moreover, as with Biogreen, critical financial records related to AtenCoin and reflected

13   in the investigators' analysis are absent from discovery despite defense requests.[35] Of the

14   accounts pored over and documented by government investigators, the defense has no records

15   from three bank accounts– crucial information to rebut the government's claims that Mr.

16   Andrade was misappropriating funds as opposed to spending appropriate amounts on the

17   business.[36]  These records not being forthcoming from the government, the defense has

18   subpoenaed them but expects records retention policies formulated in compliance with U.S. laws

19   have ensured their destruction.[37]

20       The government offers a series of inaccurate claims in an effort to make the two

21   cryptocurrencies seem more similar than they actually were; in reality, the AtenCoin operations,

22

23   _____

24   [31] Stefan Decl. at ¶15.
     [32] Stefan Decl. at ¶15, Exh. M.
25   [33] Stefan Decl. at ¶15, n. 18.
     [34] Stefan Decl. at ¶15, nn. 19-20.
26   [35] Stefan Decl. at ¶16.
     [36] Stefan Decl. at ¶16, Exhs. R & S, n. 21.
27   [37] Stefan Decl. at ¶16, n. 5.

28

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 11
Exclude Allegations and Evidence of Uncharged Bad
Acts

marketing, and sales stand in stark contrast to those of AML Bitcoin.[38]  As in the discussion of

Biogreen above, and for the reasons stated there, Mr. Andrade will identify evidence showing

that the claims are inaccurate, in Dainec Stefan's ex parte and under seal declaration.  That

declaration will provide facts contesting the claims in the Notice that Mr. Andrade (1) "used the

same boiler-room type salespeople, working on a sales-commission payment structure, to sell

both AtenCoin and AML Bitcoin;"[39] (2) that the pitches for AtenCoin and AML Bitcoin were

"identical" and "false in the same way," in that "neither of Andrade [sic] cryptocurrencies . . .

had the technological features that he claimed;"[40] (3) that Mr. Andrade's statements about

AtenCoin's involvement in the oil and gas industry are "nearly identical" to claims he made

regarding AML Bitcoin's anticipated use by major shipping ports and governments,[41] (4) that for

both   AtenCoin and AML Bitcoin Mr. Andrade and his "sales associates" claimed that

upcoming listings on exchanges "would cause its price to surge;"[42] and that Mr. Andrade brought

a "frivolous and malicious" lawsuit against Corey and Brandi Jodoin, which the government

attempts to liken to legal action Mr. Andrade took with respect to AML Bitcoin token

purchasers.[43]  Moreover, the Defense will identify many of the witnesses the Defense would call

to rebut the government's noticed Rule 404(b) evidence should it be admitted.

Addressing these contested issues about what happened at Biogreen and AtenCoin would

cover a lengthy period of time, from seven to fifteen years ago.  The effort would be filled with

factual disputes about whether they were frauds at all, and if so, whether they had sufficient

similarity to the charges in the indictment.  In those disputes, Mr. Andrade would be

substantially hobbled by the loss of evidence over time.  All this would require a substantial

amount of court and trial time – all for what, as described below, is not "inextricably

[38] Stefan Decl. at ¶¶11-22.

[39] Appendix A at p. 2; Stefan Decl. at ¶18.

[40] Appendix A at p. 2; Stefan Decl. at ¶19.

[41] Appendix A at p. 2l; Stefan Decl. at ¶20.

[42] Appendix A at p. 2; Stefan Decl. at ¶21.

[43] Appendix A at p. 3; Stefan Decl. At ¶22.

Defendant Marcus Andrade's Motion in Limine to            Case Number:  3:20-cr-00249-RS - Page 12
Exclude Allegations and Evidence of Uncharged Bad
Acts

intertwined" with the charged offenses and does not fall within any exception to the proposition in Federal Rule of Evidence 404(b).

## III.    ARGUMENT

"Courts, as gatekeepers of evidence, are tasked with ensuring that a jury convicts a defendant based only on his alleged conduct and mental state underlying the charged crime, not based on his generalized disposition or tendency to act in a particular way." *United States. v. Charley*, 1 F.4th 637, 640 (9th Cir. 2021) (emphasis added).  All the varied excuses provided by the government for offering evidence about Biogreen and AtenCoin fail because under scrutiny their only material similarity with and relationship to the charges in the indictment is that the government considers both of them to be frauds, which is not anywhere near what it needs to establish in order to make them admissible.

