ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7230
    christiann.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | NO. CR 20-00249 RS-1 <br><br> **UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY OF SWATI KANORIA** <br><br> Dept.: Courtroom 3 – 17th Floor <br> Judge: Hon. Richard Seeborg <br><br> Trial Date: February 10, 2025 <br> Pretrial Conf: January 22, 2025 |

## I. INTRODUCTION

On January 10, 2025, defendant Andrade notified the government that he intends to call as an expert at trial Dr. Swati Kanoria, described as an expert in market making and market manipulation on cryptocurrency trading exchanges. According to defendant's expert disclosure, Dr. Kanoria would testify that market manipulation on cryptocurrency trading platforms was widely prevalent during the timeframe charged in the indictment, including on cryptocurrency trading platforms that AML Bitcoin

U.S.' MOT. TO EXCLUDE EXPERT TESTIMONY     1
CR 20-00249 RS

Case 3:20-cr-00249-RS     Document 461     Filed 01/15/25     Page 2 of 6

was listed and traded. Dr. Kanoria will testify that, in general, this type of market manipulation could have the effect of artificially inflating the price of the crypto asset being traded and could create "fake" – false and misleading – trading volume numbers.

One study relied upon by Dr. Kanoria noted these were "legally and ethically questionable" practices and that one practice in particular, "wash trading," in which a party conducts trades with itself to artificially inflate a cryptocurrency's trading volume "is largely prohibited in most financial markets and developed economies." *See* Dkt. 450 (Def. Rule 16 Disclosure Regarding Expert Swati Kanoria), *citing* "Lin William Kong, Xi Li, Ke Tang and Yang Yang, "Crypto Wash Trading," July 2023. (hereinafter "Kong et al., Crypto Wash Trading").

Concurrent with his disclosure of proposed expert Kanoria, Andrade filed a motion *in limine* seeking to exclude any evidence at trial related to allegations that Andrade coordinated with co-schemer Abramoff and other individuals to "generate artificial trading volume and pricing on a cryptocurrency exchange" where AML Bitcoin was listed and traded. Dkt. 452 (Def. Mot. In Limine #6). Specifically, Andrade seeks to exclude evidence that Andrade and others "outlined a plan to maintain the AML Bitcoin token's price and trading volume through active trading, the creation of fake token purchase deals with fake companies, the hiring of influencers to endorse the token, and the establishment of a Philippines-based call center." *Id.* During and after the conspiracy period, AML Bitcoin tokens that were sold to victims as part of the alleged fraud scheme trade on several small cryptocurrency exchanges. Andrade and his co-schemers were upset because trading volume was low and customers who had purchased AML Bitcoin tokens did not see the price rise.

Defendant Andrade seeks to exclude this testimony and evidence, which would be highly relevant to the central allegations in the indictment – that Andrade and his co-schemers engaged in a scheme to deceive and cheat AML Bitcoin purchasers through false and misleading representations. Andrade states in his motion *in limine* that to counter this testimony if admitted, "the defense anticipates, at minimum, the introduction of expert testimony on cryptocurrency market making standard practices within the industry," *Id.*

In Andrade's expert disclosure, he cites to Dr. Kanoria's review of studies addressing market manipulation on exchanges, including several where AML Bitcoin traded. But none of those studies

U.S.' MOT. TO EXCLUDE EXPERT TESTIMONY          2
CR 20-00249 RS

address the trading of AML Bitcoin, and Dr. Kanoria does not address AML Bitcoin's trading at all her in her expert disclosure notice. Dr. Kanoria's expert disclosure in fact does not mention AML Bitcoin at all. Dr. Kanoria simply proposes to testify that the studies she reviewed "found that inflated trading and wash trading was prevalent on numerous cryptocurrency platforms." *Dkt. 450* (Def. Expert Disclosure).

Because Dr. Kanoria's testimony does not address AML Bitcoin, it is neither reliable nor relevant, and should be excluded on those grounds alone. But the danger of Dr. Kanoria's testimony is greater still – it could leave the impression with the jury that these improper trading practices were widespread on cryptocurrency exchanges, and thus Dr. Kanoria's proposed testimony would present an "everyone does it" defense cloaked in the imprimatur of expert testimony. This improperly invites the jury to decide this case based on irrelevant arguments and creates significant risk of jury nullification.

## II.   LEGAL STANDARD

"[S]cientific, technical, or other specialized knowledge" may be admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." *Fed. R. Evid. 702*. Expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.*

The district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

Even if an expert's opinion is reliable, it will be inadmissible if it is unhelpful to the trier of fact. *Daubert* at 591-92; *see also Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001). In cases where there is some marginal relevance to the testimony, it should nonetheless be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403.

Exclusion of testimony is the only remedy sufficient to protect against the inherent power of expert evidence, which can be "quite misleading because of the difficulty in evaluating it." *Id.* at 595. The party who offers the expert testimony must prove its admissibility by a preponderance of the

evidence. *See Cooper v.* Brown, 510 F.3d 870, 942 (9th Cir. 2007); *SU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1146-47 (N.D. Cal. 2003).

Courts must be vigilant in guarding against allowing expert testimony that is not sufficiently reliable and meant to help the trier of fact determine an issue in contention. "Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012).

