ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

　　　　450 Golden Gate Avenue, Box 36055
　　　　San Francisco, California 94102-3495
　　　　Telephone: (415) 436-7200
　　　　Fax: (415) 436-7230
　　　　christiann.highsmith@usdoj.gov
　　　　david.ward@usdoj.gov
　　　　matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>ROWLAND MARCUS ANDRADE<br><br>　　　　Defendant. | NO. CR 20-00249 RS-1<br><br>**UNITED STATES' MOTION TO EXCLUDE TESTIMONY OF DEFENSE EXPERT WITNESS ERIK MIN**<br><br>Dept.:　　Courtroom 3 – 17th Floor<br>Judge:　　Hon. Richard Seeborg<br><br>Trial Date:　February 10, 2025<br>Pretrial Conf: January 22, 2025 |

## I.　　INTRODUCTION

On January 10, 2025, defendant Andrade notified the government that he intends to call as an expert witness at trial Erik Min, a purported expert in cryptocurrency development and related blockchain technology. *Dkt. 448* (Defendant's Rule 16(b)(1)(C) Disclosures Regarding Expert Erik Min). Min's disclosure notice is woefully incomplete, as he has provided none of the documents or

1    materials he used to justify his conclusions.  Given the complexity of his analysis and the questionable

2    results he purports to testify to, the data and documents he relied on are critically important for the

3    government to effectively respond.  And even if the Court were to accept unchallenged his conclusions,

4    they amount to nothing more than that Andrade and his company was "close to" completing work on his

5    purported revolutionary cryptocurrency in April 2020.  But during the charged scheme period of on or

6    about July 2017 through October 2018, Andrade and his co-schemers repeatedly represented to investors

7    and purchasers that the technology existed and was working.  Any expert testimony that it was "close"

8    to completion two years later is irrelevant and would lead to jury confusion and should be excluded.

9    **II.    BACKGROUND**

10        Defendant Andrade is charged with wire fraud in connection with a scheme to misrepresent the

11   development of AML Bitcoin in order to lure investors to purchase the coin.  At the heart of the scheme

12   was the representation that AML Bitcoin had groundbreaking and patented anti-money laundering,

13   know-your-customer, and biometric identification technology built into the cryptocurrency, and given

14   these security features, it would be widely adopted by governments and businesses.  *Dkt. 1 (Indictment)*.

15        Throughout the scheme, Andrade and his co-schemers represented that AML Bitcoin was a

16   working cryptocurrency with this patented AML-KYC and/or biometric identification technology built

17   in.  For example, in "White Paper" posted on the website of Andrade's company, the NAC Foundation,

18   Andrade represented that AML Bitcoin had at this built-in technology, and in fact, that it had been

19   developed as part of an earlier iteration of AML Bitcoin called Aten Coin, and was simply being

20   transferred into the new coin.  As Andrade's White Paper states: "AML Bitcoin *possesses* all the unique

21   properties of Aten Coin, including anti-money laundering, anti-terrorism, and theft resistance." *See Dkt.*

22   *441* (United States' Opposition to Defendant's Motion In Limine to Exclude Evidence of Uncharged

23   Bad Acts) (Italics added).  Andrade repeatedly referenced patents in his description of the value of both

24   AtenCoin and AML Bitcoin, stating in marketing material that "[m]ultiple aspects of NAC's novel

25   solutions are IP protected, in the form of US and international patent applications & trademarks." *Id.*

26        The AML Bitcoin Twitter account made similar misrepresentations about the state of

27   development of the technology, including posts from December 31, 2017 and March 10, 2018:

28




*Trial Exhibits 398, 508.*

According to defendant's expert notice, Mr. Min conducted an analysis of portions of source code for AML Bitcoin hosted on BitBucket, a collaborative, cloud-based repository for storing and allowing multiple users to build and edit source code. *Dkt. 448.* Mr. Min claims he "searched across millions and reviewed thousands of lines of source code from over seventy BitBucket repositories." *Id.* Mr. Min states that he reviewed "source code, log files, and databases." In addition, Mr. Min apparently spoke with multiple developers or other individuals associated with the project. *Id.*

Mr. Min states, however, that none of the source code repositories used before late 2018 still existed, and notes that this creates "inherent limitations" on his review. *Id.* Mr. Min proposes to testify that imbedded in the post-2018 source code are indications of what he claims shows development of the code as far back as March 2017. However, even with what he was able to access, Mr. Min admits that he can only conclude that the project was only likely substantially completed in April 2020, more than 18 months after the charged scheme to defraud had ended. *Id.*

Defendant Andrade states that Mr. Min's testimony will be based on "demonstratives *based on the AML Bitcoin source code and repositories* reviewed by FTI." Defendant Andrade states that he will provide the demonstratives only to the government at some unnamed point "prior to trial" but does not propose to disclose at all the underlying data he relied on. To date, he has produced nothing.

1   ### III.    LEGAL STANDARD

2       "[S]cientific, technical, or other specialized knowledge" may be admissible where it "will help

3   the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.  Expert

4   testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and

5   methods, and (3) the result of applying those principles and methods reliably to the facts of the case.  *Id.*

6       The district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony

7   both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow*

8   *Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49

9   (1999); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

10      In December 2022, Rule 16 was amended to now require the defendant, and the government,

11  when disclosing his proposed expert testimony, include "a complete statement of all opinions that the

12  defendant will elicit form the witness in the defendant's case-in-chief, and the bases and reasons for

13  them" along with the witness's qualifications."  Fed. R. Crim. P. 16(b)(1)(C)(iii).  The updates are

14  "intended to facilitate trial preparation, allowing the parties fair opportunity to prepare to cross-examine

15  expert witnesses and secure opposing expert testimony if needed."  *Id.*

16  ### IV.    ARGUMENT

17      #### a.  Proper Notice and Reliability

18      Defendant Andrade's disclosure for Mr. Min fails the basic requirements of Rule 16's expert

19  disclosure requirements – notice and bases for the opinion.  The defendant claims that expert Kim has

20  reviewed over 70 BitBucket source code repositories and databases, "searched across millions and

21  reviewed thousands of lines of source code," identified over 4,000 demo use accounts, checked

22  verification logs, and multiple other databases and repositories of digital evidence.  Mr. Min claims that

23  the databases he reviewed reflected a "complex cryptocurrency project."  But defendant Andrade has

24  provided the government with none of this underlying evidence or data.  The government cannot

25  effectively challenge this analysis without the underlying data.  This failure to timely provide it runs

26  afoul of Rule 16's clear requirement that a defendant disclose all of his expert's proposed opinions and

27  *the bases* for them.  It fails to give the government adequate notice to challenge the proposed expert's

28  assertions.  And it prevents the government from assessing the reliability of defendant's assertions.

1    It is clear from the scope of defendant's expert notice that Mr. Min has spent weeks or months

2    analyzing the AML Bitcoin source code repositories and related databases and evidence, and likely

3    additional weeks conducting his analysis and purported testing of the remnants of the technology.

4    Defendant Andrade should have made a proper expert disclosure long ago.  But following his pattern

5    throughout this case, Andrade attempts to improperly hamper the government's case by withholding and

6    failing to disclose the discovery and make the disclosures that Rule 16 and the local rules require.

7    Andrade had refused to disclose exhibit or witness lists, forcing the government to seek an order

8    from the Court requiring him to comply with discovery rules.  He has separately filed what he describes

9    as a "Preliminary" expert disclosure of his forensic accountant, Kathy Johnson, but claims that she has

10    not yet reached any conclusions, despite clear evidence that she too has engaged in weeks if not longer

11    of complex financial analysis, and disclosing none of the financial records she admitted she has

12    reviewed and relied upon. *See Dkt. 447* (Def.'s Preliminary Expert Disclosure: Kathy Johnson).

13    In his motion for a January 10, 2025 deadline to make his expert disclosures, Mr. Andrade

14    claimed that "while he has been working with potential expert witnesses, whether and to what extent he

15    will use them is currently undetermined [and] will be impacted by what experts the government

16    discloses." *Dkt. 422*.  The government disclosed its experts on December 23, 2024, and none of its

17    experts proposed to testify as the analysis of the AML Bitcoin blockchain.

18    It is clear from Mr. Min's expert disclosure Mr. Andrade has been working with him for weeks,

19    possibly months.  His failure to properly disclose the bases for his opinions render his expert disclosure

20    improper, and given the late date, that alone warrants exclusion of the testimony of Mr. Min.

21    **b. Relevance and Unfair Prejudice**

22    Even if we accept Mr. Min's expert conclusions without any of the required supporting

23    documentation, Mr. Min's conclusions carry little to no relevance, and risk jury confusion, risk jury

24    nullification, and given their minimal relevance, are unfairly prejudicial to the government.

25    Defendant Andrade is charged with misrepresenting the development and adoption of AML

26    Bitcoin from April 2017 to October 2018, including repeated claims that the technology had already

27    been developed.  By Mr. Min's own admission, his only evidence of any work that may have been done

28    during that time frame is from code repositories that didn't even exist until December 2018.  That

clearly demonstrates that AML Bitcoin was never a working cryptocurrency during the conspiracy period, a contention that Mr. Min does not contest.  At best, Mr. Min would testify that the project was "substantially close or fully developed" only in or around April 2020, more than 18 months after the fraud scheme as charged ended.  In fact, there was never a working AML Bitcoin.  Not one company or government adopted it as Andrade fraudulently represented.  And none of the investors Andrade defrauded ever received their money back – not in 2017 or 2018, and not in 2020.

The alleged state of AML Bitcoin in April 2020 is irrelevant.  But allowing Mr. Min to testify as an expert will confuse the jury, and allow the defendant to make the improper argument that Andrade's lies and misstatements about the state of AML Bitcoin's technology were not intentional because at some point three years later the technology was "substantially close" to completion, and that maybe then, investors would have been repaid.  *See United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993), *citing United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986) ("While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all.").

V.    **CONCLUSION**

Defendant Andrade's expert disclosure is incomplete and untimely.  His failure to disclose the bases of his complex and disputed conclusions is manifestly unfair to the government and leaves it hampered in its ability to respond. Andrade's expert testimony about the state of AML Bitcoin technology years after the fraud scheme has no relevance, will confuse the jury, and is unfairly prejudicial to the government.  The Court should exclude Mr. Min's expert testimony.

DATED:  January 15, 2025

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney


__/s/ David Ward_____
CHRISTIAAN HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney