ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

       450 Golden Gate Avenue, Box 36055
       San Francisco, California 94102-3495
       Telephone: (415) 436-7200
       FAX: (415) 436-7230
       christiaan.highsmith@usdoj.gov
       david.ward@usdoj.gov
       matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>  v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>    Defendant. | CASE NO. 20-CR-00249 RS<br><br>**UNITED STATES' RESPONSES TO DEFENDANT ANDRADE'S MOTIONS *IN LIMINE #1-7***<br><br>Trial Date:  February 10, 2025<br>Pretrial Conference:  January 22, 2025<br>Court:  Hon. Richard Seeborg |

## <u>TABLE OF CONTENTS</u>

I.      Defense Motion in Limine No. 1: The Court Should Deny Defendant's Motion to Exclude Highly Relevant Evidence About the Super Bowl Rejection Campaign Because It Goes to the Nature of the Bargain ................................................................1

        A.      The Super Bowl Rejection Campaign Misrepresentations Go to the Nature of the Bargain ................................................................................................................1

        B.      Super Bowl Rejection Campaign Evidence is Admissible Under Rule 403 ......................3

II.     Defense Motion in Limine No. 2: The Court Should Deny Defendant's Motion to Exclude Victim Testimony Because It Is "Clearly Admissible" ........................................4

III.    Defense Motion in Limine No. 3:  The Court Should Deny Defendant's Motion to Exclude Misrepresentations to Non-Purchasers Because Andrade's Scheme Encompassed Broad Misrepresentations and Any Such Exclusion Would Require Mini-Trials ................................................................................................................5

IV.     Defense Motion in Limine No. 4: The Court Should Deny Defendant's Motion to Exclude Relevant Evidence of Andrade's Failure to File Tax Returns ...........................6

V.      Defense Motion in Limine No. 5: The Court Should Deny Defendant's Motion to Exclude Relevant Evidence of Andrade's Lawsuits Against Disgruntled Investors and Employees ................................................................................................................9

VI.     Defense Motion in Limine No. 6: The Court Should Deny Defendant's Motion to Exclude Evidence of Market Manipulation ................................................................11

VII.    Defense Motion in Limine No. 7: The Court Should Grant Defendant's Motion to Prevent Ms. Foteh from Self-Diagnosing PTSD But Should Not Preclude Her From Testifying About Andrade's Management Style, Treatment of Employees, and Leadership of the NAC Foundation ................................................................13

1

## TABLE OF AUTHORITIES

2 **Federal Cases**                                                                                 **Page(s)**

3 *United States v. Anderson*, 741 F.3d 938 (9th Cir. 2013) ...................................................... 7

4 *United States v. Anderson*, No. 21-cr-397 EMC (N.D. Cal. Nov. 20, 2023) ......................... 11

5 *United States v. Baggett*, 129 F.3d 128 (9th Cir. 1997) ......................................................... 4

6 *United States v. Barama*, 2023 WL 2530994 (N.D. Cal. Mar. 14, 2023) ............................... 5

7 *United States v. Bradley*, 5 F.3d 1317 (9th Cir. 1993) ........................................................... 8

8 *United States v. Castillo*, 615 F.2d 878 (9th Cir. 1980) ........................................................ 10

9 *United States v. Clark*, 649 F.2d 534 (7th Cir. 1981) ........................................................... 10

10 *United States v. Cloud*, 680 F.3d 396 (4th Cir. 2012) .......................................................... 10

11 *United States v. Ellison*, 704 F. App'x 616 (9th Cir. 2017) ..................................................... 6

12 *United States v. Finn*, 2020 WL 376644 (D. Nev. Jan. 23, 2020) ................................... 6, 8, 9

13 *United States v. Gonzalez-Florez*, 418 F.3d 1093 (9th Cir. 2005) ..................................... 3, 5

14 *United States v. Jalloh*, 787 F. App'x 409 (9th Cir. 2019) ................................................. 4, 6

15 *United States v. Lloyd*, 807 F.3d 1128 (9th Cir. 2015) ........................................................... 4

16 *United States v. Lo*, 839 F.3d 777 (9th Cir. 2016) ................................................................. 5

17 *United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016) ................................................. 5, 6, 12

18 *United States v. Meling*, 47 F.3d 1546 (9th Cir. 1995) ........................................................ 10

19 *United States v. Merriam*, 68 F. App'x 840 (9th Cir. 2003) ................................................. 13

20 *United States v. Milheiser*, 98 F.4th 935 (9th Cir. 2024) ............................................. 1, 2, 12

21 *United States v. Neuman*, 621 Fed. Appx. 363 (9th Cir. 2015) .............................................. 8

22 *United States v. Norris*, 513 F. App'x 57 (2d Cir. 2013) ..................................................... 13

23 *United States v. Regent Office Supply Company*, 421 F.2d 1174 (2d Cir. 1970) ...................... 5

24 *United States v. Reid*, 533 F.2d 1255 (D.C. Cir. 1976) .......................................................... 5

25 *United States v. Saavedra*, 684 F.2d 1293 (9th Cir. 1982) ..................................................... 4

26 *United States v. Schena*, 2022 WL 2910185 (N.D. Cal. July 23, 2022) ................................... 6

27 *United States v. Smith*, 685 F.2d 1293 (11th Cir. 1982) ....................................................... 12

28 *United States v. Sutherland*, 921 F.3d 421 (4th Cir. 2019) .................................................. 10

*United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004) ........................................................ 2, 3

*United States v. Taylor*, 239 F.3d 994 (9th Cir. 2005) ............................................................ 7

*United States v. Taylor*, 832 F.2d 1187 (10th Cir. 1987) ....................................................... 4

*United States v. Van Cauwenberghe*, 827 F.2d 424 (9th Cir. 1987) ...................................... 4

*United States v. Wineman*, 60 F. App'x 73 (9th Cir. 2003) .................................................. 4

***Federal Rules***

Federal Rule of Criminal Procedure 404(b) ............................................................... 6, 7, 8, 12

Federal Rule of Evidence 401 .......................................................................................... 1, 11

Federal Rule of Evidence 403 ...................................................................................... *passim*

Federal Rule of Evidence 404(b) ........................................................................................ 6

1    **I.    Defense Motion in Limine No. 1: The Court Should Deny Defendant's Motion to Exclude**
     **Highly Relevant Evidence About the Super Bowl Rejection Campaign Because It Goes to**
2    **the Nature of the Bargain**

3         Andrade makes two incorrect claims about AML Bitcoin's Super Bowl rejection

4    campaign.  First, he claims that the Super Bowl rejection campaign does not go to the "nature of

5    the bargain" in the charged fraud scheme.  Def. Marcus Andrade's Mots. in Limine ##1-7 (Dkt.

6    452) ("Def. MILs"), at 4 (quoting *United States v. Milheiser*, 98 F.4th 935, 944 (9th Cir. 2024).

7    Second, Andrade argues that evidence of the Super Bowl rejection campaign should be excluded

8    under Federal Rules of Evidence 401 and 403.

9         The Court should deny Andrade's motion because the Super Bowl rejection campaign

10   goes directly to the quality of the investments made by investor-victims investing in AML

11   Bitcoin.  Specifically, the Super Bowl rejection campaign fundamentally misrepresented to

12   investors and potential investors the quality of the AML Bitcoin cryptocurrency and the financial

13   viability of the AML Bitcoin project.  These misrepresentations go directly to the nature of the

14   bargain between investors and AML Bitcoin and are not unduly prejudicial; accordingly,

15   evidence of the Super Bowl rejection campaign should be admitted.

16        **A.    The Super Bowl Rejection Campaign Misrepresentations Go to the Nature of the**
             **Bargain**
17

18        The Super Bowl rejection campaign's misrepresentations go to the "nature of the

19   bargain" because they are misstatements that go to the "quality" of the AML Bitcoin product –

20   its cryptocurrency – and the "quality" of the company developing and supporting the product,

21   AML Bitcoin.  *Milheiser*, 98 F.4th at 944.  Misrepresentations about the security features built

22   into AML Bitcoin's cryptocurrency source code (also referred to as its blockchain) and the

23   financial strength of the company are each an "essential aspect" of investors' decision to invest

24   in AML Bitcoin by purchasing AML Bitcoin "tokens" that could be converted to the AML

25   Bitcoin cryptocurrency in the future.  *Id.*

26        The indictment alleges that Andrade engaged in a scheme to defraud AML Bitcoin

27   investors by disseminating false and misleading statements indicating that (1) AML Bitcoin

28   cryptocurrency actually had biometric identity features built into its blockchain, and (2) AML

Bitcoin as a company was in a strong financial position because it had existing or impending business arrangements with potential business partners. Dkt. 1 ¶ 9. The Super Bowl rejection campaign misled investors and potential investors by representing that (1) AML Bitcoin cryptocurrency had existing security features that even North Korea's government could not "hack," and (2) AML Bitcoin as a company was so successful – presumably, through business partnerships or cryptocurrency sales – that it could afford the approximately $5 million price of a Super Bowl advertisement.  These alleged misstatements go directly to the nature of the bargain because, in the context of an investment fraud case, misstatements about what a product can do and the financial viability of the company backing the product go to the "quality" of the product and the business selling the product. *Milheiser*, 98 F.4th at 944 (explaining that "a large and successful operation will inform the nature of the bargain—it is relevant information about the value of the investor's purchase").

Andrade incorrectly analyzes *Milheiser* because he treats this case like a commodities case rather than an investment fraud. How *Milheiser* applies depends on the type of transaction. *See United States v. Rothenberg*, Case No. 20-cr-266 JST (Order Denying Def.'s Mots. for New Trial and Judgment of Acquittal) (Dkt. 395), at 6 (discussing and quoting *Milheiser*, 98 F. 4th at 944-45, in depth) ("Whether a misrepresentation goes to the nature of the bargain may depend on the specific transaction at issue.").  In this investment fraud case, the government alleges that Andrade's misstatements about the AML Bitcoin cryptocurrency's security features and the company's business relationships were material to investors considering whether to invest in AML Bitcoin.  Whereas in a commodities-based fraud case the size or value of a company selling a commodity might not be material to the purchaser, in an investment fraud case, "because investments are by nature speculative," the size and success of a company offering an investment goes to the nature of the bargain because "it is relevant information about the value of the investor's purchase." *Id.* (quoting *Milheiser*, 98 F. 4th at 944-45).  In making this point, *Milheiser* looked to *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004), where the Court ruled that materiality was satisfied with the following two false statements by the defendant: "'that the invested funds would be placed in a trust and would be safe' and that 'he was in

1  an office in Washington, D.C.'"  *Rothenberg*, Case No. 20-cr-266 JST (Dkt. 395), at 6

2  (discussing *Milheiser* and quoting *Tarallo*, 380 F.3d at 1182-83).

3       The false statements in *Tarallo* were material because they "influence[d] a potential

4  investor's decision to invest, and a reasonable investor would find the level of risk to be

5  important in deciding whether to invest." *Id.* (quoting *Tarallo*, 380 F.3d at 1182).  Simply put,

6  defendant's misrepresentations made "his operation seem bigger than it was." *Id.*  They "were

7  designed to give a false impression as to the size and nature of his own company." *Id.* (quoting

8  *Tarallo*, 380 F.3d at 1182)).

9       So too here.  The Super Bowl rejection campaign's misstatements about the AML Bitcoin

10  cryptocurrency's security features and the business's financial strength were material because

11  they were capable of influencing a potential investor's decision to invest and constituted

12  important information about the risk of investing in AML Bitcoin.  *Tarallo*, 380 F.3d at 1182.

13  Accordingly, the Super Bowl rejection campaign goes to the nature of the bargain and should be

14  admitted at trial.

15      **B.**    **Super Bowl Rejection Campaign Evidence is Admissible Under Rule 403**

16       As discussed in detail above, evidence of the Super Bowl rejection campaign goes

17  directly to the quality of the AML Bitcoin investment – to both the cryptocurrency and the

18  financial strength of the company behind the cryptocurrency.  Accordingly, such evidence is

19  relevant, and Andrade's argument that Super Bowl rejection campaign evidence should be

20  excluded because it would be a waste of time is misplaced.  Def. MILs, at 6.  Relevant evidence

21  is not a waste of time.  Nor will presentation of such evidence require significant trial time.

22  Indeed, Andrade does not claim that such evidence will impermissibly lengthen the trial.

23  Instead, the rejection campaign evidence goes directly to the elements the government is required

24  to prove beyond a reasonable doubt.  Such evidence must be admitted.

25       Andrade's argument that evidence of the Super Bowl rejection campaign would cause

26  unfair prejudice by luring the jury "into declaring guilt on a ground different from the proof

27  specific to the offense charged" is also unavailing.  *Id.* (quoting *United States v. Gonzalez-*

28  *Florez*, 418 F.3d 1093, 1098 (9th Cir. 2005) (internal citation and quotation omitted)).  As

described in detail above, Super Bowl rejection campaign evidence goes to materiality and the nature of the bargain – both are elements of the offense.

The Court should deny Andrade's Motion in Limine No. 1.

## II.  Defense Motion in Limine No. 2: The Court Should Deny Defendant's Motion to Exclude Victim Testimony Because It Is "Clearly Admissible"

A mountain of precedent forecloses Andrade's motion to exclude all victim testimony.  A fraud victim's testimony is "clearly admissible" because it is "highly probative of the fraudulent scheme" charged in the indictment.  *United States v. Van Cauwenberghe,* 827 F.2d 424, 432 (9th Cir. 1987); *see also, e.g.*, *United States v. Saavedra*, 684 F.2d 1293, 1297 (9th Cir. 1982) (affirming admission of fraud victim testimony and rejecting hearsay challenge to their testimony on misrepresentations made by unidentified declarants).  The testimony of fraud victims "is more than 'inextricably intertwined' with the crime charged—it is *of a piece* with the crime charged."  *United States v. Wineman*, 60 F. App'x 73, 77 (9th Cir. 2003) (emphasis in original).

Indeed, the Ninth Circuit Model Jury Instruction on wire fraud requires the jury to find that the defendant "deceive[d] *the victim* about the nature of the bargain."  Ninth Circuit Model Jury Instruction No. 15.35 (revised June 2024).  Thus, victim testimony can hardly be "unfair" under Rule 403, let alone result in unfair prejudice that substantially outweighs the strong probative value of the testimony.  *Wineman*, 60 F. App'x at 77.  That is especially true where, as here, victim-investors would testify that they would not have invested but for affirmative misrepresentations or material omissions.  *See, e.g.*, *United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015) (affirming testimony of victim investors who testified that "they would not have invested had they known about the [sales] commissions" paid).

What's more, a fraud victim's testimony is admissible even when he or she is "not specifically mentioned in the indictment."  *United States v. Jalloh*, 787 F. App'x 409, 410 (9th Cir. 2019); *accord, e.g.*, *United States v. Baggett*, 129 F.3d 128, at *3 (9th Cir. 1997) (unpublished) (affirming admission testimony from "victims not named in the indictment" that defendant had solicited money from victims and victims were unhappy with what they received in return); *United States v. Taylor*, 832 F.2d 1187, 1197 (10th Cir. 1987) (rejecting defendant's argument that victim testimony "resulted in a cumulative 'parade of horribles (not found in the indictment) with lots of victims, losing lots and lots of money'").

Such testimony is powerful proof that the defendant devised a scheme to defraud, that his statements and omissions were material, that he intended to deceive and cheat.  After all, "the purpose of the scheme 'must be to injure, which doubtless may be inferred when the scheme has such effect as a necessary result of carrying it out.'  Of course, proof that someone was actually victimized by the fraud is good evidence of the schemer's intent."  *United States v. Reid*, 533 F.2d 1255, 1264 n.34 (D.C. Cir. 1976) (internal quotation marks omitted) (quoting *United States v. Regent Office Supply Company*, 421 F.2d 1174, 1180-81 (2d Cir. 1970), and collecting cases).

Andrade cites one case where admitting victim testimony was error, but its inaptness is stark.  *See* Def. MILs, at 15 (citing *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005)).  In *Gonzalez-Flores*, an alien smuggling case, the Ninth Circuit held that the trial court should not have admitted testimony that two young girls suffered life-threatening heat stroke—so life-threatening, in fact, that both required an airlift to a hospital and one "required resuscitation by rescue breathing."  418 F.3d at 1099.  But the Ninth Circuit still affirmed the conviction because, in any event, the error was "undeniably" harmless.  *Id.* at 1102.  *Gonzalez-Flores* has no bearing on Andrade's prosecution for wire fraud and money laundering; the government does not argue that he endangered children's life or limb.

The Court should therefore deny Andrade's MIL #2 and permit Andrade's victims to testify.

### III.  Defense Motion in Limine No. 3:  The Court Should Deny Defendant's Motion to Exclude Misrepresentations to Non-Purchasers Because Andrade's Scheme Encompassed Broad Misrepresentations and Any Such Exclusion Would Require Mini-Trials

Similarly meritless is Andrade's motion to exclude all argument and evidence of "misrepresentations that go beyond the scheme of lying to purchasers that is alleged in the indictment."  Def. MILs, at 17.  This Court has rightly recognized that wire fraud "does not require that the misrepresentation be directly uttered to the victim."  *United States v. Barama*, No. 19-CR-00463-RS-2, 2023 WL 2530994, at *4 (N.D. Cal. Mar. 14, 2023).  Indeed, in reversing the exclusion of uncharged fraud evidence, the Ninth Circuit has explained that "the commission of a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, including additional executions of the scheme that were not specifically charged."  *United States v. Loftis*, 843 F.3d 1173, 1177 (9th Cir. 2016) (quoting *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016)).  As noted in the response above to Andrade's MIL #2, evidence of harm or misrepresentations "not specifically mentioned in the

indictment" is still admissible. *Jalloh*, 787 F. App'x at 410. That is because "[w]hen an indictment alleges a general scheme, 'evidence of uncharged transactions is not evidence of 'other' crimes or acts under Rule 404(b), because it is evidence of part of the *crime charged* in the indictment—the overall scheme to defraud.'" *Id.* (emphasis in original) (quoting *Loftis*, 843 F.3d at 1176). Simply put, "to demonstrate that a defendant employed a 'device, scheme or artifice' or made a material misstatement or mission, the Government 'is not restricted solely to isolated misrepresentations or omissions.'" *United States v. Schena*, No. 5:20-CR-00425-EJD-1, 2022 WL 2910185, at *11 (N.D. Cal. July 23, 2022) (quoting *United States v. Ellison*, 704 F. App'x 616, 619 (9th Cir. 2017), and collecting cases).

Adopting defendant's MIL would also be unworkable. Andrade and his co-conspirators devised a scheme that encompassed more than just defrauding Purchaser-1. Their fraudulent misrepresentations spanned several years and various channels, including social media, the press, personalized emails, text messages, phone calls, and more. Andrade and his co-conspirators made these misrepresentations to a slew of actual and potential victim-purchasers. The speaking indictment put Andrade on notice more than four years ago that the government would introduce evidence of this comprehensive scheme. *See, e.g.*, Dkt. 1 ¶ 9(a) ("public statements and statements to potential purchasers of AML Bitcoin"). Andrade's MIL would require, contrary to the precedent above and the indictment itself, that the Court must find that each misrepresentation was actually heard by an actual purchaser—creating the very "minitrial" problem that the defense purports to prevent. Def. MILs, at 18. The Court should instead deny Andrade's MIL #3 and "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Loftis*, 843 F.3d at 1178.

## IV.    Defense Motion in Limine No. 4: The Court Should Deny Defendant's Motion to Exclude Relevant Evidence of Andrade's Failure to File Tax Returns

Andrade incorrectly argues that the Court should exclude evidence of his failure to file tax returns because Federal Rules of Evidence 404(b) and 403 preclude the government from introducing such evidence. The Court should deny his motion.

Evidence that Andrade failed to file tax returns during his involvement in the fraud scheme is admissible because it is inextricably intertwined with his participation in the scheme. *See, e.g.*, *United States v. Finn*, Case No. 13-cr-439-KJD-VCF, 2020 WL 376644, at *3 (D. Nev. Jan. 23, 2020) (unpubl.)

(admitting, in wire fraud case, evidence that defendant failed to file tax returns during his involvement with the fraud scheme because the failure to file was "inextricably intertwined" with his participation in the scheme).

First, Andrade's failure to file a tax return while he was engaged in the alleged cryptocurrency fraud scheme "is intrinsic evidence that [he] received illegitimate payments from a fraudulent scheme." *Id.* The government intends to introduce evidence that Andrade and his company, the National Aten Coin (NAC) Foundation, received approximately $6.8 million from investors who purchased Aten Coin and AML Bitcoin cryptocurrency from 2014 through 2018. The government also intends to introduce evidence that Andrade transferred approximately $2.4 million in investor money to his personal bank accounts. And the government intends to introduce evidence that Andrade failed to file personal tax returns for 2016, 2017, and 2018, and failed to file tax returns for the NAC Foundation from 2014 through 2018.

The basis for the wire fraud and money laundering charges against Andrade is that he induced investment into AML Bitcoin based on false and misleading statements, profited from those investments, and concealed his ill-gotten gains through financial transactions. "Failure to report ill-gotten gains is a component of the overall fraud scheme even if the defendant is not charged with tax evasion." *Id.* (citing *United States v. Taylor*, 239 F.3d 994, 999-1000 (9th Cir. 2005)).

Put differently, Andrade's failure to file tax returns is "inextricably intertwined with the charged offense" because it is "part of the transaction that serves as the basis for the criminal charge and is vital to the prosecution's ability to offer a coherent and comprehensive story regarding the commission of the crime." *Id.* (quoting *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013)). Accordingly, evidence that Andrade failed to file tax returns during the alleged fraud scheme is "independently admissible and … exempt from the requirements of Rule 404(b)." *Id.*

Alternatively, Andrade's failure to file his taxes shows consciousness of guilt under Rule 404(b). Andrade's company, the NAC Foundation collected approximately $6.8 million from Aten Coin and AML Bitcoin investors. Andrade transferred a significant percentage of that money – $2.4 million – to himself. He bought two houses and two vehicles with investor money. But Andrade did not report that income to the IRS. "The lack of tax returns is probative of [Andrade]'s intent to conceal his income."

*Id.* at 4.

Rule 404(b)(2) permits evidence of other bad acts when offered for the purpose of proving intent. Fed. R. Crim. P. 404(b)(2).  Here, evidence that Andrade failed to file taxes during the alleged fraud scheme is admissible because (i) sufficient evidence of Andrade's failure to file taxes during the relevant years exists for the jury to find that he failed to file taxes, (ii) Andrade's failure to file taxes proves intent to conceal the gains of his fraud scheme, (iii) the failure to file tax returns occurred contemporaneously with the fraud scheme, and (iv) Andrade's failure to file taxes is similar to the charged fraud scheme in that both are premised on deception and concealing the truth for financial gain. *See United States v. Bradley*, 5 F.3d 1317, 1320 (9th Cir. 1993) (explaining the standard for admitting 404(b)(2) evidence).

Andrade's claim that evidence of his failure to file tax returns should be excluded because it is more prejudicial than probative is similarly incorrect.  Courts exclude relevant evidence "if its probative value is substantially outweighed by a danger of … unfair prejudice."  Federal Rule of Evidence 403. Accordingly, as the probative value of evidence increases, "the danger of unfair prejudice must also rise to substantially outweigh the probative value." *Finn*, 2020 WL 376644, at *4.  Andrade argues that Rule 403 prohibits evidence of Andrade's failure to file tax returns because such evidence is not probative and even if probative would confuse the jury and waste trial time.  Def. MILs, at 14.  But these risks are essentially non-existent.  Andrade's failure to file is evidence that he was intentionally hiding his ill-gotten gains.  Presentation of such evidence will take only minimal time.  And such evidence will not confuse the jury because failure to file evidence is clearly related to intent to conceal fraud proceeds. Put simply, "these risks do not substantially outweigh the probative value of [Andrade]'s intent to coneal his income from the investment scheme." *Finn*, 2020 WL 376644, at *4.  "As a result, Rule 403 does not exclude the evidence of [Andrade]'s failure to file tax returns." *Id.*

Finally, Andrade's reliance on *United States v. Neuman*, 621 Fed. Appx. 363, 365 (9th Cir. 2015), is entirely misplaced.  In *Neuman*, the district court denied defendants' attempt to introduce evidence of an IRS audit of their business tax returns. *Id.*  Excluding defendant's evidence of the tax audit was proper because it was irrelevant to the wire fraud and money laundering charges. *Id.* Presumably, the defendants in Neuman wanted to demonstrate that their company had passed an IRS

1  audit, and the Court precluded such evidence because the issue was not whether the defendants had

2  committed tax fraud.  Here, on the other hand, the government seeks to offer evidence of Andrade's

3  failure to file tax returns to show that he knowledge of ill-gotten gains and intent to conceal them.  Such

4  evidence is admissible under Rule 403.  *Finn*, 2020 WL 376644, at *4.

5  **V.     Defense Motion in Limine No. 5: The Court Should Deny Defendant's Motion to Exclude**
   **Relevant Evidence of Andrade's Lawsuits Against Disgruntled Investors and Employees**

6

7           Andrade seeks to block witness testimony related to civil lawsuits.  The government intends to

8  introduce the existence of three types of civil lawsuits: (1) by disgruntled investors against Andrade for

9  his false and misleading statements related to AML Bitcoin, (2) by Andrade against disgruntled

10 investors to dissuade them from going to authorities and law enforcement with complaints about

11 Andrade's investment scheme, and (3) by Andrade against his employee, Melissa Foteh, to stop her

12 from complaining about Andrade to authorities.  Andrade asserts that the danger of unfair prejudice

13 substantially outweighs any probative value of such evidence.  Because an investor's decision to sue, the

14 impact of Andrade's civil suit preventing an investor from going to authorities or taking legal action

15 against Andrade, and the timing of such suits all bears directly on the materiality of Andrade's

16 misrepresentations and omissions—an element the government must prove beyond a reasonable doubt—

17 the Court should reject this attempt to limit investor testimony.  The Court can provide limiting

18 instructions to the jury to prevent any potential prejudice.

19          To start, Andrade's lawsuits against his victims and former associates show his efforts to deter

20 reporting of his scheme to law enforcement and the public.  Indeed, Andrade boasted about his use of

21 litigation as a cudgel against SEC and FBI investigation.  In April 2018, for example, Abramoff

22 messaged Andrade: "Got a call from one of the pre-ICO s [sic] that coin holders online are planning to

23 go to SEC and FBI about us.  I'll get the info from him when he gets to his office.  Have you heard

24 this?" Trial Ex. 951 (excerpt of WhatsApp chats on from Abramoff's phone).  Andrade replied: "We

25 know who it is, already have a lawsuit on him. […] Default Judgment[.]"  *Id.*  Similarly, in February

26 2018—a day after NBC announced that AML Bitcoin's Super Bowl ad "wasn't rejected because it was

27 never reviewed"[1]—Andrade wanted to sue.  "Dammit Jack, we need to release. The letter and the proof

28

---
[1] Charlie Warzel & Ryan Mac, *The Latest "Bitcoin" Ploy? Faking A Super Bowl Ad Rejection.*,

1  and threaten a lawsuit against NBC," Andrade messaged Abramoff. Trial Ex. 940. Abramoff replied: "a

2  lawsuit based on what? […] Marcus, we really need to do this as a conversation not texting." *Id.*

3        "An attempt by a criminal defendant to suppress evidence is probative of consciousness of guilt

4  and admissible on that basis." *United States v. Castillo*, 615 F.2d 878, 885 (9th Cir. 1980). And a

5  defendant's attempts to intimidate others "into withholding information from the FBI [] shows

6  consciousness of guilt—second only to a confession in terms of probative value." *United States v.*

7  *Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995). To this day, several victims the government has

8  subpoenaed to testify fear that Andrade will sue or otherwise retaliate against them for their testimony.

9  These fears are not speculative: Andrade even sued Purchaser-1 after Purchaser-1 reported Andrade's

10  scheme to the FBI.

11        In addition, the fact that victims have sued Andrade is also admissible. For one thing, a victim's

12  lawsuit against the defendant is probative of her credibility, because it tends to show that Andrade's

13  misrepresentations were material and harmed the victim. *See United States v. Clark*, 649 F.2d 534, 543

14  (7th Cir. 1981) (affirming victim's testimony on her civil lawsuit against criminal fraud defendants

15  because "[t]he fact of the lawsuit was properly admitted on the issue of credibility"). For another, the

16  lawsuits are intertwined with the course of the scheme, so that the fact of witnesses' lawsuits against

17  defendant are "necessary to complete the story of the crime on trial." *United States v. Sutherland*, 921

18  F.3d 421, 430 (4th Cir. 2019) (affirming admission of witness's lawsuit against defendant); *see also*, *e.g.*,

19  *United States v. Cloud*, 680 F.3d 396, 402 (4th Cir. 2012) (collecting cases holding that "victim-impact

20  testimony" is admissible in fraud cases).

21        To be clear, the government does not seek to admit judicial filings, such as a civil complaint, or

22  evidence of the outcome of these proceedings in its case-in-chief. Rather, the government anticipates

23  testimony by: investors for whom Andrade's misstatements were material such that they filed a civil suit

24  against him, investors who did not report Andrade to legal authorities or take legal action against him

25  because Andrade filed a civil suit against them first, and an employee who did not report Andrade to

26  legal authorities because he had sued her first. Such testimony is relevant as it establishes the

27

28  BuzzFeed News (Feb. 4, 2018), https://www.buzzfeednews.com/article/charliewarzel/the-latest-bitcoin-ploy-faking-a-super-bowl-ad-rejection.

materiality of Andrade's statements and omissions.  Fed. R. Evid. 401.  Under the Ninth Circuit Model Criminal Jury Instruction, "statements made or facts omitted as part of the scheme were material… if they had a natural tendency to influence, or were capable of influencing a person to part with money or property."  Ninth Cir. Model Crim. Jury Instr. 15.35 (Wire Fraud).  Testimony indicating that investors took legal action because of Andrade's false and misleading statements shows that Andrade's words influenced these individuals.  *See United States v. Anderson*, Pretrial Conf. Order, No. 21-cr-397 EMC (N.D. Cal. Nov. 20, 2023) (Dkt. 64), at 5-6 (denying defense motion to exclude evidence of civil litigation between investor-victims and defendant because civil suits were evidence of materiality).

Under Federal Rule of Evidence 403, relevant evidence may be excluded if the probative value is *substantially outweighed* by the danger of unfair prejudice…" (emphasis added).  As noted, the government will not elicit testimony regarding the outcome of these civil actions.  To the extent the Court finds it necessary, a limiting instruction can be provided to the jury admonishing them that the result of any civil proceeding is not to be considered and they should refrain from researching any civil cases involving the Defendant and the witnesses.  This would diminish the potential for prejudice and certainly under Rule 403, the probative value would not be significantly outweighed by unfair prejudice with the tailored scope of the anticipated testimony.

The government will not admit the civil suits themselves or discuss the merits of the civil suits with witnesses.  The trial will not revolve around the civil suits, nor will the trial devolve into mini-trials about the merits of the civil litigation.  Similarly, witness testimony about Andrade's frequent litigation will not unduly prejudice the jury into believing Andrade was a bad person.  Rather, testimony that Andrade sued disgruntled investors to stop them from going to authorities, that disgruntled investors took the step of suing Andrade, and that Andrade sued a disgruntled employee is evidence both of materiality and Andrade's consciousness of the scheme to defraud in trying to block investors from going to authorities through preemptive legal action.

## VI.    Defense Motion in Limine No. 6: The Court Should Deny Defendant's Motion to Exclude Evidence of Market Manipulation

In his sixth MIL, Andrade moves to exclude evidence of his efforts to "manipulate the price or volume of the AML Bitcoin token on cryptocurrency exchanges" on the ground that "it is not probative

1   of any material point in this case." Def. MILs, at 24–26. To state his argument is to refute it. "A

2   deception about the market value of a commodity that was intended to cause the victim to pay an

3   inflated price would go to the nature of the bargain and therefore could be a basis for a fraud

4   conviction," as the Ninth Circuit recently stressed. *Milheiser*, 98 F.4th at 945 n.7.

5       Here, Andrade intended to inflate the market value of AML Bitcoin by paying individuals to

6   trade it on exchanges at artificially inflated prices—classic "market making" or "pump and dump."

7   Andrade himself put it well. In WhatsApp messages in May 2018, for example, Abramoff wrote

8   Andrade, "our price is dropping rather rapidly. any ideas?" Andrade reassured him that although

9   "people were selling off," "*[a]s soon as Market-making kicks in will be good to go* [sic] […] First we're

10  hitting Asia […] Just please get me the pr from your side." Trial Ex. 952 (excerpt from Abramoff's

11  phone, Bates FBI-00123203).

12      A couple weeks later, Abramoff conveyed Andrade's directions to John Bryan, writing: "OK, I

13  had a chance to review things with Marcus. […] you will have a budget of $250,000 to effect a

14  significant change in volume, and more importantly, the price of the token. He expects that you will

15  need to use a portion of that for purchasing, but he leaves it to you to do what you need to market

16  properly." U.S. Mot. to Admit Co-Conspirator Statements, Dkt. 449 at 23–24 (Ex. 902). Bryan got to

17  the point: "i *just did a trade with myself* at […] $.95[.] i bought and i sold it to show some volume […] i

18  pushed it from $.73 to $.95 on BTC pair[.]" Ex. 902 (emphasis added). In short, after the October 2017

19  ICO failed to meet expectations, Andrade still sought to misrepresent AML Bitcoin as a popular

20  cryptocurrency in high demand. This "market making," in the defendant's own words, was intended to

21  mislead investors that AML Bitcoin had broader adoption and legitimacy than it did—and thus that they

22  should buy the token at an inflated price befitting its purportedly high public valuation and trading

23  volume.

24      Andrade again protests that Rule 404(b) excludes vast swaths of his fraudulent conduct,

25  including his efforts to inflate the perceived price and liquidity of the AML Bitcoin token. Def. MILs, at

26  26–27. But precedent forecloses this argument, as detailed above in responses to MILs #2 and 3. "It [is]

27  'not necessary to consider whether the evidence [is] admissible as other crimes evidence under Rule

28  404(b)," even when "none of [the evidence on fraudulent transactions] was alleged in the indictment."

1  *Loftis*, 843 F.3d at 1176–77 (quoting *United States v. Smith*, 685 F.2d 1293, 1296 (11th Cir. 1982)).

2  Evidence of uncharged transactions, like market manipulation, relates to the evidence of a scheme.  And

3  in any event, the market manipulation evidence here is largely within the charged wire fraud period,

4  which runs through at least October 2018. Courts admit even less blatant market manipulation evidence

5  in fraud cases.  *See, e.g.*, *United States v. Merriam*, 68 F. App'x 840, 841–42 (9th Cir. 2003) (affirming

6  admission of expert testimony on "typical role of an issuer"—such as the defendant—"in a 'pump and

7  dump' fraud scheme"); *United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013) (affirming admission

8  of evidence that defendant orchestrated wire transfers to feign investment in a business he was selling).

9  The Court should deny Andrade's MIL #6.

10  **VII.    Defense Motion in Limine No. 7: The Court Should Grant Defendant's Motion to Prevent
            Ms. Foteh from Self-Diagnosing PTSD But Should Not Preclude Her From Testifying**
11  **About Andrade's Management Style, Treatment of Employees, and Leadership of the NAC
            Foundation**

12          The government agrees that the Court should exclude testimony from Melissa Foteh regarding

13  her self-diagnosis of post-traumatic stress disorder and/or other medical and psychological conditions

14  due to her time working for Andrade at the NAC Foundation.

15          However, Ms. Foteh should be permitted to testify regarding Andrade's conduct as the founder,

16  CEO, and owner of the NAC Foundation.  And she should be permitted to testify regarding Andrade's

17  management style and control over the NAC Foundation.  The government expects Ms. Foteh to testify

18  that Andrade controlled the NAC Foundation, its finances, its website, and its press releases, many of

19  which were related to Aten Coin and AML Bitcoin.  Such evidence is highly relevant, and the defense

20  does not seek to exclude it.

21

22  DATED:  January 15, 2025                           Respectfully submitted,

23                                                     ISMAIL J. RAMSEY
24                                                     United States Attorney

25                                                     _____/s/_____
                                                       CHRISTIAAN H. HIGHSMITH
26                                                     DAVID J. WARD
                                                       Assistant United States Attorneys
27
                                                       MATTHEW CHOU
28                                                     Special Assistant United States Attorney