MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:     +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:     +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:     +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>        v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>                Defendant. | Case No. 3:2-cr-00249-RS<br><br>**DEFENDANT ANDRADE'S OPPOSITION TO GOVERNMENT'S MOTION TO EXCLUDE EXPERT TESTIMONY OF SWATI KANORIA**<br><br>Judge: Hon. Richard Seeborg, Chief Judge |

Defendant Rowland Marcus Andrade files this Opposition to the United States' Motion to Exclude Expert Testimony of Swati Kanoria.

1

Defendant Andrade's Opposition to Government's         Case Number:  3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

## I.     INTRODUCTION

The government objects to Dr. Kanoria's educational testimony because it does not address AML Bitcoin or "contain the words AML Bitcoin."[1] This will come as quite discomforting news to the government's proffered expert Brandon Tabbal; to the author of the government's disclosure for Mr. Tabbal[2] (ECF 419), which describes Mr. Tabbal's educational testimony about cryptocurrency in over four pages, and never mentions AML Bitcoin either; and to the preparer of Mr. Tabbal's demonstrative exhibits – which are also devoid of any mention of AML Bitcoin.[3] In fact, as Mr. Andrade's filing in response to Mr. Tabbal's disclosure indicates, educational testimony can be admissible, and what's good for Mr. Tabbal is good for Dr. Kanoria.

No better is the government's other main objection, that Dr. Kanoria's testimony is irrelevant and/or an "everyone does it defense."[4] The few cases on which the government relies for this objection arise from facts in which the prohibitions against the defendant's conduct are unmistakable, which is why those circumstances sometimes are treated as impermissible "everybody does it" defenses. But the law is and should be different on facts like those in this case, in which the trading occurred on laissez-faire international markets, where the activities are encouraged by the markets, the vast majority of the traders are doing the same thing, and reputable people are pitching to provide the service.

As a result, in cases like this one, "no events or actions which bear even remotely [on an inference of lack of good faith] should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it may have." *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952). Should the government present evidence of alleged market manipulation – over Mr. Andrade's objection – Dr. Kanoria's testimony should be permitted to allow the jurors to understand that evidence within context and properly assess all the facts in determining whether Mr. Andrade acted with the intent to deceive and cheat.

---

[1] United States' Motion to Exclude Expert Testimony of Swati Kanoria (Dkt. 461) at 3:5-10; 5:27-6:16.
[2] United States' Notice of Expert Testimony by FBI Forensic Accountant Brandon Tabal (Dkt. 419).
[3] Stefan Decl. X, Exh. A.
[4] Dkt. 461 at 3:5-10; 5:27-6:16.

2

Defendant Andrade's Opposition to Government's         Case Number:  3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

## II. FACTUAL BACKGROUND

The government has filed a motion to introduce evidence that Mr. Andrade sought to "secretly pump up the perceived price and liquidity of the AML Bitcoin token."[5] The government has characterized this behavior as "damage control" and "attempts to conceal the conspiracy."[6] The alleged behavior included creation of a plan for a multi-faceted marketing campaign[7] and trading on a cryptocurrency trading platform to influence the price of the token.[8] Mr. Andrade has separately objected to the introduction of this evidence in a motion in limine,[9] to which the government has responded.[10]

Should the Court permit the introduction of evidence of alleged market manipulation, the defense should be allowed to call Dr. Kanoria to provide testimony regarding market making, ways a market can be artificially influenced, and for the relevant timeframe, the prevalence of inflated market volume on cryptocurrency trading platforms and incentives which existed for the creation of inflated volume. Specifically, she will educate the jury regarding the following topics:

- Market making on traditional and on cryptocurrency exchanges and the differences in regulation between the two.[11]
- Methods of inflating the volume and price of assets on cryptocurrency trading platforms.[12]
- Potential motivating factors for cryptocurrency trading platforms to inflate trading volumes,[13] including getting listed on cryptocurrency data aggregators[14] and earning listing fees.[15]

---

[5] Gov't Motion to Admit Co-Conspirator Statements (Dkt. 449) at 20:16-21:24.
[6] Dkt. 449 at 20:17-19.
[7] Dkt. 449 at 20:11-14.
[8] Dkt. 449 at at 20:22-21:2.
[9] Defendant Marcus Andrade's Motions in Limine ##1-7 (Dkt. 452) at 18:1-25.
[10] United States' Responses to Defendant Andrade's Motions in LImine #1-7 (Dkt. 464).
[11] Def Rule 16(b)(1)(C)(iii) Dislcosure Regarding Expert Dr. Swati Kanoria (Dkt. 450) at 2:18-20; 3:6-8.
[12] Dkt. 450 at 2:20-22; 3:9-15.
[13] Dkt. 450 at 2:23-24.
[14] Dkt. 450 at 3:19-4:2.
[15] Dkt. 450 at 3:18-19.

- Trading activity on cryptocurrency trading platforms during the charged timeframe, including evidence that inflated trading volumes were prevalent on these platforms during the charged timeframe. Specifically, studies show that the majority of cryptocurrency trading platforms showed inflated volume and over 70% of total trading volume on unregulated exchanges was the product of wash trading.[16]

Dr. Kanoria's testimony will provide context for both the government's evidence and defense exhibits that will be offered to give jurors the full picture of Mr. Andrade's mental state at the time he listed AML Bitcoin on cryptocurrency exchanges and at the time of any efforts to engage in market making on those exchanges.

This testimony will provide context not only to Mr. Andrade's understanding and intent, but also to the meaning of evidence that Mr. Andrade expects to introduce. Each exchange on which AML Bitcoin tokens were listed – and all others contacted by AML Bitcoin – required payment of a listing fee.[17] Moreover, these exchanges set thresholds for trading volume that tokens listed on the exchange were required to meet.[18] Tokens failing to meet thresholds faced de-listing.[19] Some cryptocurrency exchanges mandated "market makers" or offered their own market making services to assist with maintenance of proper volumes; sometimes at an additional price.[20] In at least one instance, the exchange required that it retain funds from the token issuer so that the exchange could market make AML Bitcoin tokens with the funds.[21]

In this environment, Mr. Andrade's communications with representatives of exchanges show Mr. Andrade being admonished, repeatedly, to maintain volume.[22] He was encouraged to make and buy his own sell orders.[23] At the same time, Mr. Andrade was being pitched by multiple

---

[16] Dkt. 450 at 4:3-16.
[17] Stefan Decl. at X, Exhs. B-I.
[18] Stefan Decl. at X, Exh. D, E, G, & I.
[19] Stefan Decl. at X, Exhs. I, D, B, D.
[20] Stefan Decl. at X, Exhs. C, D, E, F, G, I, & Q.
[21] Stefan Decl. at X, Exh. I.
[22] Stefan Decl. at X, Exhs J-O & T.
[23] Stefan Decl. at X, Exh. P.

4

Defendant Andrade's Opposition to Government's                    Case Number:  3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

cryptocurrency "market makers" who came to him advertising their services, which included maintaining the volume and price of tokens.[24]  In 2019, after having observed that he would need to work to maintain volume requirements to remain listed on the exchanges, Mr. Andrade had the terms and conditions on the AML Bitcoin token website altered to reflect that Mr. Andrade and his team may engage in transactions on the exchanges on which AML Bitcoin was trading:

> NAC reserves the right, without notice or permission, to undertake any form of manual transactions or automated transactions, or to undertake any other lawful activities, that may be necessary to comply with the rules and regulations set out by any public markets or exchanges ("Exchanges") with which NAC conducts any business. This may include the use of automation tools to generate transactions necessary to comply with volume thresholds set by some Exchanges. . . . . NAC reserves the right, but not the obligation, to engage in volume- making for purposes of Exchange compliance."[25]

### III. ANALYSIS

#### A. Educational Testimony Is Admissible

The government has objected to Dr. Kanoria's testimony for lack of proper notice and on reliability grounds, but the underlying rationale for both objections is the same: the government complains that Dr. Kanoria will not be providing any opinion regarding the trading of AML Bitcoin tokens. Not only do these objections fly in the face of the government's own anticipated use of a cryptocurrency expert who similarly will not provide any opinions on AML Bitcoin, but it also flies in the face of the law.

Nothing in the relevant rules or caselaw requires Dr. Kanoria to provide "expert analysis or conclusions or opinions on anything related to AML Bitcoin."[26] To the contrary, it is recognized that "it might also be important in some cases for an expert to educate the factfinder about general

---

[24] Stefan Decl. at X, Exh. R, S
[25] Stefan Decl. at X, Exh. U
[26] Dkt. 461 at 4:22-27.

5

Defendant Andrade's Opposition to Government's          Case Number: 3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments. In these circumstances, "Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case." *Id.*

Dr. Kanoria will not be providing opinions regarding AML Bitcoin, but as articulated by the Ninth Circuit Court of Appeals, "not every expert need express, nor even hold, an opinion with regard to the issues involved in a trial." *United States v. Rahm*, 993 F.2d 1405, 1411 (9th Cir. 1993). Within the Ninth Circuit, the admission of all manner of educational testimony has been deemed admissible. *See, e.g., United States v. Brooks*, F.3d 1186, 1195-96 (9th Cir. 2010) (detective permitted to testify regarding the relationship between prostitutes and pimps); *United States v. Lopez-Martinez,* 543 F.3d 509, 514 (9th Cir. 2008) (agent permitted to testify about practices of human smugglers); *Vang v. Xiong*, 944 F.2d 476 (9th Cir. 1999) (epidemiologist permitted to testify about Hmong cultural norms). In each instance, the admission of testimony does not hinge on "the existence or strength of the expert's opinion," but instead, "whether the expert testimony will assist the trier of fact in drawing its own conclusion as to a fact in issue." *Dull v. Ylst*, No. 93-16441, 1994 U.S. App. LEXIS 7821, at *11-12 (9th Cir. Apr. 14, 1994).

The government's motion does not question Dr. Kanoria's credentials or the bases for her proffered testimony; although it tosses in questions about her reliability,[27] the sole basis for these questions is that her testimony will not include AML Bitcoin. There was nothing improper in the defense's notice of Dr. Kanoria's educational testimony, and there is nothing in the educational aspect of that testimony to render it unreliable.

**B. Dr. Kanoria's Testimony Is Probative for the Jury's Determination of Mr. Andrade's Intent to Deceive and Cheat.**

---

[27] Dkt. 461, 3:5, 5:12-25.

6

Defendant Andrade's Opposition to Government's   Case Number:  3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

Because intent to defraud is critical to the government's proof in this case, good faith is critical, and "no events or actions which bear even remotely on its probability should be withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." *United States v. Brandt*, 196 F.2d 653, 657 (2d Cir. 1952). The defense accepts the proposition that "other people committed the same crime" is not a defense; however, Mr. Andrade's purpose for engaging in market-making activities and his understanding of those practices as being standard in the industry at the time is directly probative of his intent.

To keep AML Bitcoin listed on exchanges, Mr. Andrade had to comply with the rules of those exchanges. Those rules included maintenance of certain trading volumes. Mr. Andrade's contracts and communications with exchanges shows Mr. Andrade's purpose in market-making for AML Bitcoin so that it could remain compliant with exchange policies. Dr. Kanoria's testimony can be used to reasonably infer that the practices Mr. Andrade engaged in to keep AML Bitcoin tokens listed were prevalent in the industry at the time, and that Mr. Andrade, in keeping with those practices, could have reasonably understood them to be acceptable, or at minimum, that he did *not* undertake them for the purpose the government claims ("lulling victims").[28] *See generally Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505, 509 ("Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry."). The government will present one inculpatory theory to explain market making activity, and Dr. Kanoria's testimony is crucial in demonstrating an alternative, good faith basis for Mr. Andrade's behavior.

Relevancy "simply requires that '[t]he evidence . . . logically advance a material aspect of the party's case.'" *United States v. Wells*, No. 3:13-cr-00008-SLG, 2019 U.S. Dist. LEXIS 118915, at *4 (D. Alaska July 17, 2019) (internal citations omitted); *see also United States v. Curtin,* 489 F.3d 935, 943 (9th Cir. 2007) ("To be 'relevant,' evidence need not be conclusive proof of a fact sought to be

---

[28] Dkt. 449 at 20:17-19.

7

Defendant Andrade's Opposition to Government's                Case Number: 3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

proved, or even strong evidence of the same."). Regarding the requirement that the testimony "fit" the case, courts must ensure that proffered testimony "speaks clearly and directly to an issue in dispute in the case and that it will not mislead the jury." *Id.* Dr. Kanoria's educational testimony "speaks clearly and directly" to the primary matter at issue in this case: Mr. Andrade's specific intent to "deceive and cheat."

This sort of evidence regarding Mr. Andrade's mental state has been deemed admissible for its ability to create reasonable doubt as to intent to defraud based on an honest belief that the conduct engaged in was not improper. It was abuse of discretion, in *United States v. Litvak,* 800 F.3d 160, 188-89, 190 (2d Cir. 2015), for the district court to exclude evidence that the defendant's supervisors approved of and participated in the same conduct he was, because this introduced "a reasonable doubt as to his intent to defraud, *i.e.*, that he held an honest belief that his conduct was not improper or unlawful." *Id.* Here too, Dr. Kanoria's testimony about general industry practices goes to the environment in which Mr. Andrade was operating, and therefore to his state of mind. *See also Brandt*, 196 F.2d at 656-57 (2d Cir. 1952) (finding abuse of discretion in district court's refusal to admit that other reputable charities retained professional fundraisers in a way similar to that in the charged scheme).

The government's reliance on *United States v. Coscia*, 4 F.4th 454, 465 (7th Cir. 2021) is misplaced. Not only is that case easily distinguishable, but read in context it supports rather than contests Mr. Andrade's position. It is distinguishable because it arose from trading in a highly regulated market in which spoofing activity like that of the defendant had been expressly prohibited by Congress, *see id.* at 460, and because it was decided in the context of the district court's denial of a new trial based upon production of new material. *See id.* at 459. By contrast, this case is about trading on foreign exchanges where trading activity impacting price and volume is encouraged and regulation is uncertain, and in this case this Court will be making a Rule 401, 403, or 702 determination regarding admissibility, unlike the Seventh Circuit's abuse of discretion determination regarding a district court's denial of a new trial. *Id.* at 465.

8

Defendant Andrade's Opposition to Government's    Case Number: 3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

1   Leaving aside the distinctions, *Coscia*, helps Mr. Andrade more than the government. The
2   district court admitted a substantial amount of evidence – offered *by the government* – about what
3   other traders were doing, *see, e.g., id*. at 464 (defendant's cancellations were 96% of cancellations on
4   the exchange); and 467 (defendant's order-to-trade ration was significantly greater than any other
5   market participant). The language from the opinion quoted by the government was from the district
6   court's decision;[29] the Seventh Circuit did not make its decision on those grounds. *See id* at 472-73.
7   The citation to *United States v. Motovich*, 2022 WL 3303723 (E.D.N.Y. July 2, 2024) is to a
8   perfunctory ruling that the defendant could not make certain arguments "regarding widespread
9   payroll tax evasion and selective prosecution," after the defendant did not oppose a government
10  motion in limine to exclude the evidence. *Id.* at 6. The government's reliance on *United States v.*
11  *Kosinki*, No. 3:16-CR-00148 (VLB), 2017 WL 4953902, at *3 (D. Conn. Oct. 31, 2017), is
12  misplaced, in that the district court did not "exclud[e] evidence that others committed similar trading
13  conduct because it 'is not logically sound,'" as stated in the government's parenthetical,[30] but rather
14  precluded the defendant's argument "that because others who have acted similarly *were not*
15  *prosecuted*, he must not be guilty," *see id.* at *3, which is not the argument Mr. Andrade puts
16  forward.
17  No better is *United States v. Vasilakos*, 508 F.3d 401, 405, 409 (6th Cir. 2007), in which the
18  Sixth Circuit found it was not an abuse of discretion to exclude evidence that "had no tendency to
19  show that it was less probable that the defendants acted with intent to defraud" on the facts of that
20  case. Those facts were that the defendants led their insurance company employer, who paid them at
21  least in part based on commissions earned by salespeople they supervised, to believe that many
22  former employees who in fact had left the company, were still employed and selling policies, and
23  were paid extra as a result. The court explained that fraud on a company is not mitigated "simply
24  because corporate officers with broad agency powers authorized and participated in the scheme." *Id*
25  at 409. Like *Coscia,* these facts are a far cry from trading on markets in which the rules are uncertain,

---

[29] Dkt. 461 at 6:8-10.
[30] Gov't MTE Swati Kanoria at 6:13-16.

9

Defendant Andrade's Opposition to Government's         Case Number:  3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria

1 the activities are encouraged by the markets, the vast majority of the traders are doing the same thing, and reputable people are pitching to provide the service. Instead, these facts fall squarely within cases like *Litvak* in which the proffered evidence easily "bear[s] even remotely" on the defendant's intent, and should not be "withdrawn from the jury unless the tangential and confusing elements interjected by such evidence clearly outweigh any relevancy it might have." *Brandt,* 196 F.2d at 657.

The government should not be permitted to cabin evidence of Mr. Andrade's intent to only that evidence which suggests he was deceiving and cheating when appropriate context exists to show that Mr. Andrade believed he was operating properly, in accordance with industry standards. Mr. Andrade should not be deprived of his ability to present that context to the jury.

Respectfully submitted,

DATED: January 8, 2024

KING & SPALDING LLP

By: */s/ Michael J. Shepard*
MICHAEL J. SHEPARD
KERRIE C. DENT
CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

10

Defendant Andrade's Opposition to Government's         Case Number: 3:20-cr-00249-RS
Motion to Exclude Expert Testimony of Swati Kanoria