MICHAEL J. SHEPARD (Bar No. 91281)
*mshepard@kslaw.com*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:   +1 415 318 1200
Facsimile:   +1 415 318 1300

KERRIE C. DENT (Admitted *pro hac vice*)
*kdent@kslaw.com*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:   +1 202 626 2394
Facsimile:   +1 202 626 3737

CINDY A. DIAMOND (SBN 124995)
*cindy@cadiamond.com*
**ATTORNEY AT LAW**
58 West Portal Avenue, #350
San Francisco, CA 94127
Telephone:   +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>   v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>        Defendant. | Case No. 3:20-CR-00249-RS<br><br>**DEFENDANT ROWLAND MARCUS ANDRADE'S REPLY IN SUPPORT OF MOTIONS IN LIMINE 1-7**<br><br>Judge:    Hon. Richard Seeborg<br>Dept.:    Courtroom 3 – 17th Floor |

# TABLE OF CONTENTS

Page

INTRODUCTION ..............................................................................................................- 3 -

I.  THE COURT SHOULD EXCLUDE THE GOVERNMENT'S SUPER BOWL EVIDENCE..................................................................................................- 4 -

II. THE VICTIM TESTIMONY IDENTIFIED IN MR. ANDRADE'S MOTION SHOULD BE EXCLUDED ..............................................................................- 6 -

III. THE COURT SHOULD EXCLUDE MISREPRESENTATIONS NOT MADE TO PURCHASERS OR POTENTIAL PURCHASERS.......................................- 7 -

IV. THE COURT SHOULD EXCLUDE EVIDENCE OF MR. ANDRADE'S FAILURE TO FILE TAX RETURNS..................................................................- 9 -

V.  THE COURT SHOULD EXCLUDE THE GOVERNMENT'S EVIDENCE ABOUT THE FILING OF LITIGATION....................................................................- 11 -

VI. THE COURT SHOULD EXCLUDE EVIDENCE OF "MARKET MANIPULATION"- 14 -

VII. THE COURT SHOULD EXCLUDE MS. FOTEH'S SELF-DIAGNOSED PTSD AS WELL AS MOST OF HER TESTIMONY ABOUT MR. ANDRADE'S TREATMENT OF EMPLOYEES, MANAGEMENT STYLE, AND LEADERSHIP..........................- 15 -

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Old Chief v. United States*,
 519 U.S. 172 (1997) ........................................................................................................ 2, 7, 9

*United States v. Anderson*,
 No. 21-cr-397 (N.D. Cal., Nov. 20, 2023) (ECF #64) ............................................................ 12

*United States v. Brooke*,
 4 F.3d 1480 (9th Cir. 1993) ..................................................................................................... 4

*United States v. Castillo*,
 615 F.2d 878 (9th Cir. 1980) ................................................................................................. 10

*United States v. Charley*,
 1 F.4th 637 (9th Cir. 2021) ...................................................................................................... 1

*United States v. Clark*,
 649 F.2d 534 (7th Cir. 1981) ................................................................................................. 11

*United States v. Finn*,
 2020 WL 376644 (D. Nev., Jan. 23, 2020) ............................................................................. 7

*United States v. Gonzalez-Flores*,
 418 F.3d 1093 (9th Cir. 2005) ............................................................................................ 5, 7

*United States v. Hazelwood*,
 979 F.3d 398 (6th Cir. 2020) ................................................................................................. 13

*United States v. Hitt*,
 981 F.2d 422 (9th Cir. 1992) ............................................................................................... 4, 9

*United States v. Hodges*,
 770 F.2d 1475 (9th Cir. 1985) ................................................................................................. 2

*United States v. Kelly*,
 2023 U.S. LEXIS 103574 (N.D. Cal., 2023) ........................................................................... 5

*United States v. Lloyd*,
 807 F.3d 1128 (9th Cir. 2015) ................................................................................................. 5

*United States v. Loftus*,
 843 F.3d 1173 (9th Cir. 2016) ........................................................................................... 6, 12

*United States v. Meling*,
 47 F.3d 1546 (9th Cir. 1995) ................................................................................................. 10

*United States v. Merriam*,
   68 F. App'x 840 (9th Cir. 2003) .............................................................................................. 12

*United States v. Milheiser*,
   98 F.4th 935 (9th Cir. 2024) ................................................................................................ 3, 12

*United States v. Norris*,
   513 F. App'x 57 (2d Cir. 2013) ................................................................................................ 13

*United States v. Reid*,
   533 F.2d 1255 (D.C. Cir. 1976) ................................................................................................. 5

*United States v. Schema*,
   No. 5:20-CR-ELD-1, 2022 WL 291085 (N.D. Cal. July 23, 2022) .......................................... 6

*United States v. Smith*,
   685 F.2d 1293 (11th Cir. 1982) ......................................................................................... 12, 13

*United States v. Sutherland*,
   921 F.3d 421 (4th Cir, 2019) .................................................................................................. 11

*United States v. Tarallo*,
   380 F.3d 1174 (9th Cir. 2004) .................................................................................................. 3

*United States v. Thomas*,
   32 F.3d 418 (9th Cir. 1994) ....................................................................................................... 5

*United States v. Utz*,
   886 F.2d 1148 (9th Cir 1989) .................................................................................................... 4

*United States v. Vizcarra-Martinez*,
   66 F.3d 1006 ......................................................................................................................... 7, 8

*United States v. Williams*,
   989 F.2d 1061 (9th Cir. 1993) ................................................................................................... 8

*United States v. Zemek*,
   634 F.2d 1159 (9th Cir. 1980) ................................................................................................... 5

**Other Authorities**

Fed.R.Evid. 801(d)(2)(E) ................................................................................................................ 5

Federal Rule of Evidence 801(d)(1)(B) ........................................................................................ 11

Rule 403 ..................................................................................................................................... 1, 3

Rule 404(b) ................................................................................................................................. 1, 8

Defendant Rowland Marcus Andrade files this Reply to the government's Opposition to his Motions in Limine 1-7.

**INTRODUCTION**

Before addressing each of the government's oppositions to Mr. Andrade's Motions in Limine individually, Mr. Andrade offers this perspective based on a review based on all of the oppositions, as well as the government's opposition to Mr. Andrade's Motion to Exclude the government's Rule 404(b) Evidence: the trial the government envisions would be a 404(b) Fest like no other. At this point – and there may well be more that the defense has not been able to anticipate – the government wants to offer, in addition to the charges in the indictment, evidence that two other of Mr. Andrade's businesses (in existence for a total of eight years between them) were fraudulent; that Mr. Andrade lied to all kinds of people, unrelated to getting people to purchase his AML Bitcoin tokens; that Mr. Andrade did not file his tax returns; that Mr. Andrade files a lot of lawsuits; that he engaged in market manipulation; and that his management style and treatment of employees is abusive.

Taking the government's positions as a whole distinguishes this case from the cases the government cites in support of its individual justifications for the many pieces of its 404(b) Fest. Those cases address one offer of other crimes or inextricably intertwined evidence, rather than turning the trial into a 404(b) Fest of at least eight other acts of alleged wrongdoing – and likely multiples more, given the expansive categories of accusations the government seeks to sweep into the trial. Accepting the government's approach would leave in the dust the Ninth Circuit's admonition that "[c]ourts, as gatekeepers of evidence, are tasked with ensuring that a jury convicts a defendant based only on his alleged conduct and mental state underlying the charged crime, not based on his generalized disposition or tendency to act in a particular way." *United States v. Charley*, 1 F.4th 637, 640 (9th Cir. 2021).

Looking at all the contested evidence underscores the extent to which it should be excluded under Rule 403, even if all of its pieces could have been shown to be admissible. The

government's Fest of prejudicial evidence cannot help but "lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997); *see United States v. Hodges,* 770 F.2d 1475, 1479 (9th Cir. 1985) ("guilt or innocence of the accused must be established by evidence relevant to the particular offense being tried, not by showing that the defendant has engaged in other acts of wrongdoing").

Beyond the tsunami of prejudice to Mr. Andrade, the 404(b) Fest will be a classic case of undue delay and waste of time. When the government's evidence will not consume much time, the government so declares, (Gov't Opp. at 8:19), but for its other evidence it remains silent or offers vague generalities about the consumption of time, leaving little doubt that even one or two pieces of the challenged evidence will consume substantial time, and the entirety of the Fest will add still more to the ever-expanding estimate of the length of the government's case-in-chief. To avoid unfair prejudice and keep the trial on the indictment on track, the Court should not allow the government to turn this case into a referendum on the last fifteen years of Mr. Andrade's life.

## I.  THE COURT SHOULD EXCLUDE THE GOVERNMENT'S SUPER BOWL EVIDENCE

The indictment charges that Mr. Andrade, NAC Foundation and others claimed that its Super Bowl advertisement for AML Bitcoin "was rejected by NBC and/or the NFL for use during the Super Bowl." ECF 1 at para 9(b).  The government's opposition instead is written as if the company had expressly represented that "AML Bitcoin was so successful . . . that it could afford the approximately $5 million price of a Super Bowl advertisement."  Gov't Opp. 1 at 2:5-6.  The opposition's characterization of the statement that actually was made is at best one possible implication of it, if a listener considered possible implications at all; another possible impression of the statement is that the company had found a way to get publicity at a very reduced cost.

This characterization falls well short of the government's claim that the advertisement goes to the benefit of the bargain because it "fundamentally misrepresented . . . the financial viability of the AML Bitcoin project."  The case on which the government relies, *United States v. Tarallo*, 380 F.3d 1174 (9th Cir. 2004), addressed only materiality, a broader concept than what

- - 4 - -

goes to the benefit of the bargain. *Compare, e.g., id.* at 1182 (applying standard of "a natural tendency to influence a potential investor's decision") *with United States v. Milheiser,* 98 F.4th 935, 942 (9th Cir. 2024) ("even if misrepresentations result in money or property changing hands, they still may not necessarily constitute fraud" because they do not go to the benefit of the bargain).[1] Even then, *Tarallo* called the materiality of the statement that the defendant had opened another office, in Washington D.C., "a closer question," *Tarallo,* 380 F.3d at 1182-83, and did so when, unlike in this case, the only interpretation of the statement was the allegedly fraudulent one.

      Equally overblown is the government's assertion that what it calls the Super Bowl rejection campaign "fundamentally misrepresented . . . the quality of the AML Bitcoin cryptocurrency." Gov't Opp. at 5:11-13. This assertion appears to be based on the content of the advertisement itself, despite the fact that the ad could not have been interpreted as anything other than a satire, as if North Korean dictator Kim Jong Un would have allowed AML Bitcoin to film him (and his supposed "Ministry of Bitcoin Hacking") complaining that his "Ministry" was unable to steal AML Bitcoin. In any event, anyone who followed the advertisement's reference to the company's website in order to make a purchase would have learned that the AML Bitcoin did not yet exist and all that was available was a token while the coin was in development.

      Even if the government's interpretations were somehow sufficient to get over the bar of going to the benefit of the bargain, the interpretations are so weak that the Super Bowl evidence should be excluded under Rule 403. None of the government's argument to the contrary takes into account the weaknesses of its evidence or the arguments in Mr. Andrade's Motion, when placed in context of the weakness of the evidence. "Where the evidence is of very slight (if any) probative value, it [i]s an abuse of discretion to admit [the evidence] if there [i]s even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992); *United States v. Brooke*, 4 F.3d 1480, 1486 (9th Cir. 1993).

---

[1] The government seeks to distinguish *Milheiser*, claiming that this is an "investment fraud" rather than a "commodities case." To the contrary, the indictment charges Mr. Andrade with defrauding *purchasers*, and, if the government changes its tune at trial, the question of whether AML Bitcoin tokens were an "investment" will be a contested one.

- - 5 - -

## II. THE VICTIM TESTIMONY IDENTIFIED IN MR. ANDRADE'S MOTION SHOULD BE EXCLUDED

The Opposition misses the point of this motion as well. In the "Facts Specific to this Motion" portion of Mr. Andrade's Motion relating to MIL #2, Mr. Andrade focused on the fact that anyone alleged victim told the government that he was misled by the AML Bitcoin's statements that its advertisement, which it sought to air during the Super Bowl, was rejected by NBC and/or the NFL. According to the government's reports, unlike several others,[2] this alleged victim was led by what the government calls the Super Bowl rejection campaign to believe that AML Bitcoin had a lot of money. While that may have been his interpretation, several other alleged victims viewed it differently, thinking that if there was a rejection campaign, it was "a good idea" (IRS-MEMOS-00000003) – an inexpensive way to supply potentially viral publicity.

According to the Opposition, this alleged victim can testify that he "would not have" bought AML Bitcoin tokens but for "affirmative misrepresentations or material omissions." Gov't Opp. at 4:19. And, although not acknowledged in the government's opposition, presumably the government would want to elicit from this alleged victim what his losses were, and potentially more about the impact of these losses. On these facts, none of this testimony should be admitted.

That the victim allegedly relied on claimed misrepresentations is not an element of the offense, and neither is proof of a victim or of loss. Rather, proof of a scheme to defraud and the use of a wire to execute the scheme is sufficient. *United States v. Utz,* 886 F.2d 1148 (9th Cir 1989). Nor does it follow on the facts of this case to say that "proof that someone was actually victimized by the fraud is good evidence of the schemer's intent." Gov't Opp. at 5:4-7, citing *United States v. Reid*, 533 F.2d 1255, 1264 n. 34 (D.C. Cir. 1976). Perhaps this would be true in some other cases, but here, for the reasons explained in Part I above, when the alleged victims

---

[2] *See, e.g.,* (IRS-MEMOS-00000003)

- - 6 - -

claim to have relied only on one possible interpretation of the alleged schemer's statement, and when other interpretations of that same statement are innocent, the inference that the alleged schemer must have intended to defraud is weak at best.[3]

As a result, the starting place for analysis of admission of victim statements is that "[t]he probative value of evidence against a defendant is low where the evidence does not go to an element of the charge." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098-99 (9th Cir. 2005).[4] Adding to the reasons not to allow this testimony from alleged victims is that if the Court does so, it should also allow Mr. Andrade to rebut the testimony by calling AML Bitcoin purchasers who did not find the alleged misrepresentation to be a misleading suggestion that AML Bitcoin had a lot of money, but rather viewed it as good business. *See United States v. Thomas*, 32 F.3d 418, 420–21 (9th Cir. 1994).[5]

### III.    THE COURT SHOULD EXCLUDE MISREPRESENTATIONS NOT MADE TO PURCHASERS OR POTENTIAL PURCHASERS

---

[3] *United States v. Lloyd,* 807 F.3d 1128, 1153 (9th Cir. 2015) is of no help to the government. There was no hint in that case that the inference from the alleged misrepresentation or omission about the alleged schemer's intent was weak at best, and in any event the defense argument in *Lloyd* was that the defendant had no duty to disclose what he had allegedly omitted, rather than that, if he had a duty to disclose, there was anything subject to interpretation about the disclosure.

[4] The government notes that the error of admitting the evidence in *Gonzalez-Flores* was "undeniably harmless" on the facts of that case. But that says nothing about whether the court should admit the evidence in this case, let alone whether doing so would be harmless, especially if it is added to other portions of the government's proposed 404(b) Fest.

[5] In the event the Court admits victim testimony, as with co-conspirator statements, it should do so conditionally, until the government establishes that those responsible for any statements the victims relied upon were in fact co-conspirators of Mr. Andrade. *See* Fed.R.Evid. 801(d)(2)(E); *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir. 1980) ("In light of consistent Ninth Circuit precedent allowing conditional admission, we reject [the] argument for a mandatory pretrial determination,") id at n.13; *see also United States v. Kelly*, 2023 U.S. LEXIS 103574 (N.D. Cal., 2023) (mandatory pretrial determination of admissibility rejected in favor of conditional admission of 801(d)(2)(E) statements).

The Opposition is based on a misreading of Mr. Andrade's Motion. His motion focuses not on whether misrepresentations were "directly uttered to the victim," but rather on whether alleged misrepresentations that were not directed to and could never have reached purchasers or potential purchasers of AML Bitcoin should be admitted in a case charging a scheme to defraud purchasers. Undisputed by the Opposition is the fact that the scheme in the indictment charges a fraud against purchasers, and that the government's discovery reflects an effort to collect a wide variety of other alleged lies that the government wants to attribute to Mr. Andrade, as outlined in Mr. Andrade's motion. Opening Brief at 16:7-22

*United States v. Loftus*, 843 F.3d 1173, 1177, 1178 (9th Cir. 2016) is of no help to the government, because the issue addressed there was limited to the inclusion of other alleged victims who were the target of the scheme in the indictment, but who were not named in the indictment. Nothing in Mr. Andrade's request is in any way contrary to *Loftus,* and the same is true of *United States v. Schema,* No. 5:20-CR-ELD-1, 2022 WL 291085 (N.D. Cal. July 23, 2022). Like in *Loftus*, the defendant in Schema unsuccessfully sought to exclude misrepresentations not called out in the indictment but, at best for the defendant, were still made to the same audience and on the same or at least closely related topics. *See, e.g., id* at *24-25. Both cases are consistent with what Mr. Andrade has requested: that the government's proof be limited to proof about misrepresentations aimed at purchasers (and potential purchasers), rather than any other of the cornucopia of claimed misrepresentations the government has collected.

The government's assertion that Mr. Andrade's request will lead to mini-trials has it backwards. The government does not claim any difficulty in determining what representations are aimed at purchasers or potential purchasers, nor does it offer any reason – or a single example -- of a misrepresentation not aimed at purchasers or potential purchasers, that the government

- - 8 - -

must prove was false in order "to offer a coherent and comprehensible story regarding the commission of the crime." What will in fact lead to mini-trials is the government's apparent insistence on bringing in a wide variety of other misrepresentations, which will sidetrack the trial as Mr. Andrade is forced to defend against those claimed misrepresentations, even though on their face they go far afield from the fraud against purchasers that this trial is supposed to be about and therefore are needlessly prejudicial. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("As to a criminal defendant, 'unfair prejudice' refers to 'the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged.'") (quoting *Old Chief,* 519 U.S. at 180).

### IV. THE COURT SHOULD EXCLUDE EVIDENCE OF MR. ANDRADE'S FAILURE TO FILE TAX RETURNS

The government seeks to justify the admission of evidence on Mr. Andrade's failure to file tax returns by claiming that his doing so is somehow "inextricably intertwined" with the charges in the indictment. Its argument nowhere mentions the standards for the admission of "inextricably intertwined" other crimes evidence established by the Ninth Circuit, and, as explained below, Mr. Andrade not filing his tax returns falls well short of meeting those standards. Instead, it relies on *United States v. Finn*, No. 13-CR-439 KJD-VCF, 2020 WL 376644 (D. Nev., Jan. 23, 2020), which also paid no heed to the Ninth Circuit's standards.

In *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-23, the Ninth Circuit set forth the standards for the admission of evidence on the theory that it is "inextricably intertwined" with the charged offense. What can be admitted on this theory is evidence that is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," or evidence that "constitutes a part of the transaction that serves as the basis for the criminal charge." *Id.* Especially on the facts of this case, these standards are not met.

- - 9 - -

Nothing but ipse dixit is contained in the government's brief to establish that proof that Mr. Andrade did not file his tax returns is somehow necessary for the prosecutors to tell the story of the commission of the crime in a way that is not incoherent or incomprehensible. That is because there is no question that the story of the AML Bitcoin fraud can be told without mentioning anything about anyone's tax returns: he was selling a cryptocurrency token, and the government says he told lies to do so. That is a complete and coherent story, and is in marked contrast with inextricably intertwined cases like *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993), in which sales of cocaine were held to be inextricably intertwined with the charged offense, which was contemporaneous sales of cocaine.

Equally unavailing for the government is the claim that the non-filing constitutes a part of the charged transaction. *Vizcarra-Martinez* leaves no doubt that this requirement requires "a single criminal transaction." *Id*. at 1012. The Opposition does not, and cannot, explain how not filing tax returns on the one hand and the charged offense on the other are part of the same *transaction*. No explanation exists.

Alternatively, the government offers Rule 404(b) as a basis for admission. Even if the government had made an effort to satisfy *Charley's* requirement that the government provide a propensity-free inference for its bases under the Rule, this offer at best constitutes a weak inference that is swamped by the prejudicial value of introducing an accusation of another crime committed by the defendant. The inference is weak because there are many reasons why taxpayers fail to file returns other than a desire to hide income from the IRS, or because they think they are guilty of a crime. They may lack good records, or, in some instances, their records may have been seized by the government. They may lack the funds to pay. They may believe they are not required to file. They may have psychiatric issues.

In this context, evidence of non-filing would be "of very slight (if any) probative value," which would constitute "an abuse of discretion to admit" if there is "even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt,* 981 F.2d 422, 424 (9th Cir. 1992). Admitting Mr. Andrade's non-filing, especially in context with the rest of the government's 404(b) Fest, would overwhelm the trial with prejudicial evidence and "lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." *Old Chief,* 519 U.S. at 180.

### V.  THE COURT SHOULD EXCLUDE THE GOVERNMENT'S EVIDENCE ABOUT THE FILING OF LITIGATION

The government's response to Mr. Andrade's motion to exclude evidence of civil litigation is written as if filing a lawsuit, regardless of its merits, is the equivalent of witness intimidation and is therefore admissible. It offers no support for that proposition, and there is none. It suggests that admitting this evidence will not bog down the trial because "the government does not seek to admit judicial filings, such as a civil complaint, or evidence of the outcome of these proceedings." But in much of this litigation, Mr. Andrade was the prevailing party, and to defend against an accusation that such litigation was somehow witness intimidation, Mr. Andrade will seek to admit that evidence. The result will be that the trial will be diverted by a venture into an unprecedented frontier of claimed witness intimidation, which should not be admissible even if *unsuccessful* civil litigation were the equivalent of civil litigation.

The only authority offered for the government's claim that Mr. Andrade's civil litigation equates to witness intimidation (or consciousness of guilt) is *United States v. Castillo,* 615 F.2d 878, 885 (9th Cir. 1980) and *United States v. Meling*, 47 F.3d 1546, 1557 (9th Cir. 1995). But far from filing pieces of paper in court, in *Castillo* the intimidation was a physical attack in jail on a witness at a time there was evidence the attacker had come into possession of an FBI report of the

- - 11 - -

witness's statement against him, , 615 F.2d at 885, and in *Meling* the defendant, after attempting to murder his wife and murdering two others in an attempt to cover up the attempt, threatened his father-in-law and uncle to intimidate them into withholding information from investigators. *See* 47 F.3d at 1557.

Even if going to court – generally thought of as the proper way to resolve disputes – could under some circumstances somehow be equated to violent acts of witness intimidation, the government's proffer of evidence does not come close to making the case for doing so. The government's claim that Mr. Andrade was attempting to intimidate people from going to the FBI and the SEC is refuted rather than supported by the government's first example, which shows that Mr. Andrade filed suit *before* he was told that "coin holders online are planning to go to the SEC and FBI about us." Gov't Opp. at 9:21-25. And the government offers no basis to suggest that Mr. Andrade's litigation was baseless. As for the government's second example, again without describing the proposed litigation and its merits – or even saying *whether litigation was ever brought* -- the government's argument appears to rest on the peculiar proposition that litigation by one Rowland Marcus Andrade was designed to be, or could possibly have been, intimidating *to NBC*. *See* Gov't Opp. at 9:25-10:2. This proffer is a complete whiff as a basis to ask this Court to consider making new law that would make going to court into the equivalent of witness intimidation or consciousness of guilt.

No better is the government's shift to lawsuits brought against Mr. Andrade by some of its witnesses, which it offers as "probative of credibility," as if the filing of a lawsuit has shifted from witness intimidation (if filed by Mr. Andrade) to a way to vouch for a witness (if offered by the government). Using a lawsuit to bolster a witness's credibility would be an inadmissible prior consistent statement, which is admissible only under certain circumstances and even when

those circumstances are met, after the witness's credibility has been attacked on that issue.  See Federal Rule of Evidence 801(d)(1)(B).

None of the cases offered by the government support the use of filing a lawsuit in the manner proposed by the government.  The government cites *United States v. Sutherland*, 921 F.3d 421, 430 (4th Cir, 2019), but fails to note that the defendant "did not object to [the witness's] brief mentions that he was 'in litigation' with [the defendant] during direct examination," which was apparently a predicate to an admission made by the defendant in the litigation,  *Id*. at 430.[6] *Sutherland* therefore does not address the basis for or propriety of admitting the reference to litigation, and cannot support admitting litigation as a way of vouching for a government .witness.  The same appears to be true of *United States v. Clark,* 649 F.2d 534, 543 (7th Cir. 1981), where the few relevant lines in the opinion do not explain how the credibility issue was raised, whether the defendant himself offered or at least did not object to the testimony about the lawsuit, or how the litigation was relevant to credibility; rather, it appears that the defendant's objection was to the trial judge prohibiting counsel from questioning the witness "as to the wording of a civil complaint signed by a lawyer."

And the court in *United States v. Anderson*, No. 21-cr-397 (N.D. Cal., Nov. 20, 2023) (ECF #64), did not weigh in on this issue either.  Rather, the basis for admission of references to litigation in that case was that the defendant made misrepresentations that caused the witnesses to delay filing litigation against the defendant.  While it is unclear from the decision why the delay was relevant in the first place, what is clear is that the court did not endorse admitting the filing of

---

[6] The court added: "Following this brief mention of the litigation context in which the defendant made a statement to the witness, it was the defendant who made the strategic choice to 'delve into the details of [the witness's] lawsuit against him,' a decision the court found the defendant 'cannot now lament." *Id.*

- - 13 - -

litigation as a way to bolster the credibility of government witnesses. As with the government's request to turn civil litigation into witness intimidation, its attempt to find a new way to vouch for its witnesses is baseless.

## VI.  THE COURT SHOULD EXCLUDE EVIDENCE OF "MARKET MANIPULATION"

In support of yet another, uncharged yet lengthy way of prejudicing the jury against Mr. Andrade, the government cites four cases in an effort to justify its foray into accusations of market manipulation.  None of them support its position.[7]

Two of the cases, *United States v. Loftis*, 843 F.3d 1173 (9th Cir. 2016), and *United States v. Smith*, 685 F.2d 1293 (11th Cir. 1982), are wire /mail fraud cases in which the indictment described a fraud, with examples, and the courts admitted evidence of "additional executions of the scheme that were not specifically charged." *Loftis,* 843 F.3d at 1177.  Neither case addresses market manipulation, or anything beyond transactions similar to those described in the indictment but merely "additional executions" of that same scheme.   The third case, *United States v. Merriam,* 68 F. App'x 840, 841-42 (9th Cir. 2003), addresses what an expert could say in a case that charged securities fraud as well as wire fraud; like *Loftis* and *Smith*, it says nothing about whether the government can prove market manipulation in support of an indictment that did not charge it.  And in *United States v. Norris*, 513 F. App'x 57, 60 (2d Cir. 2013), the challenged evidence showed additional efforts the defendant was making to deceive the bank about whether he had contributed equity to a transaction, which was the fraud with which he was charged.

---

[7] The government also returns to *Milheiser*, 98 F.4th at 945 n.7, for the proposition that intending to cause the victim an inflated price would go to the nature of the bargain, but that says nothing about what allegations can be proven at trial when they are not contained in the allegations in in the indictment.

- - 14 - -

ANDRADE'S REPLY ISO MOTIONS IN LIMINE ##1-7                    CASE NO. 3:20-CR-00249-RS

The government's suggestion that market manipulation was intended as a "cover up" of the earlier fraud, as opposed to a different alleged scheme, comes without any citation to evidence to that effect. Nor does it explain whether any alleged conversations about "market manipulation" resulted in any trading activity or had any impact other than lining the pockets of some alleged co-conspirators at Mr. Andrade's expense. These issues about the market manipulation allegations would consume considerable time and prompt numerous factual and potential expert disputes, all for something uncharged.

### VII. THE COURT SHOULD EXCLUDE MS. FOTEH'S SELF-DIAGNOSED PTSD AS WELL AS MOST OF HER TESTIMONY ABOUT MR. ANDRADE'S TREATMENT OF EMPLOYEES, MANAGEMENT STYLE, AND LEADERSHIP

The government giveth, and then it taketh away. It agrees not to offer Ms. Foteh's self-diagnosed (and attributed to Mr. Andrade) PTSD, but then takes back most of the benefit of its agreement by proposing to have her testify about Mr. Andrade's "treatment of employees," as well as his "management style" and "leadership" of the NAC Foundation. That it mentions "treatment of employees" in the title of its section but not in the body of the argument underscores that there is no basis to offer such testimony, other than as yet another way to try to muddy Mr. Andrade before the jury. *See, e.g., United States v. Hazelwood*, 979 F.3d 398, 402 (6th Cir. 2020). Some testimony about his management style may be admissible, but given Ms. Foteh's animosity and volatility (which includes accusations against the FBI), Mr. Andrade requests that the government vet with the Court the specifics of her testimony before it is presented to the jury.

Dated: January 20, 2025                    **KING & SPALDING LLP**

                                                  By:  /s/
                                                      MICHAEL J. SHEPARD
                                                      KERRIE C. DENT

                                                      Attorneys for Defendant
                                                      ROWLAND MARCUS ANDRADE