MICHAEL J. SHEPARD (SBN 91281)
 mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
 kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
 cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 3:2-cr-00249-RS<br><br>**RESPONSE TO UNITED STATES' MOTION FOR RULE 15 DEPOSITION OF JACK ABRAMOFF**<br><br>Judge: Hon. Richard Seeborg, Chief Judge |

Defendant Rowland Marcus Andrade files this Response to the United States' Motion for Rule 15 Deposition of Jack Abramoff.

In response to the government's Motion for Rule 15 Deposition of Jack Abramoff, defendant Rowland Marcus Andrade reports that, as noted by the government, he has been working with the government to obtain the information he needs to balance protecting Mr. Abramoff's health with Mr. Andrade's Sixth Amendment rights to confront the person who likely is the central government witness. As his current proposed solution, Mr. Andrade requests that (1) Mr. Abramoff's testimony be taken live during trial, remotely from the Washington D.C. area if he cannot travel at that time; (2) regardless of how the testimony is taken, as the government proposes, the Court presides over the testimony live and in real time; and (3) counsel for the defendant, and the defendant if he so chooses, be present with Mr. Abramoff when his testimony is taken.

Mr. Andrade makes these requests for the following reasons:

1.  Taking Mr. Abramoff's testimony live during the trial, while potentially creating logistical issues, is most consistent with the normal trial process. *See United States v. Gigante*, 971 F.Supp. 755, 758 (E.D.N.Y. 1997), *aff'd*, 166 F.3d 75 (2d Cir. 1999) (explaining that "[r]eceiving contemporaneous testimony via closed circuit televising affords greater protection of . . . confrontation rights than would a deposition," and declining to set a higher bar for live virtual testimony than for a deposition). In addition, proceeding in this fashion would hopefully allow the defense to have an expert review Mr. Abramoff's medical records to assess his risks when traveling, and, if appropriate, make a case to the court that Mr. Abramoff come to the courtroom to testify. In order to make such an assessment, the defense has requested those records; the defense appreciates the government's assistance in seeking to gather them; and the defense would like to be able to assess them before signing off on a remote deposition that will deprive the jury of the full range of observations of a critical witness that the jury would have if the witness testified in court. At this point, the only medical records that the defense possess are records supplied by, and apparently selected by, Mr. Abramoff.

2.  Counsel for Mr. Andrade should be in the same room with Mr. Abramoff when his testimony is taken, both because that would most closely approximate his cross-examination

opportunity at trial, and because Mr. Abramoff has proven to be an exceptionally untrustworthy character who might otherwise be coached or signaled by his counsel or other third parties during his cross examination. Counsel for Mr. Andrade are willing to wear masks in order to mitigate any possible risk to Mr. Abramoff.

3. Mr. Andrade joins with the government in requesting that the Court participate in the taking of Mr. Abramoff's testimony, live and in real time, either in person or by video, as the Court chooses. This will better keep Mr. Abramoff under control, and will allow counsel to rephrase or redirect questions to which objections have been sustained.

4. The defense accepts that Mr. Abramoff's doctor appropriately recommends that he not travel, at least for non-medical purposes, in order to avoid crowds. Gov't Motion, Exh. 5. But those suffering from advanced cancer often do choose to travel (presumably with N-95 masks), and "[commercial air travel] problems specifically related to a patient's cancer are rare." Colin Perdue & Simon Noble, *Foreign travel for advanced cancer patients: a guide for healthcare professionals*. Postgraduate Medical Journal, 83, 981 (2007), 437–44. https://doi.org/10.1136/pgmj.2006.054593. In addition, Mr. Abramoff's doctor reports that "at times" his symptoms will prevent Mr. Abramoff from being able to fulfill work-related responsibilities, Gov't Motion, Exh. 6 – suggesting that, at least at some times, he will be in reasonable shape. Given the impact on Mr. Andrade's constitutional rights, the defense requests that the Court allow this process to unfold before ruling on the government's request.

|   |   |
|---|---|
| | Respectfully submitted, |
| DATED: January 21, 2025 | KING & SPALDING LLP |
| | By: */s/ Michael J. Shepard* <br>     MICHAEL J. SHEPARD <br>     KERRIE C. DENT <br>     CINDY A. DIAMOND |
| | Attorneys for Defendant <br> ROWLAND MARCUS ANDRADE |