UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>Defendant. | Case No. 20-cr-00249-RS-1<br><br>**ORDER ON GOVERNMENT'S MOTIONS *IN LIMINE*** |

The government has filed numerous motions *in limine* ("MILs"). This order addresses those motions filed under Dkt. 444, as well as the motions filed under Dkt. 458, 460, 461, 462, and 463.[1] This order summarizes the rulings on these motions, which may be revised at trial. *See City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017).

**1. MIL No. 1: Preclude Victim-Blaming (Dkt. 444)**

The government seeks to preclude Defendant from arguing to the jury that victims should have been more diligent or skeptical about the at-issue cryptocurrency. Defendant concedes that victim negligence is not a defense to wire fraud but contends that the sought-after order could create constitutional confrontation clause issues during cross-examination.

The charged offenses in this case are wire fraud and money laundering, neither of which

---

[1] The government's Motion *in Limine* to Admit Co-Conspirator Statements, Dkt. 449, will be addressed in a forthcoming order.

require proof of victim reliance or damages, so "any proffered evidence [that] relates not to the nature of the scheme or the defendant's intent, but rather to the uninformed opinion of the victims" is properly excluded. *United States v. Ciccone*, 219 F.3d 1078, 1082 (9th Cir. 2000). This is because "a victim's negligence is not a defense to wire fraud." *United States v. Lindsey*, 850 F.3d 1009, 1015 (9th Cir. 2017). In *Lindsey*, the Ninth Circuit affirmed a district court's decision to bar a wire fraud defendant from challenging the materiality of false statements he made as a mortgage loan officer who invited applicants to state their incomes with no justification or support. *Id.* at 1014. On appeal, even crediting the defendant's argument "that he wanted to introduce evidence that his alleged victims were willing to approve the loans regardless of the information included in the application forms," the Ninth Circuit held that "the intentional conduct of the [victims] cannot provide an effective defense based on alleged lack of materiality" because "[a] false statement is material if it *objectively* had a tendency to influence, or was capable of influencing, a [victim]." *Id.* at 1015. The Ninth Circuit further explained that, as to materiality, the appropriate "standard is not concerned with a statement's subjective effect on the victim, but only the intrinsic capabilities of the false statement itself." *Id.* (citation and internal quotations omitted).

The motion to preclude Defendant from arguing that cryptocurrency purchasers were negligent is therefore granted. That said, to the extent the government aims to preclude Andrade from arguing that any false statements were mere puffery, that motion is denied. As Defendant correctly highlights, puffery is not a crime under the federal fraud statutes. *See, e.g.*, *United States v. Martinelli*, 454 F.3d 1300, 1317 (11th Cir. 2006). Moreover, although the government is correct that there is no "other people did it too" defense to wire fraud, the defendant is not precluded from introducing relevant evidence about cryptocurrency startup culture. For example, in *Lindsey*, despite affirming the district court's decision to prevent the defendant from introducing evidence about the negligence of his victims, the Ninth Circuit explained the sort of evidence that is permissible as an "attack [on] materiality through industry practice." 850 F.3d at 1016. One example was that a wire fraud defendant charged with falsely stating he was married on a loan application could introduce evidence that "the general practice in the industry is to ignore marital status when making lending decisions." *Id.* "The defendant could then argue in

Order on Motions *in Limine*
Case No. 20-cr-00249-RS-1

2

closing that his false statement about marriage was immaterial." *Ibid.* The same sort of argument could be admissible in this case, so long as defendant "do[es] not stray into evidence of the behavior of individual [investors]." *Id.*

## 2. MIL No. 2: Admit Out-of-Court Statements by Defendant but Prohibit Him from Offering Portions of Those Statements (Dkt. 444)

The government moves *in limine* for an order declaring that Defendant's out-of-court statements will be admitted if offered by the government but not if offered by the Defendant. Defendant opposes the motion and urges the court to handle the introduction of out-of-court statements on a case-by-case basis rather than "in the abstract."

The motion is granted in part and denied in part. The Federal Rules of Evidence provide for the admission of a defendant's out-of-court statements if they are offered against the defendant. Fed. R. Evid. Rule 801(d)(2)(A); *see also United States v. Pelisamen*, 641 F.3d 399, 410 (9th Cir. 2011) (admitting, over a hearsay objection, defendant's own statements made during television interview). To the extent the statements identified by the government meet those requirements, its motion is granted, without prejudice to Defendant raising Rule 403 challenges as to any particular statements at trial.

Regarding Defendant's ability to admit his own statements, however, the government's motion is denied without prejudice. "The admissibility of particular statements depends on the statement at issue, the purpose of the statements' introduction into evidence, and whether any of the exceptions to the rule against hearsay apply to those statements." *United States v. Aiyaswamy*, No. 15-CR-00568-LHK-1, 2017 WL 1365228, at *3 (N.D. Cal. Apr. 14, 2017). To be sure, Andrade cannot introduce his own out-of-court statements under the party-opponent rule. That said, whether Defendant can introduce his own out-of-court statements under some other rule will be decided "when the Court has before it the hearsay statements, if any, that Defendant seeks to introduce." *Id.*

## 3. MIL No. 3: Preclude Improper Good Faith Defense (Dkt. 444)

The government moves *in limine* for an order to preclude Defendant from arguing that "he always intended to make th[e] victims' cryptocurrency purchases profitable, such that the victims

CASE NO. 20-cr-00249-RS-1

3

would suffer no loss when all was said and done." Defendant concedes that it is not a defense to argue that he thought the buyers of his tokens would be repaid in the end but contests what he characterizes as overbreadth in the government's request.

The motion is granted in part and denied in part. "While an honest, good-faith belief in the truth of the misrepresentations may negate intent to defraud, a good-faith belief that the victim will be repaid and will sustain no loss is no defense at all." *United States v. Benny*, 786 F.2d 1410, 1417 (9th Cir. 1986); *see also United States v. Molinaro*, 11 F.3d 853, 863 (9th Cir. 1993) ("[A]defendant's belief that the victims of the fraud will be paid in the future or will sustain no economic loss is no defense to the crime."). Pursuant to this case law, Defendant is precluded from arguing that he is not guilty because he thought the alleged victims would ultimately profit. He is not, however, precluded from arguing that he believed the alleged misrepresentations were true.

4. **MIL No. 4: Compel Reciprocal Discovery or Preclude Arguments (Dkt. 444)**

The government moves *in limine* for an order to compel reciprocal discovery under Rule 16(b) and in compliance with 18 U.S.C. § 3500, or alternatively, to preclude the defense from introducing its case-in-chief through any evidence that is not provided to the government by January 22, 2025. The motion is denied. Defendant has assured the court that he will not flout his obligations or any court orders and disclosed his witness list on the day of the pretrial conference. Andrade was afforded an additional week to disclose his exhibits list.

5. **MIL No. 5: Admit Business and Public Records (Dkt. 444)**

The government moves *in limine* for an order admitting certain business and public records. Defendant complains that the government has not identified the foundation for admitting these records with sufficient specificity, signaling that he wishes to retain his right to object to their admission on authenticity or hearsay grounds.

The motion is granted, without prejudice to the Defendant objecting to the admission of these documents if they do not meet the requirements of the rule under which the government seeks to introduce them.

**6. MIL No. 6: Admit Summary Charts and Pedagogical Aids (Dkt. 444)**

The government moves *in limine* for an order admitting its summaries of evidence under Fed. R. Evid. 1006. Defendant does not oppose the motion but intends to cross-examine any witness who offers summary documents into evidence. The motion is granted.

**7. MIL No. 7: Excuse Notice for Rebuttal Experts (Dkt. 444)**

The government moves *in limine* for an order stating that it need not provide notice regarding rebuttal experts. Defendant opposes and cites to a recent amendment to Fed. R. Evid. 16(a)(1)(G), which states that, at a defendant's request, the government must disclose certain information for any testimony "during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C)." Thus, the motion is denied inasmuch as Defendant has timely disclosed expert testimony which the government intends to rebut, and notice is required by January 28, 2025.

**8. MIL No. 8: Preclude References to Punishment before the Jury (Dkt. 444)**

The government moves *in limine* to bar Defendant from referring to the potential punishment awaiting him if convicted. "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." *United States v. Frank*, 956 F.2d 872, 879 (9th Cir. 1992). "The jury's function is to find facts and to decide whether, on those facts, defendant is guilty of the crime charged." *Shannon v. United States*, 512 U.S. 573, 579 (1994). Defendant concedes that such reference would be inappropriate but maintains that subtle references to the "serious consequences" of his criminal prosecution should be permitted.

The government's motion is consistent with the law and with the jury instructions that will be read in this case. *See* Ninth Circuit Model Jury Instruction 6.22 ("You may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt."). The motion is therefore granted with respect to overt references to punishment. As to abstract statements about the case's "serious consequences," however, any objections will be entertained at trial. *See United States v. Williams*, No. 3:13-cr-764-WHO, 2017 WL 4310712, at *8 (N.D. Cal. 2017) ("Subtle references such as the ['this case has serious

consequences for the defendant'] are not really referencing punishment.  And the defendant[] must be permitted to reference the punishment of cooperating witnesses in order to impeach them.").

**9. MIL No. 9: Sequester Witnesses (Dkt. 444)**

The government moves *in limine* for an order excluding non-testifying witnesses (other than the case agent) from the trial.  Defendant agrees that such witnesses should be excluded but further urges that the court preclude the sharing with any witness of any transcripts, reports, or information about testimony from other witnesses.  *See generally United States v. Robertson*, 895 F.3d 1206, 1215 (9th Cir. 2018).  The motion is therefore granted, save with respect to sequestering expert witnesses, who will be permitted to hear the testimony of experts to whom they are responding or who are responding to them, and with respect to Special Agent Brendon Zartman, the lead FBI agent assigned to the case.  *See, e.g.*, *United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1984).

**10. MIL No. 10: Admit Hearsay Statements (Dkt. 444)**

The government moves *in limine* for an order admitting statements by Andrade and his co-conspirators based on Rule 801(d)(2), which provides for the admission of opposing party statements, or in the alternative based on non-hearsay purposes such as to prove that the statements were made (and not for the truth of the matter asserted).  Defendant does not contest that out of court statements may be admissible pursuant to certain rules but suggests that the court assess such questions on a statement-by-statement basis.

The motion is denied without prejudice.  To the extent the government seeks to introduce such out-of-court statements, the court will determine their admissibility on a case-by-case basis at trial.

**11. Defer Ruling on Mental Capacity Expert Admissibility (Dkt. 458)**

The government requests a delay of any order on the admissibility of the defense's neuropsychologist's expert testimony.  It argues it cannot fully challenge Dr. Levi Armstrong's testimony without the benefit of their own expert's examination of Defendant, which was only conducted on January 21, 2025.  The government additionally requests a *voir dire* of Dr.

Armstrong outside of the presence of the jury before any admissibility decision is made. The government's arguments about the reliability or relevance of Dr. Armstrong's testimony are better suited for a *Daubert* filing. It is unclear why a deferral, *voir dire*, or contradictory expert report from the government's neuropsychologist is necessary if the government believes there are fundamental flaws in Dr. Armstrong's report and opinion. This motion is denied, without comment on the reliability or admissibility of Dr. Armstrong's testimony.

**12. Allow Rule 15 Deposition for Jack Abramoff (Dkt. 460)**

The government requests, pursuant to Federal Rule of Criminal Procedure 15, a deposition of witness and alleged co-conspirator Jack Abramoff in lieu of in-person trial testimony. The defense argues Abramoff should testify during the trial, via videoconference or other remote means. Real-time, remote testimony is most consistent with the normal trial process and Defendant's confrontation rights. Therefore, the parties are directed to meet and confer to develop an appropriate protocol for virtual testimony.

**13. Exclude Expert Testimony of Swati Kanoria (Dkt. 461)**

The government seeks exclusion of the testimony of Dr. Kanoria, the defense's expert on market-making and market manipulation on cryptocurrency trading exchanges. The defense explains Kanoria will educate the jury about traditional and cryptocurrency exchanges, the methods for inflating volume and price on cryptocurrency trading platforms, and potential motivating factors for cryptocurrency trading platforms to inflate trading volumes. She also plans to discuss research studies finding inflated volume was prevalent on cryptocurrency trading platforms during the charged timeframe.

    a. <u>Legal Standard</u>

"[S]cientific, technical, or other specialized knowledge" may be admissible where it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Expert testimony must be (1) based upon sufficient facts or data, (2) the product of reliable principles and methods, and (3) the result of applying those principles and methods reliably to the facts of the case. *Id.* The court's role is to "ensur[e] that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999); *Guidroz-Brault v. Missouri Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001).

In December 2022, Rule 16 was amended to require the parties, when disclosing proposed expert testimony, to include "a complete statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief," "the bases and reasons for them," and "the witness's qualifications," among other things. Fed. R. Crim. P. 16(b)(1)(C)(iii). The updates are "intended to facilitate trial preparation, allowing the parties fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.*

b. Discussion

The government first challenges the propriety of Kanoria's expert notice. It argues the defense fails to address how Kanoria's testimony applies to AML Bitcoin, and instead bases her opinion on studies of other cryptocurrencies. Andrade is correct in contending he can offer educational experts to explain how the overall cryptocurrency market works, just as the government's expert Brandon Tabbal intends to do, without addressing AML Bitcoin directly. Therefore, Kanoria's testimony is properly noticed.

Next, the government attacks the reliability of Kanoria's testimony, particularly the applicability of Kanoria's reasoning or methodology to the facts at issue in the AML Bitcoin scheme. As explained above, Kanoria can reliably educate the jury on the background cryptocurrency market, and this argument is unavailing.

Finally, the government contests the relevance of Kanoria's testimony, especially to the extent Kanoria will testify that illegal and unethical behavior was merely common practice in the market. This is the most difficult line for the defense to walk. On one hand, industry practice can be relevant to understand elements of the charges, for example the materiality of misrepresentations. *See, e.g., Lindsey*, 850 F.3d at 1015–1016. On the other hand, as discussed above regarding MIL No. 3, good faith is not a defense to the charges brought. Andrade is still precluded from arguing Andrade's conduct was excusable because he *thought* it to be legal or

because "everybody was doing it." That being said, the defense has sufficiently demonstrated at this stage how Kanoria's testimony is potentially relevant to Andrade's intent. Therefore, this motion is denied.

### 14. Require Disclosure for Expert Kathy Johnson (Dkt. 462)

The government argues the defense's disclosure for its expert witness Kathy Johnson is inadequate under Rule 16. It contends her disclosure fails to list any of the documents or materials that she purportedly relied on and fails to state any opinions she would offer, or even if she will testify at trial. The government requests the defense be required to disclose more information, or in the alternative, because of this noncompliance, the government requests Johnson's testimony be excluded.

Defendant responds by contending the government's forensic accountant does not offer any expert opinions, but rather provides summary evidence in her report. Defendant argues he is not *yet* required to offer a compliant disclosure, stating "depending on the course of events at trial, Ms. Johnson may never form or provide an expert opinion: Ms. Johnson may be utilized only to testify as a summary witness, much like the government's accountant is anticipated to testify, or she may be utilized to assist the defense in cross examining the government's expert; for either of these uses, no Rule 16 disclosure is required." Dkt. 486, at 2. Defendant cannot skirt the requirements of Rule 16 by delaying the decision on whether to offer Johnson as an expert witness or a summary one.

Because Defendant's Rule 16 disclosure is inadequate, Johnson's testimony as an expert is excluded, without prejudice to her testimony as a summary witness. If Defendant seeks to offer Johnson as an expert in rebuttal to the government's forensic accountant, he must file the proper notice and disclosure by the close of the government's case-in-chief.

### 15. Exclude Expert Testimony of Erik Min (Dkt. 463)

The government seeks exclusion of defense expert Erik Min, on the grounds the defense has failed to provide the documents or materials Min used to form his conclusions. The government also points to the limitations of Min's resources, including the source code

repositories for AML Bitcoin, which were established in late 2018. More fundamentally, the government argues Min's testimony is irrelevant and misleading because he intends to testify that Andrade was near completing work on AML Bitcoin in April 2020, outside of the charged scheme period of July 2017 through October 2018.

On the quality of Min's sources, Min contends he can still describe how certain log files and databases within the remaining repositories include timestamps and other records showing substantial and consistent development of the underlying biometric verification software between March 2017 and November 2018. Because Min can testify to the state of AML Bitcoin's technology within the relevant period, his testimony is based on a reliable foundation and relevant to the charges.

On the requirements of disclosure, Andrade explains in his opposition to the government's motion that the data on which Min relied has been produced to the government. Without any contrary statements from the government, its arguments as to Rule 16 deficiency are academic. As to substance, the government can adequately challenge the sufficiency and reliability of Min's conclusions at trial. The motion is denied.

**IT IS SO ORDERED**.

Dated: January 23, 2025

_____
RICHARD SEEBORG
Chief United States District Judge