MICHAEL J. SHEPARD (SBN 91281)
  mshepard@kslaw.com
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, California 94111
Telephone:    +1 415 318 1221

KERRIE C. DENT (admitted *pro hac vice*)
  kdent@kslaw.com
**KING & SPALDING LLP**
1700 Pennsylvania Avenue, NW, Suite 900
Washington, DC 20006-4707
Telephone:    +1 202 626 2394

CINDY A. DIAMOND (SBN 124995)
  cindy@cadiamond.com
**ATTORNEY AT LAW**
58 West Portal Ave #350
San Francisco, CA 94127
Telephone:    +1 408 981 6307

Attorneys for Defendant
ROWLAND MARCUS ANDRADE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROWLAND MARCUS ANDRADE,<br><br>  Defendant. | Case No. 3:2-cr-00249-RS<br><br>**DEFENDANT ANDRADE'S RESPONSE TO GOVERNMENT'S MOTION TO CONTINUE DEADLINE FOR UNITED STATES TO FILE REBUTTAL EXPERT NOTICE**<br><br>Judge: Hon. Richard Seeborg, Chief Judge |

1

This is a response to the government's January 26, 2025, filing, captioned as a Motion Ordering Complete Disclosure for Defense Expert Erik Min. Without hearing from Mr. Andrade, the Court has granted an order requested by the government that extends the government's time to disclose an expert to rebut Mr. Min, and the Court is further considering an order that would impose obligations on Mr. Min that must be fulfilled tomorrow. Although the facts on which the government sought additional time for disclosure of a rebuttal expert are incomplete, Mr. Andrade does not ask the Court to reconsider its ruling allowing the government to disclose a rebuttal expert to Mr. Min on February 5.[1] But the Court should not enter the order the government has requested.

### A. The Government's Requested Order Regarding AtenCoin Disclosures Would Deprive Mr. Andrade of His Right to Present an Effective Defense

The government seeks an order requiring Mr. Min to complete his disclosures by tomorrow. This appears to relate primarily to the statement in Mr. Min's disclosure that if the Court allowed the government's Rule 404(b) Motion relating to AtenCoin, he would be called upon to offer testimony about AtenCoin. ECF 448 at n.2. After the Court entered the order admitting the government's AtenCoin evidence, in a request promptly prepared and filed on January 23, 2025, Mr. Andrade sought through the Criminal Justice Act the additional funding Mr. Min needs to complete that work. *See* Stefan Decl. at ¶ 5. A few hours before this brief was filed, the defense was advised that the work had been approved. Defense counsel expects it will

---

[1] Although the government offers new objections to Mr. Min's testimony, the time for Daubert and Rule 702 objections has passed, and the government did not move to reopen that opportunity. In any event, it offers no basis for allowing it until February 5 to do so. While the government briefly acknowledges the defense's efforts to supply the government with access to the code on which Mr. Min relied, Gov't Motion at 3:28-4:2, its Motion is written in a way to suggest that the defendant was at fault. This is an overstatement. Mr. Andrade disclosed Mr. Min, as required, on January 10, 2025. The first week after Mr. Min was disclosed is addressed in ECF 485, Defendant Andrade's Opposition to Government's Motion to Exclude Testimony of Erik Min. Thereafter, on January 17, 2025, one of Mr. Andrade's lawyers sent access to the code to the prosecutors at the addresses they had been using successfully to communicate with them. It was not until January 20 that the government reported not receiving access to the source code. On January 22, the government suggested changing email addresses, and eventually offered a government-based access function, which the defense promptly used, providing the government with access that same day. Regardless of the facts, the government does not explain why it needs until February 5 to file its objections, especially given that it went out of its way to preview them in its Motion, and given the impact a delayed ruling has on Mr. Andrade's ability to present his defense in opening statement.

2

Andrade's Response to Government's Motion to Continue    Case Number: 3:20-cr-00249-RS
Deadline for United States to File Rebuttal Expert Notice

take Mr. Min at least a few days after receiving the approval (or more depending on his schedule) to complete his work and supplement his disclosures. Ordering him to do so tomorrow would deprive Mr. Andrade of his right to present an effective defense.[2] *See Sherman v. Gittere*, 92 F.4th 868, 878-879 (9th Cir. 2024) ("The constitutional right to 'a meaningful opportunity to present a complete defense' is rooted in both the Due Process Clause and the Sixth Amendment," and includes, "the right to offer the testimony of witnesses, and to compel their presence if necessary, is in plain terms the right to present a defense. . .").

### B. The Government's Requested Order Exceeds the Scope of Disclosure Contemplated by Rule 16(b)(C)(iii)

The government also has requested an order that Mr. Min produce material he received but neither used or relied upon, including an Excel document containing five elastic IP addresses, three EBS storages, and 20 Amazon machine images. Mr. Min could not even open most of these items. *See* Declaration of Dainec P. Stefan at ¶ 3. Nonetheless, in the interest of full disclosure, Mr. Andrade advised the government of all the material Mr. Min received. Requiring production of it goes well beyond the requirements of Rule 16, *see, e.g., United States v. Cerna*, No. 08-cr-0730-WHA, 2010 U.S. Dist. LEXIS 62907, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010) ("the requirements imposed by Rule 16 are not overly demanding"), and would be an enormous burden because of the massive volume. *See* Declaration of Dainec Stefan at ¶ 3.

In addition, the government seeks "statements, interview reports, and other materials from software developers of AML Bitcoin that Mr. Min *reviewed*" (emphasis added). This, too, goes beyond the requirements of Rule 16, which calls for disclosure only of the "bases and reasons" for the expert's opinions, Fed. R. Crim. Proc. 16, and the government offers no authority to the contrary. The most it says to justify its request is that "the materials he provided contain none of these bases for his opinion," Gov't Motion at 4:26, but Mr. Min reports that the more than 6.8 gigabytes of data he produced includes every digital or written item he used in

---

[2] Note that despite Mr. Min's opinions not being dependent on source code for AtenCoin, which Mr. Min has not yet been afforded the time or funding to analyze, the source code was provided to the government along with the source code which formed the bases and reasons for Mr. Min's opinions regarding AML Bitcoin. *See* Stefan Decl. at ¶ 4.

3

Andrade's Response to Government's Motion to Continue    Case Number: 3:20-cr-00249-RS
Deadline for United States to File Rebuttal Expert Notice

reaching his conclusions.

All that remains are Mr. Min's CV, which has been sent, and the government's request for Mr. Min's compensation information. This, too, is outside the bounds of Rule 16, but Mr. Andrade's counsel provided it after consultation with CJA to determine what Mr. Andrade is permitted to reveal. Consistent with CJA's instruction, Mr. Andrade has provided the government with Mr. Min's hourly rate and will provide the number of hours worked after the work has been completed.

### C. The Government's Remaining Complaints Regarding Subpoena Compliance and Evidentiary Weight Merit No Relief

The government also makes various accusations about obstruction of justice, claims of non-compliance with a subpoena, and assertions about the evidentiary quality of Mr. Min's disclosed testimony and the information on which he relied. Leaving aside for the moment whether the complaints are timely, no relief is requested in the Motion based on these complaints, and none could be granted as they are meritless.

At the outset, the government appears to object to Mr. Min's testimony based on the claim that it subpoenaed NAC Foundation and that NAC Foundation produced no source code. The government asserts that "Andrade produced no source code," without a declaration identifying who made the production or whether it included any source code. Gov't Motion at 4:9. Among other errors, even assuming the truth of the statement that the NAC Foundation produced no source code, the government fails to offer any evidence that the NAC Foundation had any source code at the time of the subpoena that it failed to produce, or, if it did, why that means Mr. Min cannot provide expert testimony based on the source code he was able to obtain. *United States v. Calle,* 56 F. App'x 57 (2d Cir. 2003), the sole authority cited by the government, offers it no help. Calle was charged with obstruction after electing to respond to a grand jury subpoena served on him, not on an entity, and he elected to respond to it himself, according to the evidence, incompletely and untruthfully, which led to his conviction – but not to any

4

Andrade's Response to Government's Motion to Continue    Case Number: 3:20-cr-00249-RS
Deadline for United States to File Rebuttal Expert Notice

exclusion of expert testimony based on evidence allegedly not produced.[3]

Equally baseless is the government's claim that Mr. Min's testimony is inadmissible because of his reliance on source code. Such code (and the data within it such as the date of preparation) is typically relied on by experts in the field, and is therefore a proper basis for Mr. Min's opinions. See F.R.E. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. . . ."). As the Advisory Committee explained, expert witnesses may base opinions on facts or data that the expert "has been made aware of or personally observed." Fed. R. Evid. 703. If the facts and data relied upon are the sort that experts in that field would reasonably rely on, then those facts "need not be admissible for the opinion to be admitted." *Id*. Accordingly, experts may base their opinions on otherwise-inadmissible information, such as hearsay, so long as the information is the sort reasonably relied upon in the experts' field. The purpose of this rule is largely practical: experts generally base their opinions on information which, to be admissible in court, would entail "the expenditure of substantial time in producing and examining various authenticating witnesses." *See Factory Mut. Ins. Co. v. Alon USA L.P.,* 705 F.3d 518, 523 (5th Cir. 2013).

None of the cases cited by the government remotely suggest the contrary. The quoted statement in the government's brief from *In re Citric Acid Litig.*, 191 F.3d 1090, 1102 (9th Cir, 1999) was not in the context of the propriety of an expert relying on certain material, but rather arose when an appellant sought on appeal to introduce as evidence a document that served as part of the basis for its expert's opinion, but that had not been introduced in the district court. Id. at 1101. No better is *Wi-LAN Inc. v. Sharp Elecs. Corp.*, 992 F.3d 1366, 1369-70 (Fed. Cir. 2021). Contrary to the government's position, *Wi-LAN* agreed that that experts typically rely on

---

[3] Even if the government were correct that the NAC Foundation had source code that it did not produce, and even if that non-production could be attributed to Mr. Andrade, the government should not be allowed to "reserve the right" to introduce any such evidence without providing notice under Rule 404(b).

5

Andrade's Response to Government's Motion to Continue   Case Number: 3:20-cr-00249-RS
Deadline for United States to File Rebuttal Expert Notice

material, like source code, in reaching opinions about infringement. *See id.* at 1376. The government's description of Wi-LAN leaves out critical facts from the case that leave no doubt of its inapplicability to Mr. Min's testimony. First, the proponent's expert offered no testimony that the source code printouts he relied upon were reasonably relied upon by others in the field. *Id.* Mr. Min would so testify in this case, based on the source code that he has had to review. Second, as noted by the district court, the opponents of the evidence affirmatively "demonstrated a lack of trustworthiness in the materials," based on inconsistent dates in the metadata, copyright, and revision histories of the documents which lacked explanation through change logs or other evidence of code history overtime. 362 F. Supp. 3d. at 226, 232 (D. Del. 2019). By contrast with *Wi-LAN*, the source code on which Mr. Min has based his opinions on AML Bitcoin's development is retained in large part on "'BitBucket, a cloud-based platform that enables teams of developers to write and store source code for software applications. . ." and his review includes "log files and databases," which "include timestamps," allowing him to see the project's development over time. See ECF 448 at 3:18-5:1. Third, in *Wi-LAN*, earlier claims from the source code producers that production of the source code in authenticated form was impossible given the passage of time and revisions to the code, *see* 362 F. Supp. 3d. at 231, led to a finding that there were "highly dubious circumstances surrounding [its] production." *Id.* at 233. No such circumstances exist in this case, where the data was maintained on a cloud-based platform replete with log entries showing its history, and it was not retrieved from a source that previously had claimed that the data was impossible to authenticate. *See id.* at 231. Finally, unlike in *Wi-LAN*, Mr. Andrade is not intending to use Mr. Min to authenticate or introduce source code data, but rather, to present expert opinions on material that would otherwise be inscrutable to the jury.

In any event, the information would meet the requirements for admission under Rule 807. Should the government file an objection to Mr. Min's testimony on any of these grounds, and should the Court allow the government a second bite at the apple, Mr. Andrade would ask that the Court allow sufficient time for full briefing before making a decision.

/ / /

6

Andrade's Response to Government's Motion to Continue
Deadline for United States to File Rebuttal Expert Notice

Case Number:  3:20-cr-00249-RS

DATED: January 28, 2025

Respectfully submitted,

KING & SPALDING LLP

By: /s/ *Michael J. Shepard*
    MICHAEL J. SHEPARD
    KERRIE C. DENT
    CINDY A. DIAMOND

Attorneys for Defendant
ROWLAND MARCUS ANDRADE