1   MICHAEL J. SHEPARD (Bar No. 91281)
      *mshepard@kslaw.com*
2   **KING & SPALDING LLP**
    50 California Street, Suite 3300
3   San Francisco, California 94111
    Telephone:    +1 415 318 1200
4   Facsimile:    +1 415 318 1300

5   KERRIE C. DENT (Admitted *pro hac vice*)
      *kdent@kslaw.com*
6   **KING & SPALDING LLP**
7   1700 Pennsylvania Avenue, NW, Suite 900
    Washington, DC 20006-4707
8   Telephone:    +1 202 626 2394
    Facsimile:    +1 202 626 3737

9
    CINDY A. DIAMOND (SBN 124995)
10    *cindy@cadiamond.com*
    **ATTORNEY AT LAW**
11  58 West Portal Avenue, #350
12  San Francisco, CA 94127
    Telephone:    +1 408 981 6307
13
    Attorneys for Defendant
14  ROWLAND MARCUS ANDRADE

15
                    **IN THE UNITED STATES DISTRICT COURT**
16
            **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
17
                        **SAN FRANCISCO DIVISION**
18

19  UNITED STATES OF AMERICA,                 Case No. 3:20-CR-00249-RS

20                          Plaintiff,        **DEFENDANT ANDRADE'S REPLY IN
                                              SUPPORT OF MOTION TO EXCLUDE
21          v.                                RECENTLY PRODUCED FINANCIAL
                                              DATA OR FOR CONTINUANCE
22  ROWLAND MARCUS ANDRADE,                   (ECF 511 and 523)**

23                          Defendant.        Judge:    Hon. Richard Seeborg

24                                            Trial:    February 10, 2025
                                              Time:     8:30 am
25                                            Judge:    Hon. Richard Seeborg

26

27
        Defendant Rowland Marcus Andrade thanks the Court for allowing him this Reply in
28
                                        - 1 -

1    Support of his Motion to Exclude Recently Produced Financial Data or For a Continuance. Given

2    the limited time available for this Reply, Mr. Andrade identifies below the main errors in the

3    government's Opposition, which leave no doubt that Mr. Andrade is entitled either to exclusion

4    of the government's financial evidence or a continuance.

5        1.    Without any accompanying declaration, the government discounts the quantity of

6    information that the defense needs to review.  It makes two unsupported statements – (1) that the

7    government "has produced much of the content within the Ruzicka documents elsewhere," and

8    (2) going even further, that if it is true, as it appears to be, that Mr. Ruzicka gave the government

9    his electronic working folders pertaining to Mr. Andrade, then essentially the only new files at

10    issue are 273 pages of hard-copy Ruzicka documents that the government found and produced

11    yesterday. Gov't Opp. at 2. While the defense continues to process the new data, it believes that

12    both of these unsupported statements are incorrect and that there is a substantial amount of

13    significant data that the defense has not yet had the opportunity to review.  *See* Declaration of

14    Cindy A. Diamond in Support of Reply Brief at ¶¶ 9-10.

15        2.    Whether the government did or "did not intentionally withhold Ruzicka's records,"

16    Gov't Opp. at 3, does not matter.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("We now hold that

17    the suppression by the prosecution of evidence favorable to an accused upon request violates due

18    process where the evidence is material either to guilt or to punishment, *irrespective of the good*

19    *faith or bad faith of the prosecution*") (emphasis added). *See also United States v. Price,* 566 F.3d

20    900, 907-908 (9th Cir. 2009) (reversing district court's denial of a new trial, explaining that

21    "[t]here is no allegation that the trial prosecutor in this case acted willfully, maliciously, or in

22    anything but good faith – but an "innocent" failure to disclose favorable evidence constitutes a

23    *Brady* violation nonetheless").  In any event, even leaving aside skepticism of its good faith based

24    on the conduct detailed in Mr. Andrade's Motion at ECF 499, the facts as described in the

25    government's motion leave considerable room to question the government's dedication to making

26    this production, and the resulting prejudice to the defense.  The Opposition reports that the

27    government first noticed its failure to produce the data in April, 2024 and set out to correct that

28

ANDRADE'S REPLY ISO MOTION TO EXCLUDE                    CASE NO. 3:20-CR-00249-RS
FINANCIAL DOCUMENTS OR FOR CONTINUANCE

1   failure, but fails to explain why – especially in light of the significance of the failure – it did not

2   make sure that the failure had in fact been corrected at that time.  Nor does it explain why no one

3   checked to see that the material had been sent, or why it did not inform the defense in April, 2024

4   that it had uncovered data from Mr. Ruzicka that, contrary to its repeated representations that it

5   had satisfied its obligations and responses to all defense requests, it had not produced the Ruzicka

6   documents when it should have done so four years earlier.  This same process repeated itself on

7   an unidentified date in December, 2024 – likely early in the month, given the government's lack

8   of specification – when the government again failed to produce the data or to let the defense know

9   of its existence.  Keeping all this hidden not only delayed defense access to the material, but also

10  delayed the defense's ability to use the material once it was finally produced and the defense

11  struggled with technological issues encountered when transmitting the data to Ms. Johnson. *See*

12  Declaration of Cindy A. Diamond at ¶¶ 6 and 7.

13          3.      Having unsuccessfully attempted to diminish the quantity of the belatedly-

14  produced data, the government does the same with the quality of the data, asserting that "the

15  Ruzicka documents are neither exculpatory nor material to the defense," Gov't Opp. at 6, and that

16  "the existence of his business and the transactions he made are not in dispute." *Id.* at 7. This is

17  nonsense. The government has produced summary exhibits for its witness Theresa Chiu that

18  attempt to call out the allegedly small amount of money that was spent on the business, compared

19  to what it claims Mr. Andrade took for himself. Its case, as described in its Motion to Admit Co-

20  Conspirator Statements, will include a claim that "while some of the money was spent in

21  apparently legitimate ways, significant amounts of money were spent on the promotion of AML

22  Bitcoin tokens and on transfers to Andrade's personal accounts." ECF-449 at 5.  Similarly, its

23  Opposition to Mr. Andrade's Motion to Exclude Rule 404(b) Evidence asserts that "Andrade

24  misappropriated most of the funds." ECF-441 at 6. Mr. Andrade expects Mr. Ruzicka's data, once

25  fully digested, will help establish the amounts of money spent on what were in fact "legitimate"

26  expenses, and will help show the misleading nature of Ms. Chiu's exhibits. Having put in issue

27  the relative expenditures of Mr. Andrade's business on what the government considers

28

ANDRADE'S REPLY ISO MOTION TO EXCLUDE                         CASE NO. 3:20-CR-00249-RS
FINANCIAL DOCUMENTS OR FOR CONTINUANCE

1    "legitimate" versus "illegitimate" uses, the government cannot be heard to say that the records of

2    the accountant for the business relating to those very subjects are neither material nor

3    exculpatory, either as to the actual nature of the expenditures or to Mr. Andrade's understanding

4    of them.

5          4.    In any event, the government's argument that the Ruzicka documents are not

6    exculpatory or material uses the wrong standard.  The government cites to cases applying a

7    standard applicable to *post-trial* review of *Brady* material, *see, e.g., United States v. Maniktala*,

8    934 F.2d 25, 28 (2d Cir. 1991) (materiality must be assessed "against the backdrop of all the

9    evidence presented to the jury" and "[t]here must be some indication that the pretrial disclosure of

10   the disputed evidence would have enabled the defendant significantly to alter the quantum of

11   proof in his favor"), but the Ninth Circuit has recently directed that "the materiality standard

12   usually associated with Brady *… should not be applied to pretrial discovery of exculpatory*

13   *materials.*" *United States v. Cloud,* 102 F.4th 968, 979 (9th Cir. 2024) (*quoting United States v.*

14   *Price*, 566 F.3d 900, 913 n14 (9th Cir. 2009) ("not[ing] favorably the thoughtful analysis set forth

15   by two recent district courts in this circuit" that had declined to apply the "materiality standard

16   usually associated with Brady … to pretrial discovery of exculpatory materials."); *see also United*

17   *States v. Shetty,* No. 2:23-cr-00084, 2024 WL 4979830 (W.D. Wash. Dec. 4, 2024) (relying on

18   *Cloud*, granting the defendant's motion to compel Brady material, explaining that "[w]here doubt

19   exits as to the usefulness of evidence, [the government] should resolve such doubts in favor of

20   full disclosure" and that "[n]o further determination of whether that evidence iso or might be

21   'material' is required.") (internal citations omitted).

22         5.    Equally unpersuasive is the government's "sleeves off the vest" offer that it will

23   not introduce the Ruzicka documents in its case-in-chief. Gov't Opp. 8. If the government fails to

24   produce information that is material to the preparation of the defense and/or exculpatory, it is no

25   remedy for the government to offer not to introduce data that it helpful to defense.  Rather, given

26   that the government will present its portrait of Mr. Andrade's expenditures, the defense needs the

27   Ruzicka data to fully evaluate the government's proof and to cross-examine government

28

witnesses, including Ms. Chiu and other government witnesses from AML Bitcoin.[1] Did they

also say that Johnson will have plenty of time to review? Other than emphasizing the need to

have examined the data for Chiu's examination, do we have any further answer to that argument?

6.      The government asserts that a continuance is unnecessary because the Ninth

Circuit in *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 814–16 (9th Cir. 2024) set a "high

bar" for continuances and "agreed with the district court that a trial continuance had been

unnecessary, and affirmed the defendant's conviction." Gov't Opp. 11:16-17. Far from setting

any bar for continuances due to belated discovery production, the Ninth Circuit in

*Alahmedalabdaloklah* recognized that "a continuance granted for purposes of preparation and

investigation will often remedy any prejudice to the defendant's case resulting from late-disclosed

evidence." *Id*. at 828. It declined to grant such a continuance for reasons, not mentioned in the

Opposition, that do not apply to the facts of this case and instead suggest that a continuance

should be granted here. The late-disclosed evidence in *Alahmedalabdaloklah* was not a

substantial volume of dense financial records requiring expert review and going to the merits of

the defense as in this case; in contrast, it was impeaching information about a government witness

that supported a point the defense had already made about that witness (that the witness was a

serious wrongdoer who received substantial benefits from the government) and was information

contained in documents that the government agreed to allow the defense to admit in evidence. *Id*.

at 829.[2] The government also claims that "by the time Ms. Johnson testifies in the defense's

_____

[1] For example, attorney David Salmon, who controlled the trust account for the AML token sale in the first quarter of 2018, is scheduled testify for the government.

[2] *See Alahmedalabdaloklah* at 795, 815, 829 (in a case charging the defendant with participating in a conspiracy that targeted US military personnel and property in Iraq as part of a notorious group called the Brigades, late-disclosed evidence that witness was part of the Brigades, that the priority of the Brigades was fighting multinational forces in Iraq, that the witness played a political, religious and military tole in the group, and that consular officials sought to waive his no-fly status and his inadmissibility to the United States did not require reversal for lack of a continuance because the jury already knew that the witness supported the Brigades and had a strong incentive to cooperate with the government, and because the government agreed to stipulate to the admission of the impeaching documents so the defendant had an opportunity  to present this evidence to the jury and argue its relevance).

1    case-in-chief, she will have had over a month to review the digital Ruzicka documents and

2    several weeks to have reviewed the scanned hard-copy documents." Gov't Opp. at 7:15-17.  This

3    oversimplification of the situation ignores that (1) Ms. Johnson will need to have reviewed the

4    data before the government's witness, Ms. Chiu, testifies and (2) that Ms. Johnson still is fully

5    engaged in doing the work that CJA already has approved her to do.

6        7.    That the belated discovery in this case is of dense financial data that goes to the

7    merits of the case also distinguishes it from the remainder of the cases relied on by the

8    government. The government emphasizes the volume of the material belatedly-produced in

9    *United States v. Herrera*, 51 F.4th 1226 (10th Cir, 2022), but never comes to grips with the fact

10   that none of it went to the merits of the case and that all of it was either impeachment material

11   that was cumulative of what already had been produced, *see id*. at 1245, 1250, 1251, 1252, or was

12   impeachment material to which an objection had not been preserved. *Id*. at 1247.  All the other

13   cases cited by the government were post-conviction cases either based on finding a lack of

14   materiality (involving impeachment material) or were based on failure to preserve the issue.  See

15   *United States v. Marshall,* 532 F.2d 1279, 1284 (9th Cir. 1976) (materiality not apparent); *United*

16   *States v. Maniktala*, 934 F.2d 25, 28, 29 (2d Cir. 1991) (documents would not have made a

17   difference); *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)  (lack of materiality);

18   *United States v. Alvarez*, 358 F.2d 1194, 1210 (9th Cir. 2004) (late production of impeachment

19   material; court granted additional time to prepare cross-examination); *United States v. Fuller*, 665

20   F. App'x 248, 251 (4th Cir. 2016) (impeachment material); *United States v. Nazario*, 748 F.

21   App'x 479, 481 (3d Cir. 2018) (objection not preserved*); United States v. Ellison,* 804 F. App'x

22   153, 156 (3d Cir. 2020) (immaterial impeachment); *United States v. Kahn*, No. 1:20-CR-00007-

23   02, 2022 WL 889400, at *1, 2022 U.S. Dist. LEXIS 57613 (D. N. Mar. Is. Mar. 28, 2022)

24   (impeachment material; mid-trial delay granted).

25       8.    As Mr. Andrade noted in his Motion, this case is not ready for trial, even apart

26   from the government's belated production. The defense is still working though the government's

27

28
ANDRADE'S REPLY ISO MOTION TO EXCLUDE                                    CASE NO. 3:20-CR-00249-RS
FINANCIAL DOCUMENTS OR FOR CONTINUANCE

1    exhibit list with over 1483 entries, including at least 10 exhibits that consist of 800-1000 pages,

2    produced without any designation of what portions of those exhibits the government actually

3    plans to use.  The same is true of 22 recordings, produced without designations or transcripts.

4    The length of time required to work through this mass of listed exhibits means that the defense

5    has not yet reached a decision about stipulations to admissibility, let alone had time to put itself in

6    a position to make counter-designations of material from voluminous government exhibits.

7
                                                    Respectfully Submitted,
8

9    Dated: February 5, 2025                        **KING & SPALDING LLP**

10

11                                                  By:     /s/ *Michael J. Shepard*

12                                                  MICHAEL J. SHEPARD
                                                    KERRIE C. DENT (Admitted *pro hac vice*)
13                                                  CINDY A. DIAMOND

14                                                  Attorneys for Defendant
                                                    ROWLAND MARCUS ANDRADE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDRADE'S REPLY ISO MOTION TO EXCLUDE                          CASE NO. 3:20-CR-00249-RS
FINANCIAL DOCUMENTS OR FOR CONTINUANCE