PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHRISTIAAN HIGHSMITH (CABN 296282)
DAVID WARD (CABN 239504)
Assistant United States Attorneys

MATTHEW CHOU (CABN 325199)
Special Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    christiaan.highsmith@usdoj.gov
    david.ward@usdoj.gov
    matthew.chou2@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ROWLAND MARCUS ANDRADE, <br><br> Defendant. | CASE NO. 3:20-cr-00249-RS <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S MOTIONS TO ADMIT HEARSAY AND TESTIMONY OF A 2021 DILLMAN VICTIM** <br><br> Jury Trial: 8:30 a.m. thru ~Mar. 10, 2025 <br> Court: Courtroom 3 \| 17th Floor <br> Judge: Hon. Richard Seeborg |

# CONTENTS

I.   U.S.' RESPONSE TO DEFENSE MOTION TO ADMIT HEARSAY ........................................... 3

    A.   Defense's Proffered "Weekly Management Updates" ............................................ 3

        1.   (Dkt. 597-2, Exhibit 2327) Management update sent April 29, 2018 ................... 3

        2.   (Dkt. 597-4, Exhibit 2333) Management update sent July 3, 2018 ..................... 3

        3.   (Dkt. 597-4, Exhibit 2334) Management update sent Sept. 23, 2018 ................... 4

        4.   (Dkt. 597-6, Ex. 2337) Update forwarded by Mata on Oct. 3, 2018 ..................... 4

        5.   (Dkt. 597-8, Ex. 3202) Another update forwarded by Mata on Oct. 3, 2018 ................................................................................................................. 5

    B.   Defense's Proffered "Offers and Contracts" ............................................................. 5

        1.   (Dkt. 597-1, Exhibit 2232) Deloitte Engagement Letter .................................... 5

        2.   (Exhibit 3355, Dkt. 597-9) Email from Andrade to FBI SSA Ethan Quinn ................................................................................................................. 6

        3.   (Exhibit # unspecified) Post-ICO Binder ............................................................ 6

    C.   Legal Opinions (Exs. 2274 and 597-7, Dkts. 597-2 and 597-7). ............................. 7

II.  U.S.' RESPONSE TO DEFENSE MOTION TO CALL DILLMAN VICTIM ............................. 8

III. CONCLUSION ............................................................................................................................ 8

The government provides this expedited response to two belated defense motions: (1) a motion (filed on Sunday, March 2, 2025 at 11:51pm, *see* Dkt. 597) to admit "weekly management updates" from CrossVerify, offers/contracts, and two legal opinions; and (2) a motion (filed today, March 3, at 8:05am, *see* Dkt. 598) to permit testimony from Christine Lee, someone whom Japheth Dillman defrauded in an unrelated scheme in 2021. Because the defense case resumes tomorrow at 8:30am, requiring prompt disposition of these motions, the Court directed the government that it should file any response by 2:00pm today. The government responds to Dkts. 597 and 598 in turn.

**I.   U.S.' RESPONSE TO DEFENSE MOTION TO ADMIT HEARSAY**

In addition to objecting on the record, the government summarized the basis for precluding most of defendant's hearsay evidence in Dkts. 585 (Feb. 24, 2025) and 590 (Feb. 25, 2025). The government applies the authorities in those filings to each of Andrade's proffered exhibits.

**A.   Defense's Proffered "Weekly Management Updates"**

As detailed below, the government has no objection to the admission to *some* of the proffered "Weekly Management Updates" that Andrade received. To be sure, the government's view is that all the updates are excludable at this point on Rule 403 grounds (particularly confusing the issues, misleading the jury, wasting time, and cumulative evidence). "[W]e generally will not disturb such a ruling unless it 'lies beyond the pale of reasonable justification under the circumstances.'" *United States v. Espinoza-Baza*, 647 F.3d 1182, 1189 (9th Cir. 2011) (quoting *United States v. Pineda–Doval*, 614 F.3d 1019, 1035 (9th Cir. 2010)) (affirming exclusion of defendant's legally relevant evidence). But admitting yet more defense evidence would reduce appellate risk.

**1.   (Dkt. 597-2, Exhibit 2327) Management update sent April 29, 2018**

The government has no objection to admission of this email, which Andrade supposedly received on April 29, 2018.

**2.   (Dkt. 597-4, Exhibit 2333) Management update sent July 3, 2018**

The government has no objection to admission to the top email of the thread, which Andrade supposedly received on July 3, 2018. But the Court should exclude Andrade's later email (*see* Dkt. 597-4 at 4) to Richard Naimer, in which Andrade asks Naimer to remove Jack Abramoff from communications. To start, this out-of-court statement by Andrade is inadmissible hearsay when offered

by Andrade. In addition, it is inadmissible under Rule 403 because it is irrelevant as to Andrade's state of mind regarding his lies and technology development.

### 3. (Dkt. 597-4, Exhibit 2334) Management update sent Sept. 23, 2018

The Court should exclude this September 23, 2018 email in its entirety under Rule 403. The content within the email is unreliable because it post-dates (1) the FBI's September 13, 2018 search warrants executed on Andrade's office and Jack Abramoff's house; and (2) the FBI's September 20, 2018 search warrant executed on Japheth Dillman's house. So it was likely that, by September 18, at least one of the 16+ people referenced in the email was aware of the federal criminal investigation into their activities. The content in this email then, likely does not reflect a good faith recounting of what Andrade was actually told at the time, but a document colored by preparation for litigation. *See also, e.g.*, *United States v. Miller*, 771 F.2d 1219, 1238 (9th Cir. 1985) ("Business records prepared solely for purposes of litigation lack trustworthiness.").

Andrade's forwarding of the email to his attorneys (and their responses to that forward), *see* Dkt. 597-5 at 3, are further inadmissible on yet another ground: hearsay. Christina Ponig's response is inadmissible because it is not probative of what Andrade believed at the time—it is simply an attorney's polite reply to her client's forwarding of self-serving materials.

### 4. (Dkt. 597-6, Ex. 2337) Update forwarded by Mata on Oct. 3, 2018

The Court should exclude, as nested hearsay and under Rule 403, any emails from out-of-court declarant David Mata that purport to quote communications received by Marcus Andrade. These emails require assuming two nested levels of inadmissible truth. *See* Dkt. 585 at 2 (U.S. Mot. making same argument). *First*, that Andrade indeed forwarded to Mata a management update Andrade had received. *See* Dkt. 597-6 at 1 (email purportedly forwarded from Andrade to Mata on July 24, 2018 at 1:01pm). And *second*, that Mata indeed accurately quoted an email that Andrade had forwarded to him when Mata sent Andrade's email to the FBI.

To start, the email is inadmissible from its root because little shows that Andrade actually received it. Rather, we must assume the truth that Andrade received it because he forwarded it to Mata. Of course, Andrade's own statements, like this forwarded email, are inadmissible hearsay when offered by himself.

Mata's forwarding of the email to FBI agents then makes the email hearsay twice over. The ruling in *United States v. Bishop*, 291 F.3d 1100, 1110 (9th Cir. 2002) is illustrative, if not controlling. There, the Ninth Circuit held that the district court properly excluded as hearsay a defense witness's testimony that an out-of-court declarant had told the defendants something that supported their good faith defense. *See id.* The Ninth Circuit reasoned that "such testimony was offered to prove the truth of the matter asserted: [the out-of-court declarant] gave defendants certain advice, and they relied on that advice. No one cares what [out-of-court declarant] told [the testifying witness] except if it were true that [the out-of-court declarant] gave the defendants certain advice." *Id.* So too here. In fact, this case is an easier one. No one would care what Mata emailed SSA Ablett unless it were true that Mata indeed received an email from Andrade that Andrade had indeed received.

        5.       **(Dkt. 597-8, Ex. 3202) Another update forwarded by Mata on Oct. 3, 2018**

For the reasons stated in the prior section, the Court should also exclude this email from Mata for contravening the hearsay rule and Rule 403.

        **B.**       **Defense's Proffered "Offers and Contracts"**

        **1.**       **(Dkt. 597-1, Exhibit 2232) Deloitte Engagement Letter**

The Court should exclude this engagement letter in its entirety on several grounds:

*Authenticity*. Although the letter purports to be addressed to Andrade, there is not enough basis to authenticate that Andrade actually received and reviewed it. At most, defense witness John Fahy testified that he would have recognized *another* version of the Deloitte document, which had a second signature block. *See* Feb. 28, 2025 Tr. at 2396:10–2397:7. Thus, the defense has failed to show that the letter had an effect on the listener, Andrade.

*Hearsay*. The engagement letter shows merely that Andrade hired Deloitte in February 2020—over a year after the charged scheme ended—to simply advise him on an unidentified "offer" that has never been admitted into evidence. Andrade seeks to use the letter as a backdoor for proving a fact: that Andrade received an $100 million offer. The hearsay rule prohibits this. Deloitte had to assume the truth of whatever (mis)representations Andrade had told Deloitte about the existence of a purported deal long after the indictment period and long after the FBI's investigation had become overt. The defense cites the narrow hearsay exception for verbal acts, like signatures on contracts, but a defendant who knows he

is under investigation cannot circumvent the hearsay rule simply by larding a contract of his own making with misrepresentations.

*Rule 403*. The danger of confusion substantially outweighs the probative value of this engagement letter. The defense has confusingly muddled the distinction between (1) Andrade's hiring of Deloitte to advise him, as represented in Exhibit 2232; and (2) the purported fact that Andrade had a $100 million offer for his patents. Again, this letter is an engagement letter in response to Andrade trying to hire Deloitte as an advisor—not an offer Andrade received for purportedly valuable patents. And it contains pages of confusing legalese. What's more, the probative value is low. For one, the letter is dated February 28, 2020. Any statement or action after September 13, 2018 by Mr. Andrade is likely self-serving, and as noted above, the letter comes more than a year after the charged scheme ended. For another, the letter pertains to patents, which cannot speak to whether Andrade built the technology he patented (he did not) or had the business deals that he marketed to the public (he did not).

### 2.     (Exhibit 3355, Dkt. 597-9) Email from Andrade to FBI SSA Ethan Quinn

The Court should exclude this self-serving email from the defendant to an FBI agent. This email is far from a contract. It is self-serving hearsay that attempts to excuse the defendant's persistent failure to produce any source code in response to a grand jury subpoena.

### 3.     (Exhibit # unspecified) Post-ICO Binder

The Court should exclude the "post-ICO binder," which the defense proffers is a duplicate of a binder seized by the FBI from the NAC Foundation offices, under the hearsay rule and Rule 403. Although the government had not seen the binder until the defense showed it to SSA Quinn, the government's understanding is that it purports to contain victims' purchase agreements that post-dated the ICO, and thus were dated sometime after March 2019. The binder is likely a copy of FBI evidence item 1B085-AML BITCOIN POST ICO.

Even assuming that the defense's binder is a precise copy of the seized binder, it is inadmissible on at least three independent grounds. *First*, it comprises almost entirely self-serving hearsay. Through the NAC Foundation, Andrade drafted and imposed adhesive contracts on his victim-investors.[1] They

---

[1] During this morning's status conference on the motions that the defense had filed just hours before, the government erroneously stated that its investor-victim witnesses had made all their purchases

are thus *his own* statements, not third-party representations that he relied on in good faith. *See generally* Fed. R. Evid. 801(d) ("*opposing* party statement"). To make matters worse, the "Post-ICO" contracts in this binder are dated well after September 13, 2018, when the FBI's investigation went overt. Thus, Andrade had a major incentive to fill these contracts with self-serving exculpatory language.

*Second*, Andrade failed to establish business records foundation for this binder. Through counsel, he could have, for example, asked Bernadette Tran, Melanie Cowan, or Melissa Foteh about it on their cross-examination. But he failed to. Given that the Court has held the government to the rule that it generally cannot introduce records that could have been introduced by another witness (*e.g.*, text messages seized from Abramoff's phone regarding John Bryan invoice), the Court should hold the defense to the same.

*Third*, introducing evidence of investor purchase agreements violates the "bright-line rule" of *United States v. Lindsey*, 850 F.3d 1009, 1012, 1017–18 (9th Cir. 2017), which excludes "all evidence of individual lender [or investor] behavior."

**C.     Legal Opinions (Exs. 2274 and 597-7, Dkts. 597-2 and 597-7).**

The Court should exclude the legal opinions in their entirety per Rule 403 and hearsay. First and foremost, the letters have limited probative value (and pose substantial danger of confusion, waste of time, etc.) because they pertain to an ancillary and technical legal issue: whether AtenCoin and AML Bitcoin were securities. But as the defense's own witness John Fahy testified, fraud and securities suits are "different causes of action"—and the scope of his advice was tailored to the narrow issue of "how to draft documents that indicate that – so that the elements of what is a security are not met by drafting those documents." *See* Feb. 28, 2025 Tr. 2384:13–2386:11.

What's more, there's little evidence that Andrade actually received and reviewed these letters to rely on them in "good faith." As to Exhibit 2274 (Dkt. 597-2), Fahy testified merely that he wrote it. *See* Tr. 2383–84. The letter was addressed to someone other than Andrade who worked for a company that was not Andrade's either. As for Exhibit 2814, Fahy's testimony was merely that the letter "was

---

in 2018 or sooner. It appears that at least one of the witnesses, Dr. Mike Witte, made an *additional* investment after the ICO (that is, in 2019). The post-ICO binder appears to contain one of his purchase agreements.

1  provided to me in my – connection with my work for NAC Foundation." Tr. 2376:4–10. This hardly lays
2  foundation for Andrade's good-faith reliance on the document. For all the government knows, Andrade
3  himself drafted or edited the letter and provided it to Mr. Fahy. And again, the letter relates to the
4  separate and confusing issue of the Securities Act of 1933. *See* Dkt. 597-7 at 2.

5  **II.    U.S.' RESPONSE TO DEFENSE MOTION TO CALL DILLMAN VICTIM**

6         The Court should exclude defense testimony from Christine Lee, whom Japheth Dillman
7  defrauded in an unrelated scheme in 2021, on two independent grounds.

8         *First*, the text of Rule 806 expressly limits attack to evidence "that would be admissible … if
9  declarant had testified." Fed. R. Evid. 806. Extrinsic evidence of untruthfulness or fraudulent behavior—
10 such as testimony by a victim of the witness's separate scheme—is not admissible when a declarant has
11 testified. That said, as the Court correctly noted at this morning's hearing, there appears to be a circuit
12 split on whether Rule 806 somehow supersedes Rule 608(b)'s bar on extrinsic evidence—a split on
13 which the Ninth Circuit has not yet taken a position, according to a leading treatise and defendant's own
14 brief. *See* Dkt. 598 at 2; Wright & Miller 30B Fed. Prac. & Proc. Evid. § 7054 (2024 ed.). The
15 government's view is that the Third Circuit has the better side of the split. Even if the text did not
16 control, the policy of the rules supports the government's reading. "[T]he party attacking an unavailable
17 hearsay declarant's credibility through Rule 806 receives something of a windfall if extrinsic evidence is
18 allowed." Wright & Miller, *supra*, § 7054.

19        *Second*, Rule 403 counsels exclusion of Ms. Lee's testimony in the prosecution of Andrade. The
20 government will try to vindicate her rights in its separate trial against Japheth Dillman. The fact that
21 Dillman defrauded her in a separate scheme, and years after Andrade's indictment period, poses a danger
22 of jury nullification and confusing the issues.

23 //
24 //
25 //
26 //
27 //
28 //

## III. CONCLUSION

The Court should grant in part and deny in part Andrade's motion to admit hearsay (Dkt. 597) and deny his motion to permit the testimony of Christine Lee (Dkt. 598).

DATED: March 3, 2025

Respectfully submitted,

PATRICK D. ROBBINS
Acting United States Attorney

/s/
CHRISTIAAN H. HIGHSMITH
DAVID J. WARD
Assistant United States Attorneys

MATTHEW CHOU
Special Assistant United States Attorney