### 1.    Neither the Biogreen nor AtenCoin Evidence is Inextricably Intertwined with the Crimes Charged

There are two categories of inextricably intertwined evidence that are admissible without meeting the requirements of Fed. R. Evid. 404(b):  evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge" and evidence that is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime" by "explain[ing] either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *U.S. v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995).

Neither Biogreen nor AtenCoin come close to meeting these standards.  For evidence to be inextricably intertwined with a charged transaction, it must be "clear that particular acts of the defendant are part of, and thus inextricably intertwined with a single criminal transaction," such as multiple contemporaneous drug sales where the defendant is charged with only one of the sales.  *U.S. v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995) (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)).  In other words, the conduct must be "near

contemporaneous acts of the defendant in other criminal conduct within the same scheme."
*United States v. Giacomini*, 2022 WL 393194 at *9 (N.D. Cal. 2022).   The proffered evidence
cannot be "far removed in time from the charged transaction."  *U.S. v. Anderson*, 741 F.3d 938,
949 (9th Cir. 2013) (finding that a fraudulent sale of software occurring six months after the
charged conduct occurred was "too far removed in time to constitute a part of the charged
transaction").

Mr. Andrade formed the company which eventually became Biogreen in 2009, and the
last investor deposit into the business was made in April 2010.  Mr. Andrade developed,
marketed, and sold AtenCoin beginning in February 2014 up to June 2016.  The acts the
government has charged with respect to AML Bitcoin began in October 2017.  With respect to
AtenCoin specifically, the government makes the sweeping allegation that Mr. Andrade "simply
rebranded Atencoin as AML Bitcoin…investors in Atencoin could swap their Atencoins for
AML Bitcoin tokens…Atencoin was simply an earlier iteration of the same fraud, with the same
fraudulent representations."  Appendix A at 3.  Even if Mr. Andrade did make similar
misrepresentations in the sale and marketing of AtenCoin – a claim that would trigger a
substantial dispute – the sale and marketing of AtenCoin concluded in June 2016 and the sale
and marketing of AML Bitcoin did not being until October 2017.  The sale of these two separate
cryptocurrencies to investors at a minimum of sixteen months apart is not a "single criminal
transaction." *Vizcarra-Martinez*, 66 F.3d at 1012.  The mere fact that investors in AtenCoin held
their coins and were given the option to roll their AtenCoins into AML Bitcoin tokens does not
turn them into the same criminal transaction.  Beyond the differences identified in the
Declaration of Dainec Stefan, holders of AtenCoin still had the opportunity to make a separate
choice as to whether to purchase AML tokens. This time separation, and separate decision-
making, between Biogreen, AtenCoin, and AML Bitcoin means that these different business
ventures are not part of a "single criminal transaction."

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 14

In addition, neither Biogreen nor AtenCoin are necessary for the government to tell "a coherent and comprehensible story" about the AML Bitcoin offenses.  Evidence admitted on this basis is typically "necessary…for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *U.S. v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 (9th Cir. 1995).  The most common example is "cases in which the defendant is charged with being a felon in possession of a firearm" where the government may need to provide context for why the defendant had a gun or rebut a defense such as self-defense.  *Id.* (citing *United States v. Daly*, 974. F.2d 1215, 1216 (9th Cir. 1992)).

By contrast, there is nothing incomplete, incoherent, or incomprehensible about the story alleged in the indictment about AML Bitcoin: the indictment charges that Mr. Andrade made fraudulent misrepresentations about AML Bitcoin to induce people to purchase tokens, and that he misappropriated the funds gained from those purchases. The crimes and misrepresentations alleged in the indictment are on their face self-contained, and none of them depend on any facts relating to Biogreen or AtenCoin, or call for a look back into past business ventures.  Even if the prior ventures were similar to AML Bitcoin, they would not be necessary to understand what the government claims happened with AML Bitcoin, or to evaluate whether the government has proved its case.  All that is required to prove the indictment's garden-variety fraud is evidence of the statements Mr. Andrade made with respect to AML Bitcoin, evidence of their falsity, evidence that the purchasers of the AML Bitcoin tokens relied on those statements when deciding to make their investments, and evidence that Mr. Andrade used funds from those investments to purchase real estate in his name.

Rather than grapple with the Ninth Circuit's requirements, the government's notice focuses on what it incorrectly asserts are commonalities between Biogreen, AtenCoin, and AML Bitcoin, and asks the Court to believe that these alleged frauds are so similar that the fact that they occurred in succession renders them individual sub-parts of the same overarching offense. We debunk this claim in the Declaration of Dainec Stefan, which demonstrates that the only

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 15

defensible similarity is that the government claims that all of them are frauds.  But even if the ventures were as similar as the government claims, similarity does not render alleged criminal ventures inextricably intertwined or mean that one provides context for the other.  In *United States v. Nikulin*, this court found that the fact that a defendant charged with hacking certain businesses used similar processes to hack a different business did not render evidence of the hack of that different business inextricably intertwined with the charged hackings because the government had "not shown how the overall story would be incomprehensible or incoherent without the" evidence of the uncharged hacking.  2020 WL 2525096 at *1 (N.D. Cal. 2020).

No better is the claim that the evidence is "inextricably intertwined" because it provides "contextual or background information to the jury."  Appendix A at 3.  No case appears to find that merely providing "contextual or background information" is enough to justify admission, and even the Tenth Circuit case cited in the Notice speaks of admitting only evidence that is "essential" to the context of the crime, *United States v. Irving,* 665 F.3d 1184, 1212 (10th Cir. 2011), which Biogreen and AtenCoin are not, for the reasons described above.  Were "context and background" sufficient reasons to circumvent the prohibition on propensity evidence, then there would be virtually no purpose to excluding propensity evidence in the first place; these concepts are so broad and vague that they could be used to justify the introduction of nearly any prior bad act, no matter how tangentially related.  The important principle of Rule 404(b) should not be evaded based only on a claim of "context," and this sort of claimed elasticity of the "inextricably intertwined" phrase has caused other circuits to retreat from the use of that phrase entirely. *See United States v. Gorman*, 613 F.3d 711, 719 (7th Cir.2010) (abandoning inextricable-intertwinement test because it has "become overused, vague, and quite unhelpful"); *United States v. Green,* 617 F.3d 233, 248 (3d Cir.2010) ("the inextricably intertwined test is vague, overbroad, and prone to abuse"); *see generally* Saltzburg, Martin and Capra, Federal Rules of Evidence Manual, Paragraph 404.02[12] (10th ed.2012) (discussing issue at length and

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 16

1  concluding, "The 'inextricably intertwined' exception substitutes a careful analysis with

2  boilerplate jargon.").

3      The story the government tells in the indictment is a complete, coherent, straightforward

4  fraud claim that *requires* no additional information.  The claimed "inextricably intertwined"

5  nature of the alleged frauds does not exist, and neither do the claimed similarities between the

6  alleged frauds, even if "similarities" could be sufficient to evade the principle of Rule 404(b).

7  All that is left of the claimed intertwining and similarities is that the indictment alleged that Mr.

8  Andrade engaged in a fraud and the government wants to show he engaged in other frauds,

9  which amounts to nothing more than proof of propensity in an effort to prejudice the jury against

10  Mr. Andrade.

11      **2.    The Biogreen and AtenCoin Evidence Is Improper Propensity Evidence.**

12      Because the government's evidence regarding Biogreen and AtenCoin is not admissible

13  as inextricably intertwined with the acts charged, the government must demonstrate the

14  evidence's admissibility under one of the exceptions in Fed. R. Evid. 404(b).  These exceptions

15  have in recent years been subject to more rigorous scrutiny as courts have recognized that "other-

16  act evidence is too often admitted almost automatically, without consideration of the legitimacy

17  of the purpose for which the evidence is to be used and the need for it."  *United States v. Gomez*,

18  763 F.3d 845, 853 (7th Cir. 2014) (internal quotes omitted).

19      Instead of merely accepting rote checklists, the Ninth Circuit and other courts are

20  increasingly employing a more thoughtful approach grounded in Rule 404(b) itself, which

21  requires the district court to "not just ask *whether* the proposed other-act evidence is relevant to a

22  non-propensity purpose but *how* exactly the evidence is relevant to that purpose—or  more

23  specifically, how the evidence is relevant without relying on a propensity inference."  *Gomez*,

24  763 F.3d at 856 (internal citations omitted) (emphasis in original); *see also United States v.*

25  *Charley*, 1 F.4th 637, 650 (9th Cir. 2021) (holding that "[b]ecause the Government fails to

26  articulate a propensity-free chain of reasoning between the prior incidents and the charged

27

28

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 17
Exclude Allegations and Evidence of Uncharged Bad
Acts

offense, the evidence is inadmissible under Rule 404(b)) (internal citations omitted); *United States v. Hall*, 858 F.3d 254, 277 (4th Cir. 2017) ("[U]nder Rule 404(b), evidence of a defendant's prior bad acts is generally inadmissible, properly coming into evidence only when the government meets its burden to explain each proper purpose for which it seeks to introduce the evidence, to present a propensity-free chain of inferences supporting each purpose, and to establish that such evidence is relevant, necessary, reliable, and not unduly prejudicial"); *United States v. Smith*, 725 F.3d 340,345 (3d Cir. 2013) ("[T]he proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference").

The government's Notice plucks four items from the list in Fed. R. Evid. 404(b) – modus operandi, intent, plan, and motive[44] – as justifying admission of the Biogreen and Atencoin evidence, but it makes no effort to identify the inferences that support any of those asserted purposes for offering the evidence, let alone any effort to establish that its chain of inferences is propensity-free. *See Charley*, 1 F.4th at 650. Instead, it relies on two cases, which merely serve to illustrate the type of superficial excuses offered to mask propensity evidence, and cannot be reconciled with Ninth Circuit's later teachings in *Charley.* The government relies on *United States v. Hinton*, 31 F.3d 817 (9th Cir. 1994) (affirming a conviction of a husband for assault with intent to commit murder on his wife), in which the district court had permitted evidence of prior assaults by the husband against his wife. The district court in *Hinton* did no more than recite that it "denied Hinton's motion on the basis that the prior acts evidence was relevant to Hinton's 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident' under Rule 404(b)," and the Ninth Circuit affirmed, applying abuse of discretion review. *Hinton*, 31 F.3d at 822. The court's ruling in *Hinton* acknowledged that the Ninth Circuit had previously declared that "[a] showing of intent to assault on an earlier occasion proves little, if anything, about an intent to assault at some later time," *United States v.*

---

[44] Appendix A at p. 3-5.

*Bettencourt*, 614 F.2d 214, 217 (9th Cir. 1980), but disregarded *Bettencourt* based on facts connecting the past episodes that are not present here: both the victim and the "manner of assault" were the same, *id*. at 823, and the defendant had made a "contemporaneous statement during the charged assault that *it was time to fulfill his wish to kill the victim*."  *Id.* at 822 (emphasis added).

Likewise, *United States v. Vaccaro*, 816 F.2d 443 (9th Cir. 1987) is another pre-*Gomez*, pre-*Charley* decision based only on the type of conclusory assessment that is now insufficient to justify prejudicial other crimes evidence: the court merely stated, without providing any supporting analysis, that the prior acts evidence offered "was clearly admissible under Rule 404(b) as proof of a plan or scheme or to show *modus operandi*."  In any event, the court had already determined that the challenged proof "was admissible as direct evidence of the conspiracy charged," *id.* at 452, so its outdated rote recitation was merely dicta.

Even if the government's reasoning were propensity-free, the government's underlying contention, that Mr. Andrade used a similar *modus operandi* with Biogreen and AtenCoin as he did with AML Bitcoin—making similar misrepresentations and using similar marketing and sales strategies in connection with all three business ventures—is incorrect.  The government claims that the similarities between these three ventures include the use of "a network of boiler-room type sales agents working on sales commission," the provision of false assurances that investors "could easily and at any time receive their investments back," promises of receiving sizable returns on investments, and a strategy of filing "frivolous and malicious" litigation "to deflect blame for the fraud, and delay accountability."[45] Even if these claims were accurate with respect to Biogreen and AtenCoin – which Mr. Andrade will vigorously contest – they are all demonstrably false with respect to AML Bitcoin.[46]

No better is the government's excuse that the AtenCoin evidence is relevant to Mr. Andrade's motive to "engag[e] in the charged AML Bitcoin fraud" because "the shift from

---

[45] Appendix A at p. 2-5.
[46] Stefan Decl. at ¶¶ 4-22.

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 19

Atencoin to AML Bitcoin was" for two purposes: one, "to keep investors in Atencoin from complaining or demanding their investment back," and two, "for Andrade to lure in new investors." Regarding the first purpose, there is no evidence to support the notion that AtenCoin investors complaining or demanding their investment back motivated Mr. Andrade to create AML Bitcoin to facilitate an ongoing fraud. The only evidence of complaints about AtenCoin relates to complaints made *after* the AML Bitcoin ICO started.[47] These complaints cannot have been Mr. Andrade's motivation for an ICO already underway after months of planning.

For its second purpose, the government is effectively saying that Mr. Andrade was motivated to commit the alleged AML Bitcoin fraud in order to make more money by gaining new investors. Even if that contention is accurate, the government does not need to put on AtenCoin evidence to prove it. It is safe to say that the motive behind fraud schemes is generally financial gain. Proving that an alleged fraudster wanted money does not add materially to the government's proof of the charged crime; proving it through voluminous, contested and time-consuming other acts evidence is both a waste of time and a poor excuse to prove propensity.

Relying on modus operandi cases like *Hinton* and *Vaccaro* underscores another, independent fatal weakness in the government's efforts to bring this case within any of the items it checked off from Rule 404(b). To be admissible, evidence of modus operandi must comprise of proof of conduct similar to that charged, "which is peculiar, unique, or bizarre," *Parker v. United States*, 400 F.2d 248, 252 (9th Cir. 1968), or "'(t)he device used must be so unusual and distinctive as to be like a signature.'" *United States v. Phillips*, 599 F.2d 134, 136 (6th Cir. 1979) (internal citations omitted). Otherwise, that evidence fails to identify the defendant and merely fuels jurors to find a propensity to commit frauds. The same can be said for different alleged false statements made about different products; they do not show intent to make or knowledge of misrepresentations, except to the extent that they encourage the jury to decide impermissibly that

---

[47] Stefan Decl. at ¶ 19.c.

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number: 3:20-cr-00249-RS - Page 20

proof of a prior fraud means that the defendant must have had intent, knowledge or a plan to do so again.

**3.    The Biogreen and AtenCoin Evidence Does Not Satisfy the Ninth Circuit's Four-Part Test for Admission Under Fed. R. Evid. 404(b).**

Even setting aside the more rigorous examination of propensity since *Gomez*, the government's Biogreen and AtenCoin evidence still fails to satisfy the Ninth Circuit's four-part test for determining admissibility under Fed. R. Evid. 404(b): "(1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged." *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)).  Specifically, "if admitted to prove intent, the other charged acts must be similar to the offense charged."  *Am. Home Assur. Co. v. Am. President Lines, Ltd.*, 44 F.3d 774, 779 (9th Cir.) (quoting *U.S. v. Bradley*, 5 F.3d 1317, 1319-20 (9th Cir. 1993)).  "The government 'has the burden of proving that the evidence meets *all* of the above requirements.'"  *Id.* (quoting *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)) (emphasis added).  "[E]ven then, '[t]he use of such evidence must be narrowly circumscribed and limited.'"  *U.S. v. Charley*, 1 F.4th 637, 647 (9th Cir. 2021) (quoting *U.S. v. Bailleaux*, 685 F.2d 1105, 1109 (9th Cir. 1982)).  The Biogreen and AtenCoin evidence does not meet this four-part test, nor is it (or could it be, given the scope of the businesses at issue and the extensive time periods covered) "narrowly circumscribed and limited."

For the reasons set forth in section 2 and the factual background above, Biogreen and AtenCoin add no material evidence and so do not tend to prove anything relevant to this case; as discussed below in section 4, the events around Biogreen in particular are far too remote in time to be admissible; and the Declaration of Dainec Stefan demonstrates that the government lacks sufficient evidence to find that Mr. Andrade engaged in fraud in connection with Biogreen or AtenCoin – a lack of sufficiency that is underscored by the existence of timely investigations

Defendant Marcus Andrade's Motion in Limine to    Case Number:  3:20-cr-00249-RS - Page 21
Exclude Allegations and Evidence of Uncharged Bad
Acts

1    into both Biogreen and AtenCoin, neither of which resulted even in a civil case.  Finally, section

2    1 above and the Declaration of Dainec Stefan show the lack of similarity.

3        While it would be sufficient to demonstrate that the government had failed to meet even

4    one part of the four-part test, in this instance, the government's inability to satisfy any part of the

5    test makes clear that the Biogreen and AtenCoin evidence is inadmissible under Fed. R. Evid.

6    404(b).  Otherwise, relying on the government's proffered evidence to allow the jury to form a

7    view about whether Mr. Andrade committed fraud as charged in the indictment would amount to

8    "simplistic reasoning that if the defendant was accused of the conduct, it probably or actually

9    occurred," an inference which is "impermissible."  *Bailey*, 696 F.3d at 801.  In any event,

10   establishing that two businesses that collectively ran for over three years were frauds will be the

11   opposite of "narrowly circumscribed and limited" as the Ninth Circuit requires, and should be

12   excluded even if it could satisfy the four-part test and other requirements.

13       **4.    The Probative Value of the Biogreen and AtenCoin Evidence Is Outweighed**

14       **by the Danger of Unfair Prejudice and Wasting Time.**

15       "If the evidence meets [the] test under Rule 404(b), the court must then decide whether

16   the probative value is substantially outweighed by the prejudicial impact under Rule 403."

17   *Bailey*, 696 F.3d at 799 (citing *Romero*, 282 F.3d at 688).  Fed. R. Evid. 403 permits the court to

18   "exclude relevant evidence if its probative value is substantially outweighed by a danger

19   of…unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or

20   needlessly presenting cumulative evidence."  While the Biogreen and AtenCoin evidence does

21   not satisfy the tests for admission under Fed. R. Evid. 404(b), or as evidence that is "inextricably

22   intertwined," even if it did, it would still be inadmissible under Fed. R. Evid. 403 as it is far more

23   prejudicial than probative, and a waste of time.

24       The probative value of evidence concerning Mr. Andrade's prior ventures is limited.  As

25   explained in section 1 above, the Biogreen and AtenCoin evidence is unnecessary to telling the

26   self-contained and straightforward allegations about AML Bitcoin.  The evidence is far from

27

28

Defendant Marcus Andrade's Motion in Limine to        Case Number:  3:20-cr-00249-RS - Page 22
Exclude Allegations and Evidence of Uncharged Bad
Acts

"narrowly circumscribed and limited," provides no propensity-free inference on any of the terms the government listed from Rule 404(b), and offers no unique signature.  On the other hand, the government's attempt to portray Mr. Andrade as a serial scammer, and to fill a substantial hunk of the trial doing so, is highly prejudicial.  Presenting additional (and unproven) accusations of fraud cannot help but inflame the jury by suggesting that Mr. Andrade has been engaged in criminal activity dating back many years prior to the charged offenses relating to AML Bitcoin, and that all of his business ventures were in fact calculated schemes.  This will add to the public perception that cryptocurrency and those who work in it are inherently deserving of suspicion through its unsubstantiated claim that all of Mr. Andrade's cryptocurrencies were fraudulent. The prejudicial impact of the Biogreen and AtenCoin evidence substantially outweighs its limited probative value.

Further, the introduction of the Biogreen and AtenCoin evidence will amount to a monumental waste of time in what will already be a lengthy and complex trial.  The government's allegations of the lack of technology, false sales practices, and the misuse of funds will require expert testimony, witnesses about how the products were sold, and review, analysis, and testimony about how the funds of the business were used over substantial periods of time – a lengthier period than AML Bitcoin, at least in the case of AtenCoin.  AtenCoin had ten different bank accounts with two years of transactions and is referenced in over seventeen thousand documents produced by the government, illustrating the depth of the trench into which the government would sink this court.  The government's contention that Mr. Andrade brought "frivolous and malicious" litigation alone will necessitate re-litigating cobwebbed civil matters and putting on expert testimony to evaluate the merits of the litigation. On top of these hefty discovery and trial time requirements is the fact that due to the age of this evidence, much of the data and testimony Mr. Andrade would need to respond to these allegations is unavailable, adding a constitutional violation to the prejudice inflicted on the defense.  *See, e.g., United States v. Barket*, 530 F.2d 189 (8th Cir. 1976) (affirming dismissal of indictment on due process grounds

Defendant Marcus Andrade's Motion in Limine to
Exclude Allegations and Evidence of Uncharged Bad
Acts

Case Number:  3:20-cr-00249-RS - Page 23

based on prejudicial pre-indictment delay due to loss of witnesses over a four period and government delay).

There is a good chance that after this time sink – a time sink fraught with the absence of critical records, central witnesses, and exculpatory communications – the government will have failed to convince the jury that Mr. Andrade engaged in either of the other frauds: all the facts will be contested, and the despite previous investigations no criminal or even civil charges were ever filed.  Under these circumstances, it is difficult to picture how the government could offer sufficiently probative evidence about these long-running business ventures to outweigh the prejudicial impact and waste of time and court resources the evidence would cause.  For these reasons, even if the Biogreen and AtenCoin evidence were judged to be admissible as "inextricably intertwined" or under Fed. R. Evid. 404(b), it must be excluded under Fed. R. Evid. 403.

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Andrade respectfully requests that the Court exclude evidence and argument relating to his prior ventures Biogreen and AtenCoin.


Respectfully submitted,

DATED: December 27, 2024                    KING & SPALDING LLP


By:  _/s/ Michael J. Shepard_
MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

Defendant Marcus Andrade's Motion in Limine to          Case Number:  3:20-cr-00249-RS - Page 24
Exclude Allegations and Evidence of Uncharged Bad
Acts