In December 2022, the Federal Rules of Criminal Procedures were amended to significantly enhance the disclosure requirement for expert testimony. The rules now require the defendant, and the government, when disclosing his proposed expert testimony, include "*a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief; [and] the basis and reasons for them*" along with the witness's qualifications. Fed. R. Crim. P. 16(b)(1)(C)(iii). As the 2022 Amendment Advisory Committee Notes to Rule 16 state, the update deletes the phrase "written summary" and now require disclosure of "a complete statement of all opinions the expert will provide." *Id.*, Advisory Committee Notes (2022 Amendments). The Advisory Committee Notes are clear in the purpose of these changes – to address two shortcomings of the prior iterations of the rules regarding expert disclosure "the lack of specificity of what information must be disclosed and the lack of an enforceable deadline for disclosure." *Id.* The updates are "intended to facilitate trial preparation, allowing the parties fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.*

### III.   ARGUMENT

#### a.  Proper Notice

As an initial matter, defendant Andrade's expert notice of Dr. Kanoria contains no expert analysis or conclusions or opinions on anything related to AML Bitcoin, the trading of the AML Bitcoin token on a currency exchange, or any evidence or allegations that defendant Andrade or others took actions to manipulate trading of AML Bitcoin tokens on a cryptocurrency exchange. In fact, defendant's notice does not contain the words AML Bitcoin.

To the extent that Dr. Kanoria is going to offer any opinion as to this case that is relevant to the trading of AML Bitcoin, she must disclose "a complete statement" of her opinions as to this trading, which she has not done. In his Motion *in Limine*, defendant Andrade seeks to exclude evidence of Andrade and his co-schemers efforts to manipulate the cryptocurrency exchange trading of AML Bitcoin to misrepresent to potential purchasers the value of the purchase (price) and their ability to sell their purchase (volume or liquidity). *Dkt. 452*. To the extent Dr. Kanoria may opine on any of this anticipated evidence of manipulation by Andrade and his co-schemers in the trading of AML Bitcoin, she is required to disclousure the bases for her opinions. She has not done so, even though the defendant has been in possession, for years, of documents and witness statements describing this purported attempted manipulation..

**b. Reliability**

An expert is permitted to offer opinions, "including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592. However, the court must first make a preliminary assessment of whether "the reasoning or methodology underlying the testimony is scientifically valid, and *whether that reasoning or methodology properly can be applied to the facts in issue*." *Id.* at 592-93 (emphasis added).

Dr. Kanoria proposes to testify that various types of market manipulation existed during the period of scheme as alleged in the indictment, on various cryptocurrency exchanges, in various ways. Nowhere does Dr. Kanoria address whether and how any type of manipulation existed in the trading of AML Bitcoin. For example, Dr. Kanoria proposes to testify as to a draft of a study that she asserts "analyzed data for 29 cryptocurrency exchanges and focused on four cryptocurrencies (Bitcoin, Ethereum, Litecoin and Ripple) from July 9, 2019 to November 3, 2019 and found that on average, wash trades account for over 70% of the total trading volume on each unregulated exchange." *Dkt. 450*, citing Cong et al., Crypto Wash Trading, July 2023. Nowhere does Dr. Kanoria, however, link the results of that study to the trading of AML Bitcoin or how it is relevant to the charges in the Indictment.

**c. Relevance**

While Dr. Kanoria's proposed testimony disclosure fails both the requirements of full disclosure and an explanation as to its reliability to the charges in the Indictment, the true danger in allowing Dr.

Kanoria to testify as an expert is that the jury may take away from her testimony that wash trading and other types of cryptocurrency manipulation was rampant on crypto exchanges in 2018 and 2019, and therefore tolerated or accepted. This creates a risk that the jury will be left with the improper belief that even if the practice was illegal or unethical, "everyone was doing it," and therefore what Andrade and his co-schemers attempted to do to manipulate the price of AML Bitcoin in order to device investors was not an improper practice because others did it to. This creates a significant risk of jury nullification, which alone warrants exclusion of Dr. Kanoria's testimony. *See, e.g.*, *United States v. Coscia*, 4 F.4th 454, 473 (7th Cir. 2021) (affirming the fact "[t]hat others may have employed illegal trading strategies does not constitute a defense to a criminal indictment based on the employment of illegal trading strategies"); *United States v. Vasilakos*, 508 F.3d 401, 409 (6th Cir. 2007) (affirming exclusion of evidence that "others did it too" as irrelevant to defendant's guilt); *United States v. Motovich*, 2022 WL 3303723 (E.D.N.Y. July 2, 2024) (affirming that an argument that "payroll tax evasion is widespread in the construction industry" is irrelevant and invites jury nullification); *United States v. Kosinski*, No. 3:16-CR-00148 (VLB), 2017 WL 4953902, at *3 (D. Conn. Oct. 31, 2017) (excluding defendant's evidence that others committed similar trading conduct because it "is not logically sound" and amounts to a claim of selective prosecution).

**IV.    CONCLUSION**

The testimony of Dr. Kanoria should be excluded. It is irrelevant and unreliable in that it does not address AML Bitcoin or the fraud allegations in the Indictment, and it is highly prejudicial in that it could lead to jury nullification.

DATED: January 15, 2025

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

__/s/ David Ward_____
CHRISTIAAN HